IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

UNITED STATES OF AMERICA,          )
                                                          )
        v.                                                )        No. 14-9003
                                                          )
KABONI SAVAGE,                            )
                                                          )
                Defendant-Appellant.     )

**APPELLANT'S RESPONSE TO COURT ORDER AND APPLICATION
UNDER FEDERAL RULE OF APPELLATE PROCEDURE 10
FOR ACCESS TO IMPORTANT MISSING RECORD MATERIAL**

The Defendant-Appellant, Kaboni Savage, by his appellate counsel, hereby

submits this response to the Court's September 27, 2017, order, which directed him

"to file . . . an application regarding those portions of the record . . . that he

contends have not been previously made available yet are required to proceed."

The Court further invited him to "also address arguments pertaining to" the district

court's order, two days earlier, which in large part denied his requests for that

missing record material.  Finally, this Court indicated that, upon receiving

submissions from Savage and the government, it would issue a further scheduling

order for his appeal.

Savage also brings this application under Federal Rule of Appellate Procedure 10, which authorizes this Court to make available, or direct the district court to make available, those portions of the record that counsel are still missing.

In largely denying counsel's request for that assistance two weeks ago, the district court concluded that most of the material counsel are trying to obtain is "wholly irrelevant" to Savage's appeal, and that, under Rule 10, he is not entitled to have his counsel review it let alone include it in the record for appeal. The court characterized counsel's requests as "an unprecedented attempt to conduct a discovery fishing expedition on a district court," and suggested they were "a tactic to . . . delay Savage's appeal."[1]  District Court Order, Sept. 25, 2017 (hereinafter "Order"), at 4-5.[2]

That characterization is inaccurate and unfair. Savage's counsel are simply attempting to compile a complete and accurate record of what transpired during his lengthy and complex death-penalty proceedings. As detailed below, the material

_____

[1] Similarly, in a recent submission to this Court, the government labeled as "false" Savage's counsel's "claim that they have not yet been able to compile a complete record for appeal," and accused counsel of having "expanded the notion of a 'complete record' to include both patently unnecessary items and things that do not exist," and doing so for "purposeful delay." Government's Response to Court Order, filed Sept. 20, 2017, at 7.

[2] A copy of the order, ECF 1674 on the district court docket, was filed by the government with this Court on September 26, 2017.

counsel seek is legally considered part of the record on appeal under Rule 10, and is likely to be relevant, in many instances critical, for them in briefing and for the Court in adjudicating the appeal. By diligently working to identify the missing material and to engage the government and the district court in a cooperative effort to complete the record, counsel have endeavored to minimize rather than create delay.

Section A of this filing summarizes some necessary background facts. Section B, along with accompanying appendices, details the record material that the district court has declined to provide or help obtain, and explains why making it available to counsel and this Court is necessary and would not be unduly inconvenient. Section C discusses why it is legally required. Section D proposes scheduling for the appeal. And Section E summarizes the order Savage now seeks.

## A.    Background

1.    This Court is aware of the scope, complexity, and gravity of Savage's appeal. His is the first federal death sentence in the modern era the Court will directly review. Such appeals are far broader and more challenging than habeas cases arising from state death sentences. And even among federal capital appeals across the country, the record here is unparalleled in size and scope. Arising from

a trial that involved four defendants, three of whom were targeted for the death penalty, it includes over 30,000 pages in court transcripts from almost 100 court days, nearly 1700 docket entries, more than 400 unique government recordings admitted and played for the jury, and over 1000 other admitted government exhibits.

2.    Savage's appellate counsel Barry Fisher and Lawrence Lustberg were appointed by this Court a little less than three years ago, and counsel Madeline Cohen was appointed about ten months ago.  None of them represented Savage in district court.  Appellate counsel discovered, early on, that they were missing extensive, important record material.  Accordingly, in addition to reviewing the entire available record, formulating a working list of appellate issues, and beginning to research and draft them, as well as litigating the unusual SAMs restrictions imposed on their communications, counsel have devoted much time to identifying the missing material and trying to obtain it.

3.    Counsel requested and successfully received a considerable amount of that material from the district court clerk's office.  The district court inaccurately suggested that process involved a proliferating series of intrusive demands from counsel.  *See* Order, at 3-4.  In fact, virtually all of counsel's contacts with the clerk's office from the outset of this appeal sought two basic categories of missing

4

record material: copies of docketed filings made in paper form (mostly because they were sealed) and thus inaccessible electronically, and transcripts of court proceedings that had been recorded but never transcribed.[3]

4.    An unusual amount of time and effort was required to obtain the missing transcripts.  Counsel was called upon to communicate with a number of different court employees, and to convey numerous reminders and offers to assist and engage in other follow-up efforts, in order for the clerk's office to identify, locate, and provide a court reporter with the untranscribed recordings.  Similarly, counsel received the missing docket material from the clerk's office in a series of four different batches (the last one only in February 2017), after an all-day visit to the clerk's office and numerous communications and follow-ups.[4]

5.    The district court was also wrong to discount the relevance of those filings and transcripts, and to question counsel's motives for persisting in obtaining them.  Order, at 4.

---

[3] Within about two months of his appointment, Attorney Fisher wrote letters to the court and the court reporter supervisor about obtaining copies of the paper filings and the missing transcripts, and provided a list of all the dates for the latter. About a month later, he identified for the clerk's office the paper filings counsel needed.

[4] Counsel kept this Court apprised of these developments in a series of motions for extensions of time to file the Transcript Purchase Order.

6.    As for the docketed paper filings, counsel were initially able to learn little about their contents.  The docket entries for many were non-descriptive (*e.g.*, "Order as to Kaboni Savage," "Sealed Motion Filed by Steven Northington," *etc.*).  Without obtaining those, it was impossible to know their subjects, let alone understand if they bore on Savage's appeal.

7.    Moreover, having now received the docketed paper filings, counsel has determined that many are, in fact, relevant to the appeal.  The district court incorrectly said that the clerk's office provided counsel with 126 paper filings and that "[o]nly eight . . . related to Savage specifically."  Order, at 4.  In fact, counsel received a total of about 600 such filings.[5]  And almost 200 of them specifically involved Savage, either alone or because they explicitly applied to all the defendants facing trial.

8.    That includes more than 100 filings involving important subjects that are likely to be relevant on appeal, such as, for example: motion papers and orders involving requests by Savage to suppress wiretap recordings and other evidence;[6]

---

[5] Files from Savage's various trial counsel could not substitute for obtaining copies of the original paper filings directly from the clerk's office.  For one thing, it took a number of months to even obtain one of the lawyer's files, and many more months for current counsel to comb through the voluminous boxes of documents and computer media.  Moreover, that review located copies of only some of the paper filings, and most of those were not identified with ECF filing numbers.

[6] *See* ECF 421, 423, 651, 674, 700, 909, 913, 979-982, 1038-1039.

motion papers and orders involving disputes over the deposition of Savage's

mother and other discovery issues;[7] motion papers and orders regarding the jury,

including an all-defendant *Batson* challenge to the prosecution's striking of an

African-American juror, and the court's decision to impanel an anonymous jury;[8]

an order involving Savage's SAMs restrictions;[9] copies of jury notes sent to the

court during deliberations;[10] the guilt and sentencing verdict forms completed by

the jury for Savage;[11] sealed transcripts from various proceedings on jury selection

and issues involving Savage's relationship with his trial counsel;[12] and motion

papers and orders on appointment, funding, and others issues involving Savage's

counsel, experts, and investigators.[13]

---

[7] *See* ECF 579, 753, 881, 1036.

[8] *See* ECF 788, 803-804, 919.

[9] *See* ECF 333.

[10] *See* ECF 1297, 1302, 1306, 1319-1320, 1329, 1415, 1433.

[11] *See* ECF 1330, 1434.

[12] *See* ECF 327-328, 1506-1508.

[13] *See* ECF 181-182, 185-186, 203, 205, 211, 273-274, 296-299, 311-312, 318-319, 358, 448, 473, 477-478, 486-487, 490-491, 496-498, 534, 541, 548-549, 579, 618-619, 643, 647, 649, 662, 711-712, 725, 754, 758-759, 781, 785, 791, 819, 837, 868, 881, 908, 957-958, 960, 965, 985, 1062, 1069-1070, 1173, 1227-1228, 1233-1234, 1239-1242, 1276-1279, 1286-1289, 1303-1304, 1314-1315, 1352-1353.

9.     The district court also erroneously discounted the significance to Savage's appeal of additional paper filings facially identified as pertaining to a codefendant, Order, at 4, for Savage's counsel needed to obtain and review those too.  He was indicted with four codefendants, Robert Merritt, Steven Northington, Kidada Savage, and Lamont Lewis, on joint charges of conspiracy and on an accomplice-liability theory for substantive crimes by his codefendants, including all but one of the capital offenses.  Savage was then joined with all those codefendants for the pretrial proceedings, and for trial with all but Lewis (who became the government's lead witness at trial).  The instructions essentially invited jurors to consider all the trial evidence in deciding the guilt of each of the four defendants on each charge.  Under these circumstances, even among the motions, orders and other filings that ostensibly applied just to a codefendant, many involved discovery, access to evidence, suppression, the government's decisions whether to seek the death penalty, continuances, *in limine* disputes, instructions, and sentencing in a way that either affected Savage or reveals information about his case.  And, having obtained and reviewed these paper codefendant filings, counsel have determined that many of them too, in fact, are relevant to Savage's appeal.[14]

---

[14] *See, e.g.,* ECF 666, 691, 841, 842 (motion papers and order on codefendant's motion for relief as to all defendants because of government's

10.   Most of these observations apply equally to the second category of record material that the district court criticized counsel for successfully pressing to obtain, court proceedings that were recorded but never transcribed.  While the court opined that "[m]ost appear to be wholly irrelevant to any appeal issues Savage could raise," Order, at 4, again, it was impossible for counsel to determine their relevance just based on the bare-bones docket entries, without seeing the transcripts.  And, again, after reviewing the almost three dozen new transcripts they were able to obtain, counsel have determined that a number are, in fact, pertinent to the appeal.  Those include pretrial hearings and conferences specific to Savage involving, for example, motions to suppress evidence, challenges to his SAMs restrictions, and requests to replace or add counsel or allow him to proceed *pro se*.[15]  Moreover, while the court discounted the relevance of still other, codefendant transcripts, *see* Order, at 4, here again, the court overlooked the

---

discovery violations); ECF 1002, 1003, 1037 (motion papers and order on codefendant's motion to admit grand jury testimony of witness favorable to all defendants on charges involving arson murders); ECF 779, 987 (motion papers and order on codefendant's motion to interview cooperating witnesses whose location government was keeping secret); ECF 910, 914 (codefendant pleadings on admissibility issue involving evidence government used against both codefendant and Savage); ECF 408, 409, 474 (codefendant pleadings seeking discovery of impeachment material on government's lead witness against Savage on arson murders).

[15] *See, e.g.*, Transcripts of 6/5/09, 6/23/09, 1/15/10, 7/6/11, 8/23/11, 6/11/12, 6/12/12, and 6/14/12.

intertwined nature of the legal issues for the joined defendants.  Savage's appellate counsel could not simply ignore all proceedings facially identified as pertaining to a codefendant.  And, again, having now obtained and reviewed the available codefendant transcripts, a number of those too are likely to be relevant to Savage's appeal.[16]

## B.  Record Material Required to Proceed But Still Unavailable

11.  Notwithstanding the docketed paper filings and newly transcribed recordings Savage's appellate counsel were able to obtain from the clerk's office, other extensive and important portions of the record remain unavailable to them, as detailed below and in the accompanying appendices.  Some of that material counsel determined early on they were missing, and promptly sought to obtain, including, where appropriate, from the government or the district court.  Other material counsel only learned about from carefully reviewing the available record and files from Savage's trial lawyers and the litigation support company they employed.  After completing that laborious review, counsel consolidated all their requests for missing record material into a motion filed with the district court three

---

[16] *See, e.g.*, Transcript of 6/5/09, at 5-6 (at codefendant's arraignment, prosecutor raises issue of Savage's misusing attorney telephone line); 8/27/10, at 3-7 (discussion of codefendant's motion to adjourn joint trial); 9/28/11, at 11-12 (at codefendant's sentencing, court initiates discussion of whether he will face a danger from Savage once released from prison).

months ago, in June 2017. The government opposed it, and the court largely

denied it in its September 25 order. The still-missing material is discussed below.

### *(i) The Government's Documentary Exhibits*

12. The government's final exhibit list from the trial runs 38 pages and

includes more than 1300 exhibits, many of them voluminous. *See* Appendix A, at

A2-39.[17] *See also* Order, at 1 (district court notes that, "[d]uring the trial," the

government "presented over 1,000 exhibits"). At the outset of Savage's appeal,

current counsel determined that the government had never provided trial counsel

with a duplicate set of its admitted documentary exhibits, in paper or electronic

form. Accordingly, counsel repeatedly requested such a set from the government,

and offered to pay the copying costs. Though there is no dispute that these exhibits

are part of the record on appeal, *see* Fed. R. App. P. 10(a)(1), the government

refused. Savage raised this issue in the motion he filed in the district court, but it

denied his request. *See* Order, at 6-7.

13. The government and district court suggested two alternatives, but

neither can substitute for simply allowing counsel a duplicate set of these exhibits.

14. First, the government and district court take the position that counsel do

not need copies because it will suffice for them to review the documentary exhibits

---

[17] "A__" refers to the numbered Bates-stamped page of the appendices that
accompany this motion.

in the prosecutor's office.[18]  Order, at 7; ECF 1670, at 3-4.  Two weeks ago, following the oral argument in this Court, Savage's counsel visited the prosecutor's office to attempt to review these exhibits.  The prosecutor showed counsel a partial set of exhibits, in the form of nine, large looseleaf binders, containing an estimated 3,000-4,000 total pages.[19]  A number of these exhibits consist of lengthy documents (*e.g.*, police reports, investigative files, transcripts of previous state trials, witness statements, *etc.*) that counsel will need to carefully —and likely repeatedly — analyze, and cannot simply be skimmed or memorialized with a scribbled note to the file.

15.   While, of course, not every one of these exhibits will be relevant to Savage's appeal, it is obvious that many of them will be.  That includes, for example, substantive exhibits about the arson murders that were the centerpiece of the government's case for the death penalty and will be a focus of the appeal (*e.g.*, the fire marshal report, medical examiner reports, crime scene photos, crime scene sketches, crime scene video, *etc.*).  *See* Appendix A, at A31-34.  It also includes

---

[18] While the district court's order also refers to these exhibits being available for counsel to "copy at his leisure," Order, at 7, to be clear, the government has never agreed to copy, or allow counsel to copy, *any* of them, but rather is only allowing counsel to examine the exhibits in the prosecutor's office.

[19] There are no dividers between or tabs on the pages, and thus it appears the contents of the binders could be copied relatively quickly and easily.

exhibits bearing on the credibility of the government's lead witness against

Savage, cooperating codefendant Lamont Lewis (*e.g.*, his plea agreement, his

proffer letter, letters he sent to Savage, his phone records, a video reenactment of a

car ride he claimed to have taken, a map he drew, *etc.*).  *See id.*, at A19, A24, A32-

33.  And, of course, many of the exhibits the government showed to the jury at the

capital-sentencing hearing will also be relevant to Savage's appeal, and his counsel

need to carefully review them (*e.g.*, a letter Savage sent his sister, phone records,

text messages, cell-search photos relating to Savage's misuse of a legal telephone

line, prior-conviction records, *etc.*).  *See id.*, at A36-37.  Furthermore, there are still

more exhibits that may turn out to be relevant as counsel proceed with their

research, issue identification, and briefing, but it is too soon to know.  It would be

unreasonable and burdensome to require counsel to make an appointment with the

prosecutor and travel to his office in Philadelphia every time they need to examine

an exhibit.  That is especially so given the feasibility of simply copying them at

appellate counsel's expense, as this Court alluded to at the September 27 oral

argument.

16.  Having counsel just review these exhibit binders at the prosecutor's

office also would not address the separate problem that they are substantially

incomplete, as the prosecutor himself concedes and counsel's examination

confirmed.  The prosecutor has explained that his team put the binders together before the trial began, but once it was in progress, some admitted exhibits were removed and never replaced, while additional exhibits he later decided to introduce were not copied to the binders.  *See* ECF 1670, at 3.  Counsel's inspection identified at least 150 documentary exhibits that the government published to the jury but are missing from the binders.  Those include all of the 50 or so exhibits the government introduced at Savage's capital-sentencing hearing.[20]

17.  Similarly unfeasible is the second alternative to providing counsel with a set of exhibits that the government and district court proposed: having Savage's appellate counsel, who were not involved in the trial, locate the government's 1000-plus documentary exhibits in the voluminous pretrial discovery scattered through trial counsel's files.  Order, at 7 n.4.  Those files contain tens if not hundreds of thousands of pages of discovery in paper form, and equally massive amounts of electronic discovery on scores of CDs and computer drives.  Nor does the government's exhibit list "in most instances, identif[y] where in the discovery material the exhibit may be located," as the district court believed.  *Id.*  Of the

---

[20] Presumably it should not be difficult for the government to locate the exhibits missing from its binders, since, as the prosecutor himself has pointed out, its list identifies the witness who identified each exhibit and the date it was admitted, as well as, in many instances, the FBI evidence control number.  *See* ECF 1670, at 10 n.3.

1300-plus exhibits on the government's list, just over 10 percent (159 exhibits) indicate which discovery "batch" included the exhibit (*e.g.*, "D1, "D2," *etc.*). *See* Appendix A, at A2-39. And even for that small fraction of the exhibits, such indications hardly make them easier for counsel to find, since each discovery "batch" consisted of as many as 10 computer discs' worth of material. In other words, trying to match the government's exhibit list to actual documents by sifting through the discovery in trial counsel's files would be like looking for a series of needles in a series of haystacks.

18.   Finally, even putting aside counsel's need for ready and ongoing access to these exhibits in order to work on Savage's appeal, they will be required to include copies of relevant ones in the record appendix filed with their brief. Moreover, this Court will presumably wish to have a complete set of exhibits available on request when it considers the appeal. *See* Fed. R. App. P. 11(b)(2), 30(e); 3d Circuit Local Appellate Rule 30.3.

19.   For all these reasons, the Court should direct the government to provide Savage's counsel with a complete, duplicate set of all the documentary exhibits it introduced into evidence or otherwise showed the jury. As counsel have

repeatedly advised the government, they are prepared to bear the costs of duplication if that is the problem.[21]

### (ii) Undocketed Written Communications

20.   Upon reviewing the available record, Savage's counsel were surprised to discover references to a vast number of letters, courtroom submissions, hand-delivered motion exhibits, e-mails, and other written communications between counsel and the district court (or its law clerk or courtroom deputy) that were never docketed on ECF.  Many of those appeared to relate to legal issues and other matters likely to be pertinent on appeal.  After informal outreach to the district court failed, Savage requested them in the motion he filed there three months ago, in June 2017.  To substantiate that request, the motion provided specific examples of almost 20 different places in the record where the court or trial counsel noted the existence of such potentially relevant correspondence or other undocketed written communications between the court and counsel.  *See* ECF 1669, at 15-16, 18 n.11.

---

[21] Both the government and the district court also rebuffed counsel's request to examine the tangible exhibits introduced into evidence by the government. *See* Order, at 8.  It appears that some of those are memorialized in photographs or property receipts that the government introduced into evidence as exhibits.  In the spirit of cooperation and a desire for efficiency, rather than pressing that issue now, counsel will wait to receive and review copies of the government's documentary exhibits, determine which particular tangible exhibits they may need to examine, and thereafter make a narrower request to the government.

21.   In response, the district court failed to acknowledge any of the materials referenced in Savage's motion, and said that counsel had "not identified a single document . . . that should be made a part of the record."  Denying counsel access to any of the undocketed written communications, the court wrote that it was "simply incorrect" that any "involved substantive legal issues."  Rather, assured the court, "any substantive matters that involved any aspect of this case are reflected on the docket."[22]  Order, at 9, 10 n.6.  *See also* Government Response to Court Order, filed Sept. 20, 2017, at 8 (representing that such undocketed written communications "were only for scheduling purposes").

22.   While the district court and the government insist that the undocketed written communications were trivial or ministerial, that is simply inaccurate.  To demonstrate this as clearly as they can to this Court, counsel have created a comprehensive list of all the undocketed written communications they have thus far been able to identify that are likely relevant to Savage's appeal, by date and description.[23]  There are almost 100 items on that list, which is included in

---

[22] The court also ruled that, even if any undocketed written communications with counsel were "substantive" and relevant to Savage's appeal, they were not considered part of the record on appeal under Rule 10.  *Id.*  That is also incorrect, as discussed below in Section C.

[23] While these cover a range of issues well beyond scheduling, the Court should understand that even some record material pertaining to scheduling will be relevant to this appeal, given the claims Savage intends to raise in his brief,

Appendix B, at A41-48.  Furthermore, the list designates, with an asterisk, those written communications that have been located in trial counsel's files, copies of which are also included in Appendix B, at A49-267.  If the actual written communication is missing, the list indicates where in the available record its existence is noted.

23.    All of the items listed in Appendix B, including the ones counsel do not have, are likely to be relevant, in many instances critical, to Savage's appeal.  For example, many involve trial counsel's and Savage's own objections and requests concerning his representation and the adverse effects of the SAMs and his confinement conditions on his defense, which the court largely turned aside.[24]  Those are issues current counsel intend to raise on appeal.  Likewise, many of the other listed items involve letters, proffers, and other attorney submissions concerning disputes over the admissibility of evidence (including important recordings, hearsay statements, and mitigation) that the district court decided (in whole or part) adversely to Savage, and thus are also likely to be issues on appeal.[25]  Finally, still other undocketed communications listed in Appendix B

---

including about the timing of his trial.

[24] *See* Appendix B, at A49-101, A109-117, A123, A125, A132, A151.  *See also id.*, at A41 (missing item dated 11/30/10).

[25] *See id.* at A104-08, A118-19, A128-29, A136-49.  *See also id.*, at A45-48

consist of proposed jury instructions from Savage, as well as ones from other parties, and draft instructions circulated by the court.[26]  These need to be obtained and included in the record for counsel and the Court to make sense of what instructions Savage requested or objected to, how those issues were resolved, and what happened during the (off-the-record) charge conferences, discussed further below.

24.    While Savage is requesting that all the communications marked with an asterisk and copied in Appendix B be made part of the record for appeal, that alone would not obviate the need for the district court to make available to counsel, from its chambers files, a full set of such correspondence and other undocketed written communications.  As the numerous items listed without asterisks in Appendix B demonstrate, counsel are still missing a significant number of those because they are not in trial counsel's files.[27]  And, with the exception of Savage's first learned counsel Timothy Sullivan, who withdrew during voir dire, trial counsel have not provided appellate counsel a set of their e-mails with the district court.  Finally,

---

(missing items dated 12/10/12, 2/1/13, 2/6/13, 4/16/13, 5/20/13, and 5/22/13).

[26] *See id.* at A45-46 (missing items dated 2/25/13, 4/4/13 and 4/25/13).

[27] That includes any correspondence or other undocketed communications between the court or its staff and the codefendants' counsel or the government that was never copied to Savage's trial counsel.

even for the communications appellate counsel have found and included in

Appendix B, a set from the court will avoid inevitable disputes with the

government over authenticity and completeness.

25.   Notably, the district court did not indicate in its order either that its

chambers did not retain copies of the undocketed written communications (as most

district judges do, certainly for death-penalty trials), or that its staff had tried and

could not access them.  And while the court protested generally that Savage's

requests "would impose an extraordinary burden," Order, at 5, it never explained

why.[28]  Counsel respectfully submit that the district court should be directed to at

least have its staff make reasonable efforts to examine its files for these

communications.

---

[28] In a previous letter to counsel, the district court expressed concern that
retrieving the e-mails its staff sent to or received from counsel in this case would
require closing its chambers for an extended period of time, but again it never
explained why.  *See* ECF 1669-1, at 99.  While counsel have no wish to unduly
burden the court's staff, they believe and hope that recovering these e-mails, once
attempted, would prove far less onerous than the court fears.  All the e-mail
communications appear to have involved three staffers (courtroom deputies
Michael Finney and Christine Franzese and law clerk Angela Pappas), whose
archived e-mails from this case should be readily searchable.  Again, appellate
counsel respectfully submit that, at minimum, the three staffers should be asked to
make reasonable efforts to recover their e-mails with trial counsel in this case.

### *(iii) Unrecorded Sidebars, Conferences, and Other Proceedings*

26.   Upon reviewing the available record and trial counsel's files, Savage's appellate counsel were also surprised to discover that the district court, the government, and trial counsel held many proceedings in this death-penalty case that were unrecorded.  Those consisted mostly of sidebars, courtroom conferences, chambers conferences, and telephone conferences, almost none of which appears to have been memorialized for the record.

27.   Nonetheless, in the few instances where the record revealed the subject of these unrecorded proceedings, a number appear to have involved substantive matters likely relevant to Savage's appeal.  For example, the critical charge conferences to address the final jury instructions, held at both the guilt and penalty phases, were conducted entirely off the record.  And at least a half-dozen chambers conferences appear to have addressed disputed issues, such as Savage's *pro se* motions, his SAMs restrictions, and his counsel's access to him, which are likely to be key ones on appeal.  *See* Appendix C, at A269-72.  Moreover, it appears that many of these unrecorded proceedings were much more than brief asides; for example, minute sheets reveal that the pretrial conference on the eve of opening statements and the jury-instructions conference at the guilt phase each lasted an hour and a half.  *See* ECF 1020, 1269.

28.   Through a careful review, appellate counsel have identified about 50 such unrecorded proceedings because they are referenced elsewhere in the available record.  Those are listed in Appendix C, at A269-72, by date, the subject of the proceeding (where it can be determined), and any available record citation to its existence.  But, as with the undocketed written communications discussed above, there may have been other such unrecorded proceedings of which appellate counsel remain unaware.

29.   Appellate counsel have attempted to communicate on their own with trial counsel for Savage and his codefendants about these unrecorded proceedings, but have received almost no information about what was argued, objected to, decided, or otherwise discussed during them, or about what additional unrecorded conferences occurred in this case.  Moreover, though appellate counsel have also searched trial counsel's files, they have discovered only two documents that memorialize any portion of those proceedings: what appear to be one lawyer's notes from a January 18, 2011 chambers conference, and a December 3, 2009 letter Attorney Sullivan sent to Savage about what occurred  at another such conference earlier that day.  Both of those proceedings were, by any definition, "substantive," as they involved defense objections to counsel's lack of access to Savage and other issues likely to be relevant to his appeal.  (Both the letter, redacted to omit other

attorney-client privileged content, and the notes are included in Appendix C, at A273-77).

30.    Accordingly, in the motion Savage filed in district court, his counsel provided the list of unrecorded proceedings included in Appendix C, at A269-72. The motion also asked the district court to share any notes memorializing those proceedings, and to direct trial counsel for all parties to do the same and otherwise assist Savage's appellate counsel in identifying and, if possible, reconstructing them. *See* ECF 1669, at 21; ECF 1671, at 13-14.    In doing so, Savage followed this Court's precedent, which cautions an appellant against seeking reversal of his conviction or sentence based on a missing portion of the record unless and until he has tried and failed to obtain a reconstruction of it in the district court. *See Roberts v. Ferman*, 826 F.3d 117, 124-25 (3d Cir. 2016).

31.    But again, the district court denied this request.    The government had assured it that the unrecorded proceedings involved "brief discussions regarding scheduling, lunch breaks, and bathroom breaks."    ECF 1670, at 7.    The court adopted that account, and insisted that "[m]ost of the Chambers or telephone conferences dealt with scheduling issues," without mentioning any of the 50 or so proceedings identified by Savage, including the charge conferences and other conferences on substantive matters.    Order, at 11.    The court added that any sidebar

conferences "that involved substantive matters . . . were transcribed and are

reflected in the trial transcripts that are published on the docket." In "those limited

instances" where a sidebar "touched on substantive matters," the court's

recollection was that it had been "diligent in assuring that the record reflected those

matters," and thus "whatever was discussed off the record was restated on the

record and transcribed." Order, at 11. *See also id.* at 10 n.6 (court declares that

"every substantive aspect of this case is transcribed").

32.   In this regard too, the district court's recollection is faulty and ignores

the information Savage's attorneys provided, and have provided again to this Court

in Appendix C. Counsel's description of the few unrecorded proceedings whose

subjects they have been able to identify, including both charge conferences and at

least a half dozen other proceedings on substantive issues, some as long as an hour

and a half, demonstrates that these were hardly limited to discussing "bathroom

breaks" and the like. It also cautions against assuming that the remaining

unrecorded proceedings (whose subjects remain unknown) must have been

confined to scheduling, and therefore cutting off any effort to try to reconstruct

them.

33.   Moreover, it is true that the court and various trial counsel made

references on the record to some of the conferences' having occurred and their

subjects.[29]  But neither the court nor the government have identified an instance in which the district court paused to have counsel "restate" for the record the arguments, objections, and rulings that had been made in such a conference. Rather, the court's order cited only one instance, in which it merely noted the prosecutor had remarked off-the-record that he intended to present evidence about a certain car's color.  4/24/13 Transcript, at 118-19, *cited in* Order, at 11.  And appellate counsel have found only one brief, fragmentary effort, by trial counsel, to summarize a few objections they remembered having made in a lengthy off-the-record conference.[30]

---

[29] For example, at the sentencing hearing, the court noted there had been an off-the-record conference on jury instructions where for the most part "no problems" were raised.  Savage's counsel interjected to "place some objections on the record," and after he did so, the court noted that "most of what I've heard . . . was not even discussed yesterday in chambers" at the charge conference.  Yet the court never placed or asked counsel to place on the record what *was* argued, objected to, ruled on, or discussed in chambers, other than to say that the "issues raised" there by the defense had been "accommodated."  5/29/13 Transcript, at 93,102.

[30] That occurred after the court finished instructing the jury at trial, and asked counsel if there were "any additions or corrections" to the charge.  At the brief sidebar counsel requested, several of the lawyers paraphrased a few objections they recalled having lodged at the off-the-record charge conference, but again, no effort was made to memorialize the substance of what had been argued and decided in that hour-and-a half long proceeding.  *See* 5/6/13 Transcript, at 139-45.

34.   The district court also ruled that "[e]ven if the unrecorded 'proceedings' were substantive or relevant," Savage's only option is to have his counsel submit a statement identifying each one and describing what occurred there, to serve as part of the record in lieu of a transcript.  Order, at 11-12, *citing* Fed. R. App. P. 10(c) (if transcript is unavailable, appellant "may prepare a statement of the evidence or proceedings from the best available means").  But that ignores the facts that Savage's current counsel did not represent him at trial and that they can neither make his trial attorneys spend the substantial time necessary to identify and convey what happened at each of the many unrecorded proceedings (if they are capable of doing so), nor arrange to compensate them for that work.  Only this Court or the district court can do that.  Nor is there anything in Rule 10(c) that disfavors let alone forbids, the district court from also asking its staff, the government, and trial counsel for the codefendants — who were present when these proceedings in a death-penalty case occurred and went unrecorded— to examine their files to help reconstruct what occurred.[31]  *See United States v. Sierra*, 981 F.2d 123, 126 (3d

---

[31] The district court cited two decisions from outside this Circuit, *see* Order, at 12, but neither detracts from Savage's position.  The first has nothing to with reconstructing unrecorded proceedings.  *See United States v. Casas*, 376 F.3d 20, 22-23 (1st Cir. 2004) (denying appellant's request for internal court memoranda on how cases are assigned).  And in the second, from a district court in Iowa, there were only four unrecorded conferences, and appellate counsel on their own had successfully obtained a "recital" from the trial lawyers of what happened at them.  *See United States v. Honken*, 477 F. Supp. 2d 1004, 1006 (N.D. Iowa 2007).

Cir. 1992) ("option to reconstruct the record presented by Rule 10" has been used in various ways by appellate courts "according to the circumstances of the case"). In the Fifth Circuit, for example, it is accepted practice "to employ sources such as the trial court's notes" to reconstruct unrecorded proceedings. *United States v. Pace*, 10 F.3d 1106, 1123 (5th Cir. 1993). Moreover, given that Savage's current counsel were not present, such notes from the court's staff, the government, or other trial counsel may constitute the "best available means" for reconstruction within the meaning of Rule 10(c). *See Sierra*, 981 F.2d at 126 (that appellate counsel did not represent defendant at trial is "significant factor" in addressing issue of untranscribed proceedings). While it may not prove successful with all or even most of the proceedings, counsel respectfully submit that the district court and its staff should at least be directed to make reasonable efforts to assist, and have trial counsel assist, current counsel to reconstruct them.

### (iv) Savage's and his Codefendants' Exhibits

35.    The transcripts of Savage's trial and capital-sentencing hearing show that his trial counsel introduced or published to the jury many documentary, audio-visual, tangible, and demonstrative exhibits. And his codefendants presented a number of additional exhibits that the jury was allowed to consider as to Savage at both trial and sentencing. All those are considered a basic part of the appellate

record under Rule 10(a)(1).  And, as discussed further below, it appears that many will be relevant, some highly so, to Savage's appeal.

36.    Thus, appellate counsel were also surprised to discover that neither the district court nor its staff kept any list of admitted defense exhibits.  Moreover, while, shortly after sentencing, Savage's trial counsel wrote to ask for a meeting with the court and prosecutors "to discuss finalizing exhibit lists," *see* Appendix D, at A279, there is no indication the court ever responded, and no such list was ever submitted.  The only approximation of a defense exhibit list found in trial counsel's files, a partially handwritten one, is fragmentary and missing essential information.  It lists defense exhibits that were never offered, omits ones that the transcripts reveal were admitted, and largely fails even to indicate which exhibits were introduced or published.  It also fails to account for any of the codefendants' admitted exhibits.  *See* Appendix D, at A280-302.

37.    Accordingly, appellate counsel have worked hard to create their own index, based upon their review of all the trial and sentencing transcripts.  It appears that Savage admitted or published about 100 documentary or physical exhibits for the jury, and his codefendants admitted or published another 50 or so.  *See* Appendix D, at A303-08.  In addition, it appears that Savage also played for the

jury about 70 audio exhibits, and his codefendants played about 20.  *See* Appendix D, at A309-13.

38.   Unfortunately, trial counsel did not assemble a set of their exhibits for the appellate record at the conclusion of the trial, nor, as appellate counsel recently learned, did the court retain the originals.[32]  Thus, appellate counsel have also made diligent efforts to find these exhibits in trial counsel's voluminous files.  Appellate counsel have located some documents and recordings there that appear to correspond to the exhibits' descriptions in the trial transcripts.[33]  But to identify and assemble the full set of defense exhibits, appellate counsel will require substantial assistance from the trial lawyers.  Their help is needed to locate the still-missing exhibits within their files, which are enormous and difficult for appellate counsel to navigate without guidance.  It is also needed to determine if

---

[32] Savage's appellate counsel initially understood from Savage's and one of the codefendant's trial counsel that the court had kept the admitted defense exhibits.  Accordingly, his motion in the district court asked to be able to review and copy them.  But counsel learned from the district court's order two weeks ago that, with a few exceptions, the court did not keep the defense exhibits.  *See* Order, at 8-9.

[33] Appellate counsel have also inspected and photographed the 35 oversized demonstrative posterboard exhibits that were the only defense exhibits the court retained.  *See* Order, at 8-9.  And it appears that several of the other exhibits Savage and his codefendants introduced were copies of government exhibits, though, as discussed above, appellate counsel have not yet been able to obtain those either.

the exhibits appellate counsel suspect they have located are, in fact, the ones

admitted, since the documents in trial counsel's files lack exhibit stickers.

39.   Appellate counsel have contacted Savage's trial lawyers (and those for

his codefendants), but have not obtained the help required to assemble the defense

exhibits or a commitment to provide it.[34]   This Court's or the district court's

intervention is needed to direct trial counsel to assist in both finding the defense

exhibits that are still outstanding and determining whether those items appellate

counsel have located in their files are in fact the exhibits introduced at trial.   (In

recognition of the substantial time this will require, this Court should also direct

that trial counsel be compensated for it pursuant to their earlier CJA

appointments.).

40.   It is essential to Savage's appeal for current counsel and this Court to be

able to review the defense exhibits.   These exhibits include numerous audio

recordings that trial counsel played for the jury, none of which were transcribed in

the trial transcripts.   Although some were separately played by the government

during trial and are now in counsel's possession, there are almost 70 recordings

that were only played by Savage's lawyers and that his appellate counsel are

---

[34] That is not surprising, since all of these lawyers have busy practices and
no longer represent Savage or (in most instances) his codefendants, and they are
not being compensated now for time spent helping with the record.

missing.[35]  *See* Appendix D, at A309-12.  These missing recordings are likely to be

relevant to Savage's appeal as they bear on issues crucial to his trial and sentencing

hearing, such as the overall scope of the RICO conspiracy and his involvement in

it; law enforcement's investigation of the underlying offenses; the credibility of

key government witnesses, including Lamont Lewis, the actual perpetrator of the

six arson murders at the heart of this case; admissions by Savage while testifying at

his previous federal drug trial; mitigating evidence concerning his relationship with

his family; and rebuttal to the aggravating factor of his future dangerousness in

custody.

41.    Savage's appellate counsel are also missing documentary evidence his

lawyers introduced to the jury that appears to be important to his appeal.  This

includes, for example, investigation records about the arson murders that were not

part of the government's exhibits, such as the FBI's original transcription of a

phone call between Savage and Lewis on the night of the arson (Savage's Exhibit

415), and the Philadelphia Police Department Crime Scene Unit incident report for

that offense (Savage's Exhibit 409).   *See* Appendix D, at A304.

42.    The missing documentary exhibits also include significant evidence

from Savage's capital-sentencing hearing.  To cite just one example, Exhibit 610

---

[35] Savage's codefendants played some recordings, too, several of which are
also unique and not in current counsel's possession. *See id.*, at A313.

consists of multiple photographs of the SAMs unit at ADX-Florence where Savage

would be — and, since trial, has been — housed, which his counsel introduced and

argued in defense against the aggravating factor of future dangerousness.  The

exhibit was presented in connection with expert testimony, but the transcript of that

testimony does not adequately capture, for the record, Savage's severely restrictive

conditions in the SAMs unit.  Rather, it appears that the photographs' visual

depiction of those conditions will be essential to appellate counsel's and this

Court's understanding of his sentencing defense to the jury that the federal prison

system could safely confine him if he received a life sentence.  *See* Appendix D, at

A305.

43.   While counsel do not contend that every admitted defense exhibit will

be necessary to Savage's appeal, they are confident that these and many other such

exhibits likely will be, that they at least need to be reviewed by counsel, and thus

that there is ample basis for the Court to grant the requested relief to enable

counsel to identify and locate these exhibits.

### (v) Transcript Corrections

44.   Finally, in addition to the four sizable categories of missing record

material discussed above, Savage also moves the Court to order two slight but

significant corrections to the existing trial transcripts.  In both instances, the court

reporters have e-mailed counsel to acknowledge the transcription errors, yet no corrections or corrected transcripts have been filed. *See* Appendix E, at A315-22.

45. The first instance involves the trial transcript from April 8, 2013, on page 73, line 5. While the witness actually used the word "scare," the transcript has the word "square." Savage's counsel believes this error will be pertinent to his appeal. After they brought it to the attention of the court reporter, Gregg Wolfe, he acknowledged the error, but seemed to think he is not permitted to file a corrected transcript. *See id.*, at A315-17. When Savage raised this in his motion below, the district court missed the fact that the court reporter had acknowledged the error, and denied the request, saying that while "[i]t seems likely the word was wrongly transcribed, "the Court has no ability to confirm the alleged mistake." Order, at 14.

46. The second instance involves one that Savage's counsel was able to confirm only recently with a different court reporter, Suzanne White. The transcript from February 21, 2013, on page 7, at line 17, mistakenly has the word "preserve" when the witness actually used the word "desert." Again, Savage's counsel believes this error will be pertinent to his appeal. And, again, when they brought it to this court reporter's attention, she acknowledged the error, and also provided a corrected transcript. But, again, it appears that the corrected transcript was never filed on the district court docket. *See* Appendix E, at A319-22.

47.   Accordingly, this Court should direct the respective court reporters to docket, or have the clerk's office docket, corrected versions of the transcripts from those dates.

**C.   Enabling Savage's appellate counsel and this Court to access and review the missing material as part of the record on appeal is mandated not just by Rule 10, but also by the Constitution, the Federal Death Penalty Act, and the ABA Guidelines.**

48.   Federal law requires judicial intervention to help assemble a complete record, at the request of a party, when a "difference arises about whether the record truly discloses what occurred in the district court," including when "anything material to either party is omitted from or misstated in the record by error or accident."  Fed. R. App. P. 10(e).  *See Fassett v. Delta Kappa Epsilon*, 807 F.2d 1150, 1165 (3d Cir. 1986).  *See also, e.g., Roberts*, 826 F.3d at 123; *United States v. Riley*, 336 Fed. Appx. 269, 270-71 (3d Cir. 2009); *Sierra*, 981 F.2d at 125-27 & n.1; *United States ex rel. Mulvaney v. Rush*, 487 F.2d 684, 687 n.5 (3d Cir. 1973).

49.   Such supplementation or correction of the record on appeal may be ordered by "the court of appeals" as well as by the district court.  Fed. R. App. P. 10(e)(2).  *See, e.g.*, *United States v. Becker*, 929 F.2d 442, 444-45 (9th Cir. 1991); *Ross v. Kemp*, 785 F.2d 1467, 1472 (11th Cir. 1986); *United States v. Aulet*, 618 F.2d 182, 187 (2d Cir. 1980).  And a court of appeals maintains its ultimate prerogative to determine the record on appeal, and may consider requests for or

against supplementation or correction, even where, as here, the district court has previously entertained litigation and weighed in on the subject. *See United States v. Barrow*, 118 F.3d 482, 487-88 (6th Cir. 1997). *See also, e.g.*, *In re Application of Adan*, 437 F.3d 381, 388 & n.3 (3rd Cir. 2006); *United States v. Zichettello*, 208 F.3d 72, 93 (2d Cir. 2000); *United States v. Keskey*, 863 F.2d 474, 478 (7th Cir. 1988).

50.   The record of the proceedings below that must be made available is not limited to just those portions that counsel is able, before seeing them, to say are relevant to anticipated appellate issues, especially when "new counsel represents the indigent on appeal." *Hardy v. United States*, 375 U.S. 277, 280-81 (1964) ("how can he faithfully discharge the obligation which the court has placed on him unless he can read the entire transcript?").

51.   Nor (beyond the exhibits and transcripts or reconstructions, discussed above) is the record limited to what was filed electronically on ECF.  Rather, the "record on appeal" embraces all "the original papers . . . in the district court."  Fed. R. App. P. 10(a)(1).  Thus, the district court was wrong to think that things like its correspondence with trial counsel "do not constitute the record," and thus may be kept from Savage's appellate lawyers and this Court, no matter how substantive or relevant to the appeal.  Order, at 9.

52.   Indeed, in this Circuit and others, Rule 10 has been applied or assumed to apply to a broad range of material reflecting "what occurred in the district court," including the very kinds of material Savage is seeking. *See, e.g., United States v. Moreno*, 857 F.3d 723, 727 (5th Cir. 2017) (law clerk's e-mail to counsel); *United States v. Negron-Sostre*, 790 F.3d 295, 300 (1st Cir. 2015) (evidence of exclusion of defendant's family from courtroom); *United States v. Stoltz*, 683 F.3d 934, 936 n.3 (8th Cir. 2012) (exhibits excluded from evidence); *United States v. Gammage*, 580 F.3d 777, 778-79 (8th Cir. 2009) (document that "the district court had . . . before it at a conference in chambers"); *Riley*, 336 Fed. Appx. at 270 (court's remarks to jurors in jury room); *United States v. Ruff*, 472 F.3d 1044, 1047 & n.4 (8th Cir. 2007) (document describing particulars of off-the-record chambers meeting); *Parker v. Della Rocco*, 252 F.3d 663, 665 n.2 (2d Cir. 2001) (correspondence between counsel copied to the district judge); *United States v. Taylor*, 9 Fed. Appx. 465, 468 (6th Cir. 2001) (memorialization of chambers discussions); *Barrow*, 118 F.3d at 487 (documents submitted to court during trial); *Simmons v. Beyer*, 44 F.3d 1160, 1168 (3d Cir. 1995) (documents identifying race of struck jurors); *United States v. Ellzey*, 874 F.2d 324, 331 (6th Cir. 1989) (documents memorializing bench conferences); *Keskey*, 863 F.2d at 478 (read-backs to jury); *Roberts*, 826 F.3d at 123 (transcripts); *United States v. White*, 589

F.2d 1283, 1289 n.13 (5th Cir. 1979) (fact that judge fell asleep during opening

statements); *United States v. Greenwell*, 418 F.2d 845, 846 (4th Cir. 1969)

(description of courtroom security arrangements).

53.    Such a complete and accurate record is essential in any appeal.  But the

mandate is especially crucial in a capital case, where it takes on an additional

constitutional dimension.  In *Dobbs v. Zant*, 506 U.S. 357, 358 (1993), for

example, the Supreme Court reversed the judgment because the appellate court

failed to consider the full sentencing transcript.  Said the Court: "We have

emphasized before the importance of reviewing capital sentences on a complete

record."  Such review is a critical "'safeguard against arbitrariness and caprice,'"

which the Eighth Amendment forbids in capital cases.  *Id.*, *quoting Gregg v.

Georgia*, 428 U.S. 153, 198 (1976).  *See also Griffin v. Illinois*, 351 U.S. 12, 17-18

(1956) (denying indigent defendant adequate record for appeal violates due process

and equal protection).

54.    Moreover, in appeals under the Federal Death Penalty Act (FDPA),

Congress explicitly required the courts of appeal to "review the entire record,"

whether or not the parties request it.  18 U.S.C. § 3595(b).  That includes all of the

"evidence submitted during the trial," all of the "information submitted during the

sentencing hearing," and all of the "procedures employed during the sentencing

hearing." *Id.* This statutorily mandated review would be impossible without a complete record, including all admitted government and defense exhibits and all submissions and proceedings bearing on the conduct of the sentencing hearing.

55.  Finally, nationwide ethical guidelines for capital cases likewise reflect the imperative for Savage's counsel to "determine independently whether the existing official record may incompletely reflect the proceedings" and "supplement it as appropriate." *A.B.A. Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases*, Guidelines 10.7(b)(2), 10.8 (Commentary) (rev. 2003).  These rules ethically require counsel to "ensure that there is a complete record respecting all claims that are made, including objections, motions, statements of grounds, questioning of witnesses or venire members, oral and written arguments of both sides, discussions among counsel and the court, evidence proffered and received, rulings of the court, reasons given by the court for its rulings, and any agreements reached between the parties." *Id.,* Guideline 10.8 (Commentary).  Through their diligent efforts to complete the record, Savage's appellate counsel have been attempting to fulfill this ethical duty.

**D.    The Court should continue to stay a briefing schedule until the record is complete.  Alternatively, it should set a deadline for Savage's opening brief of 270 days following completion of the record.**

56.    Savage requests that the Court either continue to stay the briefing schedule until the record is complete or, alternatively, set an initial schedule under which Savage's opening brief would be due 270 days following completion of the record, as certified by this Court.

57.    Savage's appellate counsel are mindful of the time that has elapsed since this appeal was filed and of the Court's understandable wish to move forward, including establishing a briefing schedule.  But counsel respectfully submit that it would be not only premature but counterproductive for the Court to set a date-certain deadline for the opening brief now, while counsel still lack such important and sizable portions of the record, including material counsel already know will be relevant to the appeal.  Once that is received and reviewed, it is almost certain to substantially alter counsel's judgment about what occurred below, and thus what claims exist and should be raised on appeal, how those should be presented, and whether they were preserved or must be briefed as plain error.  To require counsel nonetheless to go ahead and substantially prepare the brief would inevitably invite wasted time and create a need to later redo some, perhaps much, of that work.

58.     Further, in addition to all the other work and litigation to complete the record counsel are having to do, they will also be required to review new record material as it becomes available.  As an example, when counsel finished reviewing all the trial transcripts and comparing them to the recording exhibits the government had provided, counsel discovered that an additional 200 or so recordings were missing.  After counsel alerted the government to this in their district-court motion three months ago and provided a 30-page chart of the missing recordings they had prepared, further communications ensued, and counsel recently received what appear to be the remaining government recordings.  *See* ECF 1669, at 11-12; ECF 1669-1, at 41-73; ECF 1671, at 2-5.  Counsel have reviewed most of those hundreds of new recordings, which has proven to be no quick task, and time that otherwise could be devoted to working on the brief was, and still must be, spent completing that review.  The same will be true for the government's documentary exhibits, the missing undocketed communications, reconstructions of the unrecorded proceedings, and the missing defense exhibits, as those become available.

59.     And that is to say nothing about the time counsel may need to further expend trying themselves to locate the missing material, depending on how the Court rules on this motion.  As discussed, the district court appears to expect

Savage's appellate counsel to singlehandedly search and find, or reconstruct, the 150 government documentary exhibits missing from the prosecutor's binders, the scores of defense documentary and audio exhibits, the substantive unrecorded proceedings, and the missing substantive undocketed communications. Even if such a daunting mission could eventually surface much of the missing material — a questionable proposition at best — attempting it would require countless hours and delay counsel from working on the brief.

60.    The Court should also be aware that, nationwide, it is hardly unheard of for federal death-penalty appeals with unusually long or incomplete appellate records to require significantly more time to progress to briefing than the 36 months Savage's appeal has been pending. Thus, of the 12 other such appeals pending across the country, in the two with the longest appellate records next to Savage's, each codefendant submitted his opening brief about 75 months after filing notice of appeal. *See United States v. Mikhel*, No. 07-99008 (9th Circuit); *United States v. Kadamovas*, No. 07-99009 (9th Circuit). And in a third such pending case, which, like Savage's required extensive supplementation and correction of the record, the defendant filed his opening brief 54 months after his notice of appeal. *See United States v. Taylor*, No. 09-5517 (6th Circuit).

61.    Counsel respectfully submit that, if the Court wishes to set an initial briefing schedule, an initial deadline for Savage's opening brief of 270 days following completion of the record is a reasonable one, including for the reasons discussed above and otherwise previously made known to the Court.  A very substantial amount of work will be needed to complete the brief, given that counsel owe a special duty to present all "arguably meritorious" issues, *A.B.A. Guidelines*, Guideline 10.15.1(C); that federal death-penalty briefs generally run well over 200 pages even in ordinary cases; and that the unique scope, complexity, and novelty of this case make briefing Savage's appeal particularly demanding.

## E.    Conclusion

Accordingly, Savage respectfully requests that the Court enter an order, under Federal Rule of Appellate Procedure 10:

(1) directing the government to provide Savage's appellate counsel with a complete, duplicate set of its admitted documentary exhibits;

(2) (a) deeming all of the undocketed written communications contained in Appendix B to this filing to be part of the record on appeal;

(b) directing the district court to provide Savage's counsel with copies of additional undocketed written communications between the court and counsel in

this case (*e.g.*, correspondence, courtroom hand-ups, e-mails, *etc.*) that are in the possession of the court or its staff;

(3) directing the district court to make all reasonable efforts to help Savage's counsel identify and reconstruct unrecorded proceedings in this case (*e.g.*, sidebar conferences, bench conferences, chambers conferences, *etc.*), including those listed in Appendix C to this filing.  Those efforts should include providing, and directing the government and all trial counsel to provide, available non-privileged notes and information about when those proceedings occurred and what was argued, objected to, decided, and otherwise addressed during them;

(4) directing the district court to make all reasonable efforts to help Savage's counsel identify and obtain copies of exhibits introduced by Savage and his codefendants, including ordering trial counsel for all parties to review their files and assist Savage's appellate counsel in identifying and locating those exhibits or copies thereof (and ordering that trial counsel be compensated for their time);

(5)  directing court reporter Gregg Wolfe to file, or have the district court clerk's office file, a corrected transcript for April 8, 2013, in which the word "square" on page 73, line 5 is corrected to read "scare," and court reporter Suzanne White to file, or have the district court clerk's office file, a corrected transcript for

February 21, 2013, in which the word "preserve" on page 7, at line 17, is corrected to read "desert";

(6) directing the government and Savage's counsel, within 60 days, to submit a joint report to the Court on all steps that have been taken to comply with its order and on the status of the record on appeal; and

(7) continuing the stay of a briefing schedule until the record is complete.

Respectfully submitted,

   /s/ Barry J. Fisher
Barry J. Fisher, *Esq.*
Federal Capital Appellate Resource Counsel
39 North Pearl Street, 5th Floor
Albany, NY 12207
tel. (518) 650-9031
barry_fisher@fd.org

Lawrence S. Lustberg, *Esq.*
Gibbons, P.C.
One Gateway Center
Newark, NJ 07102
tel. (973) 596-4731
LLustberg@gibbonslaw.com

Madeline S. Cohen, *Esq.*
Attorney at Law
1942 Broadway, Suite 314
Boulder, Colorado 80302
tel. (303) 402-6933
madeline@madelinecohnenlaw.com

*Attorneys for Appellant Kaboni Savage*

## <u>CERTIFICATE OF SERVICE</u>

I certify that the foregoing was filed electronically through the ECF system and notice sent to counsel of record for all parties on this date.

_____/s/ Barry J. Fisher_____