IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

UNITED STATES OF AMERICA,    )
                               )
      v.                    )     No. 14-9003
                               )
KABONI SAVAGE,               )
                               )
        Defendant-Appellant.    )

**APPENDICES IN SUPPORT OF
DEFENDANT-APPELLANT KABONI SAVAGE'S
RESPONSE TO COURT ORDER AND APPLICATION
UNDER FEDERAL RULE OF APPELLATE PROCEDURE 10
<u>FOR ACCESS TO IMPORTANT MISSING RECORD MATERIAL</u>**

Appendix A: Government's List of Exhibits at Trial and Sentencing — pp.1-39

Appendix B: Material Related to Undocketed Written Communications
Between the Court and Counsel — pp.40-267

Appendix C: Material Relating to Untranscribed Proceedings — pp.268-277

Appendix D: Material Relating to Defense Exhibits — pp.278-313

Appendix E: Material Relating to Transcription Errors — pp.314-322

# *APPENDIX A*

# Government's Exhibit List From Trial and Sentencing

**Final, revised 8/23/13:1548**

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **CRIMINAL NO. 07-550** |
| | : | |
| **KABONI SAVAGE** | : | |
| **ROBERT MERRITT** | : | |
| **STEVEN NORTHINGTON** | : | |
| **KIDADA SAVAGE** | : | |

## TRIAL EXHIBIT LIST

| Government Exhibit No. | Description | Identified | Received |
|---|---|---|---|
| 1 | Recordings and transcripts (attached itemized list) | x   KL | 2/5/13 |
| 1A | Kaboni Savage FDC-Philadelphia calls (A1-A13) | x   KL | 2/5/13 |
| 1B | Kaboni Savage USP-Atlanta calls (B1-B24) | x   KL | 2/5/13 |
| 1C | Merritt FDC-Philadelphia calls (C1-C7) | x   KL | 2/5/13 |
| 1D | Lamont Smith recordings (D1-D2) | x   KL | 2/5/13 |
| 1E | Tyronn Richardson recordings (E1) | x   KL | 2/5/13 |
| 1F | Kaboni Savage drug trial testimony (F1-F3) | x   KL | 2/5/13 |
| 1G | Kidada Savage Northington state court trial testimony (G1) | x   KL | 2/5/13 |
| 1H | Gerald Thomas wiretap recordings | x   KL | 2/5/13 |
| 1-I | Wendell Mason wiretap recordings | x   KL | 2/5/13 |
| 1J | Kaboni Savage cell phone wiretap recordings | x   KL | 2/5/13 |
| 1K | FDC visiting room wiretap recordings | x   KL | 2/5/13 |
| 1L | FDC cell block wiretap recordings | x   KL | 2/5/13 |
| 1M | Barbara Savage cell phone wiretap recordings | x   KL | 2/5/13 |
| 1N | Kidada Savage cell phone wiretap recordings | x   KL | 2/5/13 |

1

| Government Exhibit No. | Description | Identified | Received |
|---|---|---|---|
| 2 | Photo of Stony Run, Maple Shade, NJ (a, b) | x  KL | 2/5/13 |
| 3 | Photos of Stony Run search warrant items (a-m) | x  KL | 2/5/13 |
| 4 | Stony Run search warrant seized items (a-u) (1B4)<br>b. grey press (1B101) | x  KL | 2/5/13 |
| 5 | Stony Run seized documents<br>a. Jasmine Vadell's wallet  (not admitted)<br>b. Kaboni Savage's wallet<br>c. items from vehicle | <br><br>x  KL<br>x  KL | 2/5/13 |
| 6 | Photos of Devon Storage search warrant items (a-f)<br>6g: Kaboni Robinson bail receipt | x  KL<br>x  KL | 2/5/13<br>4/24/13 |
| 7 | Devon Storage seized items (a, b)<br>a. metal press plate (1B4)<br>b. wood block for press (1B4) | x  KL | 2/5/13 |
| 8 | Devon Storage: Sprint PCS receipt for Kaboni Savage (1B4) | x  KL | 2/5/13 |
| 9 | Devon Storage: Sprint bill for Kaboni Savage 4/12/99 (1B4) | x  KL | 2/5/13 |
| 10 | Devon Storage: Grant Garden apt. items (a, b) (1B4) | x  KL | 2/5/13 |
| 11 | Devon Storage: Grant Garden apt. item re Meachem (1B4) | x  KL | 2/5/13 |
| 12 | Devon Storage: Grant Garden document items (a, b) (1B4) | x  KL | 2/5/13 |
| 13 | 57 Bonnie Gelman Court, Apt C-57: S/W photos (a, b, f, g, h) | x  KL | 2/6/13 |
| 14 | 57 Bonnie Gelman Court, Apt C-57: items seized<br>a. five kgs. cocaine<br>b. blender / pitcher w/ residue<br>c. spoon w/ cocaine and heroin residue<br>d. bags w/ cocaine and cocaine base | x  KL | 2/6/13 |
| 15 | Photos of Big Faces Lounge (6)  [D7] 1-7   H.B. | x  KL | 3/5/13 |
| 16 | Photos of 1546 E. Upsal Street (a, b) | x  KL | 2/6/13 |
| 17 | 1546 E. Upsal Street: photos of search (a-z) | x  KL | 2/6/13 |

2

A003

| Government Exhibit No. | Description | Identified | Received |
|---|---|---|---|
| 18 | 1546 E. Upsal Street: items seized:<br>a:  heat sealer (1B42 #2)<br>b, c:  2 boxes of latex gloves (1B42 #1)<br>d:  black bag w/ papers and wallet w/ IDs (1B42 #2)<br>e:  North American Arms .22 revolver (S/N L021773) (1B49)<br>f:  five .22 rounds marked "REM" (1B48)<br>g:  DirecTV access cards (1B42 #6)<br>h:  razor blades, packaging materials<br>i:  3 clear plastic bags, white bag, black bag, papers w/ residue<br>j:  residue<br>k:  digital scale, 3 razor blade dispensers, fork and spoon w/ residue<br>l:  white plastic bag w/ residue<br>m:  white powder chunks of cocaine (346.7 grams)<br>n:  off-white/tan chunky cocaine base<br>o:  CVP sandwich bags box, plastic roll w/ residue<br>p:  white container w/ white powder "vitablend," residue<br>q:  plastic bag w/ cocaine residue<br>r:  plastic lid w/ Oak Tree Health Plan card w/ residue<br>s:  blue Adidas bag w/ residue  (not admitted) | x  KL | 2/6/13<br>(a - r) |
| 19 | 1546 E. Upsal Street: false ID for Robert Wilks | x  KL | 2/6/13 |
| 20 | 1546 E. Upsal Street: lease agreement for the property | x  KL | 2/6/13 |
| 21 | 1546 E. Upsal Street: City of Phila. code violation notice to Robert Wilks | x  KL | 2/6/13 |
| 22 | a, b. Photos of 3510 Palmetto Street | x  KL | 2/6/13 |
| 23 | 3510 Palmetto Street: photos from search warrant execution<br>a-c<br>e-g<br>j-n<br>q-r<br>u-kkk<br>mmm | x  KL | 2/6/13 |

3

A004

| Government Exhibit No. | Description | Identified | Received |
|---|---|---|---|
| 24 | 3510 Palmetto Street: physical items seized:<br>a: recompression / re-rocking metal press<br>b-e: 4 recompression metal presses (1B61)<br>f-k: 6 hydraulic jacks (1B65)<br>l: 6 metal jack handles (1B64)<br>m-t: 8 metal presses w/ residue<br>u-qq: 23 metal plates (24bb and cc w/ lucite bases)<br>rr: gallon (partial) of "beauty secrets" acetone (1B51)<br>ss: full metal gallon container of acetone (1B53 #3)<br>tt: gallon container of acetone (partial) (1B51)<br>uu: gallon of "sunnyside" paint thinner (1B50)<br>vv: plastic container of procaine HCl (1B50 #3)<br>ww: glass cleaner container w/ acetone (1B50 #1)<br>xx: glass vial w/ acetone residue (1B51)<br>yy: ziplock bag containing boric acid (1B78)<br>zz: sledge hammer (1B62)<br>aaa: ziplock bag w/ white chunks of cocaine and procaine scraped from table<br>bbb: fork w/ cocaine residue; putty knife w/ residue; ziplock bag w/ powder scraped from table<br>ccc: plastic bags and vials w/ cocaine residue<br>ddd: 7 ziplock bags w/ residue; baggies w/ residue; kilogram plastic wrapper w/ residue; 2 empty boxes of Arm & Hammer baking soda; plastic baggie w/ white powder (cut)<br>eee: 2 plastic bags w/ white powder cocaine and procaine<br>fff: Ohaus digital scale w/ cocaine base and procaine residue<br>ggg: Folger's coffee jar w/ green wet leafy substance; Vlasic jar w/ residue; small vials and caps w/ PCP residue<br>hhh: Royal RC40 digital scale w/ residue<br>iii: mixing bowl and spoon w/ cocaine and procaine residue<br>jjj: Hamilton Beach blender w/ residue (S/N 230054623)<br>kkk: paper towels w/ cocaine and procaine residue<br>lll: tan plastic bags containing 4 clear plastic bags w/ cocaine and procaine residue<br>mmm: plastic kilogram wrapper w/ cocaine and procaine residue<br>nnn: rubber mallet w/ residue<br>ooo: cardboard boxtop w/ white residue<br>ppp: razor blades and scraper w/ residue<br>qqq: drilling hammer 4LB, yellow handle w/ residue | x KL | 2/6/13 |

4

| Government Exhibit No. | Description | Identified | Received |
|---|---|---|---|
| 24 (cont'd) | rrr:  Hamilton Beach blender (S/N 230056617) w/ residue<br>sss:  Windmere food chopper w/ residue<br>ttt: 2 rolls of clear plastic sheeting (1B64)<br>uuu:  respirator and rolls of tape (1B64)<br>vvv:  box of 20 Corbon Brand .45 cal rounds in box, and one loose .44 cal round (1B64 #6)<br>www:  empty prescription bottle in name of Barbara Savage (1B90)<br>xxx:  empty vials w/ caps (1B90)<br>yyy:  miscellaneous packaging materials and baggies (1B90)<br>zzz:  razor blades (1B90)<br>aaaa:  3 empty plastic bottles labeled procaine HCl<br>bbbb:  4 shotgun rounds (1B90)<br>cccc:  clear plastic baggies and cheesecloth towels (1B90)<br>dddd:  gray trash bag w/ spearmint leaves (1B90)<br>eeee:  clear baggie w/ spearmint leaves (1B90) | x  KL | 2/6/13 |
| 25 | 3510 Palmetto Street: photos re Toliver homicide | x  KL | 3/13/13 |
| 26 | 3510 Palmetto Street: four parking tickets (O. Francis) | x | 2/6/13 |
| 27 | 3510 Palmetto Street: (O. Francis)<br>a:  license plate<br>b:  registration for EKN 1911 | x | 2/6/13 |
| 28 | 3510 Palmetto Street: Police & Fire Credit Union report for Maribel Deyne (O. Francis) | x | 2/6/13 |
| 29 | 3510 Palmetto Street:  (O. Francis)<br>a:  Department of Transportation letter<br>b:  receipts and bank notice<br>c:  Nextel statement | x | 2/6/13 |

5

| Government Exhibit No. | Description | Identified | Received |
|---|---|---|---|
| 30 | 3510 Palmetto Street:  items seized (a-m)<br>a. bottle of Clorox bleach (1B53 #2)<br>b. 4 containers of paint thinner (1B52)<br>c. carpet pieces (1B97)<br>d. roll of duct tape (1B87)<br>e. piece of duct tape (1B87)<br>f. 2 black trash bags (1B87)<br>g. sheetrock sections (1B88)<br>h. box cutter (1B88)<br>i. box w/ blood speck (1B88)<br>j. mop head, vacuum bag, sander, bedsheet (1B88)<br>k. jeans (1B89)<br>l. red hooded jacket (1B89)<br>m. Yankees jacket (1B89) | KL<br>x<br>x<br><br>x<br>x<br>x<br><br><br><br>x<br>x<br>x<br>x | 3/13/13 |
| 31 | Photo of 3643 N. Darien Street (a, b) | x | 2/6/13 |
| 32 | 3643 N. Darien Street:  20 photos from S/W execution (a-t) | x | 2/6/13 |
| 32u | 3643 N. Darien Street: photo of firearm: Magnum Ruger Redhawk .44 cal w/ attached Leopold scope | | |

6

| Government Exhibit No. | Description | Identified | Received |
|---|---|---|---|
| 33 | 3643 N. Darien Street:  items seized in S/W:<br>a:  North American Arms revolver (S/N V65268) in black box (1B80 #1)<br>b: North American Arms revolver .22 cal (S/N V00171) w/ brown leather case (1B80 #8)<br>c:  Sig Sauer handgun (S/N M586419) (1B80 #3)<br>d:  Sig Sauer magazine loaded w/ 8 rounds 9mm (1B80 #4)<br>e:  Magnum Ruger Redhawk .44 cal w/ attached Leopold scope (1B80 #2)<br>f:  5 .44 cal bullets rem mag gold casing (1B80 #5-7)<br>g:  Glock magazine w/ 3 rounds 9mm (1B80 #5-7)<br>h:  5 rounds .22 cal (1B80 #5-7)<br>i:  clear plastic baggie w/ procaine (1B85)<br>j:  PNC bank card 4430 4800 9440 1235<br>k:  White Westinghouse chopper<br>l:  box w/ clear plastic bottles and caps, loose caps in black plastic bag and empty relish jar (1B73 #18)<br>m:  Tanita digital scale (1B56 #2)<br>n:  Radio Shack police radio scanner S/N CO13441 (1B56)<br>o:  ski mask (1B56)<br>p:  latex glove w/ six .357 bullets (1B56)<br>q:  box w/ 17 shotgun shells (1B56)<br>r:  box w/ 17 rounds .45 cal (1B56)<br>s:  box of 15 rounds 9mm (1B56)<br>t:  box of 21 rounds .380 cal (1B56)<br>u:  box of 30 rounds .380 cal (1B56)<br>v:  plastic bag w/ 3 loose bullets (1B56)<br>w:  wallet w/ ID for Yusef Billa, business cards, papers, Chrysler service card (1B73)<br>x:  can w/ razors, 6 bullets .357 cal, scissors (1B73)<br>y:  2 face masks; 2 safety goggles (1B73)<br>z:  bag of rubber bands (1B73)<br>aa:  3 boxes of baking soda (1B73)<br>bb:  Proctor Silex grinder in box (1B73)<br>cc:  box of freezer bags (1B73)<br>dd:  3 cell phones: Sprint S/N 212KS1928830; Motorola Nextel S/N 919TBY1H41; Samsung FCCID #ALSCHA310<br>ee:  1 9mm bullet (1B73)<br>ff:  bag filled w/ adhesive tapes (1B73)<br>gg: letter from Kaboni Savage w/ cell #215-783-4041 | KL<br>x<br><br>x<br><br>x<br>x<br>x<br><br>x<br>x<br>x<br><br>x<br>x<br>x<br><br><br>x<br>x<br>x<br>x<br>x<br>x<br>x<br>x<br>x<br>x<br><br>x<br>x<br>x<br>x<br>x<br>x<br>x<br><br>x<br>x | 2/6/13 |

7

| Government Exhibit No. | Description | Identified | | Received |
|---|---|---|---|---|
| 34 | 3643 N. Darien Street:  photos seized during search (a-yy) (1B56 #1) | x | | 2/6/13 |
| 35 | 3643 N. Darien Street:  loan documents for Yusef Billa | x | TZ | 2/14/13 |
| 36 | 3643 N. Darien Street: <br> a:  inspection agreement <br> b:  termite report for 1732 Kendrick Street for Yusef Billa | x | TZ | 2/14/13 |
| 37 | 3643 N. Darien Street:  GMAC document re 2002 Subaru Legacy for Yusef Billa | x | TZ | 2/14/13 |
| 38 | 3643 N. Darien Street:  car insurance policy for Yusef Billa | x | TZ x | 2/14/13 |
| 39 | Full set of Palmetto St. search warrant photos | x | KL | 2/12/13 |
| 40 | Drug lab reports (all seizures) | x | KL | 2/12/13 |
| 41 | Photo of Eric Johnson and Ronald Walston | x | LL | 4/1/13 |
| 42 | 3643 N. Darien Street:  financial mortgage corporation documents for Yusef Billa | x | TZ | 2/14/13 |
| 43 | 3643 N. Darien Street:  two parking violation notices for Kaboni Savage | x | TZ | 2/14/13 |
| 44 | 3643 N. Darien Street:  Wilkie Subaru documents for Yusef Billa | x | TZ | 2/14/13 |
| 45 | 3643 N. Darien Street:  Insurance cancellation notice to Yusef Billa | x | TZ | 2/14/13 |
| 46 | Robert Wilks rights waiver form: 5/21/04 | x | RW | 2/13/13 |
| 47 | 3643 N. Darien Street:  Letter to Eugene Coleman from PNC bank | x | TZ | 2/14/13 |
| 48 | Photo of Kaboni Savage and Ronald "Pumpkin" Walston (1B56 #1) | x | KL | 2/6/13 |
| 49 | 3643 N. Darien Street:  car insurance documents for Yusef Billa | x | TZ | 2/14/13 |
| 50 | 3643 N. Darien Street:  rental agreement for 3726 N. Percy St. (1B56) | x | TZ | 2/14/13 |

8

| Government Exhibit No. | Description | Identified | | Received |
|---|---|---|---|---|
| 51 | 3643 N. Darien Street:  Agreement for sale re 3726 N. Percy Street to Kemoni Savage, 8/10/02 (1B56 #2) | x | TZ | 2/14/13 |
| 52 | 3643 N. Darien Street:  car documents re Yusef Billa, 1992 Acura | x | TZ | 2/14/13 |
| 53 | 3643 N. Darien Street:  Parking violation notices to Yusef Billa | x | TZ | 2/14/13 |
| 54 | 3643 N. Darien Street:  Envelope addressed to Yusef Billa, marked "return to sender" | x | TZ | 2/14/13 |
| 55 | 3643 N. Darien Street:  PA license plate FDJ-0038 | x | TZ | 2/14/13 |
| 56 | 3643 N. Darien Street:  Inspection report for 1732 Kendrick St. | x | TZ | 2/14/13 |
| 57 | 3643 N. Darien Street:  FedEx envelope addressed to Kareem Bluntly | x | TZ | 2/14/13 |
| 58 | 3643 N. Darien Street:  Promissory note for 1732 Kendrick St.: Yusef Billa | x | TZ | 2/14/13 |
| 59 | 3643 N. Darien Street:  Title for 1989 Dodge for Marlin Meachum | x | TZ | 2/14/13 |
| 60 | 3643 N. Darien Street:  Agreement of sale re 3755 and 3736 Percy Street, for Kidada Savage, 2/28/02 | x | TZ | 2/14/13 |
| 61 | 3643 N. Darien Street:  Documents re 3726 N. Percy Street: a:  Cooperating broker compensation letter b:  Settlement statement, 9/5/02 c:  Addendum to agreement of sale | x | TZ | 2/14/13 |
| 62 | 3643 N. Darien Street:  Settlement statement for 1732 Kendrick Street, Yusef Billa, 1/29/02 | x | TZ | 2/14/13 |
| 63 | 3643 N. Darien Street:  First Horizon correspondence to Yousef Billa at 1732 Kendrick Street, 4/02 | x | TZ | 2/14/13 |
| 64 | 3643 N. Darien Street:  Handguns magazine to Beyah family at 1301 Point Breeze Ave. | x | TZ | 2/14/13 |
| 65 | 3643 N. Darien Street:  selected contents of Kaboni Savage's wallet | x | TZ | 2/14/13 |
| 66 | | | | |

9

| Government Exhibit No. | Description | Identified | | Received |
|---|---|---|---|---|
| 67 | 3643 N. Darien Street:  receipt for Yusef Savage | x | TZ | 2/14/13 |
| 68 | 3643 N. Darien Street:  car purchase document re Oldsmobile for Yusef Billa | x | TZ | 2/14/13 |
| 69 | 3643 N. Darien Street:  Auto tags receipt and temporary registration for Yusef Billa re 1992 Acura, 1/13/02 | x | TZ | 2/14/13 |
| 70 | 3643 N. Darien Street:  Court document for Kaboni Savage | x | TZ | 2/14/13 |
| 71 | 3643 N. Darien Street:  Photos seized from basement (a-i) | x | KL | 2/7/13 |
| 72 | 3643 N. Darien Street:  insurance correspondence re 1732 Kendrick Street for Yusef Billa | x | TZ | 2/14/13 |
| 73 | 3643 N. Darien Street:  Three letters and two envelopes from Steven Northington to Kaboni  Savage | x | KL | 2/7/13 |
| 74 | Vehicle delivery slip for silver Ford Taurus sold to Robert Billa (1B56 #2) | x | TZ | 2/14/13 |
| 75 | 3643 N. Darien Street:  Financial Mortgage Corp. documents re 1732 Kendrick Street for Yusef Billa | x | TZ | 2/14/13 |
| 76 | PennDOT DMV records:<br>a:  Joseph Amill<br>b:  Yusef M. Billa | x | KL | 2/5/13 |
| 77 | PennDOT BMV records re:<br>a:  Steven Northington<br>b:  Michael Tillery<br>c:  Syeed Jamal Burhannon<br>d,e:  Rafiq Stafford | x<br>x<br>x<br>x | KL<br>JB<br>KL<br>KL | 3/26/13<br>2/12/13<br>3/26/13<br>3/26/13 |
| 78 | 3908 N. Franklin Street: photos from S/W execution (a-bb) | x | JB | 2/12/13 |

10

| Government Exhibit No. | Description | Identified | | Received |
|---|---|---|---|---|
| 79 | 3908 N. Franklin Street: items seized from S/W:<br>a:  90 packets of cocaine, in 3 plastic bags<br>b:  scale and paper bag w/ chunks and powder residue of "cut"<br>c:  Intra Tec 9mm semi-automatic firearm (1B127 #1)<br>d:  Intra Tec 9mm magazine (1B127)<br>e:  bullets from 79d (1B127)<br>f:  partially full box of 9mm magtech bullets (1B127)<br>g:  Davis Industries .380 firearm (1B127 #2)<br>h:  magazine and two .380 bullets from 79g (1B127)<br>i:  .45 cal magazine w/ seven .45 cal bullets, one 9mm bullet (1B127)<br>j:  one RP 9mm luger bullet (1B127)<br>k:  shoulder holster (1B127)<br>l:  small, empty ziplock bags (1B118)<br>m:  dust mask (1B118)<br>n:  notebook<br>o:  razor blades (1B118)<br>p:  sandwich bags (1B118)<br>q:  handcuffs, keys, and two badges (1B118) | x | | 2/12/13 |
| 80 | 3908 N. Franklin Street: Pa. driver's license for Steven Northington | x | JB | 2/12/13 |
| 81 | 3908 N. Franklin Street: traffic citations to Michael Tillery for tag EXS0529, 11/02 | x | JB | 2/12/13 |
| 82 | 3908 N. Franklin Street: auto tag receipt for Michael Tillery | x | JB | 2/12/13 |
| 83 | 3908 N. Franklin Street: traffic citation report for Michael Tillery | x | JB | 2/12/13 |
| 84 | 3908 N. Franklin Street: auto registration re 1992 Oldsmobile, tag EXS0529, for Michael Tillery,  [D2] | x | JB | 2/12/13 |
| 85 | 3908 N. Franklin Street: post office money order receipt for Steven Northington, 9/19/02 | x | JB | 2/12/13 |
| 86 | 3908 N. Franklin Street: photos seized from S/W execution:<br>a:  photo of Steven Northington<br>c:  film negatives<br>d, e:  photos of Steven Northington developed from negatives | x<br>x<br>x | | 2/12/13 |

| Government Exhibit No. | Description | Identified | Received |
|---|---|---|---|
| 87 | 3908 N. Franklin Street:<br>a: mail (front of envelope)<br>b: letter to Steven Northington / Michael Tillery | x    JB<br>x | 2/12/13 |
| 88 | 3908 N. Franklin Street: letter forwarded to Steven Northington re auto accident referencing Yusef Billa, 1/03 | x    JB | 2/12/13 |
| 89 | Photo of 8229 Stenton Avenue (Mazer R.E.) | x      KL | 2/6/13 |
| 90 | | | |
| 91 | Photo of 9451 Clark Street (Grant Gardens apt.) | x      KL | 2/5/13 |
| 92 | Photo of 9 Blue Grass Drive | x      KL | 2/7/13 |
| 93 | | | |
| 94 | Photo of 396 E. Upsal Street | x  KL | 2/7/13 |
| 95 | Photo of 616 N. 11th Street | x  KL | 2/7/13 |
| 96 | Kaboni Savage J&C for N.J. conviction | x      KL | 2/7/13 |
| 97 | Savage / Thomas drug indictment of 5/19/04 | x | 2/19/13 |
| 98 | FBI 302 rpt. of interview: Myron Wilson, 10/19/04 | x | |
| 99 | Photos of Kendrick St. house (A - D) | x    TZ | 2/28/13 |
| 100 | Photo of Kidada Savage "brother's keeper" tattoo [D10] | x    KL | 3/26/13 |
| 101 | Kidada Savage GJ testimony: 2/18/04 [D7] | | |
| 102 | Photos of Kidada Savage's car (10) [D9] | x    Parks | 3/6/13 |
| 103 | List of inventory from Kidada Savage's car [D9] (1B147) | x | |
| 104 | Kidada Savage Peirce College application [D10] | | |
| 105 | Kidada Savage Prudential employment app. [D10] | | |
| 106 | Kidada Savage's firearm (106a = ammo) | x  KL | 3/26/13 |
| 107 | "Lil Sis" paper w/ phone number (1B119) | | |
| 108 | Kidada: firearms documents          (R. Parks) | x  Parks | 3/6/13 |
| 109 | Kidada: Dawud Bey letter          (R. Parks) | x  Parks | 3/6/13 |

| Government Exhibit No. | Description | Identified | Received |
|---|---|---|---|
| 110 | Kidada:  list of names in car          (R. Parks) | x   RP | 3/6/13 |
| 111 | philly.com article re C. Oliver from car    (R. Parks) | x   RP | 3/6/13 |
| 112 | | | |
| 113 | | | |
| 114 | | | |
| 115 | FBI lab 11/2/04 reports | x    KL | 3/25/13 |
| 116 | | | |
| 117 | | | |
| 118 | | | |
| 119 | | | |
| 120 | | | |
| 121 | Photos of cars seized from Robert Wilks (a-g) | x | 2/6/13 |
| 122 | | | |
| 123 | | | |
| 124 | | | |
| 125 | Photo of 8563 Williams Avenue | x | 2/7/13 |
| 126 | | | |
| 127 |  Booking doc. of SN by M. Gross | x  MG | 3/12/13 |
| 128 | | | |
| 129 |  Form for $ seized from SN    (M. Gross) | x  MG | 3/12/13 |
| 130 | | | |
| 131 | Photo of 3726 N. Percy Street | x    TZ | 2/14/13 |
| 132 | Photo of 1732 Kendrick Street | x    TZ | 2/14/13 |
| 133 | Photo of 6641 Lynford Street | x    TZ | 2/14/13 |

13

| Government Exhibit No. | Description | Identified | Received |
|---|---|---|---|
| 134 | Affidavit of analyst for Ford Credit re documents of Joseph Amill's purchase of 1997 Mercury | x   TZ | 2/14/13 |
| 135 | Vehicle Inquiry Detail by title BMV records for 1997 Dodge transfer of title from Baha Jabbarr to Conchetta Savage | x   TZ | 2/14/13 |
| 136 | BMV records re Yusef Billa purchase of 1998 Ford | x   TZ | 2/14/13 |
| 137 | Subpoena to Ford Motor Co. | x   TZ | 2/14/13 |
| 138 | Chapman Ford documents re purchase of 1998 Ford by Yusef Billa | x   TZ | 2/14/13 |
| 139 | Vehicle Inquiry Detail by title BMV records re Yusef Billa purchase of 2002 Jeep Cherokee | x   TZ | 2/14/13 |
| 140 | Daimler Chrysler records re purchase of 2001 Jeep Cherokee co-signed by Yusef Billa | x   TZ | 2/14/13 |
| 141 | Triboro Motors records re purchase of 2001 Jeep Cherokee co-signed by Yusef Billa | x   TZ | 2/14/13 |
| 142 | Wilkie Subaru records re purchase of 2002 Subaru by Yusef Billa | x   TZ | 2/14/13 |
| 143 | GMAC records re 2002 Subaru for Yusef Billa | x   TZ | 2/14/13 |
| 144 | First Horizon home loan documents re 1732 Kendrick Street | x   TZ | 2/14/13 |
| 145 | Financial Mtg. Corp. records re 1732 Kendrick Street | x   TZ | 2/14/13 |
| 146 | Savings Abstract Co. records re 1732 Kendrick Street | x   TZ | 2/14/13 |
| 147 | Century 21 property settlement documents re 1732 Kendrick St. | x   TZ | 2/14/13 |
| 148 | PHH Mortgage Co. records for 6641 Lynford Street | x   TZ | 2/14/13 |
| 149 | Option One mortgage records for 6641 Lynford Street | x   TZ | 2/14/13 |
| 150 | Century 21 property settlement documents re 6641 Lynford St. | x   TZ | 2/14/13 |
| 151 | City of Philadelphia record re transfer of 1805 E. Tulpehocken St. from Grace Spencer to Paul Daniels on 5/17/04 | x   TZ | 2/14/13 |
| 152 | BMV records re transfer of title re 1999 Pontiac to Syeed Burhannon (Steven Northington) | x   TZ | 2/14/13 |

14

| Government Exhibit No. | Description | Identified | | Received |
|---|---|---|---|---|
| 153 | BMV records re transfer of title re 1996 Pontiac to Syeed Burhannon (Steven Northington) | x | TZ | 2/14/13 |
| 154 | Letter from Robert Wilks to Mel Stein, dated 12/30/03 | | | |
| 155 | Rosado notation of Savage phone number | x | JR | 2/19/13 |
| 156 | Letters to Craig Oliver:<br>a:  envelope to Oliver from Joey Lil Bro at 3643 N. Darien St.<br>b:  letter to Oliver from Kaboni Savage<br>c:  letter to Oliver from Kaboni Savage<br>d:  greeting card to Oliver from Kidada Savage | x<br>x<br>x<br>x | CO<br>CO<br>CO<br>CO | 2/28/13 |
| 157 | Mel Stein - Republic First Bank proposed loan documents | | | |
| 158 | Stony Run, Maple Shade, NJ rental file;  records from Cooper River Plaza apts. re "Joseph Amill" Apt. 4C | x | KL | 2/5/13 |
| 159 | Kaboni Savage prison mail (1B123) | | | |
| 160 | Northington prison mail (1B121) | | | |
| 161 | Dawud Bey prison mail (1B122) | | | |
| 162 | IRS tax documents for Kaboni Savage, a/k/a Yusef Billa | x | TZ | 2/14/13 |
| 163 | Mattress cover from MCC-NY (1B143) | | | |
| 164 | | | | |
| 165 | 1025 Rosalie Street: items seized from S/W on 5/28/03: 4 boxes (1B192, 93, 94, 95)    (165.1 business card only) | x | | 2/7/13 |
| 166 | Telephone subscriber records (mult. boxes) (1B136) (Certif's) | x | KL | 3/26/13 |
| 167 | Misc. pen register records (mult. boxes) (1B8) | | | |
| 168 | Off. J. Silva report re '93 Olds | x | JS | |
| 169 | | | | |
| 170 | lab reports | | | |
| 171 | Surveillance video of 57 Bonnie Gelman Drive 2/14/01 to 2/15/01, and 6/13/01 | | | |
| 172 | Guilty plea agreement:  Tyrone Beal | | | |

A016

| Government Exhibit No. | Description | Identified | Received |
|---|---|---|---|
| 173 | Guilty plea agreement:  Darren Blackwell | x   DB | 3/5/13 |
| 174 | Guilty plea agreement:  Richard Bond | | |
| 175 | Guilty plea agreement:  Kenneth Clark | x   KC | 2/12/13 |
| 176 | Guilty plea agreement:  Eugene Coleman | x   EC | 3/18/13 |
| 177 | Guilty plea agreement:  Paul Daniels | x   PD | 2/25/13 |
| 178 | Guilty plea agreement:  Gregory Mills | | |
| 179 | Guilty plea agreement:  Joslyn Morgan, Jr. | | |
| 180 | Guilty plea agreement:  Craig Oliver | x   KL | 2/6/13 |
| 181 | Guilty plea agreement:  Juan Rosado | x   JR | 2/19/13 |
| 182 | Guilty plea agreement:  David Vasquez | | |
| 183 | Guilty plea agreement:  Robert Wilks | x   RW | 2/13/13 |
| 184 | Guilty plea agreement:  Myron Wilson | x   MW | 2/20/13 |
| 185 | Telephone chart: Savage/Thomas organization phone contacts | | |
| 186 | | | |
| 187 | | | |
| 188 | Maple Shade search inventory | | |
| 189 | MAC-10 seized from Bluntly apt. (Frimel) | x   EF | 2/12/13 |
| 190 | Ammo from MAC-10 (Frimel) | x   EF | 2/12/13 |
| 191 | | | |
| 192 | Video of Darren Blackwell injuries | x   KL | 3/6/13 |
| 193 | Temple Hospital records re D. Blackwell   (Stip.) | (Stip.) | 3/12/13 |
| 194 | Rosado letter 2/11/05 | x   JR | |
| 195 | Rosado letter 7/05 | x   JR | |
| 196 | Rosado letter 8/25/05 | x   JR | |
| 197 | Rosado letter, undated | | |

16

| Government Exhibit No. | Description | Identified | | Received |
|---|---|---|---|---|
| 198 | Michael Tillery vehicle documents    (M. Gross) | x | MG | 3/12/13 |
| 199 | | | | |
| 200 | Guilty plea agreement:  Stanley Smith | | | |
| 201 | GJ transcript of Curtis Singleton | x | CS | |
| 202 | Receipt for returned property: GMC van | | | |
| 203 | | | | |
| 204 | | | | |
| 205 | Photo of 1517 Tulpehocken Street | | | |
| 206 | Photo of 1741 Tulpehocken Street | | | |
| 207 | Photo of 7485 Tulpehocken Street | | | |
| 208 | Photo of 1853 Tulpehocken Street | | | |
| 209 | | | | |
| 210 | | | | |
| 211 | | | | |
| 212 | "Chipped" DirecTV descrambler card | | | |
| 213 | | | | |
| 214 | BRT tax records for 1805 Tulpehocken Street | | | |
| 215 | Robert Merritt tattoo photos [D10] | x | KL | 2/7/13 |
| 216 | Merritt J&Cs for 3 drug convictions (216.1 to 216.3) | x | KL | 2/7/13 |
| 217 | Merritt J&C for federal gun case | x | HB | 3/5/13 |
| 218 | Merritt letter to Judge Yohn | x | KL | 3/6/13 |
| 219 | Northington J&C for Parker murder | | | |
| 220 | Merritt guilty plea and sentencing transcript 10/24/01 | x | KL | 3/6/13 |
| 221 | | | | |
| 222 | | | | |

A018

| Government Exhibit No. | Description | Identified | Received |
|---|---|---|---|
| 223 | | | |
| 224 | | | |
| 225 | Guilty plea agreement: Quandre Anderson [D17] | | |
| 226 | Guilty plea agreement: Tyrone Bazzle [D17] | | |
| 227 | Guilty plea agreement: Edward Castro [D17] | | |
| 228 | Guilty plea agreement: Artavius Coleman [D17] | x    AC | 4/4/13 |
| 229 | Guilty plea agreement: Craig Lofton [D17] | | |
| 230 | Guilty plea agreement: Bienvenido Morales [D17] | x    BM | 4/8/13 |
| 231 | Guilty plea agreement: Kyle Pierce [D17] | | |
| 232 | Guilty plea agreement: Drexel Reid [D17] | x    DR | 4/9/13 |
| 233 | Guilty plea agreement: Tyron Richardson [D17] | | |
| 234 | Guilty plea agreement: Blake Tennison [D17] | | |
| 235 | Guilty plea agreement: Aadil Williams [D17] | | |
| 236 | Guilty plea agreement: Raymond Wilmore [D17] | | |
| 237 | Guilty plea agreement: Lamont Lewis [D7] | x    LL | 4/1/13 |
| 238 | | | |
| 239 | Kidada letter of 2/14/05 | | |
| 240 | Letter - Lamont Lewis to Kaboni Savage | x    LL | 4/1/13 |
| 241 | Inmate calling list for Kaboni Savage 3/25/01 | | |
| 242 | Bail Receipt for Kaboni Savage 8/21/01 | | |
| 243 | Letter - Rashaan Wright to Kaboni Savage 11/9/03 | | |
| 244 | Letter - Ryan Welch to Kaboni Savage 1/10/04 | | |
| 245 | 2 Letters - Ossie Davis to Kaboni Savage 12/4/03 and 01/24/04 | | |
| 246 | Letter - Kidada Savage to Kaboni Savage 2/16/04 | x    KL | 3/26/13 |
| 247 | Letter - Richard Hewlett to Kaboni Savage 11/13/03 | | |

18

| Government Exhibit No. | Description | Identified | Received |
|---|---|---|---|
| 248 | Letter - Brandon Edwards to Kaboni Savage 1/9/04 | x      KL | 3/26/13 |
| 249 | Letter - Dawud Bey to Kaboni Savage 6/3/03 | | |
| 250 | Letter - Kidada Savage to Kaboni Savage 11/14/03 | x      KL | 3/26/13 |
| 251 | Letter - Kidada Savage to Kaboni Savage 5/30/02 | x      KL | 3/26/13 |
| 252 | Letter - Kidada Savage to Kaboni Savage 4/22/03 | x      KL | 3/26/13 |
| 253 | Letter - Kidada Savage to Kaboni Savage 9/12/03 | x      KL | 3/26/13 |
| 254 | Photo of Dawud Bey | x  KL | 2/21/13 |
| 255 | Photo of Kareem Bluntly | x  KL | 2/21/13 |
| 256 | Photo of Myron Wilson | x  KL | 2/21/13 |
| 257 | Photo of Juan Rosado | x  KL | 2/21/13 |
| 258 | Photo of Al-Shannon Muse | x  KL | 2/21/13 |
| 259 | Photo of Curtis Singleton | x  KL | 2/21/13 |
| 260 | Photo of Stanley Smith | x  KL | 2/21/13 |
| 261 | Photo of Mansur Abdullah | x  T Jones | 3/4/13 |
| 262 | Photo of Kaboni Savage | | |
| 263 | Photo of Otis Boykin | x  T Jones | 3/4/13 |
| 264 | Photo of Craig Oliver | x      KL | 3/6/13 |
| 265 | | | |
| 266 | Photo of Corey St. George | x  T Jones | 3/4/13 |
| 267 | Photo of Warren McAliley | x  T Jones | 3/4/13 |
| 268 | Photo of Ernest McAliley | x  T Jones | 3/4/13 |
| 269 | Photo of Leslie Whitehead | | |
| 270 | Photo of Tyrese Whitehead | x  T Jones | 3/4/13 |
| 271 | Photo of Corey Jenkins | | |
| 272 | Photo of Tyrone Beal | x | 3/7/13 |

19

| Government Exhibit No. | Description | Identified | Received |
|---|---|---|---|
| 273 | Photo of Daren Blackwell | x | 3/ 6 /13 |
| 274 | Photo of Carlton Brown | x   EC | 3/18/13 |
| 275 | Photo of Kimberly Campbell | | |
| 276 | Photo of Kenneth Clark | | |
| 277 | Photo of Artavius Coleman | | |
| 278 | Photo of Crystal Copeland | x   EC | 3/18/13 |
| 279 | Photo of Paul Daniels | | |
| 280 | Photo of Tybius Flowers | x   EC | 3/18/13 |
| 281 | Photo of Oscar Francis | x   EC | 3/18/13 |
| 282 | Photo of Tabetha Fulton | | |
| 283 | Photo of Lamont Lewis | | |
| 284 | Photo of Wendell Mason | | |
| 285 | Photo of Joslyn Morgan | x   EC | 3/19/13 |
| 286 | Photo of David Morris | x   EC | 3/18/13 |
| 287 | Photo of Barry Parker | x   EC | 3/18/13 |
| 288 | Photo of Tyron Richardson | | |
| 289 | Photo of Steven Robinson | x   EC | 3/19/13 |
| 290 | Photo of Barbara Savage | x   EC | 3/19/13 |
| 291 | Photo of Gerald Thomas | x   LL | 4/1/13 |
| 292 | Photo of John Tillman | x   EC | 3/18/13 |
| 293 | Photo of Tyrone Toliver | x   EC | 3/18/13 |
| 294 | Photo of Ronald Walston | x   EC | 3/18/13 |
| 295 | Photo of Raymond Wilmore | x   EC | 3/18/13 |

A021

| Government Exhibit No. | Description | Identified | Received |
|---|---|---|---|
| 296 | Photo of Lisa Yeagins | x   EC | 3/19/13 |
| 297 | | | |
| 298 | | | |
| 299 | | | |
| | | | |
| | | | |
| | | | |

| Government Exhibit No. | Description | Identified | Received |
|---|---|---|---|
| **300 series** | **Kenneth Lassiter Murder** | | |
| 301 | Map of 8th & Butler area | | |
| 302 | Crime scene sketch (C. Mujica) [D6]      MG, CM | x | 2/26/13 |
| 303 | Crime scene photos (22) [D10]   MG, CM | x | 2/28/13 |
| 304 | FCC (P/R #2128955) (T. Cannon) [D6] (1B172) (C. Rone) | x  TC, CR | 3/4/13 |
| 305 | Body bullet (P/R #2121444) [D6] (1B172) (C. Rone) | x  TC, CR | 3/4/13 |
| 306 | M.E. report (Dr. Lieberman) [D10] | x   EL | 2/26/13 |
| 307 | Tybius Flowers statement and sketch [D6]  (A. Voci) | x   AV | 3/25/13 |
| 308 | Corey Williams statement [D6] | | |
| 309 | Corey Williams photo ID of K. Savage 1/13/99 [D6] | | |
| 310 | Corey Williams statement photo ID of A. Mitchell [D6] | | |
| 311 | Jonathan Baker statement and sketch [D6] | x   JB | 2/26/13 |
| 320 | Transcript of prelim. hrg. 3/21/99 [D6] | | |
| 321 | Transcript of prelim. hrg. 2/23/00 [D6] | | |
| 322 | Trial transcript, state court: 3/22-23/04 [D12] | | |
| 323 | Victim's clothing (1B154) | | |
| 324 | J. Baker photo array         (JB) | x   JB | 2/26/13 |
| 325 | J. Baker 7/20 statement | x   JB | 2/26/13 |
| 326 | 2004 testimony transcript of M. Gereaghty | x   MG | |
| 327 | Photo of K. Lassiter (S. Britt) | | |
| 328 | P/R #2128955 | | |
| 329 | P/R #2121244 | | |
| 330 | Off. R. Rivera report | | |
| 331 | Color photo array re J. Baker (A. Voci) | x      AV | 3/25/13 |
| 332 | | x      AV | 3/25/13 |

| Government Exhibit No. | Description | Identified | Received |
|---|---|---|---|
| **400 series** | **Mansur Abdullah Murder** | | |
| 401 | Map of Hunting Park area (Trenwith) | | |
| 402 | Crime scene sketch (Trenwith) [D10]     DMcF | x  DM | 2/27/13 |
| 403 | Photos of car at scene (23) (Trenwith) [D10]  DM, WT | x  WT | 3/5/13 |
| 404 | Photos of car at police garage (14) (Mujica) [D10]<br>GX 404-1, 7, 8, 9, 10, 11, 12, 13                         (CM) | x  CM | 2/28/13 |
| 405 | M.E. report (Dr. Preston) [D6] | x  Dr. P | 3/13/13 |
| 406 | 911 recordings [D6]     GX 406.2 | x  DM | 2/27/13 |
| 407 | FCC from street (P/R #2330740) (Trenwith) [D10] (1B153) | x  WT | 3/5/13 |
| 408 | FCC from driver's side floor (P/R 2330740) (Trenwith) [D10] (1B153) | x  WT | 3/5/13 |
| 409 | Live rounds (2) from car seat (P/R 2330740) (Trenwith) [D10] (1B153) | x  WT | 3/5/13 |
| 410 | Projectile rear door area (P/R 2330740) (Trenwith) [D10] | x  WT | 3/5/13 |
| 411 | Glock 9mm firearm from car (P/R 2293095) (Mujica) [D10] (1B174) | x  CM | 2/28/13 |
| 412 | FCC from car at garage (P/R #2293095) (Mujica) [D10] | x  CM | 2/28/13 |
| 413 | FIU report (B1-B3; FCC 1, 2) (Finor) [D10] | x  JF | 3/5/13 |
| 414 | K. Lewis video of car ride: 10/10/12 (K. Lewis) [D16] | x   KL | 3/6/13 |
| 415 | 8 live rounds from Glock (1B156)  (Mujica) | x  CM | 2/28/13 |
| 416 | Body bullet (1B153)  (Trenwith) | x  WT | 3/5/13 |
| 416.1 | P/R #2280422 (body bullets)   (RR) | x | 3/5/13 |
| 417 | BMV record for Robt. Yates    (C. Oliver) | x  CO | 2/28/13 |
| 418 | Map of Jerome Street          (T. Jones) | x  TJ | 3/4/13 |
| 419 | | | |
| 420 | | | |

23

| Government Exhibit No. | Description | Identified | Received |
|---|---|---|---|
| **500 Series** | **Carlton Brown Murder** | | |
| 501 | Map of area | | |
| 502 | Crime scene sketch (Whitehouse) [D2, 10] (S. Staton, WW) | x  SS | 3/5/13 |
| 503 | Crime scene photos (37) (Whitehouse) [D2, 10] (503.1-15) | x  SS | 3/5/13 |
| 504 | 911 recordings [D2] | | |
| 505 | FCC #1 (P/R 2353177) (Whitehouse) [D2, 10] (1B173) | x  WW | 3/5/13 |
| 506 | FCC #2 (P/R 2353177) (Whitehouse) [D2, 10] (1B173) | x  WW | 3/5/13 |
| 507 | Wristband (P/R 2353118) (Whitehouse) [D2, 10] (1B170) | x  WW | 3/5/13 |
| 508 | Cell phone | | |
| 509 | Body bullets (2) (P/R 2338635) (Byarm) [D10] (1B173) | x  WW | 3/5/13 |
| 510 | M.E. report (Dr. Preston) [D2] | x  Dr. P | 3/13/13 |
| 511 | FIU report re FCC 1,2 (P/O J. Cannon) [D2, 10] | x  JC | 3/5/13 |
| 512 | Transcript of prelim. hrg. 3/22/05 [D2] | | |
| 513 | Transcript of trial: 4/19-21/06 [D2] | | |
| 514 | Transcript of trial: 10/4-6/06 [D2] | | |
| 515 | Transcript of trial | | |
| 516 | Statement of P/O S. Staton [D2] | | |
| 517 | Chart of cartridge  (J. Cannon) | x  JC | 3/5/13 |
| 518 | | | |
| 519 | | | |
| 520 | | | |
| 521 | | | |
| 522 | | | |
| 523 | | | |
| 524 | | | |

24

| Government Exhibit No. | Description | Identified | Received |
|---|---|---|---|
| **600 series** | **Barry Parker Murder** | | |
| 601 | Map of area | | |
| 602 | 911 recordings [D6] | | |
| 603 | Crime scene sketches: Franklin & Luzerne (2) [D2]  (L. Gray) | x LG | 3/12/13 |
| 604 | Crime scene photos: Franklin & Luzerne (37) (Flade) [D2] | x JM | 3/12/13 |
| 605 | 3 FCCs from street (P/R 9001305) [D2] (1B160) (Flade, Rone) | x RF, CR | 3/13/13 |
| 606 | Body bullets from M.E. (P/R 2441448) [D2] (1B167) (Rone) | x  CR | 3/18/13 |
| 607 | M.E. report (Dr. Preston) [D2] | x Dr. P. | 3/13/13 |
| 608 | FIU report re guns and FCCs (P/O Flade)  [D2] | | |
| 609 | FIU report re body bullets and guns (P/O Rone) [D2] | x    CR | 3/18/13 |
| 610 | FIU report re 3 FCCs match (P/O Rone) [D2] | | |
| 611 | Northington state court trial transcripts: 4/16-4/27  [D2] | | |
| 612 | Recording of Kidada Savage testimony: 4/25 [D2] | | |
| 613 | Statement of Eugene Coleman [D2] | | |
| 614 | Statement of Aaron Campbell [D2] | | |
| 615 | Statement of Marilyn Campbell [D2] | x MC | |
| 616 | Statement of Blossom Parker-Demonie [D2] | | |
| 617 | Statement of Earl Gray [D2]   [ photo only admitted ] | x EG | 3/13/13 |
| 618 | Statement of Larry Gray [D2] | x LG | |
| 619 | Statement of Bernis Parker  [D2] | x BP | |
| 620 | Statement of Richard Rivera [D2] | | |
| 621 | Statement of Antoine Handy  [D2] | | |
| 622 | Sketch of 3908 Franklin St. (Sgt. S. Crosby) [D2] | | |
| 623 | Photos of 3908 Franklin St. (Sgt. S. Crosby) [D2, 10] (02, 03) | x MC | 3/12/13 |

| Government Exhibit No. | Description | Identified | Received |
|---|---|---|---|
| 624 | Photos of Olds (EXS 0529) at garage (17) [D10]  (624-03, 04) | MG, MC BP, JB | 3/13/13 |
| 625 | Lab report re cocaine (P/R 2441432; lab #03-04168) (A. Ali) [D10] | Stip. | |
| 626 | Lab report re cocaine (P/R 2449915; lab #03-03994) (Antoinette Campbell) [D2, 10] | Stip. | |
| 627 | Red blood stain sample (1B171) | | |
| 628 | | | |
| 629 | | | |
| 630 | | | |
| 631 | | | |
| 632 | E. Gray photo ID of SN | x  EG | 3/13/13 |
| 633 | P/R for gun clip    (J. Burns) | x  JB | |
| 634 | | | |
| 635 | | | |
| 636 | | | |
| 637 | | | |
| 638 | | | |
| 639 | | | |
| 640 | | | |
| 644 | | | |
| 645 | | | |
| 646 | | | |
| 647 | | | |
| 650 | Off. E. Colon report | x  EC | |
| | | | |

26

A027

| Government Exhibit No. | Description | Identified | Received |
|---|---|---|---|
| **700 series** | **Tyrone Toliver Murder** | | |
| 701 | M.E. report (Dr. McDonald) [D9, 10] | x  GMcD | 4/16/13 |
| 702 | Statement of E. Coleman (E. Rocks, J. Burke) [D2, 10] | x   EC | |
| 703 | Photos (23) of car in lot; 5 of Valetta Street (Yatcilla) [D10] | x   GY | 3/13/13 |
| 704 | Photos of car at police garage (C. Frasier)  [D10] | | |
| 705 | FIU report of body bullet, jacket (E. Bottomer) [D10] | x   EB | |
| 706 | Body bullet [D10] (1B155) | x   EB | 3/13/13 |
| 707 | Photos (11) from video camera | | |
| 708 | Enhanced VHS video o 3/14/03 to 3/15/03 | x    EC | 3/20/13 |
| 709 | | | |
| 710 | Video from Palmetto St., of 4-4-03 | x    TZ | 2/14/13 |
| 711 | | | |
| 712 | | | |
| 720 | | | |
| 721 | | | |
| 722 | | | |
| 723 | | | |
| 724 | | | |
| 725 | | | |
| 726 | | | |
| 730 | | | |
| 731 | | | |
| 732 | | | |
| 733 | | | |
| 734 | | | |

27

| Government Exhibit No. | Description | Identified | Received |
|---|---|---|---|
| **800 series** | **Tybius Flowers Murder** | | |
| 801 | 911 recordings [D2]   (came in as defense exhibit) | | |
| 802 | Crime scene sketch (Trenwith) [D10] | x   WT | 4/9/13 |
| 803 | Crime scene photos (20) (Trenwith) [D2, 10] | | |
| 804 | Crime scene photos (7) (Trenwith) [D2, 10] (D. Jones) 804.1 to 804.6 | x   DJ | 4/4/13 |
| 805.1, .2 | FCCs (15) (P/R #9002608) (Trenwith) (R. Stott) [D2, 10] (1B158) | x   RS<br>x   WT | 4/4/13<br>4/9/13 |
| 806 | M.E. report (Dr. McDonald) [D2, 10] | x   GMcD | 4/16/13 |
| 807 | M.E. photos of body (6) [D2] | | |
| 808 | Autopsy photos (22) [D2] | | |
| 809 | Body bullets (7) (P/R 2510521) (R. Stott) [D2] (1B157) | x   RS | 4/4/13 |
| 810 | Bag of victim's clothes (P/R 2510576) (G. Rodden) [D2] (1B152) | | |
| 811 | Toxicology report [D2, 10] | | |
| 812 | Cell phone records [D2] | | |
| 813 | Cell site records: 570-328-1044 (Burhannon) [D10] | x DM, KL | 3/26/13 |
| 814 | Cell site records: 267-304-8069 (pre-paid) [D10] | x KL, DM | 3/26/13 |
| 815 | Cell site records: 267-767-0284 (T. Fulton) [D10] (166b) | x KL, DM | 3/26/13 |
| 816 | Cell site chart (S/A D. Magnuson) (816-1, -2, -3) | x   DM | 3/28/13 |
| 817 | FIU report re FCCs 1-15 (Stott) [D2, 10] | x   RS | 4/4/13 |
| 818 | FIU report re FCCs and seized firearm [D2, 10] | x   RS | 4/4/13 |
| 819 | P. Norvil statement [D16] | | |
| 820 | P. Norvil photo ID of Kaboni Savage [D16] | | |
| 821 | P. Norvil photo ID of Steven Northington [D16] | | |
| 822 | M. Crosby statement [D16] | x   MC | |

28

| Government Exhibit No. | Description | Identified | Received |
|---|---|---|---|
| 823 | M. Crosby photo ID of Kaboni Savage [D16] | x  MC | 4/4/13 |
| 824 | M. Crosby photo ID of T. Flowers [D16] | x  MC | 4/4/13 |
| 825 | M. Crosby photo ID of D. Bey [D16] | | |
| 826 | A. Coleman statement [D16] | | |
| 827 | A. Coleman photo ID of Steven Northington [D16] | | |
| 828 | A. Coleman photo ID of T. Flowers [D16] | | |
| 829 | A. Briggs statement [D16] | | |
| 830 | Glock firearm (1B177 #1) (R. Stott) | x  RS | 4/4/13 |
| 831 | Magazine w/ 18 rounds (1B177) | | |
| 832 | Projectile fragments from car (1B159) (R. Stott) | x  RS | 4/4/13 |
| 833 | Letters from P. Norvil (1B138) | | |
| 834 | Cell site record chart #1 | x KL, DM | 3/26/13 |
| 835 | Cell site record chart #2 | x KL, DM | 3/26/13 |
| 836 | CFCF records | x  KL | 3/27/13 |
| 837 | Tillman / Robt. Ted Jones DL | x  KL | 3/27/13 |
| 838 | Magnuson hand-drawn pie chart | x  DM | |
| 839 | Magnuson hand-drawn baseball diamond chart | x  DM | |
| 840 | Report re 718 Butler St. seizure | | |
| 841 | Photos of FCCs' locations | x  WT | 4/9/13 |
| 850 | Last page of E. Coleman 10-13-04 statement | x  KL | |
| 851 | Flowers murder summary timeline | x  KL | 4/15/13 |

29

| Government Exhibit No. | Description | Identified | | Received |
|---|---|---|---|---|
| **900 series** | **Coleman Arson Murders** | | | |
| 901 | Map of area | x | KL | 3/26/13 |
| 902 | Crime scene sketch [D2] (Trenwith) | x | AC | 4/10/13 |
| 903 | Photos of house burning (2) (J. Finley) [D2] | x | JF | 4/9/13 |
| 904 | Crime scene photos (106) [D2] (J. Finley: 904.1) (Trenwith: 904.02-29, 31-33, 35, 37, 40-42, 46-54, 56-59, 63-84, 88, 92-96, 98-101, 103) | x<br>x | JF<br>WT | 4/9/13<br>4/10/13 |
| 905 | M.E. photos (56) (Dr. Hood) [D2]   [ 905.48 ]   [905.03, .14, .23, .28, .34, and .44] | x<br>x | IH<br>KL | 4/17/13<br>5/21/13 |
| 906 | Photos of dog (6) [D2] | | | |
| 907 | M.E. report: M. Coleman (Dr. Hood) [D2] | x | IH | 4/17/13 |
| 908 | M.E. report: T. Nash (Dr. Hood) [D2] | x | IH | 4/17/13 |
| 909 | M.E. report: S. Rodriguez (Dr. Hood) [D2] | x | IH | 4/17/13 |
| 910 | M.E. report: T. Porchea (Dr. Hood) [D2] | x | IH | 4/17/13 |
| 912 | M.E. report: K. Nash (Dr. Hood) [D2] | x | IH | 4/17/13 |
| 913 | M.E. report: D. Jenkins (Dr. Hood) [D2] | x | IH | 4/17/13 |
| 914 | Fire Marshal's report (Czajkowski) [D6] | x | AC | 4/10/13 |
| 915 | Video of fire dog in house (Czajkowski) | x | AC | 4/10/13 |
| 916 | Coleman family photos (E.C.) [D16] [916.01, 4, 5, 7-9, 11, 14] | x | EC | 3/19/13 |
| 917 | Merritt interview of 7/8/05 [D10] | | | |
| 918 | Sketch of 2d floor w/ positions of victims (Trenwith/FMO) [D10]   (FF J. Finley) | x | JF | 4/9/13 |
| 919 | Can #1 of debris [D10] | | | |
| 920 | Can #2 of debris [D10] | | | |
| 921 | Can #3 of debris [D10] | | | |
| 922 | Can #4 of debris [D10] | | | |

30

| Government Exhibit No. | Description | Identified | Received |
|---|---|---|---|
| 923 | Can #5 of debris [D10] | | |
| 924 | Can #6 of debris [D10] | | |
| 925 | Fire Dept. report re 6 cans of debris (R. Ruff) [D10] | | |
| 926 | Crime lab report re 6 cans of debris (N. Martin) [D10] | x    NM | 4/16/13 |
| 927 | FCC 9mm from radiator in living rm. (P/R 9003349) [D10] (Trenwith/Taggart) [D10] | x    WT | 4/10/13 |
| 928 | FCC 9mm from stairway debris (P/R 9003339) (Jaconi/Frasier) [D10] | x    WT | 4/10/13 |
| 929 | FCC 9mm from living room debris (P/R 9003342) (Trenwith) [D10] | x    WT | 4/10/13 |
| 930 | Copper projectile from dining rm. debris (P/R 9003349) (Trenwith/Taggart) [D10] | x    WT | 4/10/13 |
| 931 | FIU report re FCC #1 (P/R 9003339) [D10] (McKenzie) | x    WT | 4/11/13 |
| 932 | FIU report re FCC #2 (P/R 9003342) [D10] (McKenzie) | x    WT | 4/11/13 |
| 933 | FIU report re FCC #1 (P/R 9003349) [D10] (McKenzie) | x    WT | 4/11/13 |
| 934 | FIU report re bullet B-1 (P/R 9003349) [D10] (McKenzie) | | |
| 935 | Wood molding w/ hole, from dining room doorway (P/R 9003337) [D10] (Trenwith) | x    WT | 4/11/13 |
| 936 | Metal vertical blind w/ hole (P/R 9003337) [D10] (Trenwith) | x    WT | 4/11/13 |
| 937 | Photos of exterior, side of house [D10] (R. Share/S. Crosby) | | |
| 938 | Projectile #1 from side wall (P/R 9003539) [D10] (Share/Guaraldo) | x    WT | 4/11/13 |
| 939 | Projectile #2 from side wall (P/R 9003539) [D10] (Share/Guaraldo) | x    WT | 4/11/13 |
| 940 | Downspout section w/ hole (P/R 9003346) [D10] (Trenwith) | x    WT | 4/11/13 |
| 941 | Mazda: 14 photos [D10] (A. Makuch / S. Crosby) | | |
| 942 | Mazda: CD changer, 6 CDs (P/R 9003434, 9003447) [D10] (Makuch / Yatcilla) | | |

| Government Exhibit No. | Description | Identified | Received |
|---|---|---|---|
| 943 | Mazda: latent prints from CDs [D10] (Makuch/Crosby) | | |
| 944 | Mazda: 4 floor mats (P/R 9003433) [D10] | | |
| 945 | Mazda trunk: carpet sample, plastic, towel [D10] (FMO Lt. Lawson, Lt. Pelzynski) | | |
| 946 | Crime lab report re carpet sample, plastic, and towel from Mazda trunk [D10] (N. Martin) | x    NM | 4/16/13 |
| 947 | Eugene Coleman statement of 10/9/04 [D10] | x  EC | |
| 948 | Merritt phone records (M. Edwards: 484-436-6258) | x KL, DM | 3/26/13 |
| 949 | Lamont Lewis phone records (prepaid: 267-216-6553) | x KL, DM | 3/26/13 |
| 950 | Kidada Savage phone records (610-453-4054, 610-348-8509; B. Savage 610-348-2038) | x KL, DM | 3/26/13 |
| 951 | Cell site chart re Coleman murders (Magnuson) (951-1, -2) | x  DM | 3/28/13 |
| 952 | Traffic citations to L. Lewis for 10/9/04 (D. Reid) | x   LL | 4/1/13 |
| 953 | Kidada letter to E. Coleman 9/11/03   (E. Coleman) | x   EC | 3/19/13 |
| 954 | E. Coleman phone records (K. Lewis) | x   KL | 3/26/13 |
| 955 | Jay Z lyrics  [ not permitted by court ] | | |
| 956 | Kidada resume from Bustleton | x   KL | 3/26/13 |
| 957 | R. Merritt EAM tattoo photo | x   LL | 4/1/13 |
| 958 | R. Merritt "Ride or Die" tattoo | x   LL | 4/1/13 |
| 959 | L. Lewis "Ride or Die" tattoo | x   LL | 4/1/13 |
| 960 | Lamont Lewis map | x   LL | 4/1/13 |
| 961 | Photo of Anthony Mitchell | x   LL | 4/1/13 |
| 962 | Photo of silver Ford Taurus | x   LL | 4/1/13 |
| 963 | First indictment of L. Lewis | x   LL | 4/1/13 |
| 964 | First superseding indictment of L. Lewis | | |
| 965 | L. Lewis proffer letter | x    LL | 4/1/13 |

| Government Exhibit No. | Description | Identified | Received |
|---|---|---|---|
| 966 | Photo of Khalisa Henry | | |
| 967 | Google Earth map of Greenmount Cemetery  (D. Murdoch) | x  DM | 4/9/13 |
| 968 | Copy of Darnell Doss SS card and DL (Off. D. Murdoch) | x  DM | 4/9/13 |
| 969 | Darnell Doss PennDOT printout (w/o fraud notice) | x  KL | 6/5/13 |
| 969a | Darnell Doss PennDOT printout (with fraud notice) | x  KL | 6/5/13 |
| 970 | P/R for 9mm F/A taken from Kendall Northington (P/R #2547112)          (Off. D. Murdoch) | x  DM | 4/9/13 |
| 971 | Drexel Reid statement | x  DR | 4/9/13 |
| 972 | Map for car stop on 10/9/04 | x  DR | 4/9/13 |
| 973 | Vehicle investigation report   (D. Reid) | x  DR | 4/9/13 |
| 974 | Rental agreement for Northington Pacifica  (D. Murdoch) | x  DM | 4/9/13 |
| 975 | Inventory of Pacifica | x  DM | |
| 976 | Fire Marshals photos (48)   (A. Czajkowski) | x  AC | 4/10/13 |
| 977 | whosarat.com:  Craig Oliver #1 | | |
| 978 | whosarat.com:  Craig Oliver #2 | x  KL | 4/15/13 |
| 979 | whosarat.com:  Eugene Coleman | x  KL | 4/15/13 |
| 980 | whosarat.com:  Myron Wilson | x  KL | 4/15/13 |
| 981 | Coleman murder summary timeline | x  KL | 4/15/13 |
| 982 | Hand-drawn sketch of FDC - SHU | x  KL | 4/15/13 |
| 983 | Sketch of FDC - SHU (2 sketches) | x  KL | 4/15/13 |
| 984 | Photos of SHU cells (12)   (K. Lewis) | x  KL | 4/15/13 |
| 985 | Clean trachea photo   (Dr. Ian Hood) | x  IH | 4/17/13 |
| 986 | whosarat.com, dated   (K. Lewis) | x  KL | 4/6/13 |

33

| Government Exhibit No. | Description | Identified | Received |
|---|---|---|---|
| **1000 series** | **Defense Case and Rebuttal** | | |
| 1000 | Larry Harcum PSR | x  LH | |
| 1001 | Larry Harcum GJ transcript | x  LH | |
| 1002 | Maggie Jimenez written statement | x  MJ | |
| 1003 | | | |
| 1004 | Crystal Copeland GJ transcript | x  CC | |
| 1005 | Larry Harcum U.S. Navy records | x  LH | |
| 1006 | FBI 302 report re Harcum 4/13 interviews | | |
| 1007 | 10/10/06 interview report of Harcum in Chester County | x  LH | |
| 1008 | Khalisa Henry GJ transcript | x  KH | |
| 1009 | Khalisa Henry twitter printout | | |
| 1010 | Photos of silver Nissan Altima (A and B) | x  KL | 4/24/13 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

34

| Government Exhibit No. | Description | Identified | Received |
|---|---|---|---|
| **1100 series** | **Norman Simon Murder**  [D ]  [ not used at trial ] | | |
| | | | |
| | FCCs (1B169) | | |
| | bullet fragments (1B169) | | |
| | body bullets (1B169) | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

35

| Government Exhibit No. | Description | Identified | Received |
|---|---|---|---|
| **1200 series** | **Kaboni Savage Penalty Phase** | | |
| 1201 | FDC surveillance video | | |
| 1202 | Contact Info for "Kenny" from Tangela Turner cell phone | x  KL | 5/21/13 |
| 1203 | Text Messages retrieved from Tangela Turner cell phone (to/from Kenneth Tuck) | x  KL | 5/21/13 |
| 1204 | Excerpts from Kenneth Tuck telephone records | x  KL | 5/21/13 |
| 1205A | Photo of envelopes present in Kaboni's cell | x  KL | 5/21/13 |
| 1205B | Photo of envelopes present in Kaboni's cell (with hand) | x  KL | 5/21/13 |
| 1206 | Letter from Kaboni Savage to Kidada Savage | x  KL | 5/21/13 |
| 1207 | Certified birth certificate for Kaboni Savage | x  KL | 5/21/13 |
| 1208 | Certified convictions for Kaboni Savage 2004 federal case | x  KL | 5/21/13 |
| 1209 | Photos of Dec. 2012 cell search (S/A V. Humphreys) | x  VH | 5/22/13 |
| 1210 | CV of D. Scott Dodrill | | |
| 1211 | S/A V. Humphries 302 report | | |
| 1212 | FDC letter re violation | | |
| 1213 | Coleman letters and funeral materials | | |
| 1214 | Photos of S/W return of FDC materials | x  VH | 5/22/13 |
| 1215 | Victim Impact Statement: Gloria Bush | | 5/22/13 |
| 1216 | VIS: Jamal Bush | | 5/22/13 |
| 1217 | VIS: Theresa Bush I | | 5/22/13 |
| 1218 | VIS: Theresa Bush II | | 5/22/13 |
| 1219 | VIS: Aliyah Jones | | 5/22/13 |
| 1220 | VIS: Karemah Bush | | 5/22/13 |
| 1221 | VIS: Gwendolyn Mayes | | 5/22/13 |
| 1222 | VIS: Dawn Mayes | | 5/22/13 |

36

| Government Exhibit No. | Description | Identified | Received |
|---|---|---|---|
| 1223 | VIS: Ernestine Nelson (re Flowers) | | 5/22/13 |
| 1224 | VIS: Ida Mae Anthony I | | 5/22/13 |
| 1225 | VIS: Blossom Demonie, Parker Family | | 5/22/13 |
| 1226 | VIS: Regina Nash | | 5/22/13 |
| 1227 | VIS: Navarro Fischer | | 5/22/13 |
| 1228 | VIS: Danielle Anthony | | 5/22/13 |
| 1229 | VIS: Isaiah Murray | | 5/22/13 |
| 1230 | VIS: Jandell Jackson | | 5/22/13 |
| 1231 | VIS: Teiera Jackson | | 5/22/13 |
| 1232 | VIS: Antoinette Anthony | | 5/22/13 |
| 1233 | VIS: John Anthony, Jr. | | 5/22/13 |
| 1234 | VIS: John Anthony, Sr. | | 5/22/13 |
| 1235 | VIS: Diamond Anthony | | 5/22/13 |
| 1236 | VIS: Ida Mae Anthony II | | |
| 1237 | Photo of Ken Lassiter   (S. Britt) | x   SB | 5/22/13 |
| 1238 | Photo of Ken Lassiter   (S. Britt) | x   SB | 5/22/13 |
| 1239 | Transcript of A. Nguyen from M. Phillips case | x   AN | 5/22/13 |
| 1240 | Barbara Savage J&C | | 5/29/13 |
| 1241 | Joseph Savage, Sr. J&C | | 5/29/13 |
| 1242 | John Milner printout | | |
| 1243 | Dr. Burry article in U. of Md. magazine | | |
| | | | |
| 1254 | ADX H-Unit chart   (S. Dodrill) | x   SD | 5/29/13 |
| 1255 | ADX chart   (S. Dodrill) | x   SD | 5/29/13 |
| | | | |

37

| Government Exhibit No. | Description | Identified | Received |
|---|---|---|---|
| **1300 series** | **Steven Northington Penalty Phase** | | |
| 1301 | Steven Northington birth certificate | KL | 6/5/13 |
| 1302 | J&C:  2004 felony drug conviction | KL | 6/5/13 |
| 1303 | J&C: Parker state court murder conviction | KL | 6/5/13 |
| 1304 | J&C: robbery conviction | KL | 6/5/13 |
| 1305 | VIS: Sharonda Walston, Andrea Flowers, Odell Flowers | | 6/5/13 |
| 1306 | | | |
| 1307 | | | |
| 1308 | Photo of shank discovered in prison | KL | 6/5/13 |
| 1309 | Chart summary of BOP disciplinary records | KL | 6/5/13 |
| 1310 | | | |
| 1311 | Photo of Steven Northington | R. Gur | 6/6/13 |
| 1312 | Photo of Steven Northington | R. Gur | 6/6/13 |
| 1313 | Photo of Steven Northington | R. Gur | 6/6/13 |
| 1314 | BOP disciplinary report   (Dunston) | | |
| 1315 | Child delinquency bulletin: April 2003 | | |
| 1316 | Pa. DOC report of 6/13/96 | | |
| 1317 | Pa. DOC report of 5/1496 | | |
| 1318 | Pa. DOC disciplinary reports from defense | | |
| 1319 | 1991 complaint re Northington prison stabbing (C. Haney) | x   CH | 6/12/13 |
| 1320 | | | |
| | | | |
| | | | |
| | | | |

38

# *APPENDIX B*

# Material Relating to Undocketed Written Communications Between Counsel and the Court

Each undocketed written communication is identified on the list below by date and description.  An asterisk designates ones that counsel have been able to locate in trial counsel's files; copies of those are included in Appendix B following the list.   Where counsel have not been able to locate the actual communication, and thus there is no asterisk beside it, a parenthesis indicates where in the available record the communication's existence is noted.

- •    *8/31/09[1] Savage's *pro se* letter to court;

- •    *9/22/09 Savage's counsel's letter to court regarding counsel status:

- •    *9/28/09 Savage's *pro se* letter to court;

- •    *12/21/09 Government's letter to court regarding conditions of confinement;

- •    *1/4/10 Savage's counsel's letter to court regarding conditions of confinement;

- •    *1/29/10 Savage's counsel's letter to court regarding conditions of confinement and discussion of authorization decision with government;

- •    11/30/10 videotapes filed by government in opposition to Savage's motion regarding conditions of confinement (referred to in ECF 368, at 2);

- •    *1/12/11 Government's letter to court regarding allegation of interference with legal mail;

- •    *2/15/11, *5/3/11, *11/28/11, *6/14/12, *6/29/12, *7/2/12, *7/6/12, and *7/9/12 Savage's counsel's correspondence to courtroom deputy regarding

---

[1] For *pro se* letters, the date indicated on this list is the date the communication was marked received.

vouchers;[2]

- *2/22/11 Savage's counsel's e-mail to courtroom deputy regarding withdrawal;

- *4/8/11 Savage's counsel's letter to court regarding issues with attorney visitation;

- *4/11/11 Savage's *pro se* letter to court;

- *6/6/11 Savage's *pro se* letter to court;

- *9/9/11 Savage's *pro se* letter to court;

- *9/13/11 Savage's counsel's letter to court regarding client's receiving visits from his mother;

- *10/21/11 Savage's counsel's letter to court regarding securing *pro bono* counsel;

- *10/24/11 BOP's letter to Savage's counsel (copied to court) regarding conditions of confinement and defense's preparation for trial;

- *10/28/11 Savage's counsel's letter to court regarding securing *pro bono* counsel;

- *12/8/11 Savage's counsel's letter to court regarding securing *pro bono* counsel;

- *12/12/11 Savage's counsel's letter to court regarding appointment of additional counsel;

- *1/30/12 BOP's letter to court regarding denial of contact legal visits for Savage;

---

[2] While communications about vouchers might ordinarily not be relevant on direct appeal, counsel believes the ones here are pertinent to issues they intend to raise in Savage's brief.

- *2/9/12 Savage's counsel's letter to court regarding denial of contact legal visits;

- 2/20/12 Codefendant's oversized documentary exhibits in support of motion to strike death penalty, filed by hand (referred to in ECF 368, at 2);

- *3/13/12 Government's letter to court regarding motions:

- 3/27/12 Savage's counsel's e-mail to court regarding government witness (referred to in 3/27/13 Transcript, at 3);

- 3/28/12 Government's proposed jury questionnaire (referred to in ECF 441, at 14 n.6);

- 5/30/12 audio recording submitted by Savage (referred to in ECF 500, at 3);

- 5/31/12 Savage's counsel's exhibits A-C to motion to suppress (referred to on docket, under ECF 506, as "Exhibits Exceed 50 pages, no pdf");

- *6/4/12 Court's letter to counsel regarding motions that may require evidence;

- *6/25/12 Savage's counsel's e-mail to courtroom deputy regarding motion to assign additional counsel;

- *7/6/12 Savage's counsel's letter to court regarding vouchers;

- *8/10/12 Letter from courtroom deputy to Savage's counsel regarding *pro se* letter received from Savage, and *8/9/12 *pro se* letter from Savage;

- *9/10/12 Government's letter (copied to court) to codefendant's counsel regarding accepted and rejected changes to list of admissible recordings proposed by Savage's counsel;

- *9/14/12 Government's letter (copied to court) to counsel regarding inspection of physical evidence and reciprocal discovery;

- 9/21/12 Savage's counsel's list of names for trial and penalty phase sent to law clerk (attached to *9/21/12 e-mail to law clerk)

- *9/26/12 Savage's counsel's letter to court regarding replacement fact investigator;

- 10/2/12 Jury venire information provided by court to all counsel in response to discovery motion (attached to *10/2/12 letter from court to all counsel, and referred to in ECF 639, at 13);

- *10/5/12 e-mails between Savage's counsel and witness's counsel (copied to law clerk) regarding deposition;

- *10/10/12 Court's letter to counsel regarding denial of Savage's and other codefendants' presence at one codefendant's hearing on mental retardation;

- *10/10/12 Government's letter to all defendants (copied to court) regarding admissibility of recordings;

- *10/15/12 Savage's counsel's e-mail to  law clerk regarding motion to appoint additional counsel;

- *10/23/12 Government's letter to court regarding juror anonymity;

- *10/31/12 Savage's letter to court regarding counsel's absence from hearing;

- *11/01/12 Government's letter to Savage (copied to court) regarding conditions of confinement issues;

- *11/02/12 Cover letter and motion by Savage's counsel to court as supplement to evidence presented at *Massiah* hearing;

- 11/05/12 Exhibits in support of jury pool challenge handed up to court by codefendant's counsel (referred to in 11/5/12 Transcript, at 3-4; ECF 701, at 3-4);

- 11/15/12 "Packet" that  courtroom deputy provided to each prospective juror about their "jury service" (referred to in 11/15/12 Transcript, at 3);

- *11/20/12 Government's e-mail to  law clerk and courtroom deputy regarding discovery dispute;

- 12/10/12 Exhibit A to Savage's motion regarding photos (referred to in ECF 811, at 2);

- *12/13/12 Savage's counsel's e-mail to  law clerk regarding new counsel appearing for voir dire;

- *1/10/13 Government's letter to court regarding government's right to cross-examine witness whose deposition was introduced by Savage and codefendant;

- 1/14/13 Government reports handed up to court for in-camera review in ruling on disclosure of confidential information (referred to in 1/14/13 Transcript, at 203);

- *1/15/13 Government's letter (copied to court) to codefendant's counsel regarding government's right to cross-examine witness whose deposition was introduced by Savage and codefendant;

- 2/1/13 e-mail from Savage's counsel revising objections to government recordings (referred to in ECF 1046, at 3 n.4);

- 2/6/13 List of citations delivered by Savage's counsel to  law clerk (referred to in 2/6/13 Transcript, at 191);

- 2/06/13 e-mail from government to court regarding Savage's counsel's request to introduce additional prior testimony (referred to in ECF 1055, at 1 n.1);

- 2/08/13 Government's submission to the court regarding witness Jonathan Baker (referred to in 2/27/13 Transcript, at 3);

- 2/25/13 Draft jury instruction provided by court to counsel (referred to in 2/25/13 Transcript, at 3);

- 2/25/13 Proposed jury instructions handed up by Savage's counsel to court (referred to in 2/25/13 Transcript, at 252; 2/26/13 Transcript, at 6, 9);

- 3/6/13 Government's letter to court regarding witness (referred to in ECF 1149, at 1 n.1);

- *3/25/13 Government's proposed jury instructions (trial) and e-mail to law clerk attaching them;

- 3/26/13 Lyrics provided by government to court (referred to in 3/27/13 Transcript, at 4);

- 3/27/13 Memo of law e-mailed by codefendant's counsel to court (referred to in 3/27/13 Transcript, at 4);

- 4/02/13 Audio transcripts, legal authority, and letter proffered to court regarding scope of cross-examination of Lamont Lewis (referred to in 4/2/13 Transcript, at 150-51);

- 4/03/13 Government's proffer to court of statement for review in ruling on scope of government rebuttal (referred to in 4/3/13 Transcript, at 7, 182);

- 4/04/13 Savage's proposed instruction handed up to court (referred to in 4/4/13 Transcript, at 10);

- 4/04/13 Witness statement handed up to court in connection with hearsay objections (referred to in 4/4/13 Transcript, at 80);

- 4/11/13 List of recording clips handed up to court by government to review for admissibility (referred to in 4/11/13 Transcript, at 7);

- 4/11/13 Charts handed up by Savage to court for review in connection with evidentiary objection (referred to in 4/11/13 Transcript, at 7-8);

- 4/11/13 Statement handed up by codefendant's counsel to court for review in connection with government's objection (referred to in 4/11/13 Transcript, at 97);

- 4/16/13 Photos handed up by government to court to review for admissibility (referred to in 4/16/13 Transcript, at 263);

- 4/17/13 Transcripts handed up to court by Savage's counsel in connection with request to admit evidence (referred to in 4/17/13 Transcript, at 59);

- 4/19/13 Letter from government and 4/20/13 letter from Savage's counsel to

court regarding redactions to deposition (referred to in ECF 1256, at 1 n.1);

• 4/23/13 Grand jury testimony handed up to court by codefendant in connection with evidentiary objection (referred to in 4/23/13 Transcript, at 49);

• 4/25/13 Draft jury instructions sent from law clerk to all counsel (attached to *4/25/13 e-mail chain between law clerk and counsel);

• 5/6/13 Written instructions sent by court into jury room for use during guilt-innocence deliberations (referred to in 5/6/13 Transcript, at 4);

• 5/7/13 Redacted transcripts of testimony of Lamont Lewis (trial) and Jose Reyes (grand jury), provided by court to Savage's sentencing jury (referred to in 5/7/13 Transcript, at 4);

• 5/14/13 Government's proposed sentencing instructions (referred to in ECF 1356, at 1);

• 5/16/13 Lists of sentencing witnesses provided to court by Savage's counsel and government (referred to in ECF 1328, at 2);

• 5/20/13 Proffer by Savage's counsel (handed up to court) of defense mitigation evidence (*e.g.*, letters), some of which court excluded (referred to in 5/20/13 Transcript, at 42-43; 5/30/13 Transcript, at 68);

• 5/20/13 Proffer by Savage's counsel of letter from Savage to his father, for review by court and which court later excluded (referred to in 5/20/13 Transcript, at 43);

• 5/20/13 Proffer by Savage's counsel of audio evidence for review (referred to in 5/20/13 Transcript, at 70-71);

• 5/20/13 Photos proffered by government to court to review for admissibility (referred to in 5/20/13 Transcript, at 107);

• 5/21/13 List of mitigating factors provided by Savage's counsel to court (referred to in 5/21/13 Transcript, at 4);

- 5/21/13 e-mail sent by Savage's counsel to court regarding admissibility of certain aggravating evidence (referred to in 5/21/13 Transcript, at 135);

- 5/22/13 Savage counsel's memo on admissibility of certain evidence found in his cell (referred to in 5/22/13 Transcript, at 2);

- 5/29/13 Proposed instructions e-mailed by law clerk to counsel, and e-mail responses from counsel (referred to in 5/29/13 Transcript, at 2, 102; 5/30/13 Transcript, at 59, 64);

- 5/30/13 Written instructions sent by court into jury room for use during sentencing deliberations (referred to in 5/30/13 Transcript, at 5);

- 9/19/14 Government's sentencing memo for codefendant (referred to in 9/19/14 Transcript, at 12);

- (Date unknown) List of still-contested excerpts from audio-recordings provided by Savage's counsel to court (referred to in ECF 1604, at 1 n.1);

- (Date unknown) Material witness warrant and transcript of material-witness hearing for witness Jonathan Baker (referred to in 2/26/13 Transcript, at 271-72);

- (Date unknown) Government's memo on Savage's counsel's objection to witness testimony (referred to in 3/27/13 Transcript, at 3).

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA
**FAX COVER SHEET**

DATE: 9/1/2009

David Troyer, Esq.
Christine Sykes, Esq.
United States Attorney's Office
215-861-8618

William Spade, Esq.
215-732-0124

Thomas Egan, Esq.
610-277-5823

Christopher Warren, Esq.
215-665-0890

William Nugent, Esq
215-568-7270

Paul George, Esq.
215-735-0599

Timothy Sullivan, Esq.
301-474-5730

William Bowe, Esq.
215-731-9912

Christopher Adams, Esq.
404-352-5636

NUMBER OF PAGES IN TRANSMISSION: 2
(Including cover page)

FROM: Mike Finney

MESSAGE: UNITED STATES v. KABONI SAVAGE, et al    07-550

Mr. Warren and Mr. Sullivan:

Please go and see your client and report back to Judge Surrick.

MICHAEL FINNEY
DEPUTY CLERK TO
JUDGE R. BARCLAY SURRICK

8430 U.S. COURTHOUSE
601 MARKET STREET
PHILADELPHIA, PA. 19106
PHONE: 267-299-7639
FAX: 267-299-7638
mike_finney@paed.uscourts.gov

A049

8-4-09

TO: The Honorable Judge Surrick

I Kaboni Savage (58232-066) would like to notify The court(s), as to the entrance of myself as pro-se counsel

Thank You

Kaboni

58232-06

RECEIVED AUG 31 2009

CHRISTOPHER D. WARREN
ATTORNEY AT LAW
1500 WALNUT STREET
SUITE 1900
PHILADELPHIA, PENNSYLVANIA 19102

TELEPHONE (215) 546-3750
FAX (215) 668-0890

**VIA FAX**                                             September 22, 2009

Honorable R. Barclay Surrick
United States District Court
601 Market Street
Philadelphia, PA 19106

      Re:    United States v. Kaboni Savage
             Criminal No. 07-550-3

Dear Judge Surrick:

      As Your Honor is aware, my client in the above-referenced case sent the Court a letter last month in which he stated that he wished to proceed pro se. Shortly after I received a copy of the letter from the Court, I went to MCC New York on September 3, 2009 to personally discuss this matter with my client. We met for almost two hours and although I would very much like to share with Your Honor the concerns that prompted Mr. Savage to send the letter, he has not authorized me to disclose to the Court any of our confidential attorney/client communications. Further, and as reflected in the attached e-mail exchanges between myself and Kenneth Haas at MCC New York, Mr. Savage declined an offer to speak with me today through a legal call that I tried to arrange.

      On a separate note, I can advise the Court that since October of 2007 my client has been subject to what the Federal Bureau of Prisons refers to as "Special Administrative Measures" or "SAMS" for short. From what I can tell, these are the most restrictive conditions of confinement that exist in the federal prison system. According to a pro se complaint that my client filed last May in the United States District Court for the District of Colorado under the caption Kaboni Savage v. Ronald Wiley, et al., No. 09-CV-01167, he is held in isolation and not allowed human contact of any kind, forbidden from speaking with the media, co-defendants, or any attorney who has not been approved by the Federal Bureau of Prisons, and generally treated considerably more harshly than the vast majority of inmates serving federal prison sentences. The complaint also alleges that SAMS are implemented at the direction of the Department of Justice in general and the United States Attorney's Office for the Eastern District of Pennsylvania in particular apparently without notice to the inmate or an opportunity to be heard. A copy of the SAMS that were imposed upon my client was attached as an exhibit to his complaint and both documents can be downloaded through PACER.

I can also advise the Court that at least two inmates that were also subject to SAMS the restrictions removed once the government was unsuccessful in obtaining dismissal of ïr pro se complaints. These two cases were filed by inmates that were designated to the same ïstitution where Mr. Savage was serving his sentence prior to his indictment in this case and their cases are encaptioned Reid v. Wiley, et al., No. 07-CV-01855 and Hale v. Ashcroft, No. 07-CV-00541. Although I certainly have no personal knowledge concerning the government's reasons for lifting the SAMS restrictions in those two cases, my review of the docket entries suggests that the two defendants were actively and aggressively requesting the disclosure of information and documents through the discovery process and that the government was resisting these efforts. Once the SAMS restrictions were lifted, however, the government moved to stay all proceedings which, in turn, eliminated any obligation on its part to respond to the plaintiffs' discovery requests. For the Court's convenience, I attached a copy of the Unopposed Motion to Stay Proceedings that was filed last July in the Reid case which makes reference in ¶ 5 to the stay that was entered in the Hale case.

Respectfully yours,

Christopher D. Warren

CDW/ph
attachments

cc:  David Troyer, AUSA (via fax/with attachments)
     Timothy Sullivan, Esquire (via e-mail/without attachments)
     Kaboni Savage (with attachments)

MAR-17-2000 02:14     P.001/002
Case: 14-9003    Document: 003112747904    Page: 54    Date Filed: 10/10/2017
P.03/03
SEP-29-2009 11:54                             P.01/03

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA
**FAX COVER SHEET**

DATE: 9/29/2009

**David Troyer, Esq.**
**Christine Sykes, Esq.**
United States Attorney's Office
215-861-8618

**William Spade, Esq.**
215-732-0124

**Christopher Warren, Esq.**
215-665-0890

**Paul George, Esq.**
215-735-0599

**William Bowe, Esq.**
215-731-9912

**Thomas Egan, Esq.**
610-277-5823

**William Nugent, Esq**
215-568-7270

**Timothy Sullivan, Esq.**
301-474-5730

**Christopher Adams, Esq.**
404-352-5636

NUMBER OF PAGES IN TRANSMISSION: 3
(Including cover page)

FROM: Mike Finney

MESSAGE: UNITED STATES v. KABONI SAVAGE, et al    07-550

MICHAEL FINNEY
DEPUTY CLERK TO
JUDGE R. BARCLAY SURRICK

8430 U.S. COURTHOUSE
601 MARKET STREET
PHILADELPHIA, PA. 19106
PHONE: 267-299-7639
FAX: 267-299-7638
mike_finney@paed.uscourts.gov

A053

I Kaboni Savage (58232 066) would
like to notify the court of my entran
as pro-se counsel

Thank you
Kaboni Savage
(58232 066)

RECEIVED

SEP 28 2009

P.001/002
SEP-29-
P.03/03

To: The Honorable Judge: RE ~~CEIVED~~ 8-4-09
R. Barclay Surrick    SEP 2-8-2009

I Kaboni Savage (58232-066) would like
to notify the court of my entrance as pro-se
counsel exercising rights under the six amendment
(Faretta v. California 422 U.S 806)

I am currently housed in/at the (nymcc)
detention center. This institution prohibits any access
to the law library. These restrictions would hinder
my ability to properly defend myself and it is
a clear violation of my constitutional right to
due process. I beg the court to have me moved
to a facility that allows prisoners access to
the main law library and access to all legal
materials

Thank You
Kaboni Savage (58232-066)
Praying for relief

Motion to Proceed as Pro-se counsel



**U.S. Department of Justice**

*United States Attorney*

*Eastern District of Pennsylvania*

*David E. Troyer, Assistant U.S. Attorney*
*Direct Dial (215) 861-8475*
*Fax (215) 861-8618*
*Email Address: david.troyer@usdoj.gov*

*615 Chestnut Street*
*Suite 1250*
*Philadelphia, Pennsylvania 19106-4476*
*(215) 861-8200*

December 21, 2009

Honorable R. Barclay Surrick
Judge, United States District Court
8614 United States Courthouse
601 Market Street
Philadelphia, PA 19106-1752

Re: *United States v. Kaboni Savage, #07-550-1*

Dear Judge Surrick,

This letter is to report to the Court the current status of the defendant Kaboni Savage, regarding both his transportation to court proceedings, and his conditions of confinement. Mr. Savage is both a sentenced prisoner and a pre-trial detainee. As a sentenced prisoner, he has been remanded to the custody of the Attorney General. Thus, he is subject to the rules of the U.S. Bureau of Prisons, and is subject to being placed in a facility of their choosing, at their discretion. In exercising that discretion, the Bureau of Prisons takes into account many factors, perhaps the most important of which is the security of civilian witnesses and law enforcement personnel. In Mr. Savage's case, it has been necessary to impose some of the most restrictive security measures, in order to assure the safety of others.

As a pre-trial detainee, Mr. Savage is entitled to meet with defense counsel and to otherwise participate in the preparation of his defense at trial. His constitutional rights will be scrupulously honored, in order to assure him of a fair trial in this case. Prior to indictment in this case, Mr. Savage was designated to the maximum security U.S. Prison at Florence, Colorado (ADMAX), to serve his 30-year sentence. Since Mr. Savage's arraignment, mostly as an accommodation to Mr. Savage and his counsel, he has been housed at MCC - New York, in a special housing unit (SHU) for inmates who have special administrative measures (SAM).

Mr. Savage has repeatedly engaged in violent behavior both before and after his entry into federal custody. Some of this behavior has resulted in the current charges pending against him, including the racketeering conspiracy, eleven counts of murder in aid of racketeering, and witness tampering charges. While in custody, he has issued orders that have led to the murders of at least seven persons; one who was a witness in a state murder case, the remaining six being the women and children who were related to federal witness Eugene Coleman. Since the October 2004 arson murders of the Coleman family, Savage continued his threats to murder additional witnesses and their family members, some of which threats are documented in the

A056

current indictment. In short, he has proven himself to be a danger to others, even while incarcerated.

Because Mr. Savage has proven himself to pose such an extreme risk of danger to others, the Attorney General has promulgated Special Administrative Measures (SAM) to more restrictively monitor Mr. Savage's movements and communications while in Bureau of Prisons custody. These measures are necessary to protect the public from further violence, and are reasonably designed to protect the lives of innocent civilians, while accommodating the constitutional rights of Mr. Savage.

Recently, Mr. Savage was scheduled to appear in federal court for a hearing regarding his counsel status. This hearing was prompted by Mr. Savage's letters to the Court, in which he claimed to wish to represent himself at trial. On two occasions, in successive weeks, there was a failure to transport Mr. Savage from his current site of incarceration, MCC - New York, to court in Philadelphia. These failures, we have learned, were due to communication gaps between the U.S. Marshals Service and the U.S. Bureau of Prisons. I understand that these failures have been acknowledged and apologized for, and that remedies have been put into place to insure against any such further failures. While regrettable, these problems have not impacted Mr. Savage's rights in the current case.

Apart from the transportation issue, Mr. Savage is also complaining about the SAM procedures, and claims that these procedures have impinged upon his ability to prepare his defense for trial. Defense counsel, who until the most recent court date, had expressed no difficulties with Mr. Savage's conditions of confinement, now claim that they wish to enjoy "contact visits" with Mr. Savage. They also echo Mr. Savage's claim that he wants to avail himself of the prison law library to the same extent that prisoners in "general population" can use this facility.

Quite simply, the government does not believe Mr. Savage's request for self-representation to be genuine. Rather, the government believes that this is a mere ruse on the part of Mr. Savage to manipulate this Court into issuing orders affecting the SAM restrictions. The government suggests that this Court resist Mr. Savage's thinly veiled attempts at manipulation. Furthermore, the government does not believe that the current SAM conditions function to impede Mr. Savage's preparation for trial.

Undersigned counsel for the government have consulted with the SAM unit manager at MCC - New York, who has reported the following:

Regarding the request to use the prison law library, Mr. Savage has complete access to any and all legal materials. He must simply make the request. Upon such a request, Mr. Savage will be furnished with these materials. This has been communicated to Mr. Savage. However, to date, there have been no such requests for legal materials. Neither

2

A057

counsel for the government nor the case agents have any desire to be advised of the legal materials requested by or provided to Mr. Savage, and will not be so informed. No SHU inmate (not just a SAM inmate) has access to the main law library at MCC - New York. This is a standard BOP rule. Nonetheless, Mr. Savage can still receive materials and have them copied. He also has unfettered access to any materials given him by defense counsel.

Regarding the request for contact visits, no SAM inmates at MCC - New York can have contact visits for social or legal visiting. This policy has been in place for a number of years, and is done for the protection of the attorneys, visitors, and corrections staff. There was an incident years ago in which a corrections officer was stabbed through the eye, in what was later learned to be an attempt to attack defense counsel.

Regarding the review of discovery, the SAM unit manager has spoken to defense counsel about this issue and had advised that there would be no problem providing Mr. Savage with access to a computer in order to review discovery. They also allow up to one copy paper box full of material to be stored in the cell (which can hold thousands of pages at a time). To avail himself of this, all Mr. Savage needs to do is to make a request. To date, no such request has been made. Neither the prosecutors nor case agents will be provided with the information copied by or reviewed by Mr. Savage. If a question ever arose concerning something that might need to be reviewed, the SAM unit manager is willing to deal with a "walled off" prosecutor, if necessary.

Regarding the identity of visitors, MCC - New York needs to know the identity of anyone visiting Mr. Savage. Because Mr. Savage is a SAM prisoner, each visitor must also review the SAM restrictions and sign a form acknowledging his or her awareness of the SAM restrictions. Again, if the confidentiality of a doctor or mitigation specialist is in issue, the SAM unit manager is willing to deal with a "walled off" prosecutor, if necessary, in order to avoid disclosing such matters to the prosecution team.

Regarding Mr. Savage's concern that his legal visits are monitored, such visits would be electronically monitored and recorded only pursuant to a court order under Title III. Obviously, even if a Title III order were in place, a U.S. District Judge would dictate the parameters of such monitoring, including the applicability of attorney-client privileges.

The government recognizes that, sometime at or near the commencement of trial, Mr. Savage will probably have to be moved to a site in, or closer to, Philadelphia. When that occurs, it will not be without a considerable amount of disruption to the facility housing him. Security measures will have to be implemented (both as part of the SAM, and completely apart from the SAM), that will be disruptive and expensive, and will strain that facility's human resources. All necessary steps will continue to be taken to assure both safety and a fair trial.

3

A058

The government contends that, currently, both Mr. Savage's placement and the restrictions imposed upon him are reasonable. When Mr. Savage was first moved to MCC - New York, this was hailed by all parties as being an acceptable, even desirable, placement. If Mr. Savage must be moved from there, or if a change in conditions is dictated that make his continued placement there unworkable, then the Bureau of Prisons will have to decide where to house Mr. Savage in order to continue to accommodate both the substantial security requirements and Mr. Savage's constitutional rights. Finding a placement as suitable as MCC - New York would be difficult at best. Mr. Savage and his counsel might find that a change in placement could require them to sacrifice convenience and travel time.

Given that Mr. Savage has not yet requested legal materials, has not yet requested computer usage for discovery review, has not had any denial of legal visits, has not been impeded from receiving information or materials from counsel, and has not otherwise been prevented from communicating with counsel, it is premature at best to entertain a change in his conditions of confinement. Not only has there been no exhaustion of administrative remedies before seeking judicial intervention, there has not even been a *request* for administrative remedies.

Accordingly, the government respectfully requests that this Court decline to engage in any judicial intervention as to Mr. Savage's housing or conditions of confinement at this time. Counsel for the government respectfully submit this report to the Court, per the Court's instructions, and stand willing to assist the Court in further addressing these issues.

Respectfully submitted,

MICHAEL L. LEVY
United States Attorney

David E. Troyer
Assistant United States Attorney

Christine E. Sykes
Assistant United States Attorney

cc: Christopher D. Warren, Esquire
cc: Timothy J. Sullivan, Esquire

4

A059

# BRENNAN SULLIVAN & MCKENNA LLP

ATTORNEYS AT LAW

6305 IVY LANE, SUITE 700
GREENBELT, MARYLAND 20770
TELEPHONE 301.474.0044
FAX 301.474.5730

TIMOTHY J. SULLIVAN*
TSULLIVAN@BSM-LEGAL.COM
*ADMITTED IN MARYLAND & D.C.

January 4, 2010

**VIA EMAIL AND REGULAR MAIL**

Honorable R. Barclay Surrick
Judge, United States District Court
8614 United States Courthouse
601 Market Street
Philadelphia, PA 19106

**RE:    *United States of America v. Kaboni Savage***
**Criminal No. 07-550**

Dear Judge Surrick:

The purpose of this letter is for Mr. Savage's counsel to respond to the government's letter to the Court dated December 21, 2009. The defense position is that the government's report to the Court regarding Mr. Savage's conditions of confinement at MCC-New York, his ability to provide meaningful participation in this potentially capital case and his constitutional safeguards are unpersuasive and does nothing to resolve what has now become, frankly, a real problem. We urge Your Honor to hold a hearing in order to ensure that the constitutional rights of Mr. Savage will indeed truly be "scrupulously honored" as represented by the government.

The day after the Court's conference with the parties on December 3, 2009, defense counsel wrote a letter to the government in an attempt to resolve the issues relating to Mr. Savage at MCC-New York, the abilities of counsel to meet with him and prepare his case – with the active and meaningful participation of the stakeholder with the most on the line – Mr. Savage. I have enclosed as "Attachment A" a copy of that letter to the government for the Court's review.

A060

Honorable R. Barclay Surrick
January 4, 2010
Page Two

The essence of the government's report to the Court is that everything is fine and the Court should not involve itself in this matter. The government is simply wrong. The reasons why can be fully articulated on the record during a hearing before Your Honor.

In response to the government's letter, it is immaterial if the government believes Mr. Savage's requests are "genuine." What counsel can represent to Your Honor is that the SAM restrictions are onerous, negatively impacting Mr. Savage's ability to assist in his own defense, and will substantially interfere with the attorney-client relationship in that the government has declared that "no SAM inmates at MCC-New York can have contact visits…for legal visiting." Simply stated, counsel needs to have contact meetings with Mr. Savage. It is indeed ironic that defense counsel can have contact meetings with BOP inmates facing the death penalty in USP-Terre Haute's Special Confinement Unit, but that the government in this case can decree that counsel is prohibited from contact visits with Mr. Savage at MCC-New York.

The government attorneys, in their zeal to advocate the appropriateness of the conditions of confinement at MCC-New York, have likely never been in the position of defending an individual facing the prospect of execution by their own government. The undersigned counsel has. The not-so veiled threat by the government that counsel may have to "sacrifice convenience and travel time" if Mr. Savage is moved from MCC-New York is meaningless. If Mr. Savage can be moved to a BOP facility where he can participate in his own defense, have contact visits with his counsel, not fear that the government is taking steps under the guise of SAM restrictions to interfere in his case, and have his constitutional rights protected, then counsel are prepared to go wherever including USP Florence ADMAX in Colorado. Whether or not moving Mr. Savage so far from the Eastern District of Pennsylvania makes practical or financial sense in this CJA case is not for counsel to opine. What counsel can report to the Court is that the current circumstances simply are not working.

It is respectfully requested that the Court hold a hearing as soon as practicable not only on Mr. Savage's prior communications with the Court (which remain pending despite two scheduled hearings because Mr. Savage was not transported) but also that the Court intervene on the current conditions of confinement.

Very truly yours,

Timothy J. Sullivan

TJS:mn
enclosure
cc:  Kaboni Savage, #58232-066
     Christopher Warren, Esq.
     David E. Troyer, AUSA
     Christine E. Sykes, AUSA

A061

# ATTACHMENT A

# BRENNAN SULLIVAN & McKENNA LLP
## ATTORNEYS AT LAW

6305 IVY LANE, SUITE 700
GREENBELT, MARYLAND 20770
TELEPHONE 301.474.0044
FAX 301.474.5730

TIMOTHY J. SULLIVAN*
TSULLIVAN@BSM-LEGAL.COM
* ADMITTED IN MARYLAND & D.C.

December 4, 2009

VIA EMAIL AND REGULAR MAIL

David Troyer, AUSA
Christine Sykes, AUSA
United States Attorney's Office
615 Chestnut Street
Philadelphia, Pennsylvania 19106

RE:   *United States of America v. Kaboni Savage*
      **Criminal No. 07-550**

Dear Mr. Troyer and Ms. Sykes:

The purpose of this letter is to follow-up yesterday's conference with Judge Surrick and to provide the government with some additional information relative to Mr. Savage's desire to participate in a meaningful fashion in the preparation and defense of this potentially federal capital case as well as be in a position to assist his attorneys in his defense.

First, it is my understanding that under the current SAM, Mr. Kaboni has no access to the law library. As Mr. Savage wishes to research the law that applies to his case, it is imperative that he be provided regular and reasonable opportunities to utilize the law library to research issues that he feels apply to his case and to assist counsel. Having Mr. Savage identify what law books, treatises, cases, or federal reporters he wants, and having them possibly delivered to his cell in 10 South is not only impractical for numerous reasons but substantially interferes with Mr. Savage's ability to, without undue restriction, research the law that applies to the charges against him as well as the possibility of a proceeding in accordance with the Federal Death Penalty Act.

David Troyer, AUSA
Christine Sykes, AUSA
United States Attorney's Office
December 4, 2009
Page Two

Second, under the current SAM, whether or not to permit a contact meeting between the attorney and Mr. Savage rests within the discretion of the Marshals Service, the Bureau of Prisons or the MCC. Although not an issue when I visited MCC on November 17, 2009, as I move forward with visits to Mr. Savage on 10 South, I am requesting that all of the visits be contact attorney-client privileged visits. If it is possible for the BOP to allow me to have contact visits with clients in the Special Confinement Unit at USP-Terre Haute, I believe it is reasonable, appropriate, and within the discretion of the government to ensure that all visits between counsel and Mr. Savage should be contact visits. Of course, this request recognizes that there may be the occasional circumstance (not the rule) that the facility cannot accommodate a contact visit. At that point, counsel should be able to elect whether to proceed as a noncontact meeting or re-schedule for a contact meeting.

Third, given the voluminous amount of the discovery in this case, it will be necessary for Mr. Savage to be provided regular and reasonable opportunities to utilize a computer to review the discovery materials and take whatever notes he believes are necessary so he can research any issues that he feels apply to his case and to assist counsel.

Fourth, in the very near future, requests will be made to arrange for Mr. Savage to be interviewed, tested, evaluated, and/or examined by experts who are part of the defense team in this case. Again, many of these meetings, particularly where there is testing to be done require that materials be brought into 10 South and that the meetings be contact. I do not believe that the current SAM addresses Court-appointed defense experts at all. I also do not believe that Court-appointed defense experts need to subject themselves to any SAM process more than what is normally required to gain entrance to a BOP facility. I am also concerned that you appear to be in regular contact with the 10 South BOP staff regarding Mr. Savage pursuant to the SAM. As such, the government, particularly the United States Attorney's Office for the Eastern District of Pennsylvania, appears to have access to and/or knowledge of what the defense is doing in terms of preparation for the trial and, of particular worry, the preparation and nature of Mr. Savage's mitigation and sentencing hearing presentation if this case is authorized by the Attorney General to proceed as a capital prosecution. The government is not entitled to now know the identities, backgrounds, personal information, and/or obtain "affirmations" from every Court-appointed defense experts except for the normal NCIC process employed elsewhere within the BOP system. This issue also includes investigators that are appointed by the Court as part of Mr. Savage's defense team. It would be helpful now to know the government's (including BOP/DF) position on how these meetings will be arranged, coordinated and occur. If there are going to be problems, they can be promptly brought to Judge Surrick's attention so as not to waste time or CJA funds.

David Troyer, AUSA
Christine Sykes, AUSA
United States Attorney's Office
December 4, 2009
Page Three

Fifth, under the current SAM, Mr. Savage has a belief that all of his conversations and communications with counsel are being recorded, monitored, and listened to by either the United States Attorney's Office for the Eastern District of Pennsylvania, the FBI or the Bureau of Prisons. This issue, standing alone, presents an incredibly difficult problem not only for Mr. Savage but for his counsel in representing him, preparing for trial and a potential sentencing hearing. This particular measure, whether or not it is or has been implemented for Mr. Savage, irreparably chills the attorney-client relationship. It impairs not only Mr. Savage's ability to assist defense counsel in the preparation of his case but also significantly limits and restricts what defense counsel can and will discuss with Mr. Savage and what, if anything, Mr. Savage will tell counsel.

Therefore, I am requesting that the government provide in writing that the United States Attorney's Office for the Eastern District of Pennsylvania, the FBI and/or the Bureau of Prisons has not been and is not currently recording, monitoring, or listening to any conversations occurring during Mr. Savage's conferences with his attorneys or members of his defense team to include Court-appointed experts and investigators while he has been housed in 10 South at MCC-New York. Of course, the statutory authority for the SAM provides that notice must be given to counsel and Mr. Savage if such procedures are being employed. I have not received such notice. However, I will tell you that Mr. Savage does not believe this to be the case at all.

Please understand that the requests set forth in this letter are not exhaustive. I will be meeting with Mr. Savage in the near future. Afterwards, I will raise with you any other issues that he believes impairs his ability to provide meaningful participation and assistance to his attorneys in this case.

If you have any questions, please feel free to contact me.

Very truly yours,

Timothy J. Sullivan

TJS:mn
cc:    Christopher Warren, Esq.
       Kaboni Savage #58232-066

# BRENNAN SULLIVAN & McKENNA LLP

ATTORNEYS AT LAW

6305 IVY LANE, SUITE 700
GREENBELT, MARYLAND 20770
TELEPHONE 301.474.0044
FAX 301.474.5730

TIMOTHY J. SULLIVAN*
TSULLIVAN@BSM-LEGAL.COM
ADMITTED IN MARYLAND & D.C.*

## FACSIMILE TRANSMITTAL SHEET

| | |
|---|---|
| TO: | FROM: |
| HON. R. BARCLAY SURRICK | TIMOTHY J. SULLIVAN, ESQ. |
| FAX NUMBER: | DATE: |
| 267-299-5074 | JANUARY 29, 2010 |
| ORGANIZATION: | TOTAL NO. OF PAGES INCLUDING COVER SHEET: TWO (2) |

RE: USA V. KABONI SAVAGE,
    CRIM. ACTION NO., 07-550

NOTES/COMMENTS:

Confidentiality Notice: This communication is intended for the sole use of the individual to whom it is addressed and may contain information that it privileged, confidential, and exempt from disclosure under applicable state or federal law. If the recipient of this communication is not the intended recipient, you are hereby advised that any dissemination, distribution, or copying of this communication may be strictly prohibited. If you received this communication in error, please notify the sender immediately by telephone at 301-474-0044 and return the communication to the address via the United States Postal Service.

# BRENNAN SULLIVAN & MCKENNA LLP
### ATTORNEYS AT LAW

6305 IVY LANE, SUITE 700
GREENBELT, MARYLAND 20770
TELEPHONE 301.474.0044
FAX 301.474.5730

TIMOTHY J. SULLIVAN*
TSULLIVAN@BSM-LEGAL.COM
* ADMITTED IN MARYLAND & D.C.

January 29, 2010

**VIA FACSIMILE ONLY (267-299-5074)**

Honorable R. Barclay Surrick
Judge, United States District Court
8614 United States Courthouse
601 Market Street
Philadelphia, PA 19106

RE:   *United States of America v. Kaboni Savage*
      **Criminal No. 07-550**

Dear Judge Surrick:

By Order dated July 31, 2009, the Court set today as the deadline for counsel for Mr. Savage to meet with the Government "to discuss the Government's decision to pursue the death penalty…." Your Honor is familiar with the current circumstances surrounding Mr. Savage including his *pro se* representation requests, his conditions of confinement issues, and, as of yesterday, his specific request regarding the discharge of counsel.

Under the circumstances, counsel respectfully advises the Court that we are unable, at this time, to comply with the Order to meet with the Government in any meaningful way on the issue of whether or not the Interim United States Attorney recommends and/or the Attorney General certifies Mr. Savage's case as a capital prosecution. It is requested that the Court extend this deadline to a date certain only after the pending issues are resolved by the Court. Thank you.

Very truly yours,

Timothy J. Sullivan

TJS:mn
cc:   Kaboni Savage, #58232-066
      Christopher Warren, Esq.    (via email)
      David E. Troyer, AUSA    (via email)
      Christine E. Sykes, AUSA   (via email)

A067



U.S. Department of Justice

*United States Attorney*

*Eastern District of Pennsylvania*

*David E. Troyer, Assistant U.S. Attorney*
*Direct Dial (215) 861-8475*
*Fax (215) 861-8618*
*Email Address: david.troyer@usdoj.gov*

*615 Chestnut Street*
*Suite 1250*
*Philadelphia, Pennsylvania 19106-4476*
*(215) 861-8200*

January 12, 2011

Honorable R. Barclay Surrick
Judge, United States District Court
8614 United States Courthouse
601 Market Street
Philadelphia, PA 19106-1752

Re: *United States v. Kaboni Savage, #07-550-1*

Dear Judge Surrick,

I am in receipt of defense counsel's latest missive to the Court, once again entreating the Court for an Order to move Kaboni Savage to FDC - Philadelphia. This time, Mr. Sullivan raises a new grievance, the alleged withholding of envelopes. Once again, the allegation raised by Mr. Savage is meritless. Indeed, I have looked into this matter and have learned the following: On two occasions, legal mail arrived from Mr. Hoey's office that was contained in envelopes made of a fibrous material, not paper, which containers raised security concerns among the MC-NY staff. One concern was that the material could be shaped into a weapon. Accordingly, the staff properly delivered the mail but retained the envelopes. The envelopes were not destroyed; rather, they have been placed in safekeeping with Mr. Savage's legal materials. I have communicated this to Mr. Hoey, which should eliminate any such future issues.

It is unfortunate that Mr. Sullivan has once again opted not to communicate his concerns with either the prosecutors or with MCC-NY, instead needlessly petitioning this Court with another wholly frivolous grievance. Counsel then compounds his error by leaping to the conclusion that MCC-NY must be withholding the envelopes for a nefarious reason; i.e., to deprive Mr. Savage of "evidence" he can present to the Court of constitutional violations.

No one is reading Mr. Savage's legal mail. No one is listening to his attorney-client conversations. No one is violating Mr. Savage's constitutional rights. If Mr. Savage chooses not to believe this, and chooses to act upon his ill-formed beliefs by refusing to communicate with counsel, then that is Mr. Savage's choice. As difficult as that may make it for defense counsel to do their jobs, Mr. Savage is the one responsible for the consequences of his decisions.

Mr. Savage poses a severe security risk. He is charged with murdering eleven people, seven of whom he ordered to be executed while he was incarcerated. He has vowed to kill even more people, and to continue to do so until the day he dies. He has been convicted of witness tampering. Under these circumstances, his Special Administrative Measures are abundantly reasonable. The Bureau of Prisons is obliged to implement these measures. Mr. Savage's current placement is a more-than-reasonable accommodation for trial preparation.

By contrast, Mr. Sullivan's fanciful suggestion that Mr. Savage be moved to FDC-Philadelphia and housed in a SHU unit with other inmates, is unreasonable. Indeed, such a move would be nothing less than reckless. To do so would also violate the terms of the SAMs, and would afford Mr. Savage the opportunity to murder more witnesses and their family members. Mr. Sullivan's proposal also fails to in any way address the phantom "mail issue;" nor does it preclude more false allegations from Mr. Savage.

Mr. Savage is entitled to due process and a fair trial. He is not entitled to stomp his feet until he gets what he wants. The witnesses and their family members are entitled, at the very least, to not be murdered by the defendant. This Court is entitled to receive from all counsel professional pleadings that appropriately set forth claims that are based in fact. Instead, the Court has endured a barrage of false allegations and perjured testimony from Mr. Savage, all in the apparent hopes of wearing down the Court. While counsel for the government recognize that defense counsel have a "difficult client" on their hands, that does not give them license to advance every meritless argument conjured up by that client. Defense counsel are well regarded by government counsel. They enjoy well-earned reputations for excellence and professionalism that, quite frankly, are not being reflected in these recent claims.

All parties recognize that, when this case gets closer to trial, Mr. Savage will have to be afforded accommodations in, or closer to, Philadelphia. However, that time is not yet at hand. Therefore, the government respectfully requests that this Court enter an Order denying Mr. Savage's requests.

Respectfully submitted,

ZANE DAVID MEMEGER
United States Attorney

/s/ David E. Troyer
David E. Troyer
Assistant United States Attorney

cc: Christian J. Hoey, Esquire
    Timothy J. Sullivan, Esquire

2

A069

| | |
|---|---|
| **From:** | Timothy Sullivan <tsullivan@bsm-legal.com> |
| **Sent:** | Tuesday, February 15, 2011 4:02 PM |
| **To:** | 'mike_finney@paed.uscourts.gov' |
| **Subject:** | USA v. Savage |
| **Attachments:** | Savage - Mordeczko letter 02 15 11.pdf |

Mike, here is a copy of the letter sent by Fed Ex today to Pete.

Anything you can do to help with this is greatly appreciated.

Tim

**Timothy J. Sullivan, Esq.**
**Brennan Sullivan & McKenna LLP**
**6305 Ivy Lane, Suite 700**
**Greenbelt, Maryland 20770**
**301-474-0044   (telephone)**
**301-474-5730   (facsimile)**
tsullivan@bsm-legal.com

**CONFIDENTIAL COMMUNICATION**
This e-mail is privileged, confidential and solely for the use of the intended recipient.  If you are not the intended recipient, do not read, distribute or reproduce this e-mail.  The reading, distribution or reproduction of this e-mail by an unintended recipient is prohibited and may be a violation of law.  If you have received this e-mail in error, please delete it and call 301.474.0044.  Thank you.

# BRENNAN SULLIVAN & McKENNA LLP
### ATTORNEYS AT LAW

6305 IVY LANE, SUITE 700
GREENBELT, MARYLAND 20770
TELEPHONE 301.474.0044
FAX 301.474.5730

TIMOTHY J. SULLIVAN*
TSULLIVAN@BSM-LEGAL.COM
*ADMITTED IN MARYLAND & D.C.

February 15, 2011

**VIA FEDERAL EXPRESS**

Peter Mordeczko
Clerk's Office
United States District Court
  for the Eastern District of Pennsylvania
2609 United States Courthouse
601 Market Street
Philadelphia, Pennsylvania  19106

RE:   *United States of America v. Kaboni Savage*
       **Criminal No. 07-550**

Dear Mr. Mordeczko:

It is my understanding that the first interim CJA-30 compensation claim voucher for my representation of Kaboni Savage for the period of June 23, 2009 through to and including December 31, 2009 was never processed.  I am enclosing a copy of the Federal Express tracking receipt for your information.

At the direction of Mike Finney, Deputy Clerk to Judge Surrick, I have re-signed in blue ink the December 16, 2010 cover letter as well as re-signing in blue the CJA 30 voucher.

Under the circumstances, any help you can provide in promptly forwarding this compensation request to Judge Surrick would be greatly appreciated.  If you have any questions, please feel free to contact me.

Very truly yours,

Timothy J. Sullivan

TJS:mn
Enclosure

**From:**              Timothy Sullivan <tsullivan@bsm-legal.com>
**Sent:**              Tuesday, May 03, 2011 1:23 PM
**To:**                'Mike_Finney@paed.uscourts.gov'
**Subject:**           RE: Savage

Thanks Mike, sorry to bug you about voucher but I need it.

Tim

Timothy J. Sullivan, Esquire
Brennan Sullivan & McKenna LLP

**From:** Mike_Finney@paed.uscourts.gov [mailto:Mike_Finney@paed.uscourts.gov]
**Sent:** Tuesday, May 03, 2011 1:02 PM
**To:** Timothy Sullivan
**Subject:** Re: Savage


Tim:

Thanks for the motion.  The last time I asked the judge about your voucher, he told me he was still reviewing it.  I will ask again if it is ready to be signed.

Mike


Michael Finney
Deputy Clerk to U.S. District Judge R. Barclay Surrick
267-299-7639 (Phone)
267-299-7638 (Fax)
mike_finney@paed.uscourts.gov

**From:**              Timothy Sullivan
**Sent:**              Monday, November 28, 2011 2:50 PM
**To:**                mike.finney@paed.uscourts.gov
**Cc:**                Christian Hoey (choey@rubino-hoey.com)
**Subject:**           Savage


Mike – hope you had a great Thanksgiving – Chris Hoey and I wanted to ask if you could determine the status of our latest vouchers?
I know mine was interim request #6 and was submitted on October 25, 2011.  I don't know the details for Chris.

Many thanks, much appreciated.

Tim

Timothy J. Sullivan, Esq.
Brennan Sullivan & McKenna LLP
6305 Ivy Lane, Suite 700
Greenbelt, Maryland 20770
301-474-0044    (telephone)
301-474-5730    (facsimile)
tsullivan@bsm-legal.com

**CONFIDENTIAL COMMUNICATION**
This e-mail is privileged, confidential and solely for the use of the intended recipient.  If you are not the intended recipient, do not read, distribute or reproduce this e-mail.  The reading, distribution or reproduction of this e-mail by an unintended recipient is prohibited and may be a violation of law.  If you have received this e-mail in error, please delete it and call 301.474.0044.  Thank you.

| | |
|---|---|
| **From:** | Timothy Sullivan |
| **Sent:** | Thursday, June 14, 2012 11:31 AM |
| **To:** | 'mike_finney@paed.uscourts.gov' |
| **Subject:** | question |

Chris told me that the Court approved his last voucher and it went downstairs – can I assume mine went with his.

Thanks for your help and  nice seeing you this week –

Tim

Timothy J. Sullivan, Esq.
Brennan Sullivan & McKenna LLP
6305 Ivy Lane, Suite 700
Greenbelt, Maryland 20770
301-474-0044    (telephone)
301-474-5730    (facsimile)
tsullivan@bsm-legal.com

CONFIDENTIAL COMMUNICATION
This e-mail is privileged, confidential and solely for the use of the intended recipient.  If you are not the intended recipient, do not read, distribute or reproduce this e-mail.  The reading, distribution or reproduction of this e-mail by an unintended recipient is prohibited and may be a violation of law.  If you have received this e-mail in error, please delete it and call 301.474.0044.  Thank you.

**From:**            Timothy Sullivan
**Sent:**            Friday, June 29, 2012 9:22 AM
**To:**              mike_finney@paed.uscourts.gov
**Subject:**         Savage

Mike - any update on the voucher that I submitted on April 17, 2012? Thanks.

Tim

Sent from my iPhone

| | |
|---|---|
| **From:** | Timothy Sullivan |
| **Sent:** | Monday, July 02, 2012 2:10 PM |
| **To:** | Mike_Finney@paed.uscourts.gov |
| **Subject:** | Re: Activity in Case 2:07-cr-00550-RBS USA v. LEWIS et al Order |

Thanks like so much. Please let me know as soon as you can. I know Chris has already got his check which was submitted after mine.  Thanks.

Tim

Sent from my iPhone

On Jul 2, 2012, at 2:05 PM, "Mike_Finney@paed.uscourts.gov" <Mike_Finney@paed.uscourts.gov> wrote:

> Tim:
>
> Sorry to hear about the storms that went through your area Friday night.  I have reminded the judge at least a half dozen times about your voucher.
>
> He is going to charge a jury today.  After he is finished I know he'll turn his attention to other matters.  I will make sure your voucher is on the top of that list.
>
> Mike
>
> Michael Finney
> Deputy Clerk to U.S. District Judge R. Barclay Surrick
> 267-299-7639 (Phone)
> 267-299-7638 (Fax)
> mike_finney@paed.uscourts.gov

**From:**         Timothy Sullivan
**Sent:**         Friday, July 06, 2012 7:56 AM
**To:**           Mike_Finney@paed.uscourts.gov
**Subject:**      Re: Activity in Case 2:07-cr-00550-RBS USA v. LEWIS et al Order

Mike - any update on the voucher? What should i do? This is now a real problem. Thanks for everything.

Tim

Sent from my iPhone

On Jul 2, 2012, at 2:05 PM, "Mike_Finney@paed.uscourts.gov" <Mike_Finney@paed.uscourts.gov> wrote:

> Tim:
>
> Sorry to hear about the storms that went through your area Friday night.  I have reminded the judge at
> least a half dozen times about your voucher.
>
> He is going to charge a jury today.  After he is finished I know he'll turn his attention to other matters.  I
> will make sure your voucher is on the top of that list.
>
> Mike
>
> Michael Finney
> Deputy Clerk to U.S. District Judge R. Barclay Surrick
> 267-299-7639 (Phone)
> 267-299-7638 (Fax)
> mike_finney@paed.uscourts.gov

**From:**          Timothy Sullivan
**Sent:**          Monday, July 09, 2012 3:26 PM
**To:**            'mike_finney@paed.uscourts.gov'
**Subject:**       Kaboni Savage


Any update on my voucher?  Thanks.

Tim

Timothy J. Sullivan, Esq.
Brennan Sullivan & McKenna LLP
6305 Ivy Lane, Suite 700
Greenbelt, Maryland 20770
301-474-0044   (telephone)
301-474-5730   (facsimile)
tsullivan@bsm-legal.com

**CONFIDENTIAL COMMUNICATION**
This e-mail is privileged, confidential and solely for the use of the intended recipient.  If you are not the intended recipient, do not read, distribute or reproduce this
e-mail.  The reading, distribution or reproduction of this e-mail by an unintended recipient is prohibited and may be a violation of law.  If you have received this e-
mail in error, please delete it and call 301.474.0044.  Thank you.

| | |
|---|---|
| **From:** | Timothy Sullivan <tsullivan@bsm-legal.com> |
| **Sent:** | Tuesday, February 22, 2011 3:42 PM |
| **To:** | 'mike_finney@paed.uscourts.gov' |
| **Subject:** | Savage |

Mike,  a couple questions

First, thanks for your help last week in getting the first interim compensation voucher mess fixed and up to chambers. Hopefully, it has arrived there. I was wondering since the clerk's office made a screw up (lost my first voucher request submitted in December 2010), if you could ask the Judge to please consider the voucher in a very timely fashion so it can get into the payment system. I am soon to be up to date and will be filing monthly beginning in March 2011.

Second, as you know my magistrate judge position here in the District of Maryland depends on a current magistrate judge (Charles B. Day) clearing the Senate Judiciary Committee and being confirmed by the United States Senate as a district court judge. There appears to be some real uncertainty in the timetable for this to occur but it does not appear to be soon at all. I have discussed this with Chris Hoey. We would like to raise with the Judge the possibility of me keeping on with the case until such time as there is something to report (it could be 6 months or longer) but in the interim keeping another death-penalty attorney up to date on the status to avoid any delay. Any suggestions on how to approach this with Judge Surrick.

Thanks much.

Tim

Timothy J. Sullivan, Esq.
Brennan Sullivan & McKenna LLP
6305 Ivy Lane, Suite 700
Greenbelt, Maryland 20770
301-474-0044   (telephone)
301-474-5730   (facsimile)
tsullivan@bsm-legal.com

CONFIDENTIAL COMMUNICATION
This e-mail is privileged, confidential and solely for the use of the intended recipient. If you are not the intended recipient, do not read, distribute or reproduce this e-mail. The reading, distribution or reproduction of this e-mail by an unintended recipient is prohibited and may be a violation of law. If you have received this e-mail in error, please delete it and call 301.474.0044. Thank you.

LAW OFFICES

## RUBINO & HOEY, LLC

50 DARBY ROAD

PAOLI, PA 19301-1416

PAUL J. RUBINO
CHRISTIAN J. HOEY
DANIEL PAUL RUBINO

TELEPHONE (610) 647-5151
FAX (610) 993-8472
contact@rubino-hoey.com

April 8, 2011

**VIA FACSIMILE TRANSMISSION (267)299-5074**
**AND REGULAR U.S. MAIL**

The Honorable R. Barclay Surrick
United States Courthouse
601 Market Street, Room 8614
Philadelphia, PA 19106

Re:   USA vs. Savage

Dear Judge Surrick:

Regarding the above noted matter, as you are aware Mr. Savage was returned to the Federal Detention Center in Philadelphia, Pennsylvania in March, 2011. We have encountered the following issues with respect to attorney visitation and meetings with our private investigator:

1.   Mr. Savage remains fully shackled during all attorney/investigator conferences. The shackling prevents Mr. Savage from effectively reviewing discovery, paperwork, and related materials. In effect, Mr. Savage has no use of his hands;

2.   Our private investigator, Leonard Ward has been denied admission to the Federal Detention Center despite prior approval. On at least one occasion, Mr. Ward was permitted to visit with Mr. Savage and prepare and conduct his investigation. Subsequent to that visit, Mr. Ward was turned away and advised that he could not meet with Mr. Savage without counsel present;

3.   Since Mr. Savage was transferred to the Federal Detention Center in March, 2011, he has been unable to re-establish visitation with his family ( in-person and via telephone).

I write to request that the above noted conditions be modified to allow Mr. Savage to be shackle-free during attorney meetings. Additionally, I request that Mr. Ward be permitted to meet with Mr. Savage as frequently and as often as necessary, without counsel, to effectively prepare and conduct his investigation.

I am happy to provide additional information to the court upon request. Finally, Mr. Sullivan and I are willing to execute liability/damage waiver forms in the event that the Federal Detention Center Administration would prefer same. Thank you again for your kind attention to this matter.

Very truly yours,

Christian J. Hoey

CJH:aej
cc: Kobani Savage
David Troyer, AUSA
Timothy Sullivan, Esquire

Motion to proceed Pro-se

& asking the Court to grant an Emergency "hearing to address this matter "Immediately"

3-17-11

To Hon. R Barclay Surrick

APR 11 2011

I Kabon Savage 32-006 would like to notify the court about my desire to proceed in all legal matters "Pro-se". Exercising my sixth amendment right under the United States Constitution. Because of these unconstitutional conditions (S.A.M.S) it is impossible for me to have the required access I'm suppose to be guaranteed. My conditions under the (S.A.M.S) have gradually gotten worse. I was transferred from (M) MCC to Phila (FDC) on 3-15-11, I was told I would not be allowed to get my legal work that I brought with me from NY (mcc) My legal visits are still being monitored and listened too. I was shackled (hands and feet) for more than three hours. I'm prohibited from having a toothbrush and other essentials. I beg the Court to grant my motion to proceed Pro-se under Farretta v California and if possible, "immediately". I refuse to speak to anyone under these conditions. And we've tried constantly to resolve these issues, but they still persist.

I also would like to inform the Court of my administrative remedies issues. They are/were again sabotaged by these government. And I have evidence to prove it!

APR-

Because of these conditions and the constant Racism I've been subjected to. I see no reason to proceed with Court appointed counsel. I was told by goverment officials constantly "Niggers don't have any Constitutional rights, never did"

I have Court ordered dates to file certain motions and I would like to get started as Pro-se counsel Immediately

Thank You

Kaboni Savage
58232-066

I also would ask the Court to move me to Guantanamo Cuba, Colo ADX or the nearest Death row unit. I ask for this to be done immediately as well And They (The Goverment) continues to open my legal mail! I have proof, And They have sabotaged my administrative remedies process again!

TOTAL P.01

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA
**FAX COVER SHEET**

DATE: 6/8/2011

| | | |
|---|---|---|
| **David Troyer, Esq.** | **William Spade, Esq.** | **Thomas Egan, Esq.** |
| **John Gallagher, Esq.** | 215-732-0124 | 610-277-5823 |
| United States Attorney's Office | | |
| 215-861-8618 | **Christopher Hoey, Esq.** | **William Nugent, Esq** |
| | 610-993-8472 | 215-568-7270 |
| | **Paul George, Esq.** | **Timothy Sullivan, Esq.** |
| | 215-735-0599 | 301-474-5730 |
| | **William Bowe, Esq.** | **Christopher Adams, Esq.** |
| | 215-731-9912 | 877-883-9114 |

NUMBER OF PAGES IN TRANSMISSION: 2
(Including cover page)

FROM: Mike Finney

MESSAGE: UNITED STATES v. KABONI SAVAGE    07-550

MICHAEL FINNEY
DEPUTY CLERK TO
JUDGE R. BARCLAY SURRICK

8430 U.S. COURTHOUSE
601 MARKET STREET
PHILADELPHIA, PA. 19106
PHONE: 267-299-7639
FAX: 267-299-7638
mike_finney@paed.uscourts.gov

07-2011  11:06

To: The Honorable Judge
R. Barclay Surrick

RECEIVED
JUN - 6 2011

5-19-

      I Kaboni Savage (58232-066) would notify
the Court of my entrance in as Pro-se counsel (Fairettax
California) & wish to exercise my Sixth amendment right.
The last of my supposed Constitutional rights. The other
(Guaranteed) Constitutional rights I am suppose to be protected
By, has clearly been aborted

                                    Kaboni Savage
                                    58232-066

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA
**FAX COVER SHEET**

DATE: 9/20/2011

**David Troyer, Esq.**
**John Gallagher, Esq.**
United States Attorney's Office
215-861-8618

**William Spade, Esq.**
215-732-0124

**Christopher Hoey, Esq.**
610-993-8472

**Paul George, Esq.**
215-735-0599

**William Bowe, Esq.**
215-731-9912

**Theresa Walen, Esq.**
301-650-1789

**Thomas Egan, Esq.**
610-277-5823

**William Nugent, Esq**
215-568-7270

**Timothy Sullivan, Esq.**
301-474-5730

**Christopher Adams, Esq.**
877-883-9114

**Christopher Phillips, Esq.**
215-545-0956

NUMBER OF PAGES IN TRANSMISSION: 2
(Including cover page)

FROM: Mike Finney

MESSAGE: UNITED STATES v. KABONI SAVAGE   07-550

MICHAEL FINNEY
DEPUTY CLERK TO
JUDGE R. BARCLAY SURRICK

8430 U.S. COURTHOUSE
601 MARKET STREET
PHILADELPHIA, PA. 19106
PHONE: 267-299-7639
FAX: 267-299-7638
mike_finney@paed.uscourts.gov

A085

JLP

Appointment or/ Re-appointment
if Counsel

SEP 9 2011

07    550 -3

To The Honorable Judge
P. Barclay Surrick

I Kaboni Savage - 55232-066 would like the Court
to appoint or/re-appoint attorney(s) Micheal Cord and /or Tariq Kareem
El-Shabazz. I have yet to address my Court approved investigator
because of my present restrictions/conditions and my attorney(s)
inability to comport their schedules or perhaps their blatant
refusal? Having an investigator is just as important to my
six amendment right to effective assistance of Counsel and to
- fair trial that's (allegedly) guaranteed by the U.S Constitution
I have met with the assigned investigator once (briefly). He
was appointed seven months ago. I believe one or both of these
Attorneys would do everything they possibly can to make sure
my "Constitutional" rights are being protected, as well as my civil
rights and not constantly violated because I'm a Black(man)!

Thank You.
Kaboni Savage
55232-066

RECEIVED
SEP 09 2011

TOTAL P.02

LAW OFFICES

# RUBINO & HOEY, LLC

50 DARBY ROAD
PAOLI, PA 19301-1416

PAUL J. RUBINO
CHRISTIAN J. HOEY

TELEPHONE (610) 647-5151
FAX (610) 993-8472
contact@rubino-hoey.com

September 13, 2011

## VIA FACSIMILE TRANSMISSION
## AND REGULAR U.S. MAIL

The Honorable R. Barclay Surrick
United States District Judge
United States Courthouse
601 Market Street, Room 8614
Philadelphia, PA 19106

Re:   U.S.A. vs. Kaboni Savage

Dear Judge Surrick:

In response to your request to produce medical evidence of Barbara Savage's current condition and prognosis, enclosed herein, please find the August 11, 2011 medical report of Crystal Denlinger, MD. You will note therein that Ms. Savage has incurable pancreatic cancer and is treating with systemic chemotherapy.

I would like to advance discussions regarding personal visits between Kaboni Savage and Barbara Savage as soon as practical. I do believe that Mr. Savage will likely be transferred back to Colorado in the coming weeks.

Thank you for your kind attention to this matter.

Very truly yours,

Christian J. Hoey

CJH:aj
Enclosure

cc:   David E. Troyer, Esq. - *Without Enclosure*
      Timothy J. Sullivan, Esq. - *With Enclosure* ✓


**FOX CHASE**
CANCER CENTER

Crystal S. Denlinger, M.D.
**Department of Medical Oncology**

333 Cottman Avenue
Philadelphia, PA 19111-2497
Tel: 215-728-2689
Fax: 215-728-3639

crystal.denlinger@fccc.edu

August 11, 2011

RE: Barbara Savage
DOB: 3/22/53

To whom it may concern:

Ms Barbara Savage, MR# 1080455, has pancreas cancer.  It is incurable but treatable and we are treating her with systemic chemotherapy.

If you have any questions, please do not hesitate to call the office at 215-214-1676.

Sincerely,

Crystal Denlinger M.D.

# BRENNAN SULLIVAN & MCKENNA LLP

### ATTORNEYS AT LAW

_____

6305 IVY LANE, SUITE 700
GREENBELT, MARYLAND 20770
TELEPHONE 301.474.0044
FAX 301.474.5730

_____

TIMOTHY J. SULLIVAN*
TSULLIVAN@BSM-LEGAL.COM
*ADMITTED IN MARYLAND & D.C.

October 21, 2011

*EX PARTE*
**VIA ELECTRONIC MAIL**

Honorable R. Barclay Surrick
United States District Court
8614 United States Courthouse
601 Market Street
Philadelphia, Pennsylvania  19106

**RE:**   ***United States of America v. Kaboni Savage***
           **Criminal No. 07-550**

Dear Judge Surrick:

This letter will serve as a status report relating to our efforts seeking *pro bono* counsel to represent Mr. Savage in challenging the Special Administrative Measures and his current conditions of confinement.

Gerald Zerkin, one of the Federal Death Penalty Resource Counsel, has been in contact with Denny LaBoeuf at the ACLU Capital Project, and is making inquiries with other contacts to determine any interest and/or willingness to assist.  In addition, I have obtained the names of two persons in Philadelphia who may have possible leads locally.

I  will update the Court next Friday.

Very truly yours,

/s/
Timothy J. Sullivan

TJS:mn
cc:    Kaboni Savage
       Christian Hoey  (via email only)



**U.S. Department of Justice**

Federal Bureau of Prisons

*Federal Detention Center*

700 Arch Street
Philadelphia, Pennsylvania 19106

**VIA FACSMILE AND REGULAR MAIL**
October 24, 2011

Timothy Sullivan, Esq.
Brennan Sullivan & McKenna LLP
6305 Ivy Lane, Suite 700
Greenbelt, Maryland 20770

Re:   United States v. Kaboni Savage
      Cr. No. 07-0550 (E.D. Pa.)

Dear Mr. Sullivan:

I am writing in response to your recent letter seeking certain
assurances or guarantees from the Federal Bureau of Prisons (BOP)
concerning the conditions of inmate Kaboni Savage's confinement
and his preparation for trial.

As you know, since the trial of inmate Savage has been postponed
until September 2012, the BOP is anticipating transferring inmate
Savage to another institution with the expected return to the
Federal Detention Center in Philadelphia, Pennsylvania (FDC
Philadelphia), about six months prior to the trial. You seek
assurances that inmate Savage's access to discovery and access to
counsel will be the same as he has enjoyed at FDC Philadelphia.

The BOP cannot guarantee that the procedures at one institution
will be the same as another. While security measures may vary
from one institution to another, institutional security is always
balanced with the access needs of the inmate.

The BOP has been flexible in fashioning secure methods to enable
inmates to prepare for trial. The following summary of inmate
Savage's confinement within the BOP shows the flexibility of the
BOP to address his ability to prepare for trial:

On or about October 25, 2007, inmate Savage was transferred from
the United States Penitentiary in Atlanta, Georgia, to the United
States Penitentiary-Administrative Maximum (ADX) located in
Florence, Colorado. ADX Florence is designed to safely house the
BOP's most violent, disruptive, and escape-prone inmates. This
includes inmates whose cases involve serious offenses against the
United States.

A090

Timothy Sullivan, Esq.
October 24, 2011
Page 2

Inmate Savage was housed at ADX Florence due, in part, to the
Special Administrative Measures (SAM), 28 CFR § 501.3, that the
U.S. Attorney General imposed on February 1, 2007. The SAM was
entered, in part, because in 2004, he was able to communicate
orders to firebomb a government cooperator's house while he was
housed in FDC Philadelphia's Special Housing Unit, its most
secure housing unit, awaiting trial in *United States v. Savage*,
Crim. No. 04-269 (EDPA).

On June 1, 2009, inmate Savage returned to FDC Philadelphia from
ADX Florence to be arranged in this matter. His presence at FDC
Philadelphia during this time presented safety and security
concerns. Of critical concern was the SAM restriction prohibiting
inmate Savage from engaging in unmonitored communication with
other inmates. At that time, FDC Philadelphia was unable to house
him in an area that would satisfy the SAM restriction.

Accordingly, on June 24, 2009, the BOP transferred inmate Savage
to the Metropolitan Correctional Center in New York City (MCC New
York). MCC New York houses pretrial inmates and is capable of
housing inmates who require enhanced security measures and
monitoring, like inmate Savage, in a separate, secure setting
away from other pretrial inmates.

Because MCC New York does not permit contact legal visits, inmate
Savage and counsel complained about his ability to communicate
about his defense while housed at MCC New York. In early 2010,
the BOP attempted to facilitate contact legal visits by bringing
inmate Savage to FDC Philadelphia once a month to meet with
counsel. Despite this effort, the contact legal visits only
occurred twice, in February and April 2010. The inmate and his
attorneys continued in their request for contact attorney visits.

In early 2011, the BOP advised the Court that inmate Savage would
be returned to FDC Philadelphia by March 2011, or six months
prior to the scheduled September 2011 trial date. The BOP
believed this would give inmate Savage more ready access to
counsel and remove the alleged "barriers" to him preparing his
defense.

In February 2011, FDC Philadelphia began modifying part of its
medical department to house inmate Savage for an extended period
of time. The modifications were intended to mimic an "enhanced,
secure housing area," like the separate, secure housing area in
MCC New York, which would meet the SAM restrictions and honor
inmate Savage's rights and privileges.

A091

Timothy Sullivan, Esq.
October 24, 2011
Page 3

The modifications included:

- sound proofing the negative pressure room and the adjacent medical observation room;

- fabricating metal security screens for the medical observation room to separate inmate Savage from his approved legal visitors

- creating an area within the medical observation room for inmate Savage to access the Electronic Law Library (Lexis) in order to perform legal research;

- installing fiber optic cable for the Electronic Law Library terminal;

- re-plumbing the sink, toilet and shower in the negative pressure room (where inmate Savage would be housed) to prevent him from communicating with other inmates through the plumbing fixtures;

- installing an internal telephone line to allow inmate Savage to communicate with his approved social visitors;

- retrofitting the medical department's library into a station for the correctional officer assigned to monitor inmate Savage;

- upgrading the "enhanced, secure housing area's" video monitoring system to allow remote monitoring of the entire area where inmate Savage is located; and

- building an interior wall to separate the "enhanced, secure housing area" from the medical department.

Lastly, after inmate Savage was transferred to FDC Philadelphia, counsel complained about the level of restraints on inmate Savage during the contact legal visits and requested that all restraints be removed. The BOP has allowed inmate Savage to meet with counsel wearing only hand restraints (the leg restraints and waist chain were removed). This adjustment of the level of inmate Savage's restraints recognizes the BOP's need to maintain security while allowing him to interact with counsel.

As these modifications demonstrate, the BOP has been flexible by insuring inmate Savage is able to prepare for trial while housed in a secure environment at FDC Philadelphia or any other federal

Sullivan, Esq.
24, 2011
4

institution. The BOP remains sensitive to inmate Savage's need to
prepare for his September 2012 trial.

If you have any questions or concerns, please contact me at 215-521-4058.

Sincerely,

Darrin Howard
Attorney Advisor

cc:   Hon. R. Barclay Surrick
      David Troyer, AUSA
      Henry J. Sadowski, Regional Counsel

# BRENNAN SULLIVAN & McKENNA LLP
### ATTORNEYS AT LAW

6305 IVY LANE, SUITE 700
GREENBELT, MARYLAND 20770
TELEPHONE 301.474.0044
FAX 301.474.5730

TIMOTHY J. SULLIVAN*
TSULLIVAN@BSM-LEGAL.COM
*ADMITTED IN MARYLAND & D.C.

October 28, 2011

**EX PARTE**
**VIA ELECTRONIC MAIL**

Honorable R. Barclay Surrick
United States District Court
8614 United States Courthouse
601 Market Street
Philadelphia, Pennsylvania 19106

RE:     *United States of America v. Kaboni Savage*
        **Criminal No. 07-550**

Dear Judge Surrick:

This letter will serve as a status report relating to our efforts seeking *pro bono* counsel to represent Mr. Savage in challenging the Special Administrative Measures and his current conditions of confinement.

I have spoken with Agnus Love of the Pennsylvania Institutional Law Project in Philadelphia and will be sending him background information for him to review in consideration of Mr. Savage's civil case. I have not heard from Gerald Zerkin, one of the Federal Death Penalty Resource Counsel, or Denny LaBoeuf at the ACLU Capital Project.

I will update the Court in two weeks.

Very truly yours,

/s/
Timothy J. Sullivan

TJS:mn
cc:     Kaboni Savage
        Christian Hoey  (via email only)

# BRENNAN SULLIVAN & MCKENNA LLP
### ATTORNEYS AT LAW

6305 IVY LANE, SUITE 700
GREENBELT, MARYLAND 20770
TELEPHONE 301.474.0044
FAX 301.474.5730

TIMOTHY J. SULLIVAN*
TSULLIVAN@BSM-LEGAL.COM
*ADMITTED IN MARYLAND & D.C.

December 8, 2011

**EX PARTE**
**VIA ELECTRONIC MAIL**

Honorable R. Barclay Surrick
United States District Court
8614 United States Courthouse
601 Market Street
Philadelphia, Pennsylvania 19106

**RE:**  *United States of America v. Kaboni Savage*
**Criminal No. 07-550**

Dear Judge Surrick:

This letter will serve as a status report relating to our efforts seeking *pro bono* counsel to represent Mr. Savage in challenging the Special Administrative Measures and his current conditions of confinement.

First, I apologize for the delay in providing a further status report. We have not met with any success in securing *pro bono* counsel despite our efforts. If Your Honor has any suggestions for us to act upon, please let us know.

Very truly yours,

/s/
Timothy J. Sullivan

TJS:mn
cc:    Kaboni Savage
        Christian Hoey  (via email only)

# BRENNAN SULLIVAN & MCKENNA LLP
ATTORNEYS AT LAW

6305 IVY LANE, SUITE 700
GREENBELT, MARYLAND 20770
TELEPHONE 301.474.0044
FAX 301.474.5730

TIMOTHY J. SULLIVAN*
TSULLIVAN@BSM-LEGAL.COM
*ADMITTED IN MARYLAND & D.C.

December 12, 2011

*EX PARTE*

## VIA ELECTRONIC MAIL AND REGULAR MAIL

Honorable R. Barclay Surrick
United States District Court
8614 United States Courthouse
601 Market Street
Philadelphia, Pennsylvania 19106

RE:    *United States of America v. Kaboni Savage*
       **Criminal No. 07-550**

Dear Judge Surrick:

On December 9, 2011, counsel for Mr. Savage advised the Court that we were at an impasse in securing *pro bono* counsel for Mr. Savage to address the SAM issue. Over the weekend, Mr. Hoey and I discussed a possible resolution which we now bring to the Court's attention for Your Honor's consideration.

The purpose of this letter is to request the Court appoint, pursuant to the Criminal Justice Act, an attorney to become part of the Kaboni Savage defense team whose responsibilities will include providing legal research and motions preparation for trial and penalty phase proceedings, managing and litigating, if necessary, Mr. Savage's SAM issues, and monitoring and assisting Mr. Savage in his pending §2255 petition pending in this Court before the Honorable Mary A. McLaughlin in *United States of America v. Kaboni Savage*, Criminal No. 04-CR-269-01 and Civil No. 11- CV-5399. In that matter, Mr. Savage filed a timely petition. On December 2, 2011, the government filed its response.

Honorable R Barclay Surrick
December 12, 2011
Page Two

Over the weekend, counsel spoke with Michael Wiseman, Esquire, who, as this Court may know, was the Chief of the Federal Community Defender Officer for the Eastern District of Pennsylvania, Defender Association of Philadelphia Capital Habeas Unit, and a Supervisory Assistant Federal Defender from 1995 until August 2011 when he left that office. Mr. Wiseman has extensive experience in litigating death penalty cases in this Commonwealth and in federal courts. Frankly, Mr. Wiseman seems to be uniquely qualified to assist Mr. Savage's counsel in providing critical defense functions in this highly complex federal death penalty case which will likely soon have twelve (12) homicides with the possibility of the death penalty upon conviction.

I have enclosed a copy of Mr. Wiseman's resume for the Court's review. In addition, Mr. Wiseman has advised me that he believes he is a member of the CJA Panel for the Court.

The Court has previously indicated that it would consider the appointment of a third counsel for Mr. Savage. Counsel had advised the Court given the complexity of this case, the span of time of criminal conduct alleged in the Third Superseding Indictment from late 1997 to April 2010 and the homicides of twelve individuals that the active participation of an experienced federal criminal practitioner with familiarity with the Court is warranted when this case proceeds to trial. The Court is respectfully advised that we do not believe Mr. Wiseman should be appointed for active trial participation. Rather, we believe that Mr. Wiseman's skills will be most beneficial to the defense and the Court in the role that we have proposed for him.

Thank you for your consideration of this request.

Very truly yours,

/s/
Timothy J. Sullivan

/s/
Christian J. Hoey

TJS:mn
enclosure
cc:     Kaboni Savage

A097



**U.S. Department of Justice**

Federal Bureau of Prisons

*Federal Detention Center*

*700 Arch Street*
*Philadelphia, Pennsylvania 19106*

January 30, 2012

Hon. R. Barclay Surrick
United States District Court
Eastern District of Pennsylvania
601 Market Street
Philadelphia, PA 19106

Re:    United States v. Kaboni Savage
       Cr. No. 07-0550 (E.D. Pa.)

Dear Judge Surrick:

I am writing to provide Your Honor with an update of inmate
Kaboni Savage's contact legal visits with his attorneys at FDC
Philadelphia.

On October 26, 2011, inmate Savage was moved from FDC
Philadelphia to the Metropolitan Correctional Center in New York
City (MCC New York). His attorneys have met with him at MCC New
York on the following dates after he was moved: November 2, 2011;
November 11, 2011; November 16, 2011; December 9, 2011; December
31, 2011; January 4, 2012; January 16, 2012; and
January 24, 2012.

In light of MCC New York's prohibition on contact legal visits,
the Bureau of Prisons agreed to have inmate Savage brought to FDC
Philadelphia once a month to have a contact legal visit. Despite
this accommodation, his attorneys have requested an additional
contact legal visit with inmate Savage once. On November 18, 2011,
they requested through the U.S. Attorney's Office to have a
contact legal visit with inmate Savage. This visit was scheduled
for November 30, 2011, but inmate Savage refused to leave MCC New
York to meet with his attorneys.

To date, his attorneys have not requested another contact legal
visit.

JN SULLIVAN & MCKERNA

FEB 0 6 2012

RECEIVED

Barclay Surrick

e 2

If you have any questions, please contact me at 215-521-4058.

Sincerely,

Darrin Howard
Attorney Advisor

cc:   David Troyer, AUSA
      Christian Hoey, Esq.
      Timothy Sullivan, Esq.

# BRENNAN SULLIVAN & MCKENNA LLP

ATTORNEYS AT LAW

6305 IVY LANE, SUITE 700
GREENBELT, MARYLAND 20770
TELEPHONE 301.474.0044
FAX 301.474.5730

TIMOTHY J. SULLIVAN*
TSULLIVAN@BSM-LEGAL.COM
* ADMITTED IN MARYLAND & D.C.

February 9, 2012

Honorable R. Barclay Surrick
Senior United States District Judge
United States District Court
 for the Eastern District of Pennsylvania
601 Market Street
Philadelphia, Pennsylvania 19106

RE:    *United States v. Kaboni Savage*
       **Criminal No. 07-550**

Dear Judge Surrick:

The January 30, 2012 letter from the Bureau of Prisons' Attorney Advisor Darrin Howard providing the Court "with an update of inmate Kaboni Savage's contact legal visits with his attorneys at FDC Philadelphia" merits a response.

First, there appears to be no person in the Federal Bureau of Prisons who has the authority to confirm whether or not Mr. Savage will be housed on the second floor of FDC-Philadelphia when he is transported for the contact attorney visits. Without such an assurance that he will be housed on the second floor SAM unit, Mr. Savage believes that he will be housed in a "dry" cell and will not be afforded meaningful attorney contact visits. This is the reason Mr. Savage refused the November 30, 2011 trip. Mr. Hoey's efforts to informally resolve this issue have not met with success.

Second, Mr. Howard's statement of benevolence to have Mr. Savage "brought to FDC Philadelphia once a month to have a contact legal visit" is a fiction. Counsel cannot get a firm date for "security reasons" and maybe can narrow a specific week of a month. Therefore, one supposes counsel must wait for a designated week from the Federal Bureau of Prisons and sit outside 700 Arch Street to guess what day Mr. Savage has or will arrive. Mr. Savage's attorneys simply cannot manage their schedules or case preparation by waiting for the Federal Bureau of Prisons to decide which day of a week or of a month works for them. This "accommodation" is meaningless. Assuming Mr. Savage will come; it appears too much to give dates certain to counsel when they can have contact legal visits with Mr. Savage.

Honorable R. Barclay Surrick
February 9, 2012
Page Two

Third, counsel will continue to travel to MCC-New York to meet with Mr. Savage in a non-contact setting and will continue to do so since there is little likelihood, if any at all, for contact legal visits at FDC Philadelphia. While this is hardly ideal, quite expensive, time-consuming and replete with challenges that the Court will likely have to manage at some point in time, it simply has to be done in order to meet the Court's schedule.

Finally, counsel for Mr. Savage wish to make it crystal clear that they have indeed "not requested another contact legal visit" since it is impracticable and impossible to do so with the Federal Bureau of Prisons. Most respectfully, even with the Court's tireless intervention, any contact legal visits will likely not occur until Mr. Savage is returned to the Eastern District of Pennsylvania for trial.

In that regard, we respectfully ask the Court to consider this letter as a renewed request to have Mr. Savage returned to FDC-Philadelphia as soon as possible.

Very truly yours,

Timothy J. Sullivan

Christian J. Hoey    /TJS

TJS:mn
cc:    Kaboni Savage
       Darrin Howard, Attorney Advisor
       David Troyer, AUSA
       John Gallagher, AUSA



U.S. Department of Justice

*United States Attorney*

*Eastern District of Pennsylvania*

David E. Troyer, Assistant U.S. Attorney
Direct Dial (215) 861-8475
Fax (215) 861-8618
Email Address: david.troyer@usdoj.gov

615 Chestnut Street
Suite 1250
Philadelphia, Pennsylvania 19106-4476
(215) 861-8200

March 13, 2012

Honorable R. Barclay Surrick
Judge, United States District Court
8614 United States Courthouse
601 Market Street
Philadelphia, PA 19106-1752

Re: *United States v. Kaboni Savage, et al., #07-550*

Dear Judge Surrick,

The government is requesting an unopposed extension of time in which to file its responses to the recent defense motions in this case. At or close to the deadline for defense motions, counsel for the defendants Kaboni Savage, Robert Merritt, and Steven Northington filed approximately 52 motions. Government counsel are working to respond to all defense motions. Given the variety of the motions, some of these responses are taking longer than others to draft. It is doubtful that the government can file adequate responses within the current deadline.

The current deadline for the government to respond to the motions filed by the above three defendants is March 20, 2012. However, the deadline for filing motions as to the defendant Kidada Savage is March 21, 2012. Thus, the day after government responses are due, counsel for Kidada Savage may, and will in all probability, file motions seeking some of the same relief, which motions may or may not articulate additional grounds than those filed by the co-defendants. The government's responses to Kidada Savage's motions are currently due on April 9, 2012. Thus, in order to properly and efficiently respond to all motions, the government suggests that its responses to all motions be due on Monday, April 16, 2012.

The government also suggests that this Court postpone the hearings on these motions. Currently, hearings are scheduled to commence on Thursday, April 12, 2012. Even if the Court were to grant the government an extension only until April 9th, then the Court would have has little as 72 hours, or even less, to read and digest some of the government's responses. This would be less than optimal for all parties. Government counsel are of the belief that much less time will be required for evidentiary hearings than is suggested by defense counsel. Thus, a careful review of the government's responses may actually save the Court substantial time. Given the bulk of pleadings, and the various schedules of counsel, the government suggests that the hearings be postponed until the beginning of June 2012.

A102

I have discussed this proposal with defense trial counsel, all of whom have no objection to the government's requests. Furthermore, counsel for at least one defendant has indicated that he expects to file approximately three more motions, which would require additional responses from the government. Thank you for your consideration of our request.

Respectfully submitted,

ZANE DAVID MEMEGER
United States Attorney

David E. Troyer
Assistant United States Attorney

cc: All counsel of record

2

A103

JUN-04-2012  17:59    JUDGE R. BARCLAY SURRICK

P. 01/05

# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF PENNSYLVANIA
8614 UNITED STATES COURTHOUSE
INDEPENDENCE MALL WEST
SIXTH AND MARKET STREETS
PHILADELPHIA, PENNSYLVANIA 19106-1741

Chambers of
R. BARCLAY SURRICK
United States District Judge

(267) 299-7630

June 4, 2012

David Troyer, Esq.                William Spade, Esq.        Thomas Egan, Esq.
John Gallagher, Esq.              215-732-0124               610-277-5823
United States Attorney's Office
215-861-8618                      Christopher Hoey, Esq.     Christopher Phillis, Esq.
                                  610-993-8472               215-545-0956

William Bowe, Esq.                Paul George, Esq.          Timothy Sullivan, Esq.
215-731-9912                      215-735-0599               301-474-5730

Theresa Whalen, Esq.
301-650-1789

        Re: United States v. Kaboni Savage, et al.
            Criminal Number 07-550

Dear Counsel:

        My last review revealed that there has been approximately sixty-two motions filed in this
matter. A number of these motions are suppression motions that may require the presentation of
evidence and testimony. I have attached a list of the motions that may require such attention. It
is my intention to simply address these motions in the order that they appear on the list.

        I have also attached a list of other motions that may be addressed on the submissions with
oral argument. Again, I intend to simply address these motions in the order that they appear on
the list. If Counsel can agree that any of these motions can be decided on the submissions alone,
please advise and they will be deleted from the list.

                                        Yours very truly,

                                        R. Barclay Surrick, J.

A104

*Consolidate motion w/ same AFF.s*

## Savage Pretrial Motion Hearing - June 11, 2012

### Suppression Motions

1. Kaboni Savage's Motion to Suppress Intercepted Wire and Oral Communications (ECF No. 386)
   a. Supplemental Motion filed on May 30, 2012 - SHU (ECF No. 500)
   b. Supplemental Motion filed on May 30, 2012 - Land Line (ECF No. 501)

2. Kaboni Savage's Motion for Order for *Starks* Hearing re: to challenge the identification and authenticity of tapes the Government intends to introduce at trial (ECF No. 393)

3. Kaboni Savage's Motion to Preclude Inflammatory Photographs, or in the Alternative, Present Photographs in Less Inflammatory Manner (ECF No. 395)  *Bodies*

4. Kaboni Savage's Motion to Preclude Incriminating Statements Obtained in Violation of *Massiah, et al.* (ECF No. 396)

5. Kaboni Savage's Motion to Suppress Physical Evidence Seized from 3510 Palmetto Street and Request for a *Franks* Hearing (ECF Nos. 398, 415)

6. Northington's Motion to Suppress Physical Evidence (ECF Nos. 399, 401)

7. Kaboni Savage's Motion to Suppress Physical Evidence Seized from 3643 North Darien Street and Request for a *Franks* Hearing (ECF No. 400)

8. Northington's Motion to Suppress Physical Evidence Seized from 3643 North Darien Street (ECF No. 402)

9. Kaboni Savage's Motion to Suppress Physical Evidence Seized from Devon Self Storage and Request for a *Franks* Hearing (ECF No. 405)

10. Kaboni Savage's Motion to Suppress Physical Evidence Seized from Village of Stoney Run Apartment and Defendant's 1997 Mercury Villager and Request for a *Franks* hearing (ECF Nos. 404, 418)

*G wants h*   11. Kidada Savage's Motion to Suppress Evidence Seized and Request for a *Franks* Hearing (ECF No. 443)

*G wants h*   12. Kidada Savage's Motion to Suppress Statement (ECF No. 444)

Other Motions

1.    Merritt's Motion for Discovery (ECF No. 138)

2.    Merritt's Motion for Early Disclosure of *Jencks* Material (ECF No. 140)

3.    Merritt's Motion for Expedited Resolution of Pending Motions for Discovery and Disclosure of *Jencks* Material (ECF No. 158)

4.    Merritt's Motion for Expedited Hearing on Pending Discovery Motions (ECF No. 179)

5.    Merritt's Supplemental Motion for Production of Discovery and Early Disclosure of *Jencks* Material (ECF No. 207)

6.    Merritt's Motion *in Limine* to Preclude Evidence of Prior Bad Acts (ECF No. 354)

7.    Merritt's Motion to Strike Surplusage (ECF No. 355)

8.    Merritt's Motion for Penalty Phase Discovery (ECF No. 362)

9.    Northington's Motion to Sever (ECF No. 363)

10.    Northington's Motion to Strike Aggravating Circumstances or Compel Discovery (ECF No. 364)

11.    Northington's Motion for Jury Selection (ECF No. 366)

12.    Merritt's Motion to Strike or Modify Notice of Intent to Seek the Death Penalty (ECF No. 368)

13.    Northington's Motion for Discovery to Support Motion to Strike Death Penalty (ECF No. 369)

14.    Northington's Motion to Strike the Federal Death Penalty Notice (ECF No. 370)

15.    Northington's Motion for Discovery of Information Concerning Prior Race Based Peremptory Strikes (ECF No. 371)

16.    Northington's Motion for Discovery of Information Concerning the Confection of the Grand Jury and Petit Jury Venire (ECF No. 372)

17.    Kaboni Savage's Motion to Strike the Revised Notice of Intent (ECF No. 373)

18.    Kaboni Savage's Motion to Change Venue (ECF No. 376)

A106

19. Kaboni Savage's Motion to Establish Preemptory Challenge Protocols During Jury Selection Process (ECF No. 377)

20. Kaboni Savage's Motion for Twenty Preemptory Challenges to Exercise Separately from Co-Defendants (ECF No. 378)

21. Kaboni Savage's Motion to Strike Revised Notice of Intent to Seek the Death Penalty Because of Discrimination Based on Race and for Discovery of Information Pertaining to the Government's Capital Charging Practices in this District (ECF No. 379)

22. Kaboni Savage's Motion to Declare the Federal Death Penalty Act Unconstitutional (ECF No. 380)

23. Kaboni Savage's Motion to Strike the Revised Notice of Intent to Seek the Death Penalty for Violation of Customary International Law and Standards (ECF No. 381)

24. Kaboni Savage's Motion to Sever Counts (ECF N0. 383)

25. Kaboni Savage's Motion for Disclosure of *Jencks* Material (ECF No. 385)

26. Kaboni Savage's Motion to Compel Government and its Investigative Agents to Preserve and Retain Original Handwritten Notes, Memos, and Summaries Compiled in Connection with this Investigation and Prosecution (ECF No. 390)

27. Kaboni Savage's Motion to Exclude Alleged Co-Conspirators' Statements (ECF No. 391)

28. Kaboni Savage's Motion for Order in Opposition to Anticipated Government Motion to Introduce FRE 404(b) Evidence Statements (ECF No. 392)

29. Kaboni Savage's Motion to Compel Production of Non-*Jencks* Act Discovery (ECF No. 394); Supplemental Motion to Compel Production of Non-*Jencks* Act Discovery (ECF No. 503)

30. Northington's Motion to Increase Pool of Eligible Jurors (ECF No. 402)

31. Northington's Motion to Secure Jury from the County of the Offense Pursuant to 18 U.S.C. § 3225 (ECF No. 403)

32. Northington's Motion to Increase Pool of Eligible Jurors and Request for Hearing (ECF No. 406)

33. Northington's Motion to Exclude Prior Convictions (ECF No. 428)

34. Merritt and Northington's Joint Motion to Adopt Proposed Jury Questionnaire (ECF No. 429)

A107

35.   Kidada Savage's Motion to Sever (ECF No. 433)

36.   Kidada Savage's Motion Requesting that the United States Provide Notice of Rule 404(b) Evidence it Intends to Use at Trial (ECF No. 440)

Argue  37.   Government's Motion for Anonymous Jury Panel and Heightened Jury Selection (ECF No. 441); Kaboni Savage's Motion to Strike Government's Motion (ECF No. 446)

12.2

Kidada motion to continue



A108

**From:**            Timothy Sullivan
**Sent:**            Monday, June 25, 2012 11:34 AM
**To:**              mike_finney@paed.uscourts.gov
**Cc:**              Christian Hoey; Brett Cook; William Purpura
**Subject:**         Savage - appointment of counsel


Mike - Mr. Purpura is anxious to receive word from the Court on his appointment since each day counts now.  Can you check with the Court on the status and let us know what, I anything, we need to do to answer any questions. Thanks.

Tim

Sent from my iPhone

# BRENNAN SULLIVAN & McKENNA LLP

ATTORNEYS AT LAW

————

6305 IVY LANE, SUITE 700
GREENBELT, MARYLAND 20770
TELEPHONE 301.474.0044
FAX 301.474.5730

————

TIMOTHY J. SULLIVAN*
TSULLIVAN@BSM-LEGAL.COM

*ADMITTED IN MARYLAND & D.C.

July 6, 2012

**ELECTRONIC MAIL AND REGULAR MAIL**

Honorable R. Barclay Surrick
Senior United States District Judge
United States District Court
  for the Eastern District of Pennsylvania
601 Market Street
Philadelphia, Pennsylvania  19106

**RE:    United States v. Kaboni Savage**
**Case No. 07-0550**

Dear Judge Surrick:

The purpose of this letter is to respectfully request a status as to the eight interim CJA-30 compensation claim covering the period of January 1, 2012 through March 31, 2012.  This voucher was submitted to the Court on or about April 17, 2012.

This issue is presenting a true hardship for the undersigned and his law firm.  As the Court knows, providing effective representation for Mr. Savage and managing this complex death penalty case is difficult enough but not getting paid for services provided some 6-7 months ago is, to say the least, quite problematic.  If the Court wishes to discuss this matter, I am available at Your Honor's convenience.

Very truly yours,

Timothy J. Sullivan

TJS:mn
cc:  Christian Hoey, Esq.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA
U.S. COURTHOUSE
INDEPENDENCE MALL WEST
601 MARKET STREET
PHILADELPHIA, PA 19106-1797

August 10, 2012

Timothy J. Sullivan, Esq.
Brennan, Sullivan & McKenna
6305 Ivy Lane, Suite 700
Greenbelt, MD 20770

RE: United States v. Kaboni Savage
CRIMINAL ACTION NO. 07-550

Dear Mr. Sullivan:

Enclosed you will find a copy of a letter from your client to the Court. The letter was received
in Judge Surrick's chambers on August 9, 2012. Please advise.

Very truly yours,

Michael Finney
Deputy Clerk to Judge R. Barclay Surrick

BRENNAN SULLIVAN & MCKENNA

AUG 1 7 2012

RECEIVED

RECEIVED

AUG 9 2012

For Reappointment of Counsel or (accept my pro-se representation request (6th amen)

To: The Hon. Judge                    6-24-12
R. Barclay Surrick

RECE[IVED]
AUG 9 2012

The court is well aware of my (present appointed attorney) Mr Tim Sullivan future appointment to a judgeship. He has been eagerly anticipating his confirmation. Mr. Sullivan is preoccupied by this future appointment. He has admittedly been underperform-ing as it pertains to my case. He knows nothing about the basic facts. I understand Mr. Sullivan's position. I ask the court to reappoint concerned, dedicated counsel so my sixth amendment rights can be protected. He also constantly complains the court does not compensate him and this is anothe reason he does not come to see me unless we h a hearing. I'm constantly reminded the court has no compensated him. As of now he's been wholly ineffect. He cares nothing about my case.

My other appointed attorney Mr. Hoey has not been to see me in over a month and a half. He also complains about being compensated. I have problems getting my discovery from him. He recie some discovery from the government on July secon I have yet to recieve it, its now the twenty fourth of July as I write this motion.

A112

Mr. Hoey (as well as Mr. Sullivan) are compulsive liars & do not trust! I ask the court to appoint new counsel "immediately". I constantly have to hear about the court(s) not compensating them (my attorneys) and how it effects their practice. They refer to cases such as mine as "Practice Killers". They complain about having to use their personal monies to travel to see me.

I understand and know my history and Americas. Especially, its judicial system well enough to know that I am viewed as a "Nigger boy" who has no constitutional rights that should be protected and I'm presumed guilty (automatically) until I'm incarcerated, Lynched and/or acquitted I ask the court "How can I recieve proper representation if my attorneys are not being compensated, constantly complaining and has done nothing meaningful as it pertains to my case (pending) I haven't seen Mr. Sullivan in almost two months. He told me the last time we spoke he was trying to recuse himself ① Because of his judgeship and ② Because the court had a problem with compensating him proper. This is a clear sixth amendment violation. I ask the court to (Please) recuse both of my attorneys and reappoint new counsel immediately.

I ask the court to appoint Mr Tariq Karim-El-Shabazz and Mr Anthony Ricco as soon as possible. If I have to keep my present attorneys because the court refuses to recuse or reappoint new counsel I ask the court now (if that's the case) to accept my motion for pro se representation under Farretta v. Calif exercising my sixth amendment rights(s)

My investigators also constantly complain about not being compensated properly and because of that they never come to speak to me nor have they done anything remotely close to investigating. Mr. Davis has not been to see me in over a month and a half. Ms Angela Valdez on the other hand deserves no compensation I met her once, asked her to do simple task that was in February of this year (the 4th) I haven't seen or spoke to her since. She has done nothing asked of her by my attorneys or me. I ask the court to reappoint new investigators as well. Ms. Valdez does not deserve a penny. Each and everyone of my attorneys as well as my other investigator complains constantly about her and her lack of effort.

She's allegedly been working on another case in Washington DC. This is the excuse/lie I got for not seeing her. Six months and she's done nothing!! What she was asked to do, I could do myself if I wasn't treated like a jewish man waiting to be put inside a oven at auswitz (no rights at all) Just waiting to DIE!! For the sake of this terrible economy Please don't compensate her a dime.

I'm also dealing with a bifurcated defense. Mr Sullivan and Mr Hoey do not see eye to eye. They have no communication and the other constantly complains about the other. Mr Hoey claims Mr Davis as "his" investigator and Mr. Sullivan claims Ms. Valdez as his. They are suppose to be apart of my defense team not individuals and/or seperate appendages. Mr Davis does not get along with Ms Valdez and vice versa. It was a terrible idea to get a investigator from Baltimore. She knows nothing about Philadelphia. And Mr. Davis refuses to work with her. So in essence I have one investigator who has limited resources and is relatively new to the field and has little to no resources. If my attorneys are not going to work in unison, whats the sense in having them??

In closing I ask the court not to postpone my trial date. it's a tactic thats (trying) to be used so they can (my attorneys) can get up to speed on the facts. However I do not Trust either of them. If a man/attorney does not want to be apart of a difense team why would I want him to defend me or why would the court keep him on my case (more importantly!)

Katani Savage

55237-066

P.S    The Double jeopardy motion filed by my attorney and adverbially denied by this court was suppose to be appealed. They never attered ed to appeal. I beg the court to compel them to appeal that ruling.

I also beg this court to stop having ex-parte attorney/prosecutor meetings without me or my co-defendants. (We) as Black people who understands and knows this country's history (and present day attitude) and the avert Racism that exist (sometimes covert) Do not trust this system. History tells us, anytime that many whitemen can get together to decide a Black persons fate it never ends well for (us). Please again I ask the court to have us there at whatever meetings, hearings etc... that take place pertaining to any of us (me and my codefendants). I do no trust my attorneys or investigators. They are all habitual liars. The lead agents (F.B.I) are worse liars and (RACIST) as was proved at the 6-11-12 hearing. Refuse to let me see my children. I ask the court to appoint new counsel and address these Racist conditions I'm under (Please) I haven't seen my kids in over a year. This corrupt Racist system has not changed since 1609 AmeriKKKA

I will not go to trial with these attorney or investigators. They have done nothing in over three years.



U.S. Department of Justice

*United States Attorney*

*Eastern District of Pennsylvania*

John Gallagher
Assistant U.S. Attorney
Direct Dial: (215) 861-8636
Facsimile: (215) 861-8618

615 Chestnut Street
Suite 1250
Philadelphia, Pennsylvania 19106-4476
(215) 861-8200

September 10, 2012

Christian J. Hoey, Esquire
50 Darby Road
Paoli, PA 19301-1416

Timothy J. Sullivan, Esquire
6305 Ivy Lane, Suite 700
Green Belt, MD 20770

William R. Spade, Jr., Esquire
1525 Locust Street, 14th Floor
Philadelphia, PA 19102

Paul M. George, Esquire
239 South Camac Street
Philadelphia, PA 19107

Thomas C. Egan III, Esquire
621 Swede Street
Norristown, PA 19401

William L. Bowe, Esquire
1420 Walnut Street, Suite 1400
Philadelphia, PA 19102

Christopher P. Phillips, Esquire
1518 Walnut Street, Suite 1406
Philadelphia, PA 19102

Teresa Whalen, Esquire
801 Wayne Avenue, Suite 400
Silver Spring, MD 20910

RE: *United States v. Kaboni Savage, et al.*, Criminal No. 07-550

Dear Counsel:

Enclosed please find a computer disk that constitutes Exhibit E of our Reply to Defendant Merritt's Opposition to the Government's Motion to Admit Tape Recordings ("*Starks* Motion"). The Government's Reply was filed on this same date.

As discussed in the Reply, there has been the need to revise a number of the transcripts provided in the original *Starks* Motion. Some of the revisions were based on recommendations made by Defendant Kaboni Savage. Other revisions were based on complaints raised in Defendant Merritt's Motion to Exclude Evidence of Cell Block Conversations. Finally, additional revisions became necessary when the government realized that a limited number of previously provided transcripts were drafts rather than final documents. As to this last category of revisions, you will find an additional file on this disk, in which the revised portions of the transcripts have been highlighted for easier identification.

BRENNAN SULLIVAN & MCKENNA

SEP 1 3 2012

RECEIVED

1

As to the changes recommended by Attorney Hoey on behalf of Kaboni Savage, we have accepted the vast majority of his recommendation with the limited exceptions discussed below.

Thomas Cellphone Wire:
Call 43 (Defense changes partially accepted)
Call 606 (Not accepted)
Call 1003 (Defense changes partially accepted)
Call 4340 (Not accepted)

FDC Visiting Room:
Session 7-5 (Defense changes partially accepted)
Session 9-2 (Defense changes partially accepted)

Cellblock Wire:
Session 13 (the Government does not understand the issue being raised here)
Session 166 (Not accepted)
Session 224 (Defense changes partially accepted)
Session 222 (Defense changes partially accepted)
Session 221 (Not accepted)
Session 1000 (Defense complaint that the audio was missing is inaccurate)
Session 1121 (Defense changes accepted; session now begins with "KS: These rats deserve to die, right or wrong?")
Session 1181 (Defense changes partially accepted)

Please feel free to contact us with any follow-up questions or concerns. Moreover, the government again invites feedback as to any additional recommended changes.

Very truly yours,

ZANE DAVID MEMEGER
United States Attorney

/s/ John Gallagher
JOHN GALLAGHER
Assistant United States Attorney

cc: Hon. R. Barclay Surrick



U.S. Department of Justice

*United States Attorney*

*Eastern District of Pennsylvania*

*David E. Troyer*
*Senior Litigation Counsel*
*Direct Dial:  (215) 861-8475*
*Facsimile:    (215) 861-8618*

*615 Chestnut Street*
*Suite 1250*
*Philadelphia, Pennsylvania 19106-4476*
*(215) 861-8200*

September 14, 2012

Christian J. Hoey, Esquire
50 Darby Road
Paoli, PA  19301-1416

Timothy J. Sullivan, Esquire
6305 Ivy Lane, Suite 700
Green Belt, MD  20770

William R. Spade, Jr., Esquire
1525 Locust Street, 14th Floor
Philadelphia, PA  19102

Paul M. George, Esquire
239 South Camac Street
Philadelphia, PA  19107

Thomas C. Egan III, Esquire
621 Swede Street
Norristown, PA  19401

William L. Bowe, Esquire
153 East Wolfert Station Road
Mickleton, NJ  08056-1435

Christopher P. Phillips, Esquire
1518 Walnut Street, Suite 1406
Philadelphia, PA 19102

Teresa Whalen, Esquire
801 Wayne Avenue, Suite 400
Silver Spring, MD  20910

– via email –

RE:  *United States v. Kaboni Savage, et al.,* Criminal No. 07-550

Dear Counsel:

There has been a request on the part of Ms. Whalen, counsel for Kidada Savage, to view physical evidence in this case. The government has repeatedly asked defense counsel to make arrangements to view evidence, if they choose to do so. Ms. Whalen's request is the only one we have received. Thus, we will make the physical evidence in the government's possession available for inspection next Thursday, September 20, 2012 at 10:00 a.m. If necessary, the evidence can also be available for inspection on Friday, September 21, 2012 at 10:00 a.m. The evidence can be viewed at the FBI office in Philadelphia, on the 8th floor of the Green Building. All counsel of record are invited to attend. This will be the only time that the evidence will be available for inspection until the evidence is presented at trial. As I have repeatedly advised in our discovery letters, last-minute requests to view evidence will not be honored.

1

I am presenting to the Clerk's Office today a list of names of people related to this case, to be included with the jury questionnaire (see attachment). The questionnaire references such a list. Members of the jury panel will be asked to review the list, to determine if they are familiar with anyone associated with this case. The list does not exclusively contain witnesses; rather, it contains the names of anyone who may conceivably be mentioned at trial, either in the guilt phase or the penalty phase. As such, the names of the people on this list should not be entered into the public domain, and should not be shared with others.

As I have received no reciprocal discovery to date from any of you, I do not know what witnesses you might call, or what other names you might reference in either cross examination or in the presentation of your respective cases. Thus, I ask that you please review the attached list immediately, and supplement it with whatever other names you believe may arise at trial. As you can see from the attached list, I believe we should err on the side of caution, and be over-inclusive. None of us wants to be faced with the proposition of a juror raising his or her hand halfway through trial, to inform the Court of the jurors' knowledge of, or relationship to, someone whose name has just been mentioned. Please act on this immediately, as copies of the list must be made for each potential juror. I have been asked to submit this list today. This list is not public information, and shall not be docketed.

Last, although I am still culling through and redacting some reports and other materials, I anticipate sending you the remaining Jencks materials on Monday, as planned.

Very truly yours,

ZANE DAVID MEMEGER
United States Attorney


_/s/ David E. Troyer_
David E. Troyer
Assistant United States Attorney

cc: Hon. R. Barclay Surrick, U.S. District Judge

**From:**          Timothy Sullivan
**Sent:**          Friday, September 21, 2012 5:16 PM
**To:**            'angela_pappas@paed.uscourts.gov'
**Cc:**            david.troyer@usdoj.gov; 513hoey@verizon.net; William Spade (will@spadelaw.com);
                   pgeorge@mckinneyandgeorge.com; tom101861@aol.com; wlbcrimlaw@comcast.net;
                   Christopher Phillips (cphillips@bartonandphillips.com); 'whalenesq@aol.com'; Brett
                   Cook
**Subject:**       Kaboni Savage witness list  - names
**Attachments:**   savage - list of names for trial and penalty.pdf


As directed by the Court yesterday, please find Kaboni Savage's list of names for the trial and penalty phase.

Tim

Timothy J. Sullivan, Esq.
Brennan Sullivan & McKenna LLP
6305 Ivy Lane, Suite 700
Greenbelt, Maryland 20770
301-474-0044    (telephone)
301-474-5730    (facsimile)
tsullivan@bsm-legal.com

**CONFIDENTIAL COMMUNICATION**
This e-mail is privileged, confidential and solely for the use of the intended recipient.  If you are not the intended recipient, do not read, distribute or reproduce this e-mail.  The reading, distribution or reproduction of this e-mail by an unintended recipient is prohibited and may be a violation of law.  If you have received this e-mail in error, please delete it and call 301.474.0044.  Thank you.

LAW OFFICES
RUBINO & HOEY, LLC
50 DARBY ROAD
PAOLI, PA 19301-1416

PAUL J. RUBINO
CHRISTIAN J. HOEY

TELEPHONE (610) 647-5151
FAX (610) 993-8472
contact@rubino-hoey.com

September 26, 2012

**VIA FACSIMILE TRANSMISSION
AND REGULAR U.S. MAIL**

The Honorable R. Barclay Surrick
United States District Judge
United States Courthouse
601 Market Street, Room 8614
Philadelphia, PA 19106

Re:   U.S.A. vs. Kaboni Savage, et al

Dear Judge Surrick:

Regarding the above noted matter, I enclose herein, Mr. Savage's *Ex Parte* Motion to Appoint A Replacement Fact Investigator, namely, Christopher McMullin. The current/former fact investigator, Angela Valdez, of Baltimore, Maryland, has failed to pursue the guilt-phase fact investigations which she has been asked to perform. Moreover, because of her location in Baltimore, Maryland, she has spent very little time in Philadelphia pursuing Mr. Savage's guilt-phase investigation and has had very little contact with Mr. Savage despite this Court approving unrestricted access to Mr. Savage at the Federal Detention Center. I ask that the Court consider appointing Mr. McMullin, forthwith, as there are many guilt-phase witnesses and investigations to complete in advance of trial.

I am happy to provide the Court additional information upon request. Thank you for your kind attention to this matter.

Very truly yours,

Christian J. Hoey

CJH:aj
Enclosure

cc:   Kaboni Savage - *Via regular mail, with enclosure*
      Timothy J. Sullivan, Esquire - *Via fax and regular mail, with enclosure*

A123

## UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF PENNSYLVANIA
8614 UNITED STATES COURTHOUSE
INDEPENDENCE MALL WEST
SIXTH AND MARKET STREETS
PHILADELPHIA, PENNSYLVANIA 19106-1741

*Chambers of*
*R. BARCLAY SURRICK*
*United States District Judge*

October 2, 2012

(267) 299-7630

David Troyer, Esq.
John Gallagher, Esq.
United States Attorney's Office
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106

Timothy J. Sullivan, Esq.
6305 Ivy Lane, Suite 700
Green Belt, MD 20770

Christian J. Hoey, Esq.
50 Darby Road
Paoli, PA 19301-1416

Paul M. George, Esq.
239 South Camac Street
Philadelphia, PA 19107

William R. Spade, Jr., Esq.
1525 Locust Street, 14th Floor
Philadelphia, PA 19102

William L. Bowe, Esq.
153 East Wolfert Station Road
Mickleton, NJ 08056-1435

Thomas C. Egan III, Esq.
621 Swede Street
Norristown, PA 19401

Teresa Whalen, Esq.
801 Wayne Avenue, Suite 400
Silver Spring, MD 20910

Christopher P. Phillips, Esq.
1518 Walnut Street, Suite 1406
Philadelphia, PA 19102

> *Re: United States v. Kaboni Savage, et al.*
> *Criminal Number 07-550*

Dear Counsel:

Enclosed are the discovery materials referenced in the Court's October 2, 2012
Memorandum and Order granting in part, and denying in part, Defendant Steven Northington's
Motion for Discovery of Information Concerning the Confection of the Grand and Petit Jury
Venire, and denying Defendant Steven Northington's Motion to Secure Jury from the County of
Offense Pursuant to 18 U.S.C. § 3235.

Yours very truly,

R. Barclay Surrick, J.

Enclosures

A124

**From:** michael malloy [mailto:burrcat@msn.com]
**Sent:** Friday, October 05, 2012 2:46 PM
**To:** Timothy Sullivan; 'Nicholas Mansi' (nmansi@bop.gov) ; Darrin Howard ; david.troyer@usdoj.gov ; kevin.lewis@ic.fbi.gov ; angela_pappas@paed.uscourts.gov ; Timothy Sullivan; nmansi@bop.gov ; d3howard@bop.gov ; david.troyer@usdoj.gov ; kevin.lewis@ic.fbi.gov ; angela_pappas@paed.uscourts.gov
**Cc:** Brett Cook; 513hoey@verizon.net ; Brett Cook; 513hoey@verizon.net
**Subject:** Re: Kaboni Savage, 07-550

I have not yet spoken to mrs savage. In light of the fact that the court has appointed me because she may have 5th amendment issues I would request that she not speak to her don until I hasn't had a chance to speak to her. I will let u know as soon as I heart from her and keep u posted Sent from my Droid Charge on Verizon 4G LTE


-----Original Message-----
From: Timothy Sullivan
Sent: 10/5/2012 6:35:28 PM
To: 'Nicholas Mansi' (nmansi@bop.gov) , Darrin Howard , david.troyer@usdoj.gov , kevin.lewis@ic.fbi.gov ,
angela_pappas@paed.uscourts.gov , burrcat@msn.com
Cc: Brett Cook , 513hoey@verizon.net <513hoey@verizon.net>
Subject: Kaboni Savage, 07-550

As some of you know, we are trying to take the deposition of Barbara Savage next week on October 11, 2012 with the Court's approval.  I just spoke with Mrs. Savage who needs to speak to her son Kaboni about the deposition.  Could the necessary arrangements be made as soon as possible to allow Mr. Savage to place and have a telephone call with his mom.

Thanks.

Timothy J. Sullivan, Esq.
Brennan Sullivan & McKenna LLP
6305 Ivy Lane, Suite 700
Greenbelt, Maryland 20770
301-474-0044    (telephone)
301-474-5730    (facsimile)
tsullivan@bsm-legal.com

**CONFIDENTIAL COMMUNICATION**
This e-mail is privileged, confidential and solely for the use of the intended recipient.  If you are not the intended recipient, do not read, distribute or reproduce this e-mail.  The reading, distribution or reproduction of this e-mail by an unintended recipient is prohibited and may be a violation of law.  If you have received this e-mail in error, please delete it and call 301.474.0044.  Thank you.

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF PENNSYLVANIA
8614 UNITED STATES COURTHOUSE
INDEPENDENCE MALL WEST
SIXTH AND MARKET STREETS
PHILADELPHIA, PENNSYLVANIA 19106-1741

*Chambers of*
*R. BARCLAY SURRICK*
*United States District Judge*

*(267) 299-7630*

October 10, 2012

David Troyer, Esq.
John Gallagher, Esq.
United States Attorney's Office
215-861-8618

William Spade, Esq.
215-732-0124

Thomas Egan, Esq.
610-277-5823

Christopher Hoey, Esq.
610-993-8472

Christopher Phillis, Esq.
215-545-0956

William Bowe, Esq.
215-731-9912

Paul George, Esq.
215-735-0599

Timothy Sullivan, Esq.
301-474-5730

Theresa Whalen, Esq.
301-650-1789

**Re: *United States v. Steven Northington***
**Criminal Number 07-550-05**

Dear Counsel:

I have received an inquiry from the Marshal's Service regarding the presence of the Defendants at the *Atkins* hearing next week. I am aware of no authority that requires the presence of a defendant's co-defendants at a pretrial *Atkins* hearing. It is my intention to tell the Marshals that only Mr. Northington, his counsel and the Government need be present. If you object to this decision, please advise immediately.

Yours very truly,

R. Barclay Surrick, J.



U.S. Department of Justice

*United States Attorney*

*Eastern District of Pennsylvania*

_____

*John Gallagher*                                      *615 Chestnut Street*
*Assistant U.S. Attorney*                          *Suite 1250*
*Direct Dial: (215) 861-8636*                  *Philadelphia, Pennsylvania 19106-4476*
*Facsimile: (215) 861-8618*                    *(215) 861-8200*

                                                    October 10, 2012

Christian J. Hoey, Esquire            Timothy J. Sullivan, Esquire
50 Darby Road                              6305 Ivy Lane, Suite 700
Paoli, PA 19301-1416                   Green Belt, MD 20770

William R. Spade, Jr., Esquire      Paul M. George, Esquire
1525 Locust Street, 14th Floor     239 South Camac Street
Philadelphia, PA 19102               Philadelphia, PA 19107

Thomas C. Egan III, Esquire        William L. Bowe, Esquire
621 Swede Street                         1420 Walnut Street, Suite 1400
Norristown, PA 19401                  Philadelphia, PA 19102

Christopher P. Phillips, Esquire     Teresa Whalen, Esquire
1518 Walnut Street, Suite 1406    801 Wayne Avenue, Suite 400
Philadelphia, PA 19102               Silver Spring, MD 20910


          RE:  *Starks* Hearing in <u>*United States v. Kaboni Savage, et al.,*</u> Cr. No. 07-550

Dear Counsel:

The Court directed the parties to discuss the specific issues and recordings which we expect to require litigation at the *Starks* hearing, scheduled to commence on October 22, 2012.  It is my understanding that, as to authenticity, counsel have indicated an intention to challenge sessions 1178-1181 of the FDC cellblock wire conversations.  Beyond that, there remains a challenge to some of the wording attributed to various speakers in the transcripts of the following recordings:

          <u>Thomas Cellphone Wire</u>:
          Call 43
          Call 606
          Call 1003
          Call 4340

          <u>FDC Visiting Room</u>:
          Session 7-5
          Session 9-2

<u>Cellblock Wire</u>:
Session 13
Session 166
Session 221
Session 222
Session 224
Session 1000
Session 1178
Session 1179
Session 1180
Session 1181

In keeping with the Court's instructions, please advise whether I have correctly identified the issues and recordings that remain subject to dispute.  This information will help the parties, and the Court, properly prepare for the *Starks* hearing in the most efficient manner.

Very truly yours,

ZANE DAVID MEMEGER
United States Attorney

 /s/ John Gallagher
JOHN GALLAGHER
Assistant United States Attorney

cc:  Hon. R. Barclay Surrick

| | |
|---|---|
| **From:** | Timothy Sullivan |
| **Sent:** | Monday, October 15, 2012 3:55 PM |
| **To:** | angela_pappas@paed.uscourts.gov |
| **Cc:** | 513hoey@verizon.net; Brett Cook |
| **Subject:** | USA v. Savage, 07-550 Ex Parte and Under Seal |
| **Attachments:** | Savage - motion for appointment - Purpura.pdf |

Please find enclosed a copy of Defendant Kaboni  Savage's Motion For Appointment And Authorization To Pay For Services Of Additional Learned Counsel for the Court's consideration.
A hard copy was sent by Federal Express to the Clerk's Office today.

Thanks.

Tim

Timothy J. Sullivan, Esq.
Brennan Sullivan & McKenna LLP
6305 Ivy Lane, Suite 700
Greenbelt, Maryland 20770
301-474-0044    (telephone)
301-474-5730    (facsimile)
tsullivan@bsm-legal.com

**CONFIDENTIAL COMMUNICATION**
This e-mail is privileged, confidential and solely for the use of the intended recipient.  If you are not the intended recipient, do not read, distribute or reproduce this e-mail.  The reading, distribution or reproduction of this e-mail by an unintended recipient is prohibited and may be a violation of law.  If you have received this e-mail in error, please delete it and call 301.474.0044.  Thank you.



U.S. Department of Justice

United States Attorney

Eastern District of Pennsylvania

David E. Troyer, Assistant U.S. Attorney
Direct Dial (215) 861-8475
Fax (215) 861-8618
Email Address: david.troyer@usdoj.gov

615 Chestnut Street
Suite 1250
Philadelphia, Pennsylvania 19106-4476
(215) 861-8200

October 23, 2012

Honorable R. Barclay Surrick
Judge, United States District Court
8614 United States Courthouse
601 Market Street
Philadelphia, PA 19106-1752

Re: *United States v. Kaboni Savage, et al., #07-550*

Dear Judge Surrick,

Pursuant to this Court's order, government counsel and defense counsel have met and conferred regarding agreed-upon challenges for hardship and/or cause, concerning the first 286 jurors (in Panel "A") who completed questionnaires. We submit the attached list to the Court of those jurors whom we jointly agree should be excused due to either hardship or cause, based on our collective reviews of the questionnaires.

We also discussed a sub-set of jury panel members who, in response to questions of where they previously lived, answered by providing specific addresses of their prior residences, instead of merely providing the town or area. Defense counsel expressed some concern that, with some minimal effort via the internet or through other easily available records, identities of those jurors could be ascertained, thus compromising the anonymity of those jurors. While no consensus was reached on the subject, the two most obvious options for the Court would be either to: (1) excuse those jurors in an abundance of caution; or (2) order all counsel to not make any attempts to ascertain those identities, and to not divulge that information to anyone else, including clients, agents, and investigators. Government counsel would be satisfied with the latter option, due to its concern that a larger number of jurors would be disqualified than necessary, possibly causing us to run out of potential jurors. Due to our lack of consensus on that point, this matter is thus left for the Court's discretion.

Respectfully submitted,

ZANE DAVID MEMEGER
United States Attorney

David E. Troyer
Assistant United States Attorney

cc: All counsel

LAW OFFICES

RUBINO & HOEY, LLC

50 DARBY ROAD

PAOLI, PA 19301-1416

PAUL J. RUBINO
CHRISTIAN J. HOEY

TELEPHONE (610) 647-5151
FAX (610) 993-8472
contact@rubino-hoey.com

October 31, 2012

**VIA FACSIMILE TRANSMISSION
AND REGULAR U.S. MAIL TO ALL PARTIES**

The Honorable R. Barclay Surrick
United States District Judge
United States Courthouse
601 Market Street, Room 8614
Philadelphia, PA 19106

   Re: <u>U.S.A. vs. Kaboni Savage</u>

Dear Judge Surrick:

  Regarding the above noted matter, I received notice today that a hearing has been scheduled to take place at 11:00 a.m. on November 1, 2012. I am respectfully requesting the Court excuse me from attending said hearing as I will be out of the state evaluating damage to my family's vacation home in New Jersey. It is expected that the state authorities will permit me to enter the island at approximately 7:00 a.m. I expect to return to Philadelphia in the afternoon. As such, I will be unavailable to attend the hearing. I spoke with Mr. Sullivan and confirmed that he and Mr. Purpura will be in attendance at the hearing.

  I am happy to provide additional information upon request.

         Very truly yours,

         Christian J. Hoey

CJH:aj

cc: David E. Troyer, A.U.S.A.
   Timothy J. Sullivan, Esquire
   William B. Purpura, Esquire



U.S. Department of Justice

*United States Attorney*

*Eastern District of Pennsylvania*

*David E. Troyer, Assistant U.S. Attorney*
*Direct Dial (215) 861-8475*
*Fax (215) 861-8618*
*Email Address: david.troyer@usdoj.gov*

*615 Chestnut Street*
*Suite 1250*
*Philadelphia, Pennsylvania 19106-4476*
*(215) 861-8200*

November 1, 2012

Timothy J. Sullivan, Esquire
Brennan, Sullivan & McKenna, LLP
6305 Ivy Lane, Suite 700
Greenbelt, MD  20770

Re:  *United States v. Kaboni Savage, #07-550-1*

Dear Mr. Sullivan,

This letter is in response to the requests you voiced at this morning's hearing
before Judge Surrick.  As to the Barbara Savage deposition, you represented to the Court this
morning that Kaboni Savage had not been afforded a telephone call with his mother, Barbara
Savage.  You further stated that Ms. Savage had expressed, through counsel, that this telephone
call would be a necessary predicate to her agreement to submit to a deposition.  You also offered
that the equipment necessary for that call to occur was broken.  You requested the Court to
compel the government to make arrangements for that telephone call to occur, and the Court so
ordered.

Your representation to the Court this morning, which came as a surprise to
government counsel, was in fact false.  Kaboni Savage indeed had the scheduled telephone call
with his mother on October 24, 2012 at approximately 12 Noon.  The duration of the call was
approximately fifteen minutes.  The call had been re-scheduled from the previous day, due to
equipment malfunctions.  This has been confirmed to me by FDC counsel, and by Task Force
Officer Thomas Zielinski, who monitored the call.  It has also been related to me that, during the
call, Kaboni Savage attempted to discourage Barbara Savage from participating in the deposition.
I am confident that this misrepresentation was not deliberate on your part.  Rather, it is
apparently another in a long line of "surprise statements" offered in court by your client that are
later revealed to be fabricated.

Ru'

Mr. Savage also had a visit scheduled for last week with his sister Conchetta Savage, who is now Barbara Savage's primary caregiver. That visit would have afforded Mr. Savage another opportunity to communicate with his mother through his sister. However, for reasons unknown to the government, Kaboni Savage cancelled that visit.

Thus, I would urge you to speak to your client, and possibly to Mrs. Savage through her counsel, in order to ascertain the outcome of the telephone call, and whether you still wish to persevere in your request for Mrs. Savage's deposition. I would also encourage you to correct the record with the Court as to the telephone call.

You also made an *ore tenus* motion today for the immediate production of 90 hours of videotapes of the Palmetto Street address. This, too, came as a surprise to government counsel, as we had complied with all of your previous requests concerning these tapes, and believed that this issue had been resolved. Indeed, all of these tapes have been available for viewing.

You had previously requested an opportunity to view selected videos from the Palmetto Street video surveillance. We immediately complied, and had a video viewing session at the FBI on July 6, 2011. That viewing session revealed that, over the last nine years, the videotapes had degraded to a point that one can barely discern only the vaguest of figures. In fact, the bulk of those videos contain nothing more than video "snow."

You were advised of the "real-time" copying of these videotapes. You then requested copies of recordings of certain days; specifically, March 13, 2003 through March 16, 2003. We provided those to you in discovery on July 29, 2011, in Disk #3, 4, and 5 of Discovery Batch Six. A copy of our July 29, 2011 discovery letter is attached. Since that date, we have not received any subsequent requests for further discovery of these materials. Given the now-poor quality of the videos, the lack of further requests was entirely understandable.

Despite all of the above, you today requested the production of 90 hours of these videotapes, which the Court ordered us to provide you. However, you did not specify which 90 hours you wanted copied. Given that we have already provided you with approximately 72 hours of recordings, please furnish your client with those recordings we have already provided, then kindly advise us as to which additional 18 hours you would now like us to copy for you.

As you know, these recordings were done on an 18-hour-per-day basis, over the course of approximately 60 days, resulting in more than 1,000 hours of videotape footage. Thus, because copies must be done on a real-time basis, with the assistance of an attendant, it would take one person approximately six months to copy all tapes (assuming a 40-hour work week). Likewise, it would take your client (or anyone else) approximately six months to view all of the tapes in their entirety. Contrary to your client's spontaneous and misinformed assertion in court today, duplication cannot be done in an hour.

2

Even the additional 18 hours of time you are requesting cannot be accomplished by current staff. Therefore, to accommodate you in a timely manner, we would anticipate sending the recordings to an approved, bonded facility for reproduction. The earlier you advise us, the earlier we can begin that process.

As always, the government will do what it can to comply with reasonable defense requests, and will of course make every effort to comply with every court order. Given that jury selection commences on Monday, and the presentation of evidence commences in two months, the government would not view as reasonable a request for us to copy, and for your client to view, all six months of videotapes that, for all intents and purposes, are blank.

That said, as set forth above, we await counsel's further response on this matter.

Respectfully submitted,

ZANE DAVID MEMEGER
United States Attorney

/s/ David E. Troyer
David E. Troyer
Assistant United States Attorney

cc: Christian J. Hoey, Esquire
Hon. R. Barclay Surrick, U.S. District Judge

3

A135

LAW OFFICES

RUBINO & HOEY, LLC

50 DARBY ROAD

PAOLI, PA 19301-1416

PAUL J. RUBINO
CHRISTIAN J. HOEY

TELEPHONE (610) 647-5151
FAX (610) 993-8472
contact@rubino-hoey.com

November 2, 2012

**VIA FACSIMILE TRANSMISSION**
**AND REGULAR U.S. MAIL**

The Honorable R. Barclay Surrick
United States District Judge
United States Courthouse
601 Market Street, Room 8614
Philadelphia, PA 19106

      Re:   U.S.A. vs. Kaboni Savage

Dear Judge Surrick:

     Regarding the above noted matter, enclosed herein, kindly find moving Defendant's Motion to Supplement the *Massiah* Record, along with Exhibits "A" and "B". Same will be filed with the clerk, under seal. It is respectfully requested this Honorable Court consider the within Exhibits and pleadings in support of his request for a *Massiah* taint Hearing.

     Thank you for your kind attention to this matter.

                        Very truly yours,

                        Christian J. Hoey

CJH:aj
Enclosure

cc:   Kaboni Savage - *Via regular mail*
      David E. Toyer, A.U.S.A.- *Via fax and regular mail*
      Timothy J. Sullivan, Esquire - *Via e-mail*
      William B. Purpura, Esquire - *Via e-mail*

A136

# FILED UNDER SEAL

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

---

UNITED STATES OF AMERICA

vs.

KABONI SAVAGE

Criminal No. 07-550

## MOTION OF DEFENDANT, KABONI SAVAGE TO SUPPLEMENT THE *MASSIAH* HEARING RECORD OF JUNE 11, 2012 AND OCTOBER 22, 2012

### I. PROCEDURAL HISTORY

1.  On or about May 9, 2012, a grand jury sitting in the United States District Court for the Eastern District of Pennsylvania returned a seventeen (17) count Fourth Superseding Indictment charging Defendant with Conspiracy to Participate in a Racketeering Enterprise in violation of 18 U.S.C. §1962(d), Murder in Aid of Racketeering Activity in violation of 18 U.S.C. §1959(a)(1), and related offenses.

2.  In the course of investigating moving Defendant and his alleged co-conspirators, the government obtained court authorization to intercept wire and oral communications of moving Defendant, his alleged co-conspirators and related individuals.

3.  A considerable volume of the interceptions occurred while the Defendant was housed at the Federal Detention Center (hereinafter F.D.C.) in Philadelphia, Pennsylvania awaiting trial in criminal action number 04-269.[1]

---

[1] On or about April 13, 2004, moving Defendant, Kaboni Savage, was arrested by criminal complaint in United States District Court for the Eastern District of Pennsylvania. Savage was later indicted under Term Number 04-269 in a 124 count indictment charging, among other things, Conspiracy to Manufacture and Distribute cocaine and Crack in violation of 21 U.S.C. §846. Following trial by jury in December, 2005, Savage was convicted of the main count of the criminal indictment, along with related offenses. On April 27, 2006, Defendant was sentenced by the Honorable Mary A. McLaughlin to serve a cumulative sentence of thirty (30) years.

4. On or about February 21, 2012, moving Defendant filed a Motion to Suppress Intercepted Wire and Oral Communications (Doc. #386).

5. On or about February 21, 2012, moving Defendant filed a Motion to Preclude Incriminating Statements Obtained in Violation of *Massiah* (Doc. #385).

6. On June 11, 2012 and again on October 22, 2012, this Honorable Court received evidence and heard oral argument concerning moving Defendant's various *Massiah* Motions.

7. On June 11, 2012, this Court took testimony from F.B.I. special agent Kevin Lewis and received evidence from the government and the defense concerning the aforementioned motions. Subsequent to the motions hearings, moving Defendant submitted various memoranda of law in support of his motions to suppress and preclude evidence noted above.

8. At each of the aforementioned hearings, and throughout the various pleadings filed by the government in opposition to moving Defendant's *Massiah* Motions, government counsel has repeatedly advised the Court that no individual was sent into the Federal Detention Center to elicit conversations from Mr. Savage, nor was the government aware of any individual eliciting conversations from Mr. Savage on his/her own.

9. Special agent Lewis further indicated that neither of the seven (7) CW's "engaged" Mr. Savage in violations of *Massiah*.

10. The testimony of special agent Lewis was affirmed by A.U.S.A. Troyer during the corse of the June 11, 2012 hearing. Specifically, Mr. Troyer advised the Court in the context of moving Defendant's "*Massiah* Motion" as follows:

"Consistent with our pleadings in this matter, there are no people that were cooperating with the government who the government sent in to elicit conversations from any of the defendants, and the government is not aware of any people on their own going in and eliciting such conversations, so I really have nothing to give to the defense in that regard."

11.    In September, 2012, the government produced "Discovery Batch 12" which contained voluminous *Jencks* materials and redacted F.B.I. reports.

12.    Within said discovery disk were two (2) handwritten letters authored by Federal Detention Center inmate Hakeem Neuby (Please see Exhibit "A" - October 18, 2004 letter - Hakeem Neuby to F.B.I. special agent Judith A. Tyler and Exhibit "B" - May 2, 2005 letter - Hakeem Neuby to F.B.I. special agent Judith A. Tyler).

13.    It is clear from a reading of Exhibits "A" and "B" that Mr. Neuby was housed in the "hole" (Special Housing Unit - S.H.U. - Federal Detention Center) with Mr. Savage in 2004 and/or 2005.

14.    The correspondence identified as Exhibit "A" was authored by Mr. Neuby prior to October 18, 2004 and clearly establishes that Mr. Neuby was gathering information about Mr. Savage at the request of the F.B.I. he closed his letter to special agent Tyler by indicating that "if anything comes up I'll write or call you". (The information provided within Exhibit "A" by Mr. Neuby to special agent Tyler happens to be Mr. Savage's home address and a telephone number affiliated with said residence).

15.    Mr. Neuby's April, 2005 correspondence further indicates that he gathered information at the request of Ms. Tyler and provided same within said correspondence.

16.    Regarding Exhibit "A", it can no longer be disputed that the government used inmates to gather evidence from Mr. Savage. Certainly, the production of the within

exhibits undermines the representations made by the government at the aforementioned pretrial hearings.

17. Because the Defendant has been denied access to the identities of the "Cooperating Witnesses - CW's", he has no idea as to whether Mr. Neuby was one such individual who provided information to the government which later served as the foundation for the many Title III applications used to obtain court approval for placing listening devices at the Federal Detention Center **in October of 2004**.

18. It is respectfully suggested to this Court that Exhibits "A" and "B", along with the previously submitted evidence, oral argument, legal briefing and various pleadings well establish a record which justifies conducting a *Massiah* taint Hearing to determine the extent of any violations of moving Defendant's Sixth Amendment right to counsel.

WHEREFORE, it is respectfully requested this Honorable Court consider the enclosed Exhibits as supplemental evidence in support of his request for a *Massiah* taint Hearing in advance of trial.

Respectfully submitted,

/s/ Christian J. Hoey
CHRISTIAN J. HOEY, ESQUIRE
Attorney for Defendant, Kaboni Savage

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA

vs.

KABONI SAVAGE

Criminal No. 07-550

# CERTIFICATE OF SERVICE

I hereby certify that on the date of the filing of the foregoing Motion of Defendant to Supplement the *Massiah* Hearing Record of June 11, 2012 and October 22, 2012, I served a true and correct copy by facsimile transmission and United States First Class Mail, postage prepaid on the following:

The Honorable R. Barclay Surrick
United States District Judge
United States Courthouse
601 Market Street, Room 8614
Philadelphia, PA 19106

David E. Troyer
Assistant United States Attorney
Eastern District of Pennsylvania
615 Chestnut Street, Suite 1250
Philadelphia, Pennsylvania 19106

Date: November 2, 2012

/s/ Christian J. Hoey
CHRISTIAN J. HOEY, ESQUIRE

Exhibit "A"

# Exhibit "A"



HAKEEM NOUGN
# 57715-065
FEDERAL Detention Center - Philia
P.O.Box 562
Phil., PA 19106



Judy TYLER
600 Arch St. 8th Fl.
Phila, PA 19106



19106+1511

A143

(A4)

/ (Rev. 4-11-03)

Number ___245 F - PH - 82681 N___

ield Office Acquiring Evidence ___PH___

Serial # of Originating Document _____

Date Received ___10 - 19 - 04___

From _____

(Name of Contributor/Interviewee)

_____

(Address)

_____

(City and State)

By ___Judith A Tyle___

To Be Returned ☐ Yes            ☐ No

Receipt Given ☐ Yes            ☐ No

Grand Jury Material - Disseminate Only Pursuant to Rule 6 (e)
Federal Rules of Criminal Procedure

☐ Yes            ☐ No

Federal Taxpayer Information (FTI)

☐ Yes            ☐ No

Title:        Kaboni Savage
              OCDETF

Reference: _____

(Communication Enclosing Material)

_____

Description: ☐ Original notes re interview of

___letter from Hakeem Newly, 10-19-04___

_____

_____

_____

A144

MS. Judy,

Here's the Info: You ask me for. If anything comes up I'll Write or Call you.

Phone# (215) 229 -3978

ADDRESS: 3643 N. DARien St
         Phila, PA 19140

Exhibit "B"

# Exhibit "B"

UNITED STATES POSTAGE

$ 00.37⁰

PITNEY BOWES

02 1A
0004377635    MAY 02 2205
MAILED FROM ZIP CODE · 15370

INMATE MAIL
PA DEPT
OF CORRECTIONS

Ms. Judy Tyler Sq2
600 Arch St.
8th floor
Phila, PA 19106

Hakeem Nuth EE9SBS
175 Progress Drive
Waynesburg, PA., 15370

13106+1611  13

4/29/05

Hakeem Neuby
#EE9595
175 Progress Dr.
Waynesburg, PA 15370

Hi ms. Judy,
            I been wanting to write you for
awhile. I wasn't allowed to bring your information
with me so I had to wait to get it again.
I wanted to know if you was still going to use
me for the case?
    Anyway I was reading the paper and seen an article
about Kaboni. well when I was in the hole with
him, he ask me to give his cousin Paul a message
when I get out. He said to tell Paul to get a
write-up for something minor so he could come
to the hole so He (Kaboni) could get out. Because he
(Kaboni) had so many seperations he couldn't get to
Population because they had nowhere to put him. But
if Paul came to the hole that would make them have
room for him in Population. He said Paul didn't have
anything to worry about because being as though he
only had a minor write-up that he would get right
back in Population because he didnt have seperations.
That way he could get out of the hole and take
care of what he had to take care of.

*(margin handwriting, left side):* Doesn't Know I spoke to Daniels ??

*(margin handwriting, bottom right):* SARD·617·25121

A148

check Daniels BSK?

He knew I was going to 5-south when I got out
of the hole so he knew I would see Paul because Hawd
he knew what block Paul wason.                                       he know
So when I got out of the hole I found out who        hims??
Paul was and told him what Kaboni said. Paul
told me that he would call home and see ask
what Kaboni was up to.          When?,
Well when I seen Kaboni at court I told him
that I told Paul what he said and that Paul wasn't
acting like he was going to do it.
KAboni replied by saying: fuck that Nigga. He's a rat.
I was like for-real. And kaboni was "yea" that Pussy telling,
It's cool though, he's a deadman on the Streets and if
I catch him am kill his ass. I hate him and his Dad
I wish he would go die, (Talking about the Dad) he the
one who got me caught up in all this shit
Ms. Judy I thought you could misht you used this Information

Prosecutor-Arlene D. Fisk or Tina Gabrielli
Attorney-Joseph C. Santaguida
Asent-Joseph mangoni
Ms Judy Please Write Back. I'll be waiting to
hear from you.

                    Take care,
                        Hakeem.

A149

**From:** Gallagher, John (USAPAE) [mailto:John.Gallagher3@usdoj.gov]
**Sent:** Tuesday, November 20, 2012 4:07 PM
**To:** angela_pappas@paed.uscourts.gov; Brett Cook; choey@rubino-hoey.com; Troyer, David (USAPAE);
pgeorge@mckinneyandgeorge.com; Mellin, Steve (CRM); whalenesq@aol.com; Timothy Sullivan; tom101861@aol.com;
will@spadelaw.com; wlbcrimlaw@comcast.net; Christopher Phillips; Christina_Franzese@paed.uscourts.gov; Christian
Hoey (513hoey@verizon.net)
**Cc:** Caimi, Ray (USAPAE); Dougherty, Sharon (USAPAE)
**Subject:** Palmetto Videotapes

Dear Counsel,

As you know, Defendant Kaboni Savage has recently requested that the government physically produce copies of all surveillance videotapes which were recorded on Palmetto Street in this case. These videotapes have long been available for review and approximately 72 hours of these videotapes have previously been duplicated and turned over at the request of counsel. As we have explained, Kaboni Savage's current request would require the reproduction of approximately 1,100 hours of video from the original VCR cassettes. Due to the type of equipment used to make these videotapes, any reproduction must be done in real time. Given the time and expense involved, the government simply does not have the resources available to comply with a request of this magnitude, particularly at this late hour. However, we have endeavored to ascertain whether the requested production can be attained through commercial means.

The government has obtained cost and time estimates for production of all 1,100 hours as is being requested. A commercial service with whom the government is comfortable entrusting the original videotapes has provided the following quotes:

      For a 21 Day Turnaround: $.35/min x 66,000 minutes = $23,100 + Hard Drive Costs (approx. $500) = $23,600

      For a 42 Day Turnaround: $.25/min x 66,000 minutes = $16,500 + Hard Drive Costs (approx. $500) =$17,000

As you can see, even utilizing a commercial operator, the time and expense to accommodate this request is considerable. Because the government views these recordings as neither discoverable nor Brady material, the government is not willing or prepared to bear the substantial financial burden of copying these items. Please advise whether you are prepared to pay the costs of reproduction as set forth above and then we will make the necessary arrangements.

We look forward to hearing from you.

With best wishes for a Happy and Healthy Thanksgiving,

John Gallagher, AUSA

215-861-8636

**From:**          Timothy Sullivan
**Sent:**          Thursday, December 13, 2012 3:25 PM
**To:**            'Angela_Pappas@paed.uscourts.gov'; Brett Cook
**Subject:**       RE: U.S. v. Savage - Voir Dire Schedule - Revised


Angela - you accidently sent Brett and I the schedule for next week!
BTW also Bill Purpura will start doing VD next week too

Ha.

Tim

Timothy J. Sullivan, Esq.
Brennan Sullivan & McKenna LLP

-----Original Message-----
From: Angela_Pappas@paed.uscourts.gov [mailto:Angela_Pappas@paed.uscourts.gov]
Sent: Thursday, December 13, 2012 2:52 PM
To: choey@rubino-hoey.com; cphillips@bartonandphillips.com; david.troyer@usdoj.gov; john.gallagher3@usdoj.gov;
pgeorge@mckinneyandgeorge.com; steve.mellin2@usdoj.gov; tom101861@aol.com; Timothy Sullivan;
whalenesq@aol.com; will@spadelaw.com; wlbcrimlaw@comcast.net; wpurpura@purpuralaw.com
Cc: Christina_Franzese@paed.uscourts.gov
Subject: U.S. v. Savage - Voir Dire Schedule - Revised

Counsel:

Attached is a revised schedule for Panel B voir dire.  There are a few changes for next week.

Angela

(See attached file: Schedule of Juror #s Group B 2nd REVISED.pdf)

Angela M. Pappas
Law Clerk to the Honorable R. Barclay Surrick
8614 United States Courthouse
601 Market Street
Philadelphia, Pennsylvania 19106
Angela_Pappas@paed.uscourts.gov



**U.S. Department of Justice**

*United States Attorney*

*Eastern District of Pennsylvania*

*AUSA John Gallagher*
*Direct Dial: (215) 861-8636*
*Facsimile: (215) 861-8618*

*615 Chestnut Street*
*Suite 1250*
*Philadelphia, Pennsylvania 19106-4476*
*(215) 861-8200*

January 10, 2013

Honorable R. Barclay Surrick
Judge, United States District Court
8614 United States Courthouse
601 Market Street
Philadelphia, PA 19106-1752

      Re:    United States v. Kaboni Savage, et al.
            CR 07-550

Dear Judge Surrick,

On Thursday, January 3, 2012, defendants Kaboni Savage and Kidada Savage called their mother, Barbara Savage, as a witness for, respectively, the penalty phase and the guilt phase at this pending trial. The testimony was video recorded. Ms. Savage was called at this juncture due to her serious illness and the concern that she might be unavailable as a witness at time of trial. The direct and cross examinations pertaining to Ms. Savage's testimony for the penalty phase (Kaboni Savage) was completed on January 3. However, the cross-examination on her guilt phase testimony could not be completed when Ms. Savage became increasingly incoherent and appeared to be falling asleep. Given that Ms. Savage's testimony on behalf of Kidada Savage is incomplete, the government expects that Kidada Savage shall immediately schedule another appearance of Ms. Savage at which the government can complete its cross-examination. If the government is unable to complete cross-examination, we reserve all of our rights, including the right to have Ms. Savage's recorded testimony stricken in its entirety.

                          Respectfully yours,

                          AUSA John Gallagher

cc:    See attached list



**U.S. Department of Justice**

*United States Attorney*

*Eastern District of Pennsylvania*

AUSA John Gallagher
Direct Dial: (215) 861-8636
Facsimile: (215) 861-8618

615 Chestnut Street
Suite 1250
Philadelphia, Pennsylvania 19106-4476
(215) 861-8200

January 15, 2013

Teresa Whalen, Esquire
801 Wayne Avenue, Suite 400
Silver Spring, MD 20910

Re:    United States v. Kaboni Savage, et al.
       CR 07-550

Dear Attorney Whalen,

This letter is a follow-up to the one sent by the government to the Court on January 10, 2013, and your response of January 12, 2013. The government stands by its representations of the proceedings of January 3, 2012, when Barbara Savage was called as a witness by Kaboni Savage and Kidada Savage. We are comfortable that the video and transcribed record of the proceeding shall support our contentions. Moreover, your claim that the government seeks only a "second chance to cross-examine a critically ill elderly woman" ignores the fact that the defendants waited until January 2013 to interview their witness when they knew for more than one year that the witness was terminally ill.

More important than disagreements between the parties that can easily be resolved by a review of the record is your apparent refusal to reschedule the completion of your client's deposition. We reiterate that, if the government is unable to complete cross-examination, we reserve all of our rights, including the right to have Ms. Savage's recorded testimony stricken in its entirety.

Respectfully yours,

AUSA John Gallagher

cc:    Hon. R. Barclay Surrick
       Defense Counsel

A153

**RubinoHoey**

| | |
|---|---|
| **From:** | Troyer, David (USAPAE) [David.Troyer@usdoj.gov] |
| **Sent:** | Monday, March 25, 2013 5:58 PM |
| **To:** | angela_pappas@paed.uscourts.gov; Christina_Franzese@paed.uscourts.gov; chris hoey (choey@rubino-hoey.com); wpurp@aol.com; William Spade (will@spadelaw.com); whalenesq@aol.com; wlbcrimlaw@comcast.net; tom101861@aol.com; Paul M. George (pgeorge@mckinneyandgeorge.com); cphillips@bartonandphillips.com |
| **Cc:** | Gallagher, John (USAPAE); Mellin, Steve (CRM) |

**Subject:** Government's proposed jury instructions

Angela, Defense Counsel:

Attached are the government's proposed jury instructions. They have not yet obtained supervisory approval within our office, so I have not filed them via ecf, but I wanted to submit them in a timely manner.

David E. Troyer
Senior Litigation Counsel
Organized Crime Strike Force
United States Attorney's Office
Eastern District of Pennsylvania
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
215-861-8475

3/26/2013

## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA          :

           v.          :

KABONI SAVAGE                     :          **CRIMINAL NO. 07-550**
ROBERT MERRITT
STEVEN NORTHINGTON               :
KIDADA SAVAGE

### GOVERNMENT'S PROPOSED JURY INSTRUCTIONS

        The United States of America, by its attorneys, Zane David Memeger, United

States Attorney for the Eastern District of Pennsylvania, David E. Troyer and John Gallagher,

Assistant United States Attorneys for the district, and Steven D. Mellin, Trial Attorney,

respectfully submits the following proposed jury instructions pursuant to Federal Rule of

Criminal Procedure 30 and requests leave to file any supplemental instructions as may appear

necessary and proper.

                Respectfully submitted,

                ZANE DAVID MEMEGER
                United States Attorney


                /s/ David E. Troyer
                David E. Troyer
                Assistant United States Attorney

Date: March 24, 2013

**TABLE OF CONTENTS**

<u>Instructions</u>                                                                    <u>Page Number</u>

GOVERNMENT'S REQUEST NO. 1
    Role of Jury. ............................................................. 1

GOVERNMENT'S REQUEST NO. 2
    Sympathy And Bias. ...................................................... 3

GOVERNMENT'S REQUEST NO. 3
    Jury Recollection Controls. ............................................... 4

GOVERNMENT'S REQUEST NO. 4
    Penalty Not To Be Considered. ............................................ 5

GOVERNMENT'S REQUEST NO. 5
    Presumption of Innocence; Burden of Proof; Reasonable Doubt. ............. 6

GOVERNMENT'S REQUEST NO. 6
    Evidence. ................................................................ 8

GOVERNMENT'S REQUEST NO. 7
    Direct and Circumstantial Evidence. ..................................... 11

GOVERNMENT'S REQUEST NO. 8
    Not All Evidence, Not All Witnesses Needed. ............................. 13

GOVERNMENT'S REQUEST NO. 9
    Credibility of Witnesses. ............................................... 14

GOVERNMENT'S REQUEST NO. 10
    Credibility of Witnesses – Law Enforcement Officer. ..................... 16

GOVERNMENT'S REQUEST NO. 11
    Credibility of Witnesses – Cooperating Witnesses. ....................... 17

GOVERNMENT'S REQUEST NO. 12
    Impeachment of Witness – Prior Conviction (F.R.E. 609). ................. 18

GOVERNMENT'S REQUEST NO. 13
    Opinion Evidence (Expert Witnesses). .................................... 19

GOVERNMENT'S REQUEST NO. 14
    Opinion Evidence (Lay Witnesses) (F.R.E. 701). .......................... 20

GOVERNMENT'S REQUEST NO. 15
    Stipulated Testimony; Stipulation of Fact; Judicial Notice (F.R.E. 201). . . . . . . . . . . . . 21

GOVERNMENT'S REQUEST NO. 16
    Audio/Video Recordings - Consensual. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

GOVERNMENT'S REQUEST NO. 17
    Audio/Video Recordings - Non-consensual. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

GOVERNMENT'S REQUEST NO. 18
    Audio/Video Recordings  - Transcripts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

GOVERNMENT'S REQUEST NO. 19
    Specific Investigation Techniques Not Required. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

GOVERNMENT'S REQUEST NO. 20
    Defendant's Choice Not to Testify or Present Evidence. . . . . . . . . . . . . . . . . . . . . . . . . 26

GOVERNMENT'S REQUEST NO. 21
    Defendant's Testimony. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

GOVERNMENT'S REQUEST NO. 22
    Impeachment of Defendant - Prior Conviction (F.R.E. 609). . . . . . . . . . . . . . . . . . . . . . 28

GOVERNMENT'S REQUEST NO. 23
    Defendant's Character Evidence. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

GOVERNMENT'S REQUEST NO. 24
    Motive Explained. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

GOVERNMENT'S REQUEST NO. 25
    Separate Consideration - Multiple Defendants Charged with Different Offenses. . . . . . . 31

GOVERNMENT'S REQUEST NO. 26
    Verdict as to defendant only. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

GOVERNMENT'S REQUEST NO. 27
    Summary of the Indictment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

GOVERNMENT'S REQUEST NO. 28
    "On or About". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

GOVERNMENT'S REQUEST NO. 29
    Venue. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

ii

GOVERNMENT'S REQUEST NO. 30
    Count 1 - RICO Conspiracy - Elements of the Offense (18 U.S.C. §1962(d)). . . . . . . . . 36

GOVERNMENT'S REQUEST NO. 31
    Count 1 - RICO Conspiracy - Existence of an Agreement. . . . . . . . . . . . . . . . . . . . . . . . 39

GOVERNMENT'S REQUEST NO. 32
    Count 1 - RICO Conspiracy - Membership in the Agreement.. . . . . . . . . . . . . . . . . . . . . 41

GOVERNMENT'S REQUEST NO. 33
    Count 1 - RICO Conspiracy - Mental States. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

GOVERNMENT'S REQUEST NO. 34
    Count 1 - RICO Conspiracy - Overt Acts Need Not be Proved.. . . . . . . . . . . . . . . . . . . 43

GOVERNMENT'S REQUEST NO. 35
    Count 1 - RICO Conspiracy - Success Immaterial. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

GOVERNMENT'S REQUEST NO. 36
    Count 1 - RICO Conspiracy - Duration. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

GOVERNMENT'S REQUEST NO. 37
    Count 1 - RICO Conspiracy - Acts and Statements of Co-Conspirators. . . . . . . . . . . . . 46

GOVERNMENT'S REQUEST NO. 38
    Count 1 - RICO Conspiracy - Agreement to Commit a Racketeering Offense. . . . . . . . . 47

GOVERNMENT'S REQUEST NO. 39
    Count 1 - RICO Conspiracy - Objectives of the Racketeering Conspiracy. . . . . . . . . . . . 50

GOVERNMENT'S REQUEST NO. 40
    Count 1 - RICO Conspiracy - "Enterprise" Defined Generally. . . . . . . . . . . . . . . . . . . . . 51

GOVERNMENT'S REQUEST NO. 41
    Count 1 - RICO Conspiracy - "Enterprise" - "Association in Fact" Defined. . . . . . . . . . 52

GOVERNMENT'S REQUEST NO. 42
    Count 1 - RICO Conspiracy - "Engaged In, Or The Activities Of Which Affect, Interstate Commerce" - Defined. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

GOVERNMENT'S REQUEST NO. 43
    Count 1 - RICO Conspiracy - "Associated With or Employed by the Enterprise"- Defined . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

GOVERNMENT'S REQUEST NO. 44
 Count 1 - RICO Conspiracy - "Conduct or Participate in the Conduct of the Enterprise" -
 Defined............................................................................58

GOVERNMENT'S REQUEST NO. 45
 Count 1 - RICO Conspiracy - "Pattern of Racketeering Activity" - Defined. .........59

GOVERNMENT'S REQUEST NO. 46
 Count 1 - RICO Conspiracy - "Racketeering Activity" Defined....................62

GOVERNMENT'S REQUEST NO. 47
 Count 1 - RICO Conspiracy - Elements of the Underlying Racketeering Activities.....65
  Murder..................................................................65
   First Degree Murder..............................................65
   Conspiracy to Murder............................................66
   "Overt Act" – Definition..........................................67
  Controlled Substance Offenses..........................................67
   Conspiracy.....................................................67
   Distribution of a Controlled Substance..............................68
   Possession With Intent to Distribute a Controlled Substance..........69
  Arson...................................................................70
  Money Laundering.......................................................71
   Money Laundering under 18 U.S.C. § 1956. ......................71
   Monetary transactions in property derived from specified unlawful activity
    in violation of 18 U.S.C. § 1957..............................72
  Witness Tampering......................................................73
   Witness Tampering under 18 U.S.C. § 1512.......................73
   Purpose of the Statute. ..........................................74
   Elements of the Offense...........................................74
   First Element - Force or Threat.....................................75
   Second Element - Knowledge and Specific Intent...................75

GOVERNMENT'S REQUEST NO. 48
Counts 2-7, 9-15 - Violent Crime in Aid of Racketeering - The Indictment and
 the Statute...............................................................76

GOVERNMENT'S REQUEST NO. 49
 Counts 2-7, 9-15 - Violent Crime in Aid of Racketeering - Prejudice From the Word
 "Racketeering"...........................................................81

GOVERNMENT'S REQUEST NO. 50
 Counts 2-7, 9-15 - Violent Crime in Aid of Racketeering - Elements of the Offense....82

GOVERNMENT'S REQUEST NO. 51
    Counts 2-7, 9-15 - Violent Crime in Aid of Racketeering - First Element -
    Existence of Enterprise Affecting Interstate Commerce . . . . . . . . . . . . . . . . . . . . . . . . 83

GOVERNMENT'S REQUEST NO. 52
    Counts 2-7, 9-15 - Violent Crime in Aid of Racketeering - Second Element -
    Enterprise Engaged in Racketeering Activity. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 84

GOVERNMENT'S REQUEST NO. 53
    Counts 2-7, 9-15 - Violent Crime in Aid of Racketeering - Third Element - Position in the
    Enterprise . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 86

GOVERNMENT'S REQUEST NO. 54
    Counts 2-7, 9-15 - Violent Crime in Aid of Racketeering - Fourth Element -
    Defendant Committed Crime of Violence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 87

GOVERNMENT'S REQUEST NO. 55
    Counts 2-7, 9-15 - Violent Crime in Aid of Racketeering - Fifth Element -
    Purpose to Maintain or Increase Position in Enterprise. . . . . . . . . . . . . . . . . . . . . . . 88

GOVERNMENT'S REQUEST NO. 56
    Count 16 - Retaliation Against a Witness - The Nature of the Offense and the Statute
    Involved. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 89

GOVERNMENT'S REQUEST NO. 57
    Count 16 - Retaliation Against a Witness - Purpose of the Statute. . . . . . . . . . . . . . . 90

GOVERNMENT'S REQUEST NO. 58
    Count 16 - Retaliation Against a Witness - Elements of the Offense. . . . . . . . . . . . . . 91

GOVERNMENT'S REQUEST NO. 59
    Count 16 - Retaliation Against a Witness - First Element - Knowing Conduct. . . . . . . 92

GOVERNMENT'S REQUEST NO. 60
    Count 16 - Retaliation Against a Witness - Second Element - Intent to Retaliate. . . . . 93

GOVERNMENT'S REQUEST NO. 61
    Count 17 - Use of Fire to Commit a Felony - The Indictment and the Statute. . . . . . . . 94

GOVERNMENT'S REQUEST NO. 62
    Count 17 - Use of Fire to Commit a Felony - Elements of the Offense. . . . . . . . . . . . . 95

GOVERNMENT'S REQUEST NO. 63
    Count 17 - Use of Fire to Commit a Felony - First Element - Commission of the Predicate
    Crime. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 96

v

GOVERNMENT'S REQUEST NO. 64
    Count 17 - Use of Fire to Commit a Felony - Second Element - Use of Fire. . . . . . . . . . 97

GOVERNMENT'S REQUEST NO. 65
    Counts 2-7, 10-17 - Accomplice Liability; Aiding and Abetting. . . . . . . . . . . . . . . . . . . 98

GOVERNMENT'S REQUEST NO. 66
    Election of Foreperson; Unanimous Verdict; Do Not Consider Punishment; Duty to
    Deliberate; Communication with Court. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 100

GOVERNMENT'S REQUEST NO. 67
    Verdict Form. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 103

vi

A161

**GOVERNMENT'S REQUEST NO. 1**

**Role of Jury**

Members of the jury, you have seen and heard all the evidence and the arguments of the lawyers. Now I will instruct you on the law.

You have two duties as a jury. Your first duty is to decide the facts from the evidence that you have heard and seen in court during this trial. That is your job and yours alone. I play no part in finding the facts. You should not take anything I may have said or done during the trial as indicating what I think of the evidence or what I think about what your verdict should be.

Your second duty is to apply the law that I give you to the facts. My role now is to explain to you the legal principles that must guide you in your decisions. You must apply my instructions carefully. Each of the instructions is important, and you must apply all of them. You must not substitute or follow your own notion or opinion about what the law is or ought to be. You must apply the law that I give to you, whether you agree with it or not.

Whatever your verdict, it will have to be unanimous. All of you will have to agree on it or there will be no verdict. In the jury room you will discuss the case among yourselves, but ultimately each of you will have to make up his or her own mind. This is a responsibility that each of you has and that you cannot avoid.

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case. You may not use any electronic device or media, such as the telephone, a cell phone, smart phone, iPhone, Blackberry or computer, the Internet, any Internet service, any text or instant messaging service, any Internet chat room, blog, or website such as Facebook, MySpace, LinkedIn, YouTube or Twitter, to communicate to

1

anyone any information about this case or to conduct any research about this case until I accept your verdict. In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case. You can only discuss the case in the jury room with your fellow jurors during deliberations.

You may not use these electronic means to investigate or communicate about the case because it is important that you decide this case based solely on the evidence presented in this courtroom. You are only permitted to discuss the case with your fellow jurors during deliberations because they have seen and heard the same evidence you have. In our judicial system, it is important that you are not influenced by anything or anyone outside of this courtroom.

Perform these duties fairly and impartially. Do not allow sympathy, prejudice, fear, or public opinion to influence you. You should also not be influenced by any person's race, color, religion, national ancestry, or gender, sexual orientation, profession, occupation, celebrity, economic circumstances, or position in life or in the community.

_____

3rd Circuit Model Criminal Jury Instructions, No. 3.01 (2012).

2

**GOVERNMENT'S REQUEST NO. 2**

**Sympathy And Bias**

Under your oath as jurors, you are not to be swayed by sympathy or bias. You are to be guided solely by the evidence in the case, and the crucial hard-core question you must ask yourselves as you sift through the evidence is, where do you find the truth? This is a quest for truth as to the facts, that is what a trial is. It's not a battle of wits. It's not a contest of salesmanship, and it's not a contest of personalities. The only triumph in any case is whether or not the truth has triumphed. If it has, then justice has been done. If not, justice will not have been done.

The conduct charged in the indictment is illegal under federal law. The issue and only issue for you to decide is whether or not any defendant has violated the law. You are to determine the guilt or innocence of any defendant solely on the basis of the evidence and the law as I have now charged you. If you find that the law has not been violated, you should not hesitate for any reason to return a verdict of not guilty. If, on the other hand, you find beyond a reasonable doubt that the law has been violated as charged, you should not hesitate to render a verdict of guilty because of sympathy or bias, prejudice, fear, public opinion, or your own views as to the propriety or social desirability of this conduct. In sum, you must not decide this matter based on anything other than the evidence in this case and the law as I have instructed you as you said under oath you could at the time of your selection as jurors.

_____

United States v. Martorano, Criminal No. 82-00013 (E.D. Pa.), affd. 709 F.2d 863 (3d Cir. 1983).

## **GOVERNMENT'S REQUEST NO. 3**

### **Jury Recollection Controls**

If any reference by the Court or by counsel to matters of testimony or exhibits

does not coincide with your own recollection of that evidence, it is your recollection which

should control during your deliberations and not the statements of the Court or of counsel.

You are the sole judges of the evidence received in this case.

---

1A O'Malley, Grenig & Lee, <u>Federal Jury Practice and Instructions</u>, § 12.07 (6th ed. 2010); <u>United States v. Thames</u>, 846 F.2d 200, 204 (3d Cir.), <u>cert</u>. <u>denied</u>, 488 U.S. 928 (1988).

4

A165

### GOVERNMENT'S REQUEST NO. 4

**Penalty Not To Be Considered**

The punishments provided by law for capital offenses charged in the indictment should never be considered by the jury in any way in arriving at an impartial verdict in determining whether a capital defendant is guilty or not guilty of the crime charged.

The punishments provided by law for the non-capital crimes charged in the indictment are matters exclusively for the Court to decide and should never be considered by the jury in any way in arriving at an impartial verdict as to the crime charged.

---

1A O'Malley, Grenig & Lee, Federal Jury Practice and Instructions, § 20.01 (6th ed. 2010) (the instruction set out is paragraph 6 of a longer instruction intended to be given as the jury retires); United States v. Austin, 533 F.2d 879, 884-85 (3d Cir. 1976), cert. denied, 429 U.S. 1043 (1977) (modified for capital case).

5

**GOVERNMENT'S REQUEST NO. 5**

**Presumption of Innocence; Burden of Proof; Reasonable Doubt**

The defendants pleaded not guilty to the offenses charged. Every defendant is presumed to be innocent. He or she started the trial with a clean slate, with no evidence against him or her. The presumption of innocence stays with a defendant unless and until the government has presented evidence that overcomes that presumption by convincing you that that defendant is guilty of the offense charged beyond a reasonable doubt. The presumption of innocence requires that you find a defendant not guilty, unless you are satisfied that the government has proved guilt beyond a reasonable doubt.

The presumption of innocence means that a defendant has no burden or obligation to present any evidence at all or to prove that he or she is not guilty. The burden or obligation of proof is on the government to prove that a defendant is guilty and this burden stays with the government throughout the trial.

In order for you to find a defendant guilty of the offense charged, the government must convince you that that defendant is guilty beyond a reasonable doubt. That means that the government must prove each and every element of the offense charged beyond a reasonable doubt. A defendant may not be convicted based on suspicion or conjecture, but only on evidence proving guilt beyond a reasonable doubt.

Proof beyond a reasonable doubt does not mean proof beyond all possible doubt or to a mathematical certainty. Possible doubts or doubts based on conjecture, speculation, or hunch are not reasonable doubts. A reasonable doubt is a fair doubt based on reason, logic, common sense, or experience. It is a doubt that an ordinary reasonable person has after carefully weighing all of the evidence, and is a doubt of the sort that would cause him or her to hesitate to

6

act in matters of importance in his or her own life. It may arise from the evidence, or from the lack of evidence, or from the nature of the evidence.

If, having now heard all the evidence, you are convinced that the government proved each and every element of a charged offense beyond a reasonable doubt, you should return a verdict of guilty for that offense. However, if you have a reasonable doubt about one or more of the elements of a charged offense, then you must return a verdict of not guilty of that offense.

---

3rd Circuit Model Criminal Jury Instructions, No. 3.06 (2012).

7

**GOVERNMENT'S REQUEST NO. 6**

**Evidence**

You must make your decision in this case based only on the evidence that you saw and heard in the courtroom. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence from which you are to find the facts consists of the following:

(1) The testimony of the witnesses;

(2) Documents and other things received as exhibits; and

(3) Any fact or testimony that was stipulated; that is, formally agreed to by the parties.

((4) Any facts that have been judicially noticed--that is, facts which I say you may accept as true even without other evidence.)

The following are not evidence:

(1) The indictment;

(2) Statements and arguments of the lawyers for the parties in this case;

(3) Questions by the lawyers and questions that I might have asked;

(4) Objections by lawyers, including objections in which the lawyers stated facts;

(5) Any testimony I struck or told you to disregard; and

(6) Anything you may have seen or heard about this case outside the courtroom.

You should use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves. If your experience and common sense tells you that certain evidence reasonably leads to a conclusion, you may reach that conclusion.

8

As I told you in my preliminary instructions, the rules of evidence control what can be received into evidence. During the trial the lawyers objected when they thought that evidence was offered that was not permitted by the rules of evidence. These objections simply meant that the lawyers were asking me to decide whether the evidence should be allowed under the rules.

You should not be influenced by the fact that an objection was made. You should also not be influenced by my rulings on objections or any sidebar conferences you may have overheard. When I overruled an objection, the question was answered or the exhibit was received as evidence, and you should treat that testimony or exhibit like any other. When I allowed evidence (testimony or exhibits) for a limited purpose only, I instructed you to consider that evidence only for that limited purpose and you must do that.

When I sustained an objection, the question was not answered or the exhibit was not received as evidence. You must disregard the question or the exhibit entirely. Do not think about or guess what the witness might have said in answer to the question; do not think about or guess what the exhibit might have shown. Sometimes a witness may have already answered before a lawyer objected or before I ruled on the objection. If that happened and if I sustained the objection, you must disregard the answer that was given.

Also, if I ordered that some testimony or other evidence be stricken or removed from the record, you must disregard that evidence. When you are deciding this case, you must not consider or be influenced in any way by the testimony or other evidence that I told you to disregard.

Although the lawyers may have called your attention to certain facts or factual conclusions that they thought were important, what the lawyers said is not evidence and is not

9

binding on you. It is your own recollection and interpretation of the evidence that controls your decision in this case. Also, do not assume from anything I may have done or said during the trial that I have any opinion about any of the issues in this case or about what your verdict should be.

_____

3rd Circuit Model Criminal Jury Instructions, No. 3.02 (2012).

10

### GOVERNMENT'S REQUEST NO. 7

#### Direct and Circumstantial Evidence

Two types of evidence may be used in this trial, "direct evidence" and "circumstantial (or indirect) evidence." You may use both types of evidence in reaching your verdict.

"Direct evidence" is simply evidence which, if believed, directly proves a fact. An example of "direct evidence" occurs when a witness testifies about something the witness knows from his or her own senses — something the witness has seen, touched, heard, or smelled.

"Circumstantial evidence" is evidence which, if believed, indirectly proves a fact. It is evidence that proves one or more facts from which you could reasonably find or infer the existence of some other fact or facts. A reasonable inference is simply a deduction or conclusion that reason, experience, and common sense lead you to make from the evidence. A reasonable inference is not a suspicion or a guess. It is a reasoned, logical decision to find that a disputed fact exists on the basis of another fact.

For example, if someone walked into the courtroom wearing a wet raincoat and carrying a wet umbrella, that would be circumstantial or indirect evidence from which you could reasonably find or conclude that it was raining. You would not have to find that it was raining, but you could.

Sometimes different inferences may be drawn from the same set of facts. The government may ask you to draw one inference, and the defense may ask you to draw another. You, and you alone, must decide what reasonable inferences you will draw based on all the evidence and your reason, experience and common sense.

11

You should consider all the evidence that is presented in this trial, direct and circumstantial. The law makes no distinction between the weight that you should give to either direct or circumstantial evidence. It is for you to decide how much weight to give any evidence.

---

3rd Circuit Model Criminal Jury Instructions, No. 3.03 (2012).

12

## GOVERNMENT'S REQUEST NO. 8

### Not All Evidence, Not All Witnesses Needed

Although the government is required to prove the defendant guilty beyond a reasonable doubt, the government is not required to present all possible evidence related to the case or to produce all possible witnesses who might have some knowledge about the facts of the case. In addition, as I have explained, the defendant is not required to present any evidence or produce any witnesses.

*[In this case, the (name of defendant) [presented evidence] [produced witnesses].
(Name) is not required to present all possible evidence related to the case or to produce all
possible witnesses who might have some knowledge about the facts of the case.]*

---

3rd Circuit Model Criminal Jury Instructions, No. 3.05 (2012).

13

A174

## GOVERNMENT'S REQUEST NO. 9

### Credibility of Witnesses

As I stated in my preliminary instructions at the beginning of the trial, in deciding what the facts are you must decide what testimony you believe and what testimony you do not believe. You are the sole judges of the credibility of the witnesses. Credibility refers to whether a witness is worthy of belief: Was the witness truthful? Was the witness' testimony accurate? You may believe everything a witness says, or only part of it, or none of it.

You may decide whether to believe a witness based on his or her behavior and manner of testifying, the explanations the witness gave, and all the other evidence in the case, just as you would in any important matter where you are trying to decide if a person is truthful, straightforward, and accurate in his or her recollection. In deciding the question of credibility, remember to use your common sense, your good judgment, and your experience.

In deciding what to believe, you may consider a number of factors:

(1) The opportunity and ability of the witness to see or hear or know the things about which the witness testified;

(2) The quality of the witness' knowledge, understanding, and memory;

(3) The witness' appearance, behavior, and manner while testifying;

(4) Whether the witness has an interest in the outcome of the case or any motive, bias, or prejudice;

(5) Any relation the witness may have with a party in the case and any effect the verdict may have on the witness;

(6) Whether the witness said or wrote anything before trial that was different from the witness' testimony in court;

14

(7) Whether the witness' testimony was consistent or inconsistent with other evidence that you believe; and

(8) Any other factors that bear on whether the witness should be believed.

Inconsistencies or discrepancies in a witness' testimony or between the testimony of different witnesses may or may not cause you to disbelieve a witness' testimony. Two or more persons witnessing an event may simply see or hear it differently. Mistaken recollection, like failure to recall, is a common human experience. In weighing the effect of an inconsistency, you should also consider whether it was about a matter of importance or an insignificant detail. You should also consider whether the inconsistency was innocent or intentional.

You are not required to accept testimony even if the testimony was not contradicted and the witness was not impeached. You may decide that the witness is not worthy of belief because of the witness' bearing and demeanor, or because of the inherent improbability of the testimony, or for other reasons that are sufficient to you.

After you make your own judgment about the believability of a witness, you can then attach to that witness' testimony the importance or weight that you think it deserves.

The weight of the evidence to prove a fact does not necessarily depend on the number of witnesses who testified or the quantity of evidence that was presented. What is more important than numbers or quantity is how believable the witnesses were, and how much weight you think their testimony deserves.

---

3rd Circuit Model Criminal Jury Instructions, No. 3.04 (2012)

15

## GOVERNMENT'S REQUEST NO. 10

### Credibility of Witnesses – Law Enforcement Officer

You have heard the testimony of law enforcement officers. The fact that a witness is employed as a law enforcement officer does not mean that his or her testimony necessarily deserves more or less consideration or greater or lesser weight than that of any other witness.

You must decide, after reviewing all the evidence, whether you believe the testimony of the law enforcement witness and how much weight, if any, it deserves.

_____

3rd Circuit Model Criminal Jury Instructions, No. 4.18 (2012) .

16

A177

## GOVERNMENT'S REQUEST NO. 11

**Credibility of Witnesses – Cooperating Witnesses**

You have heard evidence that some witnesses are alleged co-conspirators, who said they participated in the crimes charged, and who made plea agreements with the government. You have also heard testimony that others have made plea agreements with the government in other cases.

Their testimony was received in evidence and may be considered by you. The government is permitted to present the testimony of someone who has reached a plea bargain with the government in exchange for his testimony, but you should consider the testimony of these witnesses with great care and caution. In evaluating their testimony, you should consider this factor along with the others I have called to your attention. Whether or not their testimony may have been influenced by the plea agreement, and in Lamont Lewis's case, his alleged involvement in the crime charged is for you to determine. You may give their testimony such weight as you think it deserves.

You must not consider a co-conspirator's guilty plea as any evidence of guilt as to the defendants on trial. A co-conspirator's decision to plead guilty was a personal decision about his own guilt. Such evidence is offered only to allow you to assess the credibility of the witness; to eliminate any concern that any of the defendants has been singled out for prosecution; and to explain how the witness came to possess detailed first-hand knowledge of the events about which he testified. You may consider those guilty pleas only for these purposes.

---

3rd Circuit Model Criminal Jury Instructions, No. 4.19 (2012).

17

A178

## **GOVERNMENT'S REQUEST NO. 12**

### **Impeachment of Witness – Prior Conviction (F.R.E. 609)**

You heard evidence that some witnesses were previously convicted of crimes punishable by more than one year in jail. You may consider this evidence, along with other pertinent evidence, in deciding whether or not to believe a witness and how much weight to give to that witness's testimony.

---

3rd Circuit Model Criminal Jury Instructions, No. 4.25 (2012).

18

**GOVERNMENT'S REQUEST NO. 13**

**Opinion Evidence (Expert Witnesses)**

The rules of evidence ordinarily do not permit witnesses to state their own opinions about important questions in a trial, but there are exceptions to these rules.

In this case, you heard testimony from certain witnesses who were qualified as expert witnesses and who offered opinions. Because of their knowledge, skill, experience, training, or education in their respective fields, they were permitted to offer opinions in those fields and the reasons for those opinions.

The opinions these witnesses state should receive whatever weight you think appropriate, given all the other evidence in the case. In weighing this opinion testimony you may consider the witness' qualifications, the reasons for the witness' opinions, and the reliability of the information supporting the witness' opinions, as well as the other factors discussed in these instructions for weighing the testimony of witnesses. You may disregard the opinions entirely if you decide that a witness's opinions are not based on sufficient knowledge, skill, experience, training, or education. You may also disregard the opinions if you conclude that the reasons given in support of the opinions are not sound, or if you conclude that the opinions are not supported by the facts shown by the evidence, or if you think that the opinions are outweighed by other evidence.

_____

3rd Circuit Model Criminal Jury Instructions, No. 4.08 (2012).

19

A180

## **GOVERNMENT'S REQUEST NO. 14**

### **Opinion Evidence (Lay Witnesses) (F.R.E. 701)**

   Witnesses are not generally permitted to state their personal opinions about important questions in a trial. However, a witness may be allowed to testify to his or her opinion if it is rationally based on the witness' perception and is helpful to a clear understanding of the witness' testimony or to the determination of a fact in issue.

   In this case, I permitted Special Agent Kevin Lewis to offer his opinion of the interpretation of certain coded or ambiguous conversations based on his understanding as the lead investigator during the course of this case. The opinion of this witness should receive whatever weight you think appropriate, given all the other evidence in the case and the other factors discussed in these instructions for weighing and considering whether to believe the testimony of witnesses. Ultimately, it is the jury which shall determine what interpretation to ascribe to the conversations.

_____

3rd Circuit Model Criminal Jury Instructions, No. 4.09 (2012).

20

A181

**GOVERNMENT'S REQUEST NO. 15**

**Stipulated Testimony; Stipulation of Fact; Judicial Notice (F.R.E. 201)  [ as applicable ]**

The parties have agreed what (*name of witness*)'s testimony would be if called as a witness. You should consider that testimony in the same way as if it had been given here in court by the witness.

The Government and the defendants have agreed that certain stipulated facts are true. You may therefore treat these facts as having been proved. You are not required to do so, however, since you are the sole judge of the facts.

I have taken judicial notice of certain facts. *(State the fact(s) that are being judicially noticed.)* I believe *(this fact is )(these facts are) (of such common knowledge) (can be so accurately and readily determined from (name accurate source))* that it cannot reasonably be disputed. You may accept this fact as proven, but are not required to do so. As with any fact the final decision whether or not to accept it is for you to make and you are not required to agree with me.

Modified 3rd Circuit Model Criminal Jury Instructions, Nos. 4.01-4.03 (2012).

## **GOVERNMENT'S REQUEST NO. 16**

### **Audio/Video Recordings - Consensual**

During the trial you heard audio recordings of conversations with the defendants made without their knowledge. These recordings were made with the consent and agreement of one of the other parties to the conversations.

The use of this procedure to gather evidence is lawful and the recordings may be used by either party.

———————————

3rd Circuit Model Criminal Jury Instructions, No. 4.04 (2012).

22

## GOVERNMENT'S REQUEST NO. 17

**Audio/Video Recordings - Non-consensual**

During the trial, you heard recordings of conversations with the defendants which were made without the knowledge of the parties to the conversations, but with the consent and authorization of the court. These recordings (sometimes referred to as wiretaps) were lawfully obtained.

The use of this procedure to gather evidence is lawful and the recordings may be used by either party.

_____

3rd Circuit Model Criminal Jury Instructions, No. 4.05 (2012).

23

A184

**GOVERNMENT'S REQUEST NO. 18**

**Audio/Video Recordings - Transcripts**

You have heard audio recordings that were received in evidence, and you were given or shown written transcripts of the recordings.

Keep in mind that the transcripts are not evidence. They were given to you only as a guide to help you follow what was being said. The recordings themselves are the evidence. If you noticed any differences between what you heard on the recordings and what you read in the transcripts, you must rely on what you heard, not what you read. And if you could not hear or understand certain parts of the recordings you must ignore the transcripts as far as those parts are concerned.

The transcripts name the speakers. But remember, you must decide who you actually heard speaking in the recording. The names on the transcript were used simply for your convenience.

_____

3rd Circuit Model Criminal Jury Instructions, No. 4.06 (2012)

24

A185

**GOVERNMENT'S REQUEST NO. 19**

**Specific Investigation Techniques Not Required**

During the trial you heard testimony of witnesses and argument by counsel that the government did not use specific investigative techniques such as fingerprints, DNA analysis, and the use of recording devices in certain circumstances. You may consider these facts in deciding whether the government has met its burden of proof, because as I told you, you should look to all of the evidence or lack of evidence in deciding whether the defendant is guilty. However, there is no legal requirement that the government use any of these specific investigative techniques or all possible techniques to prove its case. There is no requirement to use any particular investigative means, or to offer them in evidence.

Your concern, as I have said, is to determine whether or not the evidence admitted in this trial proves the defendant's guilt beyond a reasonable doubt.

_____

3rd Circuit Model Criminal Jury Instructions, No. 4.14 (2012).

## GOVERNMENT'S REQUEST NO. 20

### Defendant's Choice not to Testify or Present Evidence

*(Name of defendant)(A defendant)* did not testify *(did not present evidence)* in this case. A defendant has an absolute constitutional right not to testify *(or to present any evidence)*. The burden of proof remains with the prosecution throughout the entire trial and never shifts to the defendant. The defendant is never required to prove that he is innocent. You must not attach any significance to the fact that *(name of defendant)* did not testify. You must not draw any adverse inference against him because he did not take the witness stand. Do not consider, for any reason at all, the fact that *(name of defendant)(a defendant)* did not testify. Do not discuss that fact during your deliberations or let it influence your decision in any way.

---

3rd Circuit Model Criminal Jury Instructions, No. 4.27 (2012).

26

A187

## GOVERNMENT'S REQUEST NO. 21

### Defendant's Testimony

In a criminal case, a defendant has a constitutional right not to testify. However, if a defendant chooses to testify, that defendant is, of course, permitted to take the witness stand on his or her own behalf. In this case, *(name of defendant)* testified. You should examine and evaluate that testimony just as you would the testimony of any witness.

---

3rd Circuit Model Criminal Jury Instructions, No. 4.28 (2012).

27

**GOVERNMENT'S REQUEST NO. 22**

**Consideration of Prior Convictions - Impeachment (F.R.E. 609); Racketeering Conspiracy**

You heard evidence that defendants Kaboni Savage, Robert Merritt, and Steven Northington were previously convicted of crimes. Generally, where a defendant testifies, you may consider evidence of that defendant's previous convictions to decide whether to believe that defendant's testimony and how much weight to give it. However, that evidence does not mean that that defendant committed the substantive crimes charged here, and you must not use that evidence as any proof of the crimes charged in Counts 2 though 17 in this case.

However, as to Count 1, the racketeering conspiracy, evidence of prior convictions may be considered by you, as evidence of underlying racketeering activity, in conjunction with other evidence, as part of the proof that a particular defendant engaged in that racketeering activity.

Evidence of one defendant's prior conviction may not be used in any way at all in connection with the other defendants.

---

Modified from 3rd Circuit Model Criminal Jury Instructions, No. 4.36 (2012); United States v. Grayson, 795 F.2d 278, 282 (3d Cir. 1986); United States v. Pelullo, 14 F.3d 881, 888 (3d Cir. 1994).

28

A189

## GOVERNMENT'S REQUEST NO. 23

### Defendant's Character Evidence

You have heard *(reputation)(opinion)(reputation and opinion)* evidence about whether the defendant has a character trait for *(name trait, such as truthfulness, peacefulness, honesty, being a law-abiding citizen, etc.)*.

You should consider this character evidence together with and in the same way as all the other evidence in the case in deciding whether the government has proved the charges beyond a reasonable doubt.

_____

3rd Circuit Model Criminal Jury Instructions, No. 4.39 (2012).

29

## GOVERNMENT'S REQUEST NO. 24

### Motive Explained

Motive is not an element of the offense with which the defendants are charged. Proof of bad motive is not required to convict. Further, proof of bad motive alone does not establish that the defendant is guilty and proof of good motive alone does not establish that the defendant is not guilty. Evidence of a defendant's motive may, however, help you find that defendant's intent.

Intent and motive are different concepts. Motive is what prompts a person to act. Intent refers only to the state of mind with which the particular act is done.

Personal advancement and financial gain, for example, are motives for much of human conduct. However, these motives may prompt one person to intentionally do something perfectly acceptable while prompting another person to intentionally do an act that is a crime.

---

3rd Circuit Model Criminal Jury Instructions, No. 5.04 (2012).

30

A191

## GOVERNMENT'S REQUEST NO. 25

### Separate Consideration - Multiple Defendants Charged with Different Offenses

The defendants, Kaboni Savage, Robert Merritt, Steven Northington, and Kidada Savage, are charged with different offenses. I will explain to you in more detail shortly which defendants are charged with which offenses. Before I do that, however, I want to emphasize several things.

The number of offenses charged is not evidence of guilt, and this should not influence your decision in any way. Also, in our system of justice, guilt or innocence is personal and individual. You must separately consider the evidence against each defendant on each offense charged, and you must return a separate verdict for each defendant for each offense. For each defendant and each offense, you must decide whether the government has proved beyond a reasonable doubt that a particular defendant is guilty of a particular offense.

Your decision on any one defendant or any one offense, whether guilty or not guilty, should not influence your decision on any of the other defendants or offenses. Each offense and each defendant should be considered separately.

---

3rd Circuit Model Criminal Jury Instructions, No. 3.15 (2012)

31

## **GOVERNMENT'S REQUEST NO. 26**

**Verdict as to defendant only**

You are here to determine whether the government has proven the guilt of the defendants for the charges in the indictment beyond a reasonable doubt. You are not called upon to return a verdict as to the guilt or innocence of any other person or persons.

So, if the evidence in the case convinces you beyond a reasonable doubt of the guilt of a defendant for the crimes charged in the indictment, you should so find, even though you may believe that one or more other unindicted persons are also guilty. But if any reasonable doubt remains in your minds after impartial consideration of all the evidence in the case, it is your duty to find that defendant not guilty.

---

1A O'Malley, Grenig, and Lee, Federal Jury Practice and Instructions, §12.11 (6th ed. 2010).

32

## GOVERNMENT'S REQUEST NO. 27

### Summary of the Indictment

As I explained at the beginning of trial, an indictment is just the formal way of specifying the exact crimes the defendants are accused of committing. An indictment is simply a description of the charges against a defendant. It is an accusation only. An indictment is not evidence of anything, and you should not give any weight to the fact that the defendants have been indicted in making your decision in this case.

I will send a copy of the indictment to the jury room with you to aid in your deliberations.

––––––––––––––––––

3rd Circuit Model Criminal Jury Instructions, No. 3.07 (2012).

33

## GOVERNMENT'S REQUEST NO. 28

### "On or About"

You will note that the indictment charges that the offenses were committed "on or about" certain dates. The Government does not have to prove with certainty the exact dates of the alleged offenses. It is sufficient if the Government proves beyond a reasonable doubt that the offenses were committed on dates reasonably near the dates alleged.

---

3rd Circuit Model Criminal Jury Instructions, No. 3.08 (2012).

34

A195

## GOVERNMENT'S REQUEST NO. 29

### Venue

The indictment alleges that some act in furtherance of the offenses charged occurred here in the Eastern District of Pennsylvania. There is no requirement that all aspects of the offenses charged, or the entire conspiracy take place here in the Eastern District of Pennsylvania. But for you to return a guilty verdict, the government must convince you that some act in furtherance of the crime charged, or either the agreement, or one of the overt acts, took place here in the Eastern District of Pennsylvania.

Unlike all the elements that I have described, this fact only has to be proved by a preponderance of the evidence. This means the government only has to convince you that it is more likely than not that some act in furtherance of the crime charged, or some part of the conspiracy took place here.

Remember that the government must prove all the elements I have described beyond a reasonable doubt.

_____

3rd Circuit Model Criminal Jury Instructions, No. 3.09 (2012).

## GOVERNMENT'S REQUEST NO. 30

### Count 1 - RICO Conspiracy - Elements of the Offense (18 U.S.C. §1962(d))

Count 1 of the indictment charges that from at least as early as late 1997 to on or about April 21, 2010, the defendants, Kaboni Savage, Robert Merritt, Steven Northington, and Kidada Savage, knowingly conspired and agreed to conduct and participate, directly and indirectly, in the conduct of the affairs of an enterprise through a pattern of racketeering activity. In order to convict a defendant on the racketeering conspiracy offense charged in Count 1, the government must prove each defendant knowingly agreed that a conspirator, which may include the defendant himself, would commit a violation of 18 U.S.C. § 1962(c).

Section 1962(c) is commonly referred to as the "RICO" statute, which stands for Racketeering Influenced Corrupt Organizations Act. The relevant provision of the RICO statute provides as follows:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

Section 1962(d) makes it unlawful for a person to conspire to violate Section 1962(c).

It is a federal crime for two or more persons to agree or conspire to commit any offense against the United States, even if they never actually achieve their objective. A conspiracy is a kind of criminal partnership.

In order for you to find a defendant guilty of conspiracy to conduct or to participate in the conduct of an enterprise's affairs through a pattern of racketeering activity, you must find that the government proved beyond a reasonable doubt each of the following three (3) elements as to that defendant:

36

First: That two or more persons agreed to conduct or to participate, directly or indirectly, in the conduct of an enterprise's affairs through a pattern of racketeering activity;

Second: That that defendant was a party to or member of that agreement; and

Third: That that defendant joined the agreement or conspiracy knowing of its objective to conduct or participate, directly or indirectly, in the conduct of an enterprise's affairs through a pattern of racketeering activity and intending to join together with at least one other alleged conspirator to achieve that objective; that is, that that defendant and at least one other alleged conspirator shared a unity of purpose and the intent to achieve the objective of conducting or participating in the conduct of an enterprise's affairs through a pattern of racketeering activity.

The government is not required to prove that the alleged enterprise was actually established, that the defendant was actually employed by or associated with the enterprise, that the enterprise was actually engaged in, or its activities actually affected, interstate or foreign commerce, or that the defendant actually committed any racketeering act.

In short, to find Kaboni Savage, Robert Merritt, Steven Northington, or Kidada Savage guilty of the RICO conspiracy charged in Count 1 of the indictment, you must find that the government proved beyond a reasonable doubt that he or she joined in an agreement or conspiracy with another person or persons, knowing that the objective or purpose was to conduct or to participate, directly or indirectly, in the conduct of the affairs of an enterprise through a pattern of racketeering activity, and intending to join with the other person or persons to achieve that objective.

37

I will now instruct you on the general principles of conspiracy law. Then I will instruct you on the specific law regarding RICO conspiracies.

———————————

3rd Circuit Model Criminal Jury Instructions, No. 6.18.1962D (2009).

38

## GOVERNMENT'S REQUEST NO. 31

### Count 1 - RICO Conspiracy - Existence of an Agreement

The first element of the crime of conspiracy is the existence of an agreement. The government must prove beyond a reasonable doubt that two or more persons knowingly and intentionally arrived at a mutual understanding or agreement, either spoken or unspoken, to work together to achieve the overall objective of the conspiracy, to conduct or to participate, directly or indirectly, in the conduct of the affairs of an enterprise through a pattern of racketeering activity.

The government does not have to prove the existence of a formal or written agreement, or an express oral agreement spelling out the details of the understanding. The government also does not have to prove that all the members of the conspiracy directly met, or discussed between themselves their unlawful objective, or agreed to all the details, or agreed to what the means were by which the objective would be accomplished. The government is not even required to prove that all the people named in the indictment were, in fact, parties to the agreement, or that all members of the alleged conspiracy were named, or that all members of the conspiracy are even known. What the government must prove beyond a reasonable doubt is that two or more persons in some way or manner arrived at some type of agreement, mutual understanding, or meeting of the minds to try to accomplish a common and unlawful objective.

You may consider both direct evidence and circumstantial evidence in deciding whether the government has proved beyond a reasonable doubt that an agreement or mutual understanding existed. You may find the existence of a conspiracy based on reasonable inferences drawn from the actions and statements of the alleged members of the conspiracy, from the circumstances surrounding the scheme, and from evidence of related facts and circumstances

39

which prove that the activities of the participants in a criminal venture could not have been

carried out except as the result of a preconceived agreement, scheme, or understanding.

———————————

3rd Circuit Model Criminal Jury Instructions, 6.18.371C (2012).

40

**GOVERNMENT'S REQUEST NO. 32**

**Count 1 - RICO Conspiracy - Membership in the Agreement**

If you find that a criminal agreement or conspiracy existed, then in order to find a defendant guilty of conspiracy you must also find that the government proved beyond a reasonable doubt that he knowingly and intentionally joined that agreement or conspiracy during its existence. The government must prove that the defendant knew the goal or objective of the agreement or conspiracy and voluntarily joined it during its existence, intending to achieve the common goal or objective and to work together with the other alleged conspirators toward that goal or objective.

The government need not prove that a defendant knew everything about the conspiracy or that he knew everyone involved in it, or that he was a member from the beginning. The government also does not have to prove that a defendant played a major or substantial role in the conspiracy.

You may consider both direct evidence and circumstantial evidence in deciding whether a defendant joined the conspiracy, knew of its criminal objective, and intended to further the objective. Evidence which shows that a defendant only knew about the conspiracy, or only kept "bad company" by associating with members of the conspiracy, or was only present when it was discussed or when a crime was committed, is not sufficient to prove that he was a member of the conspiracy even if he approved of what was happening or did not object to it. Likewise, evidence showing that a defendant may have done something that happened to help a conspiracy does not necessarily prove that he joined the conspiracy. You may, however, consider this evidence, with all the other evidence, in deciding whether the government proved beyond a reasonable doubt that a defendant joined the conspiracy.

---

3rd Circuit Model Criminal Jury Instructions, 6.18.371D (2012).

41

**GOVERNMENT'S REQUEST NO. 33**

**Count 1 - RICO Conspiracy - Mental States**

           In order to find a defendant guilty of conspiracy you must find that the government proved beyond a reasonable doubt that he joined the conspiracy knowing of its objective and intending to help further or achieve that objective. That is, the government must prove: (1) that the defendant knew of the objective or goal of the conspiracy, (2) that he joined the conspiracy intending to help further or achieve that goal or objective, and (3) that he and at least one other alleged conspirator shared a unity of purpose toward that objective or goal.

           You may consider both direct evidence and circumstantial evidence, including the defendant's words or conduct and other facts and circumstances, in deciding whether he had the required knowledge and intent.

––––––––––––––––––––

3rd Circuit Model Criminal Jury Instructions, 6.18.371E (2012).

42

## GOVERNMENT'S REQUEST NO. 34

### Count 1 - RICO Conspiracy - Overt Acts Need Not be Proved

Count 1 of the indictment alleges that in furtherance of the conspiracy, various overt acts were committed.

To prove the crime of conspiracy under Title 18, United States Code, Section 1962(d), the government is not required to prove that any overt acts were performed. Under the law, the agreement to commit the offense is alone sufficient to prove a charge of conspiracy against a defendant, if you find that that defendant intentionally became a member of the conspiracy. Proof of the commission of overt acts is merely evidence from which you may infer the existence of the conspiracy.

_____

Salinas v. United States, 522 U.S. 52, 63 (1997).

43

**GOVERNMENT'S REQUEST NO. 35**

**Count 1 - RICO Conspiracy - Success Immaterial**

The government is not required to prove that any of the members of the conspiracy were successful in achieving any or all of the objectives of the conspiracy. You may find a defendant guilty of conspiracy if you find that the government proved beyond a reasonable doubt the elements I have explained, even if you find that the government did not prove that any of the conspirators actually committed any other offense against the United States. Conspiracy is a criminal offense separate from the offense that was the objective of the conspiracy; conspiracy is complete without the commission of that offense.

_____

3rd Circuit Model Criminal Jury Instructions, No. 6.18.371G (2012).

44

A205

**GOVERNMENT'S REQUEST NO. 36**

**Count 1 - RICO Conspiracy - Duration**

A conspiracy ends when the objectives of the conspiracy have been achieved or when all members of the conspiracy have withdrawn from it. However, a conspiracy may be a continuing conspiracy and if it is, it lasts until there is some affirmative showing that it has ended or that all its members have withdrawn. A conspiracy may be a continuing one if the agreement includes an understanding that the conspiracy will continue over time. Also, a conspiracy may have a continuing purpose or objective and, therefore, may be a continuing conspiracy.

———————————

3rd Circuit Model Criminal Jury Instructions, 6.18.371I (2012).

**GOVERNMENT'S REQUEST NO. 37**

**Count 1 - RICO Conspiracy - Acts and Statements of Co-Conspirators**

Evidence has been admitted in this case that certain persons, who are alleged to be co-conspirators of Kaboni Savage, Robert Merritt, Steven Northington, and Kidada Savage, did or said certain things. The acts or statements of any member of a conspiracy are treated as the acts or statements of all the members of the conspiracy, if these acts or statements were performed or spoken during the existence of the conspiracy and to further the objectives of the conspiracy.

Therefore, you may consider as evidence against a defendant any acts done or statements made by any members of the conspiracy, during the existence of and to further the objectives of the conspiracy. You may consider these acts and statements even if they were done and made in the defendant's absence and without his knowledge. As with all the evidence presented in this case, it is for you to decide whether you believe this evidence and how much weight to give it.

That concludes my instructions on conspiracy generally. I will now instruct you in the specifics of RICO conspiracy.

———————————————

3rd Circuit Model Criminal Jury Instructions, 6.18.371K (2012) (¶¶ 1-2 only).

46

Case: 14-9003    Document: 003112747904    Page: 209    Date Filed: 10/10/2017

## GOVERNMENT'S REQUEST NO. 38

### Count 1 - RICO Conspiracy - Agreement to Commit a Racketeering Offense

As I previously stated, the agreement to commit a RICO offense is the essential aspect of the racketeering conspiracy offense.

The jury may find that a defendant has entered into the requisite agreement to violate the RICO statute when the government has proven beyond a reasonable doubt that the defendant agreed with at least one other co-conspirator that at least two racketeering acts of the type or types of racketeering activity listed in the indictment, or a collection of unlawful debt, would be committed by a member of the conspiracy in the conduct of the affairs of the enterprise. The government is not required to prove that the defendant personally committed two racketeering acts or a collection of unlawful debt, or that he agreed to personally commit two racketeering acts or a collection of unlawful debt. Rather, it is sufficient if the government proves beyond a reasonable doubt that the defendant agreed to participate in the enterprise with the knowledge and intent that at least one member of the RICO conspiracy, who could be, but need not be, the defendant himself, would commit at least two racketeering acts or a collection of unlawful debt in the conduct of affairs of the enterprise.

Furthermore, to establish the requisite conspiratorial agreement, the government is not required to prove that each co-conspirator explicitly agreed with every other co-conspirator to violate section 1962(c), knew all his fellow conspirators, or was aware of all of the details of the conspiracy. Rather, it is only required that the defendant knew the general nature and common purpose of the conspiracy and that the conspiracy extended beyond his individual role.

Moreover, the elements of a RICO conspiracy, such as the conspiratorial agreement, the defendant's knowledge of it, and the defendant's participation in the conspiracy,

47

A208

may be inferred from circumstantial evidence. For example, when the evidence establishes that the defendant and at least one other conspirator committed several racketeering acts in furtherance of the charged enterprise's affairs, you may infer the existence of the requisite agreement to commit a RICO offense. However, you must determine whether, based on the entirety of the evidence, the government has proven that the defendant entered into the required conspiratorial agreement.

Furthermore, it is not necessary that the government prove that a particular defendant was a member of the conspiracy from its beginning. Different persons may become members of the conspiracy at different times.

If you find that there is a conspiracy, you may consider the acts and statements of any other member of the conspiracy during and in the furtherance of the conspiracy as evidence against a defendant whom you have found to be a member of it. When persons enter into a conspiracy, they become agents for each other, so that the act or statement of one conspirator during the existence of, and in furtherance of, the conspiracy is considered the act or statement of all the other conspirators and is evidence against them all.

Moreover, a defendant may be convicted as a conspirator even though he or she plays a minor role in the conspiracy, provided that you find beyond a reasonable doubt that the conspiracy existed and that the defendant knowingly participated in the conspiracy with the intent to accomplish its objectives or assist other conspirators in accomplishing its objectives.

Seventh Circuit Pattern Jury Instructions (1999 ed.); Eleventh Circuit Pattern Jury Instructions § 71.2 (2003 ed.); Salinas v. United States, 522 U.S. 52, 62-65 (1997); United States v. Lawson, 535 F.3d 434, 445 (6th Cir. 2008); United States v. Useni, 516 F.3d 634, 646 (7th Cir. 2008); United States v. Ashman, 979 F.2d 469, 492 (7th Cir. 1992); United States v. Crockett, 979 F.2d 1204, 1208-09 (7th Cir. 1992); United States v. Melton, 689 F.2d 679, 683 (7th Cir. 1982);

48

United States v. Quinones, 511 F.3d 289, 316 (2d Cir. 2007); United States v. Browne, 505 F.3d 1229, 1265 (11th Cir. 2007); United States v. Smith, 413 F.3d 1253, 1272-73 (10th Cir. 2005); United States v. Saadey, 393 F.3d 669, 676 (6th Cir. 2005); United States v. Pipkins, 378 F.3d 1281, 1288 (11th Cir. 2004); United States v. Lee, 374 F.3d 637, 646-47 (8th Cir. 2004); United States v. Harriston, 329 F.3d 779, 785 (11th Cir. 2003); United States v. Ciccone, 312 F.3d 535, 542 (2d Cir. 2002); United States v. Abbell, 271 F.3d 1286, 1299 (11th Cir. 2001); United States v. Nguyen, 255 F.3d 1335, 1341 (11th Cir. 2001); United States v. Zichettello, 208 F.3d 72, 100 (2d Cir. 2000); United States v. Posada-Rios, 158 F.3d 832, 857 (5th Cir. 1998); United States v. To, 144 F.3d 737, 744 (11th Cir. 1998); United States v. Starrett, 55 F.3d 1525, 1543-44 (11th Cir. 1995); United States v. Quintanilla, 2 F.3d 1469, 1484 (7th Cir. 1993); United States v. Eufrasio, 935 F.2d 553, 577 (3d Cir. 1991); United States v. Rastelli, 870 F.2d 822, 825 (2d Cir. 1989); United States v. Neapolitan, 791 F.2d 489, 498 (7th Cir. 1986); United States v. Elliot, 571 F.2d 880, 903-04 (5th Cir. 1978); United States v. Carlock, 806 F.2d 535, 547 (5th Cir.1986); United States v. Sutherland, 656 F.2d 1181, 1187 n.4 (5th Cir. 1981).

**GOVERNMENT'S REQUEST NO. 39**

**Count 1 - RICO conspiracy - Objectives of the Racketeering Conspiracy**

As I instructed you earlier, the objective of the racketeering conspiracy charged in Count 1was to violate 18 U.S.C. § 1962(c) by participating in the affairs of the enterprise, directly or indirectly, through a pattern of racketeering activity.

I will now explain to you to the meanings of the terms "enterprise," "associated with," "conduct or participate, directly or indirectly, in the conduct of that enterprise's affairs," and "through a pattern of racketeering activity." However, as I previously instructed you, the government does not have to actually prove these elements to find a defendant guilty of racketeering conspiracy as charged in Count One.

———————————————————

Modeled on 3d Circuit Model Criminal Jury Instruction, No. 6.18.1962D (2009).

**GOVERNMENT'S REQUEST NO. 40**

**Count 1 - RICO Conspiracy - "Enterprise" Defined Generally**

As used in these instructions, the term "enterprise" means either (1) a legal entity, such as a corporation or partnership; or (2) a group of individuals associated in fact although not a legal entity. In this case, the enterprise alleged in the indictment is the Kaboni Savage Organization ("KSO"), a group of individuals associated in fact.

The term enterprise includes both legitimate enterprises and also illegitimate or completely illegal enterprises. Thus, the enterprise need not have a purpose other than the commission of or facilitating the commission of the racketeering activity alleged in the indictment.

In order to find a defendant guilty of the RICO conspiracy charged in Count 1, the government is not required to prove that the alleged enterprise actually existed. Rather, because an agreement to commit a RICO offense is the essence of a RICO conspiracy, the government need only prove that a defendant joined the conspiracy and that if the object of the conspiracy was achieved, the enterprise would be established.

————————————

3rd Circuit Model Criminal Jury Instructions, No. 6.18.1962C-1 (2009); final paragraph taken from No. 6.18.1962D (2009).

51

**GOVERNMENT'S REQUEST NO. 41**

**Count 1 - RICO Conspiracy - "Enterprise" - Association in Fact Defined**

The indictment alleges that the enterprise in this case was a group of individuals associated together in fact although not a legal entity. As I already told you, an enterprise need not be a formal business entity such as a corporation, but may be merely an informal association of individuals. A group or association of individuals can be an enterprise if they have associated together for a common purpose of engaging in a course of conduct. This is referred to as an "association in fact enterprise."

In order to find that the enterprise in the conduct of whose affairs the defendants conspired to participate, directly or indirectly, through a pattern of racketeering activity was an "association in fact enterprise," you must find that the government proved beyond a reasonable doubt each of the following:

First: That the group had a purpose and longevity sufficient for the members of the group;

Second: That the group had an ongoing organization, formal or informal, with some sort of framework for carrying out its objectives;

Third: That there was a relationship among the members of the group and that the members of the group functioned as a continuing unit to achieve a common purpose; and

Fourth: That the enterprise existed separate and apart from the alleged pattern of racketeering activity.

To find that the enterprise was an entity separate and apart from the alleged pattern of racketeering activity, you must find that the government proved that the enterprise had an existence beyond what was necessary merely to commit the charged racketeering activity.

52

However, the government does not have to prove that the enterprise had some function wholly unrelated to the racketeering activity; the enterprise may be formed solely for the purpose of carrying out a pattern of racketeering activity. The existence of an association-in-fact enterprise is often proved by what it does. Evidence that shows a pattern of racketeering activity may be considered in determining whether the government has proved the existence of an enterprise beyond a reasonable doubt, and proof of a pattern of racketeering activity may be sufficient for you to infer the existence of an association-in-fact enterprise. Also, evidence showing the oversight or coordination of the commission of several different racketeering acts and other activities on an ongoing basis may be considered in determining whether the enterprise had a separate existence.

To prove an association-in-fact enterprise, the government need not prove that the group had a hierarchical structure or a chain of command; decisions may be made on an ad hoc basis and by any number of methods. The government also need not prove that members of the group had fixed roles; different members may perform different roles at different times. The government need not prove that the group was a business-like entity, or that it had a name, or regular meetings, or established rules and regulations, or the like. An enterprise is also not limited to groups whose crimes are sophisticated, diverse, complex, or unique.

_____

3rd Circuit Model Criminal Jury Instructions, No. 6.18.1962C-2 (2009).

**GOVERNMENT'S REQUEST NO. 42**

**Count 1 - RICO Conspiracy - "Engaged In, Or The Activities Of Which Affect, Interstate Commerce" - Defined**

I remind you that in order to find a defendant guilty of the RICO conspiracy

charged in Count 1, the government is not required to prove that the alleged enterprise actually

existed, or that the enterprise actually engaged in or its activities actually affected interstate or

foreign commerce. Rather, because an agreement to commit a RICO offense is the essence of a

RICO conspiracy, the government need only prove that a defendant joined the conspiracy and

that if the object of the conspiracy was achieved, the enterprise would be established and the

enterprise would be engaged in or its activities would affect interstate or foreign commerce.

An enterprise is engaged in interstate commerce when it is itself directly engaged

in the production, distribution, or acquisition of services, money, goods, or other property in

interstate commerce.

Alternatively, an enterprise's activities affected interstate commerce if its activities

in any way interfered with, changed, or altered the movement or transportation or flow of goods,

merchandise, money, or other property between or among two or more states. The government

must prove that the enterprise's activities had some effect on commerce, no matter how minimal

or slight. The government need not prove that a defendant knew that the enterprise would engage

in, or that the enterprise's activities would affect, interstate commerce. The government also need

not prove that a defendant intended to obstruct, delay or interfere with interstate commerce, or

that the purpose of the alleged crime generally was to affect interstate commerce.

In addition, the government does not have to prove that the pattern or the

individual acts of racketeering activity themselves affected interstate commerce. Rather, it is the

54

enterprise and its activities considered as a whole that must be shown to have that effect. On the

other hand, this effect on interstate commerce may be established through the effect caused by

the pattern or the individual acts of racketeering activity.

_____

3rd Circuit Model Criminal Jury Instructions, No. 6.18.1962C-3 (2009); first paragraph taken
from No. 6.18.1962D (2009).

**GOVERNMENT'S REQUEST NO. 43**

<u>Count 1 - RICO Conspiracy - "Associated With or Employed by the Enterprise"- Defined</u>

In order to find a defendant guilty of the RICO conspiracy charged in Count 1, the government is not required to prove that the defendant was actually employed by or associated with the enterprise, or that the defendant agreed to be employed by or to be associated with the enterprise. Rather, you may find a defendant guilty of the RICO conspiracy offense if the evidence establishes that that defendant knowingly agreed to facilitate or further a scheme which, if completed, would constitute a RICO violation involving at least one other conspirator who would be employed by or associated with the enterprise and who would participate in the operation or management of the enterprise.

You should give the phrase "employed by" its common, ordinary meaning. For example, a person is employed by an enterprise when he or she is on the payroll of the enterprise, or performs services for the enterprise, or holds a position in the enterprise.

Alternatively, you may find that a defendant was "associated with" the enterprise, if you find that the government proved that he was aware of the general existence and nature of the enterprise, that it extended beyond his individual role, and with that awareness participated in, aided, or furthered the enterprise's activities.

It is not required that a defendant be employed by or associated with the enterprise for the entire time the enterprise existed. The government also is not required to prove that a defendant had a formal or managerial position in the enterprise, or participated in all the activities of the enterprise, or had full knowledge of all the activities of the enterprise, or knew about the participation of all the other members of the enterprise.

56

To prove that a conspirator was either employed by or associated with an enterprise, the government must prove beyond a reasonable doubt that a defendant was connected to the enterprise in some meaningful way, and that a defendant knew of the existence of the enterprise and of the general nature of its activities.

_____

3rd Circuit Model Criminal Jury Instructions, No. 6.18.1962C-4 (2009); first paragraph taken from No. 6.18.1962D (2009).

**GOVERNMENT'S REQUEST NO. 44**

## Count 1 - RICO Conspiracy - "Conduct or Participate in the Conduct of the Enterprise" - Defined

In order to find a defendant guilty of the RICO conspiracy charged in Count 1, the government is not required to prove that the defendant personally participated in the operation or management of the enterprise, or agreed to personally participate in the operation or management of the enterprise. Rather, you may find a defendant guilty of the RICO conspiracy offense if the evidence establishes that that defendant knowingly agreed to facilitate or further a scheme which, if completed, would constitute a RICO violation involving at least one other conspirator who would be employed by or associated with the enterprise and who would participate in the operation or management of the enterprise.

Evidence that a defendant held a managerial position within the enterprise or exerted control over the enterprise's operations is enough to prove this element, but is not required. You may find that a defendant participated, directly or indirectly, in the conduct of the affairs of the enterprise if you find that he was a lower level participant who acted under the direction of upper management, knowingly furthering the aims of the enterprise by implementing management decisions or carrying out the instructions of those in control, or that a defendant knowingly performed acts, functions, or duties that were necessary to, or helpful in, the operation of the enterprise.

───────────────

3rd Circuit Model Criminal Jury Instructions, No. 6.18.1962C-5 (2009); first paragraph taken from No. 6.18.1962D (2009).

58

**GOVERNMENT'S REQUEST NO. 45**

**Count 1 - RICO Conspiracy - "Pattern of Racketeering Activity" - Defined**

In order to find a defendant guilty of the RICO conspiracy charged in Count 1, the government is not required to prove that the defendant personally committed or agreed to personally commit any act of racketeering activity. Indeed, it is not necessary for you to find that the objective or purpose of the conspiracy were achieved at all. However, the evidence must establish that that defendant knowingly agreed to facilitate or further a scheme which, if completed, would include a pattern of racketeering activity committed by at least one other conspirator.

As used in these instructions, a pattern of racketeering activity includes:

First: That a conspirator committed at least two of the acts of racketeering activity alleged in the indictment and that the last act of racketeering activity occurred within ten years after the commission of a previous act of racketeering activity;

Second: That the acts of racketeering activity were related to each other, meaning that there was a relationship between or among the acts of racketeering activity;

Third: That the acts of racketeering activity amounted to or posed a threat of continued criminal activity; and

Fourth: That a conspirator conducted or participated, directly or indirectly, in the conduct of the enterprise's affairs "through" the pattern of racketeering activity.

With respect to the second requirement, acts of racketeering activity are "related" if the acts had the same or similar purposes, results, participants, victims or methods of commission, or were otherwise interrelated by distinguishing characteristics. Acts of

59

racketeering activity are not related if they are disconnected, sporadic, or widely separated and isolated acts.

As to the third requirement, the government must prove that the racketeering acts themselves amounted to continuing racketeering activity or that the acts otherwise posed a threat of continuing racketeering activity. Continuing racketeering activity may be proved by evidence showing a closed period of repeated racketeering activity; that is, by evidence of a series of related racketeering acts committed over a substantial period of time. Continuing racketeering activity or a threat of continuing racketeering activity may also be proved by evidence showing past racketeering activity that by its nature projects into the future with a threat of repetition; for example, when the acts of racketeering activity are part of a long-term association that exists for criminal purposes or when the acts of racketeering activity are shown to be the regular way of conducting the affairs of the enterprise.

In deciding whether the government proved a pattern of racketeering activity, you may consider evidence regarding the number of acts of racketeering activity, the length of time over which the acts were committed, the similarity of the acts, the number of victims, the number of perpetrators, and the character of the unlawful activity.

You may find that separately performed, functionally different, or directly unrelated acts of racketeering activity form a pattern of racketeering activity if you find that the government proved beyond a reasonable doubt that they were all undertaken in furtherance of one or another of the purposes of the enterprise.

To prove the fourth requirement, that a conspirator conducted or participated in the conduct of the enterprise's affairs *"through"* a pattern of racketeering activity, the government must prove that the acts of racketeering activity had a relationship or a meaningful

connection to the enterprise. This relationship or connection may be established by evidence that

a conspirator was enabled to commit the racketeering activity by virtue of his position with or

involvement in the affairs of the enterprise, or by evidence that a conspirator's position with or

involvement in the enterprise facilitated his commission of the racketeering activity, or by

evidence that the racketeering activity benefitted the enterprise, was authorized by the enterprise,

promoted or furthered the purposes of the enterprise, or was in some other way related to the

affairs of the enterprise.

---

3rd Circuit Model Criminal Jury Instructions, No. 6.18.1962C-6 (2009); first paragraph taken
from No. 6.18.1962D (2009).

**GOVERNMENT'S REQUEST NO. 46**

**Count 1 - RICO Conspiracy - "Racketeering Activity" Defined**

"Racketeering activity," as defined by the RICO statute, includes any acts that involve or that may be charged as any of a wide range of crimes under state or federal law. Count 1 alleges that the defendants agreed that multiple acts of racketeering activity consisting of the following types crimes would be committed:

a.    murder, which is defined as the intentional killing of a human being, which killing was willful, deliberate and premeditated, the knowing aiding and abetting, and willful causing of that murder with the intent to promote or facilitate, aid or attempt to aid, and solicit another to commit the intentional killing, and the agreement to commit the intentional killing, in violation of Title 18, Pennsylvania Consolidated Statutes Annotated, Sections 2502, 306, and 903;

b.    the receiving, concealing, selling, and otherwise dealing in controlled substances, and conspiracy to distribute and to possess with intent to distribute controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), and 846;

c.    arson, which is defined by Pennsylvania law as the intentional starting of a fire or causing of an explosion, while either recklessly placing another person in danger of death or bodily injury, or with the purpose of destroying or damaging an inhabited building or occupied structure, in violation of Title 18, Pennsylvania Consolidated Statutes Annotated, Section 3301;

d.    tampering with a witness, by killing and attempting to kill another person, with intent to prevent the attendance and testimony of any person in an official

62

proceeding, and by using physical force, and the threat of physical force against any person, or attempting to do so, with the intent to influence, delay, or prevent the testimony of any person in an official proceeding, in violation of Title 18, United States Code, Section 1512;

        e.     retaliating against a witness, by killing and attempting to kill another person with intent to retaliate against any person for the attendance of a witness at an official proceeding, and testimony at an official proceeding; or for a person's providing to law enforcement officers information relating to the commission of a federal offense, in violation of Title 18, United States Code, Section 1513;

        f.     laundering of monetary instruments, by conducting and attempting to conduct financial transactions which involve the proceeds of specified unlawful activity, that is, dealing in controlled substances, knowing that the property involved in these financial transactions represents the proceeds of some form of unlawful activity, and knowing that the transactions are designed in whole or in part to conceal or disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956; and

        g.     knowingly engaging and attempting to engage in monetary transactions in criminally derived property, in values greater than $10,000, which property is derived from specified unlawful activity, that is, dealing in controlled substances, in violation of indictable under Title 18, United States Code, Section 1957.

        I will explain the elements of these crimes to you in a moment.

        The indictment need not specify the predicate racketeering acts that the defendants agreed would be committed by some member of the conspiracy in the conduct of the affairs of the enterprise. The indictment alleges that the defendants agreed that multiple racketeering acts

63

would be committed. You may also consider the evidence presented of other racketeering acts committed or agreed to be committed by any co-conspirator in furtherance of the enterprise's affairs to determine whether a defendant agreed that at least one member of the conspiracy would commit two or more racketeering acts.

Moreover, in order to convict a defendant of the RICO conspiracy offense, your verdict must be unanimous as to which type or types of racketeering activity the defendant agreed would be committed; for example, at least two acts of murder, or drug trafficking, or arson, or tampering with a witness, or retaliating against a witness, or money laundering, or one of each, or any combination thereof.

———————————————

3rd Circuit Model Criminal Jury Instructions, No. 6.18.1962C-7 (2009); last two paragraphs are the last two paragraphs of No. 6.18.1962D (2009).

## GOVERNMENT'S REQUEST NO. 47

### Count 1 - RICO Conspiracy - Elements of the Underlying Racketeering Activities

Of the types of crimes listed as racketeering acts in Count 1 of the indictment which I just enumerated for you, I will explain the elements of both tampering with a witness and retaliating against a witness later in these instructions. Right now, I will instruct you on the elements of the remaining crimes charged in Count 1 as types of racketeering activity that the defendants agreed would be committed.

### Murder

#### First Degree Murder

Under Pennsylvania law, first degree murder is an intentional killing. A killing is intentional if it is committed by lying in wait, or is otherwise willful, deliberate, and premeditated. "Willful, deliberate, and premeditated" is defined as the "conscious intent to bring about the death of the victim." Although premeditation is required to find the defendant guilty of first degree murder, this state of mind can be formed in a fraction of a second. When deciding whether the defendant has formed the requisite state of mind for first degree murder, you should consider all the evidence regarding his words and conduct and the attending circumstances that may show his state of mind. For example, you may infer that the defendant possessed the requisite state of mind from evidence establishing that he lay in wait in order to kill the victim or that he aimed a deadly weapon at a vital point of the victim's body.[1]

Under Pennsylvania law a person who commands or aids and abets another person in the commission of an offense is just as guilty as if he committed the offense entirely through

---

[1]     18 Pa.C.S. § 2502; Commonwealth v. O'Searo, 352 A.2d 30, 35-37 (Pa. 1976); Commonwealth v. Hobson, 604 A.2d 717, 720 (Pa. Super. 1992).

65

his own conduct. A person is legally accountable for the criminal conduct of another if he

commands, encourages, or requests another person to engage in specific conduct which would

constitute a crime or an attempt to commit that crime. Likewise, a person is legally accountable

for the conduct of another if he aids, abets, or attempts to aid such other person in planning or

committing a crime. However, to be guilty of aiding and abetting, the defendant must possess

the intent to promote or facilitate the commission of the crime.[1]

Conspiracy to Murder

Under Pennsylvania law, to find a defendant guilty of conspiracy to commit

murder you must be satisfied that the following two elements of conspiracy have been proven

beyond a reasonable doubt.

First, that the defendant agreed with another person or group of persons that they

or one or more of them would engage in the conduct which constitutes murder, or an attempt to

murder, or solicitation to commit murder, or that the defendant agreed to aid such other persons

or group of persons in the planning or commission of the murder or attempt or solicitation to

commit murder.

Second, that the defendant did so with the intent of promoting or facilitating the

commission of the crime of murder.

Furthermore, to be guilty of conspiracy under Pennsylvania law, the defendant or

one of the persons with whom he conspired must have committed at least one overt act in

pursuance of the murder conspiracy. Criminal agreement alone, that is, mere agreement to

commit the crime, is insufficient under Pennsylvania law to warrant a conviction for conspiracy;

---

[1]    18 Pa.C.S. §§ 306(a), (b)(3), and (c) and 902(a).

66

A227

in addition to the agreement to commit the crime, one of the conspirators must perform some act to accomplish the purpose of the conspiracy.[1]

## "Overt Act" – Definition

The term "overt act" means some type of outward, objective action performed by one of the parties to or one of the members of the agreement or conspiracy which evidences that agreement.

Although you must unanimously agree that the same overt act was committed, the government is not required to prove more than one of the overt acts charged. The overt act may, but for the alleged illegal agreement, appear totally innocent and legal, and may include an overt act not listed in the indictment, but established by the evidence at trial.[2]

### Controlled Substance Offenses

#### Conspiracy[3]

It is a federal crime for two or more persons to agree or conspire to commit any offense against the United States, even if they never actually achieve their objective. A conspiracy is a kind of criminal partnership. I have already explained the general elements of conspiracy to you.

In order for you to find that the KSO engaged in conspiracy to distribute and possess with the intent to distribute controlled substances, you must find that the government

---

[1]     Pennsylvania Suggested Standard Criminal Jury Instructions, 18 Pa.C.S. § 903 (2005).

[2]     Adapted from 2 O'Malley, Grenig & Lee, Federal Jury Practice and Instructions, § 31.07 (5th ed. 2000). See also United States v. Adamo, 534 F.2d 31, 38 (3d Cir. 1976)(jury may convict defendant based on finding of commission of overt act not listed in indictment).

[3]     3d Circuit Model Criminal Jury Instruction No. 6.21.846B (2012).

67

proved beyond a reasonable doubt each of the following elements:

First: That two or more members of the KSO agreed to distribute and possess with the intent to distribute a controlled substance. I will explain the elements of these offenses to you in a moment.;

Second: That those members that joined the agreement or conspiracy did so knowing of its objectives to distribute and possess with the intent to distribute controlled substances and intending to join together with at least one other alleged conspirator to achieve those objectives; that is, that at least two conspirators shared a unity of purpose and the intent to achieve those objectives.

### Distribution of a Controlled Substance[1]

Under federal law, to prove that the KSO was engaged in distributing controlled substances, the government must prove each of the following three elements beyond a reasonable doubt as to one or more members of the KSO:

First:  That he or she distributed a mixture or substance containing a controlled substance;

Second:  That he or she distributed the controlled substance knowingly or intentionally;

Third:  That the controlled substance was what the government alleged it was.

The term "distribute" means to deliver or transfer possession or control of a controlled substance from one person to another. "Distribute" includes both the sale of a controlled substance by one person to another, and the delivery or transfer of a controlled

---

[1]        3d Circuit Model Criminal Jury Instructions, Nos. 6.21.841B, 6.21.841-2.

substance without any financial compensation, such as a gift or trade.

### Possession With Intent to Distribute a Controlled Substance[1]

Under federal law, to prove that the KSO was engaged in possessing controlled substances with the intent to distribute them, the government must prove each of the following four elements beyond a reasonable doubt as to one or more members of the KSO:

First:  That he or she possessed a mixture or substance containing a controlled substance;

Second:  That he or she possessed the controlled substance knowingly or intentionally;

Third:  That he or she intended to distribute the controlled substance; and

Fourth:  That the controlled substance was what the government alleged it was.

To "possess" a controlled substance means to have it within one's control. The government does not have to prove that a person physically held the controlled substance, that is, had actual possession of it. As long as the controlled substance was within the person's control, he possessed it. If you find that a person either had actual possession of the controlled substance or had the power and intention to exercise control over it, even though it was not in his physical possession - that is, that he had the ability to take actual possession of the substance when he wanted to do so - you may find that the government has proved possession. Possession may be momentary or fleeting. Proof of ownership of the controlled substance is not required.

I instruct you that, as a matter of law, cocaine, cocaine base ("crack"), heroin,

---

[1]      3d Circuit Model Criminal Jury Instructions, Nos. 6.21.841A, 6.21.841-1, 6.21.841-3.

69

marijuana, and phencyclidine ("PCP") are controlled substances, that is, some kinds of prohibited

drugs. It is solely for you to decide whether the government has proved beyond a reasonable

doubt that a member or members of the KSO distributed or possessed with the intent to distribute

a mixture or substance containing one of the controlled substances alleged.

### Arson[1]

Arson is defined by Pennsylvania law as the intentional starting of a fire or

causing of an explosion, while either recklessly placing another person in danger of death or

bodily injury, or with the purpose of destroying or damaging an inhabited building or occupied

structure. To prove arson, the government must prove:

First, that the defendant:

a. intentionally started a fire, whether on his own property or on that of

another; or

b. intentionally caused an explosion, whether on his own property or on

that of another; or

c. aided, counseled, paid, or agreed to pay someone else to cause a fire or

explosion, whether on his own property or on that of another.

"Property of another" means a building or other property, whether real or personal, in which a

person other than the actor has an interest that the actor has no authority to defeat or impair, even

though the actor may have an interest in the building or property.

Second:

a. that the defendant thereby recklessly placed another person in danger of

_____

[1]    Pa. Suggested Standard Criminal Jury Instructions, §15.3301A (2005).

70

death or bodily injury. A defendant recklessly places another person in danger of death or bodily injury if the defendant consciously disregards a substantial and unjustifiable risk that the person will be killed or suffer bodily injury, the risk being such that it is grossly unreasonable for him or her to disregard it. Persons who may be endangered include, but are not limited to, firefighters, police officers, or other persons who were actively engaged in fighting the fire; or

b. that the defendant did so with the purpose of destroying or damaging an inhabited building or occupied structure of another person. An "occupied structure" refers to any structure, vehicle, or place adapted for overnight accommodation of persons or for carrying on business therein, whether or not a person is actually present at the time of the fire or explosion. An "inhabited building" of another is any other type of structure, vehicle, or place that is not adapted for overnight accommodation or not for purposes of carrying on business where a person is actually present at the time of the fire or explosion.

### Money Laundering

Under federal law, the KSO may have engaged in money laundering in two ways. I will instruct you in the elements of both.

#### Money Laundering under 18 U.S.C. § 1956[1]

In order for you to find that the KSO engaged in money laundering under § 1956, you must find that the government proved each of the following four elements beyond a reasonable doubt as to one or more members of the KSO:

First: That he or she conducted a financial transaction, which affected interstate commerce;

Second: That he or she conducted the financial transaction with the

---

[1]    3d Circuit Model Criminal Jury Instructions, No. 6.18.1956A.

71

proceeds of a specified unlawful activity, that is, drug trafficking;

Third: That he or she knew the transaction involved the proceeds of some
form of unlawful activity; and

Fourth: That he or she either intended to promote the carrying on of the
specified unlawful activity, that is drug trafficking, or conducted the financial transaction with
knowledge that the transaction was designed in whole or in part to conceal or disguise the nature,
location, source, ownership or control of the proceeds of drug trafficking.

### Monetary transactions in property derived from specified unlawful activity in violation of 18 U.S.C. § 1957[1]

In order for you to find that the KSO engaged in monetary transactions in property
derived from specified unlawful activity in violation of section 1957, you must find that the
government proved each of the following five elements beyond a reasonable doubt as to one or
more members of the KSO:

First, that he or she engaged in a monetary transaction in or affecting
interstate commerce.

Second, that the monetary transaction involved criminally derived property
of a value greater than $10,000.

Third, that the property was derived from specified unlawful activity.

Fourth, that the defendant acted knowingly that is, with knowledge that the
transaction involved proceeds of a criminal offense.

Fifth, that the transaction took place in the United States.

The term "conducts" includes initiating, concluding, or participating in initiating

---

3 L. Sand, et al, Modern Federal Jury Instructions, No. 50A-26 (2012).

72

or concluding a transaction.

The term "transaction" means a purchase, sale, loan, pledge, gift, transfer, delivery, or other disposition of property, or with respect to a financial institution, the deposit, withdrawal, transfer between accounts, or any other payment, transfer, or delivery by, through, or to a financial institution by whatever means effected.

The term "financial transaction" means any "transaction," as I just explained that term which in any way or degree affects interstate or foreign commerce and involves the movement of funds by wire or other means; involves the transfer of title to any real property, vehicle, vessel or aircraft; or involves the use of a financial institution which is engaged in, or the activities of which affect, interstate or foreign commerce in any way or degree.

The term "interstate commerce," as used in these instructions, means commerce between any combination of states, territories or possessions of the United States.

The term "proceeds," means any property, or any interest in property, that someone acquires or retains as a result of criminal activity. Proceeds may be derived from an already completed offense or from a completed phase of an ongoing offense.

The term "specified unlawful activity" includes conspiracy to distribute or possess with intent to distribute controlled substances, distributing controlled substances, and possessing controlled substances with intent to distribute.[1]

## Witness Tampering

Tampering With a Witness - The Nature of the Offense and the Statute Involved

The relevant statute on this subject is 18 U.S.C. § 1512(a)(2), which provides that:

---

[1]    Definitions from 3d Circuit Model Criminal Jury Instructions, No. 6.18.1956-1.

(2) Whoever uses physical force or the threat of physical force against any person, or attempts to do so, with intent to –

(A) influence, delay, or prevent the testimony of any person in an official proceeding;
. . . shall be [guilty of witness tampering].

## Tampering With a Witness - Purpose of the Statute

The statute is designed to protect persons who are victims of federal crimes, persons who may be called to testify or give evidence in a federal proceeding - either civil or criminal - and persons who have information about federal crimes. The integrity of the federal system of justice depends upon the cooperation of such victims and potential witnesses. If persons with information do not come forward, produce evidence and appear when summoned the criminal justice system will be significantly impaired. This statute was devised to make it unlawful for anyone to tamper with such a witness in the manner described by the statute

[2 L. Sand, et al., Modern Federal Jury Instructions, Instruction No. 46-29 (2011)].

## Tampering With a Witness - Elements of the Offense

In order to prove the defendants guilty of tampering with a witness, the government must prove each of the following elements beyond a reasonable doubt:

First, that on or about the date charged, the defendants knowingly used force or violence, or the threat of force or violence against a person; and

Second, that the defendants acted knowingly and with intent to prevent the testimony of a witness in an official federal proceeding.

[Adapted from 2 L. Sand, et al., Modern Federal Jury Instructions, Instruction No. 46-30 (2011)].

74

Tampering With a Witness - First Element - Defendants Used Force or Threatened Force

The first element the government must prove beyond a reasonable doubt is that the defendants knowingly used force or threatened to use force against a witness.

The law does not require that the official proceeding be pending at the time of the force or threat, as long as the proceeding was foreseeable such that the defendants knew that their actions were likely to affect the proceeding.

[Adapted from 2 L. Sand, et al., Modern federal Jury Instructions, Instruction No., 46-31 (2011)].

Tampering With a Witness - Second Element - Knowledge and Specific Intent

The second element the government must prove beyond a reasonable doubt is that the defendants acted knowingly and with the specific intent to prevent a witness from testifying at an official proceeding.

I remind you that an act is done knowingly if it is done voluntarily and purposely, and not by accident or mistake.

By specific intent, I mean that the defendant must have acted knowingly and with the unlawful intent to prevent someone from testifying at an official proceeding.

In order to satisfy this element, it is not necessary for the government to prove that the defendants knew they were breaking any particular criminal law. Nor need the government prove that the defendants knew that the official proceeding was before a United States judge or that the judge is a United States judge.

An official proceeding means a proceeding before a court, judge or federal agency. The proceeding may be civil or criminal.

[Adapted from 2 L. Sand, et al., Modern Federal Jury Instructions, Instruction Nos. 46-32 and 46-38 (2011)].

75

A236

**GOVERNMENT'S REQUEST NO. 48**

**Counts 2-7, 9-15 - Violent Crime in Aid of Racketeering - The Indictment and the Statute**

The indictment charges the defendants with committing violent crimes in aid of racketeering.

Count 2 charges that on or about March 19, 1998, at Philadelphia, in the Eastern District of Pennsylvania, for the purpose of maintaining and increasing position in an enterprise engaged in racketeering activity, defendant Kaboni Savage knowingly and intentionally murdered, and willfully caused the murder of Kenneth Lassiter, a human being, in violation of the laws of the Commonwealth of Pennsylvania, that is, Title 18, Pennsylvania Consolidated Statutes Annotated, Section 2502(a).

Count 3 charges that on or about September 6, 2000, at Philadelphia, in the Eastern District of Pennsylvania, as consideration for the receipt of, and as consideration for a promise and an agreement to pay, a thing of pecuniary value from the enterprise, and for the purpose of maintaining and increasing position in the enterprise engaged in racketeering activity, defendant Kaboni Savage knowingly and intentionally murdered, knowingly aided and abetted, and willfully caused the murder of, Mansur Abdullah, a/k/a "Shafiq," a human being, in violation of the laws of the Commonwealth of Pennsylvania, that is, Title 18, Pennsylvania Consolidated Statutes Annotated, Sections 2502(a) and 306.

Count 4 charges that on or about September 13, 2001, at Philadelphia, in the Eastern District of Pennsylvania, as consideration for the receipt of, and as consideration for a promise and an agreement to pay, a thing of pecuniary value from the enterprise, and for the purpose of maintaining and increasing position in an enterprise engaged in racketeering activity, defendant Kaboni Savage knowingly and intentionally murdered, knowingly aided and abetted,

76

and willfully caused the murder of, Carlton Brown, a/k/a "Mohammed," a human being, in

violation of the laws of the Commonwealth of Pennsylvania, that is, Title 18, Pennsylvania

Consolidated Statutes Annotated, Sections 2502(a) and 306.

Count 5 charges that on or about February 26, 2003, at Philadelphia, in the

Eastern District of Pennsylvania, as consideration for the receipt of, and as consideration for a

promise and an agreement to pay, a thing of pecuniary value from the enterprise, and for the

purpose of maintaining and increasing position in the enterprise, defendants Kaboni Savage and

Steven Northington knowingly and intentionally murdered, knowingly aided and abetted, and

willfully caused the murder of, Barry Parker, a human being, in violation of the laws of the

Commonwealth of Pennsylvania, that is, Title 18, Pennsylvania Consolidated Statutes Annotated,

Sections 2502(a) and 306.

Count 6 charges that on or about March 14, 2003, at Philadelphia, in the Eastern

District of Pennsylvania, as consideration for the receipt of, and as consideration for a promise

and an agreement to pay, a thing of pecuniary value from the enterprise, and for the purpose of

maintaining and increasing position in an enterprise engaged in racketeering activity, defendant

Kaboni Savage knowingly and intentionally murdered, knowingly aided and abetted, and

willfully caused the murder of, Tyrone Toliver, a human being, in violation of the laws of the

Commonwealth of Pennsylvania, that is, Title 18, Pennsylvania Consolidated Statutes Annotated,

Sections 2502(a) and 306.

Count 7 charges that on or about March 1, 2004, at Philadelphia, in the Eastern

District of Pennsylvania, as consideration for the receipt of, and as consideration for a promise

and an agreement to pay, a thing of pecuniary value from the enterprise, and for the purpose of

maintaining and increasing position in an enterprise engaged in racketeering activity, defendants

77

A238

Kaboni Savage and Steven Northington knowingly and intentionally murdered, knowingly aided

and abetted, and willfully caused the murder of, Tybius Flowers, a human being, in violation of

the laws of the Commonwealth of Pennsylvania, that is, Title 18, Pennsylvania Consolidated

Statutes Annotated, Sections 2502(a) and 306.

Count 9 charges that from in or about September 2004, to on or about October 9,

2004, in Philadelphia, in the Eastern District of Pennsylvania, and elsewhere, for the purpose of

maintaining and increasing their position in an enterprise engaged in racketeering activity,

defendants Kaboni Savage and Robert Merritt conspired and agreed with each other, and with

others known and unknown to the grand jury, to commit the knowing and intentional murders of

Marcella Coleman, Tameka Nash, Sean Anthony Rodriguez, Tajh Porchea, Khadijah Nash, and

Damir Jenkins, in violation of the laws of the Commonwealth of Pennsylvania, that is, Title 18,

Pennsylvania Consolidated Statutes Annotated, Sections 903 and 2502(a).

Count 10 charges that on or about October 9, 2004, at Philadelphia, in the Eastern

District of Pennsylvania, as consideration for the receipt of, and as consideration for a promise

and an agreement to pay, a thing of pecuniary value from the enterprise, and for the purpose of

maintaining and increasing position in an enterprise engaged in racketeering activity, defendants

Kaboni Savage, Robert Merritt, and Kidada Savage knowingly and intentionally murdered,

knowingly aided and abetted, and willfully caused the murder of, Marcella Coleman, a human

being, in violation of the laws of the Commonwealth of Pennsylvania, that is, Title 18,

Pennsylvania Consolidated Statutes Annotated, Sections 2502(a) and 306.

Count 11 charges that on or about October 9, 2004, at Philadelphia, in the Eastern

District of Pennsylvania, as consideration for the receipt of, and as consideration for a promise

and an agreement to pay, a thing of pecuniary value from the enterprise, and for the purpose of

78

A239

maintaining and increasing position in an enterprise engaged in racketeering activity, defendants

Kaboni Savage, Robert Merritt, and Kidada Savage knowingly and intentionally murdered,

knowingly aided and abetted, and willfully caused the murder of, Tameka Nash, a human being,

in violation of the laws of the Commonwealth of Pennsylvania, that is, Title 18, Pennsylvania

Consolidated Statutes Annotated, Sections 2502(a) and 306.

Count 12 charges that on or about October 9, 2004, at Philadelphia, in the Eastern

District of Pennsylvania, as consideration for the receipt of, and as consideration for a promise

and an agreement to pay, a thing of pecuniary value from the enterprise, and for the purpose of

maintaining and increasing position in an enterprise engaged in racketeering activity, defendants

Kaboni Savage, Robert Merritt, and Kidada Savage knowingly and intentionally murdered,

knowingly aided and abetted, and willfully caused the murder of, Sean Anthony Rodriguez, a

human being, in violation of the laws of the Commonwealth of Pennsylvania, that is, Title 18,

Pennsylvania Consolidated Statutes Annotated, Sections 2502(a) and 306.

Count 13 charges that on or about October 9, 2004, at Philadelphia, in the Eastern

District of Pennsylvania, as consideration for the receipt of, and as consideration for a promise

and an agreement to pay, a thing of pecuniary value from the enterprise, and for the purpose of

maintaining and increasing position in an enterprise engaged in racketeering activity, defendants

Kaboni Savage, Robert Merritt, and Kidada Savage knowingly and intentionally murdered,

knowingly aided and abetted, and willfully caused the murder of, Tajh Porchea, a human being,

in violation of the laws of the Commonwealth of Pennsylvania, that is, Title 18, Pennsylvania

Consolidated Statutes Annotated, Sections 2502(a) and 306.

Count 14 charges that on or about October 9, 2004, at Philadelphia, in the Eastern

District of Pennsylvania, as consideration for the receipt of, and as consideration for a promise

79

and an agreement to pay, a thing of pecuniary value from the enterprise, and for the purpose of

maintaining and increasing position in an enterprise engaged in racketeering activity, defendants

Kaboni Savage, Robert Merritt, and Kidada Savage knowingly and intentionally murdered,

knowingly aided and abetted, and willfully caused the murder of, Khadijah Nash, a human being,

in violation of the laws of the Commonwealth of Pennsylvania, that is, Title 18, Pennsylvania

Consolidated Statutes Annotated, Sections 2502(a) and 306.

Count 15 charges that on or about October 9, 2004, at Philadelphia, in the Eastern

District of Pennsylvania, as consideration for the receipt of, and as consideration for a promise

and an agreement to pay, a thing of pecuniary value from the enterprise, and for the purpose of

maintaining and increasing position in an enterprise engaged in racketeering activity, defendants

Kaboni Savage, Robert Merritt, and Kidada Savage knowingly and intentionally murdered,

knowingly aided and abetted, and willfully caused the murder of, Damir Jenkins, a human being,

in violation of the laws of the Commonwealth of Pennsylvania, that is, Title 18, Pennsylvania

Consolidated Statutes Annotated, Sections 2502(a) and 306.

Each of these counts charges the defendants named therein with violating section

1959 of Title 18 of the United States Code. That section reads as follows:

> Whoever, as consideration for the receipt of, or as consideration for a
> promise or agreement to pay, anything of pecuniary value from an
> enterprise engaged in racketeering activity, or for the purpose of gaining
> entrance to or maintaining or increasing position in an enterprise engaged
> in racketeering activity, murders . . . any individual in violation of the laws
> of any State or the United States, or attempts or conspires to do so [is
> guilty of a crime].

---

3 L. Sand, et al., Modern Federal Jury Instructions - Criminal, Instruction No. 52-34, (2011).

80

A241

## GOVERNMENT'S REQUEST NO. 49

### Counts 2-7, 9-15 - Violent Crime in Aid of Racketeering - Prejudice From the Word "Racketeering"

The word "racketeering" has certain implications in our society. Use of that term in this statute and in this courtroom should not be regarded as having anything to do with your determination of whether the guilt of this defendant has been proven. The term is only a term used by Congress to describe the statute.

———————————

3 L. Sand, et al., Modern Federal Jury Instructions - Criminal, Instruction No. 52-35, (2011).

81

A242

**GOVERNMENT'S REQUEST NO. 50**

**Counts 2-7, 9-15 - Violent Crime in Aid of Racketeering - Elements of the Offense**

In order to prove that a defendant violated section 1959, the government must establish beyond a reasonable doubt each one of the following five elements of the offense:

First, that an enterprise affecting interstate commerce existed;

Second, that the enterprise was engaged in racketeering activity;

Third, that defendant had, or was seeking, a position in the enterprise;

Fourth, that defendant committed the alleged crime of violence; and

Fifth, that defendant's general purpose in committing the crime of violence was to maintain or increase his position in the enterprise or was in consideration for the receipt of anything of value.

_____

3 L. Sand, et al., Modern Federal Jury Instructions - Criminal, Instruction No. 52-36, (2011).

**GOVERNMENT'S REQUEST NO. 51**

**Counts 2-7, 9-15 - Violent Crime in Aid of Racketeering - First Element -**
**Existence of Enterprise Affecting Interstate Commerce**

The first element the government must prove beyond a reasonable doubt is that an "enterprise" existed, which was engaged in or had an effect upon, interstate (or foreign) commerce. "Enterprise" is defined the same way it is in the RICO statute that I have already defined for you.

In the indictment, the government has charged the Kaboni Savage Organization ("KSO"), a criminal organization whose members and associates engaged in narcotics distribution, money laundering, and acts of violence, including acts involving murder, arson, and witness intimidation, as constituting the enterprise. If you find that this was a group of people characterized by (1) a common purpose, (2) an ongoing formal or informal organization, and (3) by personnel who function as a continuing unit, then you may find that an enterprise existed.

To satisfy this element, the government is also required to prove beyond a reasonable doubt that the enterprise was engaged in or had any effect upon interstate commerce.

Interstate commerce includes the movement of goods, services, money and individuals between states.

The government must prove that the enterprise engaged in interstate commerce or that its activities affected interstate commerce in any way, no matter how minimal. It is not necessary to prove that the acts of any particular defendant affected interstate commerce as long as the acts of the enterprise had such effect. Finally, the government is not required to prove that any defendant knew he was affecting interstate commerce.

---

3 L. Sand, et al., Modern Federal Jury Instructions - Criminal, Instruction No. 52-37, (2011).

83

**GOVERNMENT'S REQUEST NO. 52**

**Counts 2-7, 9-15 - Violent Crime in Aid of Racketeering - Second Element -**
**Enterprise Engaged in Racketeering Activity**

The second element the government must establish beyond a reasonable doubt is

that the enterprise was engaged in racketeering activity.

The Indictment alleges that the KSO was engaged in racketeering activity, as

defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), that is, acts and threats

involving: murder, in violation of Pennsylvania law; and offenses involving dealing in controlled

substances, in violation of Title 21, United States Code, Sections 841(a)(1) and 846; and acts

indictable under Title 18, United States Code, Sections 1956 and 1957, that is, money

laundering.

I charge you that "racketeering activity" includes such offenses as murder, dealing

in narcotics, and money laundering. It is for you to determine whether the enterprise engaged in

these activities as charged. You should give the words "engaged in" their ordinary, everyday

meaning. For an enterprise to be engaged in racketeering activity it is enough to show that the

enterprise committed or was planning to commit some racketeering activity within a period of

time short enough under all of the circumstances so that it is appropriate to say that the enterprise

was engaged in racketeering activity.

In order for the state offense of murder to be considered as a racketeering act, the

government must prove to you beyond a reasonable doubt that members of the enterprise

committed murder as defined by the Commonwealth of Pennsylvania. In order for federal

offenses involving dealing in controlled substances and money laundering to be considered as

racketeering acts, the government must prove to you beyond a reasonable doubt that members of

84

the enterprise committed offenses involving dealing in controlled substances and money

laundering to be considered as racketeering acts. I have already instructed you in the elements of

murder, controlled substance offenses, and money laundering offenses.

_____

3 L. Sand, et al., Modern Federal Jury Instructions - Criminal, Instruction No. 52-38 (2011).

85

## GOVERNMENT'S REQUEST NO. 53

### Counts 2-7, 9-15 - Violent Crime in Aid of Racketeering - Third Element - Position in the Enterprise

The third element the government must establish beyond a reasonable doubt is that defendant had or was seeking a position in the enterprise.

To establish this element the government must prove that defendant was actively engaged in promoting the illegal activities of the enterprise. It is not enough to prove that defendant was doing business with the enterprise; the government must prove that he was actually a member of the enterprise.

_____

3 L. Sand, et al., Modern Federal Jury Instructions - Criminal, Instruction No. 52-39, (2011).

86

A247

**GOVERNMENT'S REQUEST NO. 54**

**Counts 2-7, 9-15 - Violent Crime in Aid of Racketeering - Fourth Element - Defendant Committed Crime of Violence**

The fourth element the government must establish beyond a reasonable doubt is that defendant or defendants charged in each of Counts 2-7 and 10-15 committed murder, and that the defendants charged in Count 9 conspired to commit murder. I have just instructed you on the elements of both murder and conspiracy to commit murder.

———————————

3 L. Sand, et al., Modern Federal Jury Instructions - Criminal, Instruction No. 52-40, (2011).

87

A248

**GOVERNMENT'S REQUEST NO. 55**

**Counts 2-7, 9-15 - Violent Crime in Aid of Racketeering - Fifth Element -
Purpose to Maintain or Increase Position in Enterprise**

The fifth element the government must establish beyond a reasonable doubt is that a defendant's general purpose in committing the murders charged in Counts 2-7 and 10-15, and conspiring to commit murder as charged in Count 9 was to maintain or increase his or her position in the enterprise.

The government is required to prove that a defendant's general purpose was to maintain or increase his or her position in the enterprise. The government is not required to prove that it was a defendant's sole or principal motive.

In determining whether a defendant's purpose in committing the conspiracy to commit murder was to maintain or increase his position in the enterprise, you should give the words "maintain" and "increase" their ordinary meanings. You should consider all of the facts and circumstances in making that determination.

For example, you may consider evidence that the crime, if proved, was committed in order to maintain discipline within the enterprise and served to maintain the defendant's position in the enterprise. If the defendant committed the crime because he knew it was expected of him by reason of his membership in the enterprise, or if he committed the crime because he thought it would enhance his position or prestige within the enterprise, or if he committed it because he thought it was necessary to maintain the position he already held, this element would be established. These examples are only meant by way of illustration. They are not exhaustive.

3 L. Sand, et al., Modern Federal Jury Instructions - Criminal, Instruction No. 52-41, (2011).

88

A249

**GOVERNMENT'S REQUEST NO. 56**

**Count 16 - Retaliation Against a Witness - The Nature of the Offense and the Statute Involved**

Count 16 charges Kaboni Savage, Robert Merritt, and Kidada Savage with killing, and aiding and abetting the killing of, Marcella Coleman, Tameka Nash, Sean Anthony Rodriguez, Tajh Porchea, Khadijah Nash, and Damir Jenkins with the intent to retaliate against Eugene Coleman for his attendance as a witness at an official proceeding, for his testimony to a federal grand jury, and for his providing to law enforcement officers information relating to the commission of federal offenses.

The relevant statute on this subject is 18 U.S.C. § 1513(a), which provides:

> Whoever kills or attempts to kill another person with intent to retaliate against any person for . . . providing to a law enforcement officer any information relating to the commission or possible commission of a Federal offense . . . [shall be guilty of a crime].

---

Adapted from 2 L. Sand, et al., Modern Federal Jury Instructions, Instruction No. 46-33.

89

**GOVERNMENT'S REQUEST NO. 57**

**Count 16 - Retaliation Against a Witness - Purpose of the Statute**

        This statute is designed to protect persons from retaliation for the appearance of witnesses or parties in criminal and civil federal proceedings and from retaliation for information given to law enforcement officers about federal crimes. The integrity of the federal system of justice depends upon persons giving truthful evidence and information free from the fear of retaliation. This statute is devised to make it unlawful for anyone to retaliate against someone who has been a witness, victim or informant or against anyone associated with a witness, victim or informant.

---

2 L. Sand, et al., Modern Federal Jury Instructions, Instruction No. 46-34 (2011).

90

**GOVERNMENT'S REQUEST NO. 58**

**Count 16 - Retaliation Against a Witness - Elements of the Offense**

In order to prove a defendant guilty of retaliating against a witness in an official federal proceeding, the government must prove each of the following elements beyond a reasonable doubt:

First, that the defendant knowingly engaged in the conduct alleged in the indictment, that is, that that defendant killed, and aiding and abetting the killing of, Marcella Coleman, Tameka Nash, Sean Anthony Rodriguez, Tajh Porchea, Khadijah Nash, and Damir Jenkins;

Second, that that defendant acted with the intent to retaliate against Eugene Coleman for his attendance as a witness at an official proceeding, and for his testimony given in an official proceeding, and for information he gave relating to the commission of a federal offense to a law enforcement officer.

_____

Adapted from 2 L. Sand, et al., Modern Federal Jury Instructions, Instruction No. 46-35 (2011).

**GOVERNMENT'S REQUEST NO. 59**

**Count 16 - Retaliation Against a Witness - First Element - Knowing Conduct**

The first element the government must prove beyond a reasonable doubt is that the defendants knowingly engaged in the conduct alleged in the indictment, that is that the defendants killed, and aiding and abetting the killing of, Marcella Coleman, Tameka Nash, Sean Anthony Rodriguez, Tajh Porchea, Khadijah Nash, and Damir Jenkins.

An act is done knowingly if it is done voluntarily and purposely and not by accident or mistake.

―――――――――――――

Adapted from 2 L. Sand, et al., <u>Modern Federal Jury Instructions</u>, Instruction No. 46-36 (2011).

92

A253

**GOVERNMENT'S REQUEST NO. 60**

**Count 16 - Retaliation Against a Witness - Second Element - Intent to Retaliate**

        The second element the government must prove beyond a reasonable doubt is that the defendants acted with the intent to retaliate against Eugene Coleman for his attendance as a witness at an official proceeding, and for his testimony given in an official proceeding, and for information he gave relating to the commission of a federal offense to a law enforcement officer.

        An official proceeding means a proceeding before a court, judge or federal agency. The proceeding may be civil or criminal. You are instructed that a federal criminal trial and testimony given before a federal grand jury are official proceedings.

        A law enforcement officer means an officer or employee of the federal government authorized to prevent, investigate or prosecute offenses or serving as a probation officer. You are instructed that Special Agents of the Federal Bureau of Investigation are law enforcement officers.

        In order to satisfy this element, it is not necessary for the government to prove that the defendants knew they were breaking any particular law.

---

Adapted from 2 L. Sand., et al., Modern Federal Jury Instructions, Instruction No. 46-38 (2011).

93

**GOVERNMENT'S REQUEST NO. 61**

**Count 17 - Use of Fire to Commit a Felony - The Indictment and the Statute**

The indictment charges on or about October 9, 2004, in Philadelphia, in the

Eastern District of Pennsylvania, defendants Kaboni Savage, Robert Merritt, and Kidada Savage

knowingly used fire, and aided and abetted the use of fire, in the commission of a crime

punishable in a court of the United States by imprisonment for more than one year, that is,

murder in aid of racketeering.

In violation of Title 18, United States Code, Section 844(h).

Section 844(h) of Title 18 of the United States Code provides:

"Whoever-
> (1) uses fire or an explosive to commit any felony which may be
> prosecuted in a court of the United States, or
> (2) carries an explosive during the commission of any felony which may
> be prosecuted in a court of the United States [is guilty of a crime]."

_____

2 L. Sand, et al, Modern Federal Jury Instructions - Criminal, Instruction 30-7 (2011).

94

A255

**GOVERNMENT'S REQUEST NO. 62**

**Count 17 - Use of Fire to Commit a Felony - Elements of the Offense**

In order to sustain this charge, the government must prove each of the following elements beyond a reasonable doubt:

First, that the defendant committed a felony for which he may be prosecuted in a court of the United States.

Second, that the defendant used fire to commit that felony.

_____

2 L. Sand, et al, <u>Modern Federal Jury Instructions - Criminal</u>, Instruction 30-8 (2011).

**GOVERNMENT'S REQUEST NO. 63**

**Count 17 - Use of Fire to Commit a Felony - First Element - Commission of the Predicate Crime**

The first element which the government must prove beyond a reasonable doubt is that the defendant committed a felony for which he may be prosecuted in a court of the United States.

Kaboni Savage, Robert Merritt, and Kidada Savage are charged in Counts 10-15 of the indictment with committing the crime of murder in aid of racketeering. I instruct you that the crime of murder in aid of racketeering is a felony for which they might be prosecuted in a court of the United States. However, it is for you to determine that the government has proven beyond a reasonable doubt that the defendant committed the crime of murder in aid of racketeering as charged. I have already instructed you as to the elements of murder in aid of racketeering.

If upon all of the evidence, you find that the government has failed to prove any of Counts 10-15 beyond a reasonable doubt, then you will proceed no further in your consideration of Count 17. Count 17 is to be considered only if you first find the defendant guilty under any of Counts 10-15 as charged.

In reaching your verdict on Count 17, you may consider the evidence of Counts 10-15 only for the purpose of determining whether the elements of Count 17 have been satisfied. You may not consider for the purposes of Count 17 any evidence which relates to any count other than Counts 10-15.

---

2 L. Sand, et al, Modern Federal Jury Instructions - Criminal, Instruction 30-9 (2011).

96

A257

## GOVERNMENT'S REQUEST NO. 64

### Count 17 - Use of Fire to Commit a Felony - Second Element - Use of Fire

The second element the government must prove beyond a reasonable doubt is that the defendant used fire to commit the murders in aid of racketeering charged in Counts 10-15.

Under this statute, to use fire to commit a crime means to use it in such a way that it was an integral part of the commission of the crime.

_____

2 L. Sand, et al, Modern Federal Jury Instructions - Criminal, Instruction 30-10 (2011).

## GOVERNMENT'S REQUEST NO. 65

### Counts 2-7, 10-17 - Accomplice Liability; Aiding and Abetting

A person may be guilty of an offense because he personally committed the offense himself or because he aided and abetted another person in committing the offense. A person who has aided and abetted another person in committing an offense is often called an accomplice. The person whom the accomplice aids and abets is known as the principal.

In this case, the government alleges that the defendants charged in Counts 2-7 and 10-15 aided and abetted the principal in committing the offense of murder in aid of racketeering charged in those counts. The government also alleges that Kaboni Savage, Robert Merritt, and Kidada Savage aided and abetted the principal in committing the offenses of retaliating against a witness charged in Count 16, and using fire to commit a felony charged in Count 17. In order to find a defendant guilty of these offenses because he or she aided and abetted the principal in committing these offenses, you must find that the government proved beyond a reasonable doubt each of following four (4) requirements:

First: That the principal committed the offenses charged by committing each of the elements of the offenses charged, as I have explained those elements to you in these instructions. The principal need not have been charged with or found guilty of the offenses, however, as long as you find that the government proved beyond a reasonable doubt that he committed the offenses.

Second: That the defendant knew that the offenses charged were going to be committed or were being committed by the principal, and

Third: That the defendant knowingly did some act for the purpose of aiding, assisting, soliciting, facilitating, or encouraging the principal in committing the specific offenses

98

charged and with the intent that the principal commit that those specific offenses, and

Fourth: That the defendant's acts did, in some way, aid, assist, facilitate, or encourage the principal to commit the offenses. The defendant's acts need not themselves be against the law.

In deciding whether a defendant had the required knowledge and intent, you may consider both direct and circumstantial evidence including that defendant's words and actions and the other facts and circumstances. However, evidence that a defendant merely associated with persons involved in a criminal venture or was merely present or was merely a knowing spectator during the commission of the offenses is not enough for you to find that defendant guilty as an aider and abetter. If the evidence shows that a defendant knew that the offense was being committed or was about to be committed, but does not also prove beyond a reasonable doubt that it was that defendant's intent and purpose to aid, assist, encourage, facilitate, or otherwise associate himself with the offense, you may not find that defendant guilty of the offenses as an aider and abetter. The government must prove beyond a reasonable doubt that that defendant in some way participated in the offense committed by the principal as something the defendant wished to bring about and to make succeed. The government needs to show some affirmative participation by the defendant which at least encouraged the principal to commit the offense.

_____

3rd Circuit Model Criminal Jury Instructions, No. 7.02 (2010).

99

A260

## GOVERNMENT'S REQUEST NO. 66

### Election of Foreperson; Unanimous Verdict; Do Not Consider Punishment; Duty to Deliberate; Communication with Court

That concludes my instructions explaining the law regarding the testimony and other evidence, and the offenses charged. Now let me explain some things about your deliberations in the jury room, and your possible verdicts.

First: The first thing that you should do in the jury room is choose someone to be your foreperson. This person will speak for the jury here in court. He or she will also preside over your discussions. However, the views and vote of the foreperson are entitled to no greater weight than those of any other juror.

Second: I want to remind you that your verdict, whether it is guilty or not guilty, must be unanimous. To find a defendant guilty of an offense, every one of you must agree that the government has overcome the presumption of innocence with evidence that proves each element of that offense beyond a reasonable doubt. To find a defendant not guilty, every one of you must agree that the government has failed to convince you beyond a reasonable doubt.

Third: If you decide that the government has proved Kaboni Savage, Steven Northington, or Robert Merritt guilty, then it will be your responsibility to decide what the appropriate punishment should be. If you decide that the government has proved Kidada Savage guilty, then it will be my responsibility to decide what the appropriate punishment should be. You should never consider the possible punishment in reaching your verdict as to any defendant.

Fourth: As I have said before, your verdict must be based only on the evidence received in this case and the law I have given to you. You should not take anything I may have said or done during trial as indicating what I think of the evidence or what I think your verdict

100

should be. What the verdict should be is the exclusive responsibility of the jury.

Fifth: Now that all the evidence is in, the arguments are completed, and once I have finished these instructions, you are free to talk about the case in the jury room. In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach unanimous agreement. Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say. Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong. But do not ever change your mind just because other jurors see things differently, or just to get the case over with. In the end, your vote must be exactly that--your own vote. It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience. Listen carefully to what the other jurors have to say, and then decide for yourself if the government has proved the defendant guilty beyond a reasonable doubt.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say. You should all feel free to speak your minds.

*[Remember, if you elected to take notes during the trial, your notes should be used only as memory aids. You should not give your notes greater weight than your independent recollection of the evidence. You should rely upon your own independent recollection of the evidence or lack of evidence and you should not be unduly influenced by the notes of other jurors. Notes are not entitled to any more weight than the memory or impression of each juror.]*

Sixth: Once you start deliberating, do not talk, communicate with, or provide any information about this case by any means to the court officials, or to me, or to anyone else except each other. During your deliberations, you may not use any electronic device or media, such as a telephone, cell phone, smart phone, iPhone, Blackberry or computer; the internet, any internet

101

service, or any text or instant messaging service; or any internet chat room, blog, or website such as Facebook, My Space, LinkedIn, YouTube or Twitter, to communicate to anyone any information about this case or to conduct any research about this case.

Seventh:  If you have any questions or messages, your foreperson should write them down on a piece of paper, sign them, and then give them to the court official who will give them to me. I will first talk to the lawyers about what you have asked, and I will respond as soon as I can. In the meantime, if possible, continue with your deliberations on some other subject.

*[If you want to see any of the exhibits that were admitted in evidence, you may send me a message and, if I can legally do so, I will have those exhibits provided to you.]*

One more thing about messages. Do not ever write down or tell anyone how you or any one else voted. That should stay secret until you have finished your deliberations. If you have occasion to communicate with the court while you are deliberating, do not disclose the number of jurors who have voted to convict or acquit on any offense(s).

_____

3rd Circuit Model Criminal Jury Instructions, No. 3.16 (2012)

## GOVERNMENT'S REQUEST NO. 67

### Verdict Form

A verdict form has been prepared that you should use to record your verdict(s).

Take this form with you to the jury room. When you have reached your unanimous verdict, the foreperson should write the verdict on the form, date and sign it, return it to the courtroom and give the form to my courtroom deputy to give to me. If you decide that the government has proved a defendant guilty of any or all of the offenses charged beyond a reasonable doubt, say so by having your foreperson mark the appropriate place on the form. If you decide that the government has not proved a defendant guilty of some or all of the offenses charged beyond a reasonable doubt, say so by having your foreperson mark the appropriate place on the form.

_____

3rd Circuit Model Criminal Jury Instructions, No. 3.17 (2012).

103

A264

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the Government's Proposed Jury

Instructions has been served by me, this date, by electronic mail upon the following individuals:

William B. Purpura, Esq.
wpurp@aol.com
*Counsel for Kaboni Savage*

Thomas C. Egan, III, Esq.
tom101861@aol.com
*Counsel for Steven Northington*

Christian J. Hoey, Esq.
rubino.hoey.law@verizon.net
*Counsel for Kaboni Savage*

William L. Bowe, Esq.
wlbcrimlaw@verizon.net
*Counsel for Steven Northington*

Paul M. George, Esq.
pgeorge@mckinneyandgeorge.com
*Counsel for Robert Merritt*

Christopher Phillips, Esq.
cphillips@bartonandphillips.com
*Counsel for Kidada Savage*

William R. Spade, Jr., Esq.
will@spadelaw.com
*Counsel for Robert Merritt*

Teresa Whalen, Esq.
whalenesq@aol.com
*Counsel for Kidada Savage*


\_/s/  David E. Troyer_____
David E. Troyer
Assistant United States Attorney

DATED: March 25, 2013

104

A265

----- Forwarded Message -----
**From:** "Angela_Pappas@paed.uscourts.gov" <Angela_Pappas@paed.uscourts.gov>
**To:** William Purpura <wpurp@aol.com>
**Cc:** "513hoey@verizon.net" <513hoey@verizon.net>; "cphillips@bartonandphillips.com"
<cphillips@bartonandphillips.com>; "david.troyer@usdoj.gov" <david.troyer@usdoj.gov>;
"john.gallagher3@usdoj.gov" <john.gallagher3@usdoj.gov>; "mkkahn@yahoo.com"
<mkkahn@yahoo.com>; "pgeorge@mckinneyandgeorge.com" <pgeorge@mckinneyandgeorge.com>;
"steve.mellin2@usdoj.gov" <steve.mellin2@usdoj.gov>; "tom101861@aol.com" <tom101861@aol.com>;
"whalenesq@aol.com" <whalenesq@aol.com>; "will@spadelaw.com" <will@spadelaw.com>;
"wlbcrimlaw@comcast.net" <wlbcrimlaw@comcast.net>
**Sent:** Thursday, April 25, 2013 11:33 AM
**Subject:** Re: proposed verdict

The jury instructions were just emailed.  If anybody does not receive them,
please let me know.  We can certainly have hard copies available here for
pickup as well.

Angela M. Pappas
Law Clerk to the Honorable R. Barclay Surrick
8614 United States Courthouse
601 Market Street
Philadelphia, Pennsylvania 19106
Angela_Pappas@paed.uscourts.gov



From:    William Purpura <wpurp@aol.com>
To:      "whalenesq@aol.com" <whalenesq@aol.com>
Cc:      "angela_pappas@paed.uscourts.gov"



<angela_pappas@paed.uscourts.gov>, "david.troyer@usdoj.gov"
<david.troyer@usdoj.gov>, "john.gallagher3@usdoj.gov"
<john.gallagher3@usdoj.gov>, "steve.mellin2@usdoj.gov"
<steve.mellin2@usdoj.gov>, "cphillips@bartonandphillips.com"
<cphillips@bartonandphillips.com>, "tom101861@aol.com"
<tom101861@aol.com>, "wlbcrimlaw@comcast.net"
<wlbcrimlaw@comcast.net>, "will@spadelaw.com"
<will@spadelaw.com>, "pgeorge@mckinneyandgeorge.com"
<pgeorge@mckinneyandgeorge.com>, "mkkahn@yahoo.com"
<mkkahn@yahoo.com>, "513hoey@verizon.net" <513hoey@verizon.net>

A266

Date:    04/25/2013 10:54 AM
Subject:    Re: proposed verdict


When can we expect Courts instructions?  Is it possible to pick up a hard
copy at 1 p.m.  Thanks

Sent from my iPhone

On Apr 25, 2013, at 10:45 AM, whalenesq@aol.com wrote:

    Angela,

    I don't think the parties agree on the verdict form at this point.  I
    am sending one that the Savage defendants have been working on.
    Teresa
    <Proposed VERDICT.doc>

A267

*APPENDIX C*

# Material Relating to Untranscribed Proceedings

The following is a chronological list of the unrecorded sidebars, bench conferences, courtroom conferences, chambers conferences, telephone conferences and other unrecorded proceedings that were referred to in the material appellate counsel have reviewed.  They are listed in chronological order by date of the proceeding.  Also indicated are the nature of the proceeding, if known, and where its occurrence was noted.  Asterisks indicate documents, found in trial counsel's files and also included in this appendix, that partially recite what was addressed at two of the proceedings.

- 4/30/09 status conference.  *See* ECF 62.

- 7/21/09, status hearing;

- 12/3/09, chambers conference regarding Savage's SAMs (*memorialized in redacted 12/3/09 letter from counsel to client);

- Chambers conferences (dates unknown) on Savage's *pro se* motions, SAMs, and conditions of confinement.  *See* 1/15/10 Transcript, at 4;

- 1/15/10, chambers conference (held after motions hearing) on Savage's SAMs and BOP issues;

- Chambers conferences (dates unknown) on counsel's access to Savage and his *pro se* motions.  *See* 2/18/10 Transcript, at 5;

- 9/17/10, status conference.  *See* ECF 154.

- 1/18/11, chambers conference on Savage's SAMs and detention issues (*memorialized in notes from counsel);

- 6/27/11, pretrial conference with all attorneys on motions, scheduling, *etc.*  *See* ECF 240; 6/28/11 Transcript, at 4-5;

- 7/13/11, conference;

- 8/1/11, chambers conference (following codefendant's arraignment). *See* Transcript, 8/1/11, at 10;

- 9/4/12 telephone conference regarding deposition of Savage's mother (referred to in 9/4/12 letter from court to counsel);

- 11/28/12, sealed chambers interview with prospective juror 254. *See* Transcript, 11/28/12, at 86-87;

- 11/29/12, sealed chambers interview with prospective juror 276. *See* Transcript, 11/29/12, at 120;

- 11/28/12, sidebar on "a prospective juror." *See* Transcript, 11/28/12, at 219;

- 3/19/12, telephone conference. *See* ECF 430, at 1; ECF 458, at 2;

- 6/25/12, *ex parte* telephone conference with Savage's counsel;

- 7/2/12, chambers conference. *See* ECF 563, at 2;

- 7/31/12, status conferences. *See* ECF 556; 557; 563, at 3;

- 9/4/12, telephone conference regarding deposition of Barbara Savage;

- 9/7/12, status conference. *See* ECF 593;

- 9/20/12 telephone conference on jury questionnaires (referred to in 9/20/12 e-mail from judge's law clerk to counsel);

- 12/6/12, chambers conference on discovery. *See* ECF 795, at 6; Transcript, 12/17/12, at 169;

- 1/17/13, status conference. *See* ECF 915 (noting 30 minute conference);

- 2/1/13 pretrial conference. *See* ECF 1020 (noting 1 hour 30 minute

conference);

- 2/4/13, in-camera interview of confidential informant.  *See* ECF 1009, at 10; ECF 1050, at 1 n.1;

- 2/14/13, *ex parte* sidebar.  *See* 2/14/13 Transcript, at 197-98;

- 2/25/13, sidebar.  *See* 2/25/13 Transcript, at 3;

- 2/26/13, conference.  *See* 2/27/13 Transcript, at 9;

- 2/28/13, sidebar.  *See* 2/28/13 Transcript, at 265;

- 3/15/13, sidebar.  *See* 3/15/13 Transcript, at 3;

- 3/20/13, sidebar.  *See* 3/20/13 Transcript, at 241;

- 3/26/13, conference.  *See* 3/26/13 Transcript, at 265-77;

- 4/1/13, sidebar.  *See* 4/1/13 Transcript, at 24;

- 4/4/13, communication from jury to court regarding photographs.  *See* 4/4/13 Transcript, at 15;

- 4/10/13, sidebar.  *See* 4/10/13 Transcript, at 240;

- 4/11/13, sidebar.  *See* 4/11/13 Transcript, at 130;

- 4/16/13, sidebar.  *See* 4/16/13 Transcript, at 253;

- 4/17/13, court's remarks to jury.  *See* 4/17/13 Transcript, at 54, 66;

- 4/24/13, bench conference.  *See* 4/24/13 Transcript, at 118-19;

- 4/25/13, guilt-phase charge conference.  *See* ECF 1269, at 1 (noting 1 hour 30 minute conference); ECF 1569, at 10; 5/2/13 Transcript, at 64;

- 5/2/13, court's remarks to jury.  *See* 5/2/13 Transcript, at 64:

- 5/2/13, sidebar.  *See* 5/2/13 Transcript, at 211;

- 5/10/13, sidebar.  *See* 5/10/13 Transcript, at 15;

- 5/13/13, conference.  *See* 5/13/13 Transcript, at 25; ECF 1329, at 1;

- 5/13/13, sidebar.  *See* 5/13/13 Transcript, at 8;

- 5/21/13, sidebar.  *See* 5/21/13 Transcript, at 231;

- 5/28/13, sidebar.  *See* 5/28/13 Transcript, at 266; ECF 1411, at 1;

- 5/28/13, sentencing-phase charge conference.  *See* ECF 1411; 5/29/13 Transcript, at 93; and

- 6/3/13, conference.  *See* ECF 1443, at 1.

**BRENNAN SULLIVAN & McKENNA LLP**
ATTORNEYS AT LAW

6305 IVY LANE, SUITE 700
GREENBELT, MARYLAND 20770
TELEPHONE 301.474.0044
FAX 301.474.5730

TIMOTHY J. SULLIVAN*
TSULLIVAN@BSM-LEGAL.COM
* ADMITTED IN MARYLAND & D.C.

December 3, 2009

RE:    *United States of America v. Savage*
       **Criminal No. 07-550**

   Today, when it was apparent that you were not transported to Philadelphia, the parties met in Chambers with the Court. It was apparent that Judge Surrick was not happy with the inability to get you down to Philadelphia (now twice). We also discussed the SAM issues. For example, we discussed the lack of the ability to visit the law library, why was it necessary to have non-contact visits, and your concerns that the meetings in 10 South with your attorneys are being recorded and/or monitored by the Bureau of Prisons and/or other federal law enforcement agencies. Judge Surrick made it clear that he expected the government to resolve these issues or else, he said the Court would enter Orders. I explained to Judge Surrick that the basis for your letters to the Court was that you want to have a meaningful and active role in the preparation and defense of your case and that it was not happening now.

Kaboni Savage
December 3, 2009
Page Two



Very truly yours,

Timothy J. Sullivan

TJS:mn

<u>Savage</u>

1/18/11  Conference Call w̄ Judge Surrick
Chris Hoey here

Status of Savage
where are we going from here
sat down Sadowski r Howard  (BOP)

bottom line — take steps to get Savage down
here

all on same page


Savage here
30 d to get here
he here until trial

accomodation:  same cell situation as when
he was before McLaughlin

not   no 24 hr light
nor  no toilet, sink
normal cell situation

I caveat - comm thru toilet system

only way to avoid comm. via toilet.
play music (whatever said cant be heard)
KS play music?

contact visit @ KS
first floor

legal research access to computer


contact visit    1st fl. / SHU ?                will he maintain
                                                 his discovery

Darren Howard on phone

— continue in SHU room upstairs
   computer in SHU, let DH know

⎡  lights
⎢  [ toilet ]    look into no music
⎢
⎢  legal research - disc of discovery
⎢        computer access - discovery material
⎣        now — reg. to use
                    if avail
(Donte Tardew cara ?)      give it to him
                           SHU don't use normally

hard copy
  13 banker boxes of discovery
BOP prefer disk only, 3 or 4

print copies — no printer access

Lexis access, federal cases
law library

law lib. - computers in room

200 - 230 ch.

235 - 245   .2
  tc in 1 hour

# *APPENDIX D*

# Material Relating to Defense Exhibits

LAW OFFICES

# RUBINO & HOEY, LLC

50 DARBY ROAD

PAOLI, PA 19301-1416

PAUL J. RUBINO

CHRISTIAN J. HOEY

TELEPHONE (610) 647-5151

FAX (610) 993-8472

contact@rubino-hoey.com

August 1, 2013

## VIA FACSIMILE TRANSMISSION
## AND REGULAR U.S. MAIL

The Honorable R. Barclay Surrick
United States District Judge
United States Courthouse
601 Market Street, Room 8614
Philadelphia, PA 19106

Re:    U.S.A. vs. Kaboni Savage

Dear Judge Surrick:

Regarding the above noted matter, I am respectfully requesting an opportunity to meet with the Court along with government counsel to discuss finalizing exhibit lists and audio transcripts. I have prepared and presented the government with a finalized defense exhibit list and await same from counsel. At issue are the transcripts for the audio recordings which were played to the jury. The transcripts need to be finalized and physically introduced into evidence so that they may serve as exhibits for post verdict/post sentence motions and any appeal which may follow. The regular trial transcript fails to include the actual content of the audio recording, thus necessitating the admission of the transcripts into the record.

I remain available to the Court should you require any additional information. Thank you again for your kind consideration of this matter.

Very truly yours,

Christian J. Hoey

CJH:aj

cc:    William Purpura, Esquire
David Troyer, A.U.S.A
John Gallagher, A.U.S.A.
Kaboni Savage

*(handwritten: 3/18/13 circled)*  *(handwritten: CURRENT As of 8/25/13)*

# United States v. Kaboni Savage, et al.,

## Case No. 07-550

### *Exhibit List – Kaboni Savage*

| n | No. | Exhibit Name | Identified | Admitted | Batch |
|---|-----|-------------|-----------|----------|-------|
| | KS-001 | Indictment 04-269 *1A = Taco Silver* | 2/11/13 | | |
| | KS-002 | Indictment 2nd Superseding 07-269 | 2/11/13 | | |
| | KS-003 | Savage Audio Files (Thomas, Savage, LL Prison, LL Body, Mel Stein Body) | | | |
| | KS-004 | Kevin Lewis GJ Transcripts (6/11/2012) | | | |
| | KS-005 | Kevin Lewis GJ Transcripts (1/8/2003) | | | |
| | KS-006 | Kevin Lewis GJ Transcripts (10/15/2003) | | | |
| | KS-007 | Kevin Lewis GJ Transcripts (10/22/2003) | | | |
| | KS-008 | Kevin Lewis GJ Transcripts (12/10/2003) | | | |
| | KS-009 | Kevin Lewis GJ Transcripts (2/18/2003) | | | |
| | KS-010 | Kevin Lewis GJ Transcripts (2/25/2003) | | | |
| | KS-011 | Kevin Lewis GJ Transcripts (5/12/2004) | | | |
| | KS-012 | Kevin Lewis GJ Transcripts (5/19/2004) | | | |
| | KS-013 | Kevin Lewis GJ Transcripts (2/9/2005) | | | |
| | KS-014 | Kevin Lewis GJ Transcripts (3/23/2011) | | | |
| | KS-015 | Kevin Lewis GJ Transcripts (4/27/2011(1)) | | | |
| | KS-016 | Kevin Lewis GJ Transcripts (4/27/2011(2)) | | | |
| | KS-017 | Kevin Lewis GJ Transcripts (5/4/2011) | | | |
| | KS-018 | Kevin Lewis GJ Transcripts (5/11/2011) | | | |

*(handwritten note on yellow sticky: Please review before I send. (ay))*

1

A280

| | | | | | |
|---|---|---|---|---|---|
| | KS-019 | Kevin Lewis GJ Transcripts (6/8/2011) | | | |
| | KS-020 | Kevin Lewis GJ Transcripts (6/22/2011) | | | |
| | KS-021 | Kevin Lewis GJ Transcripts (9/7/2011) | | | |
| | KS-022 | Kevin Lewis GJ Transcripts (5/12/2011) | | | |
| | KS-023 | Kevin Lewis GJ Transcripts (1/28/2009) | | | |
| | KS-024 | Kevin Lewis GJ Transcripts (2/11/2009) | | | |
| | KS-025 | Kevin Lewis GJ Transcripts (3/11/2009) | | | |
| | KS-026 | Kevin Lewis GJ Transcripts (3/25/2009) | | | |
| | KS-027 | Kevin Lewis GJ Transcripts (7/15/2009) | | | |
| | KS-028 | Kevin Lewis GJ Transcripts (7/22/2009) | | | |
| | KS-029 | Kevin Lewis GJ Transcripts (12/13/2006) | | | |
| | KS-030 | Savage Trial Transcript (collectively) | | | |
| | KS-031 | T-3 Application 9/26/2000; 00-2006 | 2/11/13 | | |
| | KS-032 | T-3 Application 1st Extension 11/2/2000 | | | |
| | KS-033 | T-3 Application 2nd Extension 12/1/2000 | | | |
| | KS-034 | T-3 Application 3rd Extension 1/5/2001 | | | |
| | KS-035 | T-3 Application 4th Extension 2/5/2001 | | | |
| | KS-036 | T-3 Application 12/6/2000 (2006-1) 12/6/2000 | | | |
| | KS-037 | T-3 Application 1st Extension 1/12/2001 | | | |
| | KS-038 | T-3 Application 2nd Extension 2/13/2001 | | | |
| | KS-039 | T-3 Application 3rd Extension 3/19/2001 | | | |
| | KS-040 | T-3 Application 4th Extension 4/20/2001 | | | |

2

| | KS-041 | T-3 Application 5th Extension 5/31/2001 | | | |
|---|---|---|---|---|---|
| | KS-042 | Application and Order (2006-2) 3/16/2001 | | | |
| | KS-043 | 1732 Kendrick Settlement Docs | 2/3/11 | | |
| | KS-044 | 6641 Lynford St. Settlement Docs | | | |
| | KS-045 | Search Warrant 3643 N Darien St. | | | |
| | KS-046 | Search Warrant 3510 Palmetto St. | | | |
| | KS-047 | Search Warrant Devon Self Storage | | | |
| | KS-048 | Criminal Complaint – Eugene Coleman | | | |
| | KS-049 | Search Warrant – 5628 N. Marvine St | | | |
| | KS-050 | 302 Maple Shade Cell Block | | | |
| | KS-051 | 302s Kareem Bluntly | 2/11/13 | | |
| | KS-052 | 302 Oscar Francis | | | |
| | KS-053 | 302 Sam Christian Arrest | | | |
| | KS-054 | Evidence Reports Darien | | | |
| | KS-055 | Evidence Reports Palmetto | | | |
| | KS-056 | 302 Gerald Thomas | | | |
| | KS-057 | 302 Darien St Surveillance | | | |
| | KS-058 | 302 Maple Shade Evidence Received | | | |
| | KS-059 | 302 Arrest – Joseph Newman | | | |
| | KS-060 | FD-340 Doc's – Maple Shade | | | |
| | KS-061 | DEA Labs Palmetto | | | |
| | KS-062 | FD-340 Property Receipt Darien Street | | | |
| | KS-063 | FD-340 Evidence Recovery Log – Darien St. | | | |
| | KS-064 | PHOTO Log – Palmetto St. | 2/8/13 | | |
| | KS-065 | FD -340 Property Receipt – Darien St. | | | |
| | KS-067 | FD-340 Lab –Blender, Spoon | | | |

3

| | KS-068 | Property Receipt – Kaboni Savage - April 2004 | | | |
|---|---|---|---|---|---|
| | KS-069 | T-3 Application – Visiting Room (04-2006) | | | |
| | KS-070 | T-3 Extension Application (04-2006) | | | |
| | KS-071 | T-3 Application (04-2006-1) | | | |
| | KS-072 | T-3 Application 1st Extension (04-2006-1) | | | |
| | KS-073 | 302 Arrest – Joseph Neuman | | | |
| | KS-074 | 302 Arrest – Oscar Francis | | | |
| | KS-075 | 302 Arrest – Tyrone Beal | | | |
| | KS-076 | 302 Arrest – Darren Blackwell | | | |
| | KS-077 | 302 Arrest – Ronald Jones | | | |
| | KS-078 | 302 Arrest – Gerald Thomas | | | |
| | KS-079 | 302 Arrest – Dawud Bey | | | |
| | KS-080 | 10/14/2004 Transactional Data Kaboni Savage | | | |
| | KS-081 | 302 – Savage FDC Visit List | | | |
| | KS-082 | Ehlers tolliver – Not Part of Drugs | | | |
| | KS-083 | Merritt Proffer | | | |
| | KS-084 | 6th & Glenwood (Map) | | | |
| | KS-085 | Big Faces to Coleman (Map) | | | |
| | KS-086 | Coleman-Tolliver Sentencing Transcript | | | |
| | KS-087 | Mario Melendez Note | | | |
| | KS-088 | Eugene Coleman 302s (collective) | | | |
| | KS-088(a) | Eugene Coleman 302s -1/25/2005 | | | |
| | KS-088(b) | Eugene Coleman 302s- 3/8/2004 | | | |
| | KS-088(c) | Eugene Coleman 302s- 4/7-8/2003 | | | |
| | KS-088(d) | Eugene Coleman 302s- 4/9/2004 | | | |
| | KS-088(e) | Eugene Coleman 302s- 4/17/2003 | H/w | Sm | |
| | KS-088(f) | Eugene Coleman 302s- 4/21/2003 | | | |

4

| | KS-088(g) | Eugene Coleman 302s- 4/21/2004 | | | |
|---|---|---|---|---|---|
| | KS-088(h) | Eugene Coleman 302s- 4/22/2003 | | | |
| | KS-088(i) | Eugene Coleman 302s- 5/10/2003 | | | |
| | KS-088(j) | Eugene Coleman 302s- 5/14/2003 | | | |
| | KS-088(k) | Eugene Coleman 302s- 6/7/2004 | | | |
| | KS-088(l) | Eugene Coleman 302s- 6/24/2003 | | | |
| | KS-088(m) | Eugene Coleman 302s- 8/17/2004 | | | |
| | KS-088(n) | Eugene Coleman 302s- 8/18/2003(1) | | | |
| | KS-088(o) | Eugene Coleman 302s- 8/18/2003 | | | |
| | KS-088(p) | Eugene Coleman 302s- 10/22/2003 | | | |
| | KS-088(q) | Eugene Coleman 302s- 11/4/2003 | | | |
| | KS-088® | Eugene Coleman 302s- 11/5/2003 | | | |
| | KS-088(s) | Eugene Coleman 302s- 12/2/2003 | 2/19/13 | | |
| | KS-088(t) | Eugene Coleman 302s- 12/19/2003 | | | |
| | KS-088(u) | Eugene Coleman 302s- 4/17/2003 | | | |
| | KS-088(v) | Eugene Coleman 302s- Arson.pdf | | | |
| | KS-088(w) | Eugene Coleman 302s- Furlough Order.pdf | | | |
| | KS-088(x) | Eugene Coleman 302s- Info-Indict.pdf | | | |
| | KS-088(y) | Eugene Coleman 302s- Plea Agr.pdf | | | |
| | KS-088(z) | Eugene Coleman 302s- Proffer Ltr.pdf | | | |
| | KS-088(aa) | Eugene Coleman 302s- 6/1/2011 | | | |
| | KS-088(bb) | Eugene Coleman 302s- 9/8/2011 | | | |
| | KS-088(cc) | Eugene Coleman 302s- 9/10/99 | | | |
| | KS-088(dd) | Eugene Coleman 302s- 10/29/2003 | | | |
| | KS-088(ee) | Eugene Coleman 302s- 3/24/2009 | | | |
| | KS-088(ff) | Eugene Coleman 302s- 2/12/2010 | | | |

| | KS-088(gg) | Eugene Coleman 302s-crim.hist.coleman.pdf | | | |
|---|---|---|---|---|---|
| | KS-88(hh) | E Coleman April 17 PPD Interview | | | |
| | KS88(ii) | E Coleman 9/11/2012 FBI 302 Report | | | |
| | KS-089 | Eugene Coleman GJ Testimony – (8/11/2004) | | | |
| | KS-090 | Eugene Coleman GJ Testimony – (7/16/2008) | | | |
| | KS-091 | Eugene Coleman GJ Testimony – (12/3/2008) | | | |
| | KS-092 | FBI Memo 10-19-2000 | | | |
| | KS-093 | FBI Memo 01-16-2001 | | | |
| | KS-094 | FBI Memo 04-11-2001 | | | |
| | KS-095 | FBI Memo 09-20-1999 | | | |
| | KS-096 | FBI Memo 03-17-2000 | | | |
| | KS-097 | CW v. Northington, Coleman Testimony | | | |
| | KS-098 | 10/8/2004 Transcript (Before) | | | |
| | KS-099 | 10/8/2004 Transcript (After) | | | |
| | KS-100 | Subject List | | | |
| | KS-101 | Lamont Smith 302 Reports (collectively) | | | |
| | KS-101(a) | Lamont Smith 302 – 1/4/2007 | | | |
| | KS-101(b) | Lamont Smith 302 – 1/24/2006 | | | |
| | KS-101(c) | Lamont Smith 302 – 1/25/2007 | | | |
| | KS-101(d) | Lamont Smith 302 – 1/26/2006 | | | |
| | KS-101(e) | Lamont Smith 302 – 2/9/2005 | | | |
| | KS-101(f) | Lamont Smith 302 – 2/28/2007 | | | |
| | KS-101(g) | Lamont Smith 302 – 3/1/2006 | | | |
| | KS-101(h) | Lamont Smith 302 – 3/3/2004 | | | |
| | KS-101(i) | Lamont Smith 302 – 3/5/2003(1) | | | |
| | KS-101(j) | Lamont Smith 302 – 3/5/2003 | | | |

| | KS-101(k) | Lamont Smith 302 – 3/8/2007 | | | |
|---|---|---|---|---|---|
| | KS-101(l) | Lamont Smith 302 – 3/10/2007 | | | |
| | KS-101(m) | Lamont Smith 302 – 3/17/2005(2) | | | |
| | KS-101(n) | Lamont Smith 302 -  3/17/2005(3) | | | |
| | KS-101(o) | Lamont Smith 302 – 3/17/2005 | | | |
| | KS-101(p) | Lamont Smith 302 – 4/11/2005 | | | |
| | KS-101(q) | Lamont Smith 302 – 4/29/2004 | | | |
| | KS-101(r) | Lamont Smith 302 – 6/1/2007 | | | |
| | KS-101(s) | Lamont Smith 302 – 6/23/2005 | | | |
| | KS-101(t) | Lamont Smith 302 – 6/28/2006 | | | |
| | KS-101(u) | Lamont Smith 302 – 7/6/2006 | | | |
| | KS-101(v) | Lamont Smith 302 – 7/12/2006 | | | |
| | KS-101(w) | Lamont Smith 302 – 7/15/2004 | | | |
| | KS-101(x) | Lamont Smith 302 – 7/19/2006 | | | |
| | KS-101(y) | Lamont Smith 302 -  7/22/2005 | | | |
| | KS-101(z) | Lamont Smith 302 – 8/5/2005 | | | |
| | KS-101(aa) | Lamont Smith 302 -  8/16/2005 | | | |
| | KS-101(bb) | Lamont Smith 302 -8/22/2005 | | | |
| | KS-101(cc) | Lamont Smith 302 – 8/30/2002 | | | |
| | KS-101(dd) | Lamont Smith 302 – 9/3/2002 | | | |
| | KS-101(ee) | Lamont Smith 302 – 9/7/2005 | | | |
| | KS-101(ff) | Lamont Smith 302 – 9/13/2006 | | | |
| | KS-101(gg) | Lamont Smith 302 – 9/22/2005 | | | |
| | KS-101(hh) | Lamont Smith 302 – 9/26/2002 | | | |
| | KS-101(ii) | Lamont Smith 302 – 9/28/2002 | | | |
| | KS-101(jj) | Lamont Smith 302 – 10/4/2005 | | | |

| | KS-101(kk) | Lamont Smith 302 – 10/11/2005 | | | |
|---|---|---|---|---|---|
| | KS-101(ll) | Lamont Smith 302 – 10/13/2004 | | | |
| | KS-101(mm) | Lamont Smith 302 – 10/14/2004 | | | |
| | KS-101(nn) | Lamont Smith 302 – 10/18/2004 | | | |
| | KS-101(oo) | Lamont Smith 302 – 10/21/2004 | | | |
| | KS-101(pp) | Lamont Smith 302 – 10/28/2004 | | | |
| | KS-101(qq) | Lamont Smith 302 – 10/29/2004(1) | | | |
| | KS-101(rr) | Lamont Smith 302 – 10/29/2004 | | | |
| | KS-101(ss) | Lamont Smith 302 – 11/8/2002 | | | |
| | KS-101(tt) | Lamont Smith 302 – 11/9/2005 | | | |
| | KS-101(uu) | Lamont Smith 302 – 11/15/2004(2) | | | |
| | KS-101(vv) | Lamont Smith 302 – 11/15/2004(3) | | | |
| | KS-101(ww) | Lamont Smith 302 – 11/15/2004 | | | |
| | KS-101(xx) | Lamont Smith 302 – 11/17/2005 | | | |
| | KS-101(yy) | Lamont Smith 302 – 11/29/2002 | | | |
| | KS-101(zz) | Lamont Smith 302 – 12/15/2004 | | | |
| | KS-101(zz1) | Lamont Smith 302 – 12/20/2004 | | | |
| | KS-101(zz2) | Lamont Smith 302 – 12/23/2004 | | | |
| | KS-101(zz3) | Lamont Smith 302 – 9/25/2007 | | | |
| | KS-102 | Board | | | |
| | KS-103 | 6/9/1999 – 302 Paul D- Harriet's Lounge | | | |
| | KS-104 | 4/17/03 – 302 Ty + Twin | | | |
| | KS-105 | 10/30/1998 – 302 Paul 35k/ Rusty Kill RJ | | | |

| | KS-106 | 12/29/99 – Paul Home Invasion | | | |
|---|---|---|---|---|---|
| | KS-107 | 3/13/2000 – 302 – Bubby/Bey/Chad Johnson | | | |
| | KS-108 | PD Pay Rusty 2/25/1999 | | | |
| | KS-109 | (Shoutout)? | | | |
| | KS-110 | Paul Daniels 302 – 1/25/2005 | | | |
| | KS-111 | Paul Daniels 302 – 7/26/2004 | | | |
| | KS-112 | Paul Daniels 302 – 9/14/2004(1) | | | |
| | KS-113 | Paul Daniels 302 – 9/14/2004 | | | |
| | KS-114 | Paul Daniels 302 – 10/25/2004(1) | | | |
| | KS-115 | Paul Daniels 302 – 10/25/2004 | | | |
| | KS-116 | Paul Daniels Correspondence | | | |
| | KS-117 | Paul Daniels Plea Agreement | | | |
| | KS-118 | Paul Daniels Proffer Letter | | | |
| | KS-119 | Paul Daniels Grand Jury Testimony 1/26/05 | | | |
| | KS-120 | Paul Daniels Crim Hist. | | | |
| | KS-121 | 2/5/2013 USA v SAVAGE transcript | | | |
| | KS-122 | 2/6/2013 USA v SAVAGE transcript | | | |
| | KS-123 | 2/7/2013 USA v SAVAGE transcript | | | |
| | KS-124 | Shamsud-din Ali Indictment | 2/11/2013 | | |
| | KS-125 | 2.16.2013 Safe Streets Memo | 2/11/2013 | | |
| | KS-126 | Nov 3 2003 302 Paul Daniels/MelStein/Stefon | 2/11/2013 | | |
| | KS-127 | Blow up- GT Cocaine Suppliers | 2/11/2013 | | |
| | KS-128 | Handwritten Blow Up | 2/11/2013 | | |
| | KS-129 | Blow up Kaboni Savage Confinement Hist. | 2/11/2013 | | |
| | KS-130 | Batch of Savage Trial Transcripts | | | 1 |
| | KS-131 | Myron Wilson 302_3.8.04 | | | 11 |
| | KS-132 | Myron Wilson 302_4.27.04 | | | 11 |

9

| | KS-133 | Myron Wilson Plea Agreement | | | 11 |
|---|---|---|---|---|---|
| | KS-134 | Myron Wilson Proffer Letter | | | 11 |
| | KS-135 | Myron Wilson r.302 _11.14.11 | | | 11 |
| | KS-136 | Myron Wilson r302 10.20.04 | | | 11 |
| | KS-137 | Myron Wilson rBOP Inmate Locator | | | 11 |
| | KS-138 | Myron Wilson rCourt History | | | 11 |
| | KS-139 | Myron Wilson rCustody Form | | | 11 |
| | KS-140 | Myron Wilson rInterview Record | | | 11 |
| | KS-141 | rNarcotics Unit Interview Report | | | 11 |
| | KS-142 | r_Crim Hist | | | 11 |
| | KS-143 | r_Prior Investigation | | | 11 |
| | KS-144 | FBI 302 12/23/01 | | | |
| | KS-145 | FBI 302 12/25/01 | | | |
| | KS-146 | FBI 302 3/26/02 [232602 top Right] | | | |
| | KS-147 | FBI 302 3/26/02 [32602 top Right] | | | |
| | KS-148 | FBI 302 3/27/02 | | | |
| | KS-149 | FBI 302 5/21/02 | | | |
| | KS-150 | FBI 302 6/13/02 | | | |
| | KS-151 | FBI 302 7/10/02 | | | |
| | KS-152 | FBI 302 8/28/02 | | | |
| | KS-153 | FBI 302 1/30/03 | | | |
| | KS-154 | FBI 302 2/2/03 [2203 top Right] | | | |
| | KS-155 | FBI 302 2/2/03 [22203 top Right] | | | |
| | KS-156 | FBI 302 2/4/03 | | | |
| | KS-157 | FBI 302 2/28/03 | | | |
| | KS-158 | FBI 302 3/8/03 | | | |
| | KS-159 | FBI 302 3/11/03 | | | |
| | KS-160 | FBI 302 3/23/03 | | | |
| | KS-161 | FBI 302 4/1/03 | | | |

| | KS-162 | FBI 302 4/21/03 [42100 top Right] | | | |
|---|---|---|---|---|---|
| | KS-163 | FBI 302 4/21/03 [42103 top Right] | | | |
| | KS-164 | FBI 302 4/23/03 [ROSE 4230 top Right] | | | |
| | KS-165 | FBI 302 4/23/03 [ROSE 42303 top Right] | | | |
| | KS-166 | FBI 302 5/20/03 | | | |
| | KS-167 | FBI 302 9/3/03 | | | |
| | KS-168 | FBI 302 10/1/03 | | | |
| | KS-169 | FBI 302 11/3/03 | | | |
| | KS-170 | Craig Oliver Indictment | | | |
| | KS-171 | Savage – Coleman; Canaan, El 10/13/2004 | | | |
| | KS-172 | Lewis/Savage/Johnson – Coleman; Lamont Lewis 3/31/2009 | | | |
| | KS-173 | Savage – Coleman; Luis Pratts 10/10/2004 | | | |
| | KS-174 | Savage – Coleman; Chris Scott 5/16/2006 | | | |
| | KS-175 | Bluntly/Bey/Wilmore – Coleman; Vernon Coleman 2/18/2010 | | | |
| | KS-176 | Savage – Coleman; Chris Howard 10/25/2004 | | | |
| | KS-177 | Savage – Coleman; Angel Torres 10/29/2004 | | | |
| | KS-178 | Savage – Coleman/Oliver; Aadil Williams 5/28/2004 | | | |
| | KS-179 | Bey – Daniels; Daniels 1/25/2005 | | | |
| | KS-180 | Unknown – Daniels; Daniels 9/14/2004 | | | |
| | KS-181 | Bey/Savage – Daniels; Daniels 10/25/2004 | | | |
| | KS-182 | Savage – Flowers; Lamont Lewis 5/18/2011 | | | |
| | KS-183 | Lewis – Merritt; Jerome Jeter 9/19/2007 | | | |
| | KS-184 | Savage/Bey – Oliver; Craig Oliver 3/18/2005 | | | |
| | KS-185 | Thomas – Bluntly; Craig Oliver | | | |

11

| | | | | | |
|---|---|---|---|---|---|
| | | 3/9/2009 | | | |
| | KS-186 | Savage – Rosado; Juan Rosado 2/16/2005 | | | |
| | KS-187 | Savage – Rosado; Juan Rosado 9/7/2004 | | | |
| | KS-188 | Savage – Rosado; DEA Report | | | |
| | KS-189 | Bey – "unknown"; Juan Rosado 11/3/2004 | | | |
| | KS-190 | Bluntly – Singleton; Singleton 3/9/2004 | | | |
| | KS-191 | Savage/Lewis – Singleton; Kevin Lewis 6/22/2011 | | | |
| | KS-192 | Savage – Stan Smith; Smith 10/14/2004 | | | |
| | KS-193 | Savage/ElShabaaz – Wilmore; Wilmore 5/21/2004 | | | |
| | KS-194 | Bey – Wilmore; Wilks 8/15/2005 | | | |
| | KS-195 | Bey – Wilmore; Wilson 6/28/2004 | | | |
| | KS-196 | Savage – Clark; Wilkes 7/7/2004 | | | |
| | KS-197 | Merritt/Williams – Q Anderson; Williams 5/11/2006 | | | |
| | KS-198 | Bey – Wilson; Myron Wilson 4/27/2003 | | | |
| | KS-199 | Lamont Lewis – Dent; Mackie Dent 2/2/2008 | | | |
| | KS-199A | Savage – Coleman Family; Navarro Fischer 10/9/2004 | | | |
| | KS-199B | Savage – Bey; Keith Jacobs 8/9/2010 | | | |
| | KS-199C | Walker – Lewis/Medlock – U Medlock 5/14/2009 | | | |
| | KS-199D | Bey – Wilks; Jamal Morris 2/24/2012 | | | |
| | KS-199E | Savage – Thomas/Coleman; Neuby 10/13/2004 | | | |
| | KS-199F | Merritt – Whiters; Aja Whiters 2/1/2007 | | | |
| | KS-200 | 302 KENNETH CLARK dated 6/2/04 | | | FIND |
| | KS-201 | 302 KENNETH CLARK dated 1/14/04 | | | 11 |
| | KS-202 | 302 KENNETH CLARK DATED 7/22/03 | | | 11 |

12

| | | | | | |
|---|---|---|---|---|---|
| | KS-203 | Information/Indictment KENNETH CLARK | | | 11 |
| | KS-204 | Plea Agreement KENNETH CLARK | | | 11 |
| | KS-205 | Proffer Letter KENNETH CLARK | | | 11 |
| | KS-206 | Criminal History KENNETH CLARK | | | 11 |
| | KS-207 | GJ Transcript KENNETH CLARK | | | 11 |
| | KS-208 | 302 PAUL DANIELS dated 1/25/05 | | | 11 |
| | KS-209 | 302 PAUL DANIELS dated 7/26/04 | | | 11 |
| | KS-210 | 302 PAUL DANIELS dated 9/14/04.1 | | | 11 |
| | KS-211 | 302 PAUL DANIELS dated 10/25/04 | | | 11 |
| | KS-212 | 302 PAUL DANIELS dated 10/25/04.1 | | | 11 |
| | KS-213 | Correspondence PAUL DANIELS | | | 11 |
| | KS-214 | Plea Agreement PAUL DANIELS | | | 11 |
| | KS-215 | Criminal History PAUL DANIELS | | | 11 |
| | KS-216 | GJ Transcript PAUL DANIELS | | | 11 |
| | KS-217a | Transcript 11/21/05 PAUL DANIELS | | | 1 |
| | KS-217b | Transcript 11/22/05 PAUL DANIELS | | | 1 |
| | KS-218 | 302 ROBERT WILKS dated 5/21/05 | | | 11 |
| | KS-219 | 302 ROBERT WILKS dated 5/23/02 | | | 11 |
| | KS-220 | 302 ROBERT WILKS dated 5/23/02.1 | | | 11 |
| | KS-221 | 302 ROBERT WILKS dated 7/7/04 | | | 11 |
| | KS-222 | 302 ROBERT WILKS dated 8/15/05 | | | 11 |
| | KS-223 | Correspondence ROBERT WILKS | | | 11 |
| | KS-224 | Plea Agreement  ROBERT WILKS | | | 11 |
| | KS-225 | Proffer Letter  ROBERT WILKS | | | 11 |
| | KS-226 | Criminal History  ROBERT WILKS | | | 11 |
| | KS-227 | GJ Transcript  ROBERT WILKS | | | 11 |
| | KS-228a | Transcript 11/28/05  ROBERT WILKS | | | 1 |
| | KS-228b | Transcript 11/29/05  ROBERT WILKS | | | 1 |

| | KS-229 | 302  ROBERT WILKS arrest | | | 10 |
|---|---|---|---|---|---|
| | KS-230 | 302  ROBERT WILKS cell phone #s | | | 10 |
| | KS-231 | Parker Homicide Search Warrant | | | 1 |
| | KS-232 | Curtis Singleton 302 3/10/04 | | | 12 |
| | KS-233 | Curtis Singleton 302 3/9/04 | | | 11 |
| | KS-234 | Curtis Singleton 302 4/30/04 | | | 11 |
| | KS-235 | Curtis Singleton 302 1/19/04 | | | 19 |
| | KS-236 | Curtis Singleton Proffer 4/30/04 | | | 11 |
| | KS-237 | Curtis Singleton GJ Trans. 5/5/04 | | | 11 |
| | KS-238 | Juan Rosado 302_5.23.03 | | | 11 |
| | KS-239 | Juan Rosado 302_7.21.04 | | | 11 |
| | KS-240 | Juan Rosado 302_9.7.04 | | | 11 |
| | KS-241 | Juan Rosado 302_11.3.04 | | | 11 |
| | KS-242 | Juan Rosado 302_11.18.03 | | | 11 |
| | KS-243 | Juan Rosado Correspondance | | | 11 |
| | KS-244 | Juan Rosado Plea Agreement | | | 11 |
| | KS-245 | Juan Rosado r_Crim Hist Rosado | | | 11 |
| | KS-246 | Juan Rosado rBOP Inmate Locator | | | 11 |
| | KS-247 | Juan Rosado rDEA Report of Investigation | | | 11 |
| | KS-248 | Juan Rosado Transcript GJ 12/10/2003 | | | 11 |
| | KS-249 | Juan Rosado Trial Testimony | | | 11 |
| | KS-250 | Savage 2005 trial I need the direct and cross examination of Rosado Day 10, Nov. 14, 2005. | | | 1 |
| | KS-251 | Myron Wilson 302_3.8.04 | | | 11 |
| | KS-252 | Myron Wilson 302_4.27.04 | | | 11 |
| | KS-253 | r.302_Myron Wilson_11.14.11 | | | 11 |
| | KS-254 | Myron Wilson Plea Agr | | | 11 |
| | KS-255 | Myron Wilson Proffer Letter | | | 11 |

14

| | KS-256 | Myron Wilson r_Crim Hist | | | 11 |
|---|---|---|---|---|---|
| | KS-257 | Myron Wilson r_Prior Investigation | | | 11 |
| | KS-258 | Myron Wilson r302 10.20.04 | | | 11 |
| | KS-259 | Myron Wilson rBOP Inmate Locator | | | 11 |
| | KS-260 | Myron Wilson rCourt History | | | 11 |
| | KS-261 | Myron Wilson rCustody Form | | | 11 |
| | KS-262 | Myron Wilson rInterview Record | | | 11 |
| | KS-263 | Myron Wilson rNarcotics Unit Interview Report | | | 11 |
| | KS-264 | CO Forf_underlines (Hoey Blow Up) | 2/19/13 | | |
| | | | | | |
| | | OVERLAPPING | | | |
| | KS-265 | Letter from Teresa W. to Myron Wilson | | | |
| | KS-265 | Crew of Paul Daniels Board (Hoey Blow Up) | | | |
| | KS-266 | Chris Hoey Blow Up Cocaine Paul Daniels 1999-2001 | | | |
| | | OVERLAPPING | | | |
| | | | | | |
| | KS-269 | Sam Rosado 302 (8/7/2012) | | | |
| | KS-270 | Jon Baker GJ Testimony 2/21/2007 | | | |
| | KS-271 | Jon Baker PPD interview 7-8-1998 | | | |
| | KS-272 | John Baker PPD interview 7-20-1998 | | | |
| | KS-273 | Jon Baker 302 8/15/2011 | | | |
| | KS-274 | Jon Baker Bio Information | | | |
| | KS-275 | Corey Williams PPD Interview | | | |
| | | OVERLAPPING | | | |
| | KS-275 | Chris Hoey Audio files | | | |
| | | OVERLAPPING | | | |
| | KS-276 | Corey Williams Court History | | | |

| | KS-277 | C.Boyle – Petition to hold Hakeem Bey | | | |
|---|---|---|---|---|---|
| | KS-278 | C.Boyle – PPD Interview of Julius Lowrey | | | |
| | KS-279 | Dr.Lieberman – Lassiter Autopsy | | | |
| | KS-280 | Dr.Lieberman-Stipulation at trial(p5) | | | |
| | KS-281 | Dr.Lieberman-Lassiter Homicide Report | | | |
| | KS-282 | Gereaghty Lassiter Interview | | | |
| | KS-283 | KS Lassiter Trial - 3/22/04<br>- Gereaghty Testimony p56<br>- Flaherty Testimony @p152<br>- Ted Cannon p. 137 | | | |
| | KS-284 | Flaherty Ballistics FIU Reports | | | |
| | KS-285 | Flaherty Chain of Custody | | | |
| | KS-286 | Flaherty Incident Report 8th & Butler | | | |
| | KS-287 | Property Receipts(Flaherty) | | | |
| | KS-288 | Mobile Crime Detection Service Report (Ricardo Moreno-Lassiter murder) | | | |
| | KS-289 | PPD Interview Record Richard Rivera2/27/03 | | | |
| | KS-290 | Rivera at Northington Trial | | | |
| | | **OVERLAPPING** | | | |
| | **KS-290** | **Rosado DEA 6 Page Statement** | | | |
| | | **OVERLAPPING** | | | |
| | KS-291 | PPD Interview Record Richard Rivera3/19/98 | | | |
| | KS-292 | Stan Smith 302 – 1/15/04 | | | |
| | KS-293 | Stan Smith Plea Agreement | | | |
| | KS-294 | Stan Smith Crim History | | | |
| | KS-295 | Stan Smith 302… 10-14-2004 | | | |
| | KS-296 | Cannon – Ballistics report | | | |
| | KS-297 | Cannon- Chain of Custody | | | |

16

| | KS-298 | Cannon-Lassiter Homicide Report | | | |
|---|---|---|---|---|---|
| | KS-299 | Federal ssws aff P-C | | | |
| | KS-300 | Chris Hoey – Gereaghty BlowUp | | | |
| | KS-301 | Mujica 8th and Butler Report 3.19.98 | | | |
| | KS-302 | Diagram of scene of incident (8th and Butler drawn by J. Baker) | | | |
| | KS-303 | Hoey Blow Up Rosado Criminal History | | | |
| | KS-304 | Diagram of 8th and Butler "X marked by Rosado for location of residence" | | | |
| | KS-305 | Statement Shown to Rosado By Melon and Lewis in 2012 | | | |
| | KS-306 | 302 – 1/23/2003 Craig Oliver | | | |
| | KS-307 | 302 – 3/6/2004 | | | |
| | KS-308 | 302 – 3/18/2005 (1) | | | |
| | KS-309 | 302 – 3/18/2005 | | | |
| | KS-310 | 302 – 4/12/2004 | | | |
| | KS-311 | 302 – 4/22/2004 | | | |
| | KS-312 | 302 – 8/6/2004 | | | |
| | KS-313 | 302 - 9/18/2011 | | | |
| | KS-314 | 302 – 11/14/2011 | | | |
| | KS-315 | 302 – 3/9/2009 | | | |
| | KS-316 | Gr. Jury 4/14/2004 | | | |
| | **KS-317** | Steven Robinson Grand Jury Testimony | | | |
| | **KS-317** | Hoey Blown Up Exhibit (easel) | | | |
| | KS-318 | Lamont Lewis Picture | | | |
| | KS-321 | Grand Jury Darren Blackwell 2.20.08 | | | |
| | KS-322 | 302 of Blackwell 12.29.04 | | | |
| | LS-323 | Blackwell Court of Common Pleas | | | |
| | KS-324 | USA000179 - 10day report | | | |
| | KS-325 | Darren Blackwell Violation of | | | |

| | | | | | |
|---|---|---|---|---|---|
| | | Supervised Release | | | |
| | | <u>OVERLAPPING</u> | | | |
| | KS-317 | Steven Robinson Grand Jury Testimony | | | |
| | KS-318 | Invest record sterling POStation 9/13/2001 | | | |
| | KS-319 | Photo-color Lamont Lewis | | | |
| | KS-320 | Easel carlton brown scene | | | |
| | KS-321 | Easel Mansur Abdullah timeline | | | |
| | KS-322 | 12-29-2004 302 Blackwell | | | |
| | KS-323 | Blackwell count hx Philco | | | |
| | KS-324 | 2-20-2008 GJ Blackwell | | | |
| | KS-325 | Blackwell 302 | | | |
| | KS-326 | 10/6/2000 10 day Report | | | |
| | KS-327 | Savage Second Audio (Kevin Lewis 3) | | | |
| | | <u>OVERLAPPING</u> | | | |
| | | | | | |
| | | | | | |
| | <u>KS331</u> | <u>Palmetto Photos Collectively (also Gov't 23)</u> | | | |
| | <u>KS - 332</u> | <u>Palmetto Enhanced Video</u> | | | |
| | <u>KS - 333</u> | <u>Palmetto Regular Video</u> | | | |
| | <u>KS - 334</u> | <u>Coleman Proffer History Blow-up</u> | (+) 334 (a) | | |
| | <u>KS-335</u> | <u>Palmetto Carpet Piece</u> | | | |
| | | ***KS-328-339 RESERVED TO FIX OVERLAPS*** | | | |
| | KS-340 | Map of Shooting, North Philadelphia Corner of Franklin and Luzzern (Gray) – (Parker Murder) | | | |
| | KS-341 | GOV-405 First Page of Autopsy Report (head wound of Mansur Abdulah inserted by doctor) | | | |
| | | | | | |

| 336 | | Arrest WARRANT - EC | | | |
| 337 | | Poly tech AK 762 | | | |
| 338 | | SKS A Rifle (27031664) | | | |
| 331 | | 1B60 #Shotgun Shells | | | |
| — | | | | | |
| — | | | | | |
| 342 | | 1B54 - Banana Clips | ✓ | | |
| 343 | | 1B·64 - Hollow points | ✓ | | |
| 344 | | 1B·90 Bullet Boxes | ✓ | | |
| 345 | | 1B·88 Plaster Blocks | ✓ | | |
| 346A | | 1B·90 valentines Card + Tally | ✓ | | |
| 346B | | owe sheet | ✓ | | |
| 346C | | T-mobile | ✓ | | |
| 347 | | Jeans | ✓ | | |
| 348 | — | MARio NoTE | ✓ | | |
| 349 | — | EASEL Tochine Timeline | | | |
| 350 | | Coleman PHONE Recd-d | ✓ | | |
| 351 | | DNA 11/04 REPORT | | | |
| 352 | | PACKing SLIP | | | |
| 361 | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| 360 | | PACKing SLip | | | |
| 361 | | — # Phtilly P.D. | | | |
| 370 | | PHOTO - Big FACES | | | |
| 371 | | | | | |
| 372 | | | | | |
| 373 | | CHART [L Lewis wrongdoing] | | | |

(815) 416 5064

| | | | | |
|---|---|---|---|---|
| 374 | | Geo Johnson PPD – Report | | |
| 375 | | – LL RAP – | | |
| 376 | | J320in 302 | | |
| 377 | | Reward Poster | | |
| 378 | | | | |
| 379 | | | | |
| 380 | | — | | |
| 381 | | Michael Crosby 2/7/06 statement | | |
| 382 | | Crosby Gov't Memo + 5K | | |
| 383 | | Crosby Indictment | | |
| 384 | | Crosby J+C    5/22/06 | | |
| 385 | | Crosby Proffer letter | 11/16/04 | |
| 386 | | Crosby Superseding Indictment | | |
| 387 | | | | |
| 381 | | | | |
| 3/0 | | | | |
| 351 | | | | |
| 392 | | | | |
| 313 | | | | |
| 394 | | | | |
| 355 | | | | |
| 356 | | | | |
| 397 | | | | |
| 358 | | | | |
| 355 | | | | |
| 400 | | | | |
| 401 | | | | |
| 402 | | 6/20/05 302 Morales | | |
| 403 | | | | |

_demon._

| | | | | | |
|---|---|---|---|---|---|
| 404 | | · MORALES ~~BLOW-UP~~ | | | |
| 405 | | · MORALES 302 | | | |
| 406 | | · PJR MORALES (2)Kilos | | | |
| | | | | | |
| 408 | | HANDWRITTEN GL CHART - MORALES | | | |
| 409 | | TREMWITH REPORT | | | |
| 410 | | BLOW-UP GREY SWEATSHIRT - (Reid) | | | |
| 411 | | LONG REPORT - (CZJAKOWSKI) | | | |
| 412 | | INCIDENT REPORT - (CZJAKOWSKI) | | | |
| 413 | | 1ST FLOOR BLOW-UP | | | |
| 414 | | BLOW-UP - 10/2 CALL | | | |
| 415 | | 10/8 DRAFT TRANSCRIPT | | | |
| 416 | | T-3 AFF 10/13 | | | |
| 417 | | T-3 2/18/05 | | | |
| 418 | | T-3 4/12/05 | | | |
| 419 | | t-3 6/23/11 | | | |
| 420 | | T-3 DBC 2012 | | | |
| 421 | | "TO DO LIST" ] NOT REFERENCED | | | |
| 422 | | SUBJECT LIST ] | | | |

| | | | | | |
|---|---|---|---|---|---|
| | 500 | Savage Abstract Co | | | |
| | 501 | Indenture Doc's | | | |
| | 502 | Mortgage doc's | | | |
| | 503 | Savage Court History | | | |
| | 504 | Pic of Lamont Lewis | | | |
| | 505 | GJ Bear 2/20/08 | | | |
| | 506 | FBI 302 - Bear 12/25/04 | | | |
| | 507 | Jiminez Stmt 10/15/04 | | | |
| | 508 | 302 Jszion/K Lewis | | | |
| | 509 | 6/5/06 Transcript CC/KS | | | |
| | 510 | Phila Map (Gas Stn) Zielinski | | | |
| | | | | | |
| | | | | | |
| | 600 | Nguyen CV | | | |
| | 601 | Nguyen Power Point | | | |
| | 602 | Nattapoff CV | | | |
| | 603 | Award | | | |
| | 604 | Photos | | | |
| | 605 | Resume Romine | | | |
| | 606 | Sam J | | | |
| | 607 | Denial | | | |
| | 608 | Conf Hx | | | |
| | 609 | O'Dwyer Video | | | |
| | 610 | 8 - 29 Adx Photos | | | |
| | 611 | CV Caroline Burry | | | |
| | 612 | Letters KS (Burry) | | | |
| | 613 | Photo - old Savage House | | | |
| | 614 | Photo - Kids on street | | | |
| | 615 | Photo (Dad, Kidran Karim) | | | |

| | | | | | |
|---|---|---|---|---|---|
| 417 | | (L) YUSEF TO (KS) | | | |
| 618 | | GROUP PHOTO | | | |
| 619 | | PHOTO KAiiON | | | |
| 620 | | (L) KS TO KAi | | | |
| | | | | | |

**US V. KABONI SAVAGE, NO. 14-9003**

**KABONI SAVAGE DOCUMENTARY AND TANGIBLE EXHIBITS**

| Date | Page | Wit | Description | Party | Ex | ID | Wit | Pub | ADMT |
|------|------|-----|-------------|-------|-----|----|----|-----|------|
| 2/21/13 | 138 | SA Kevin Lewis-Cross | Indictment 07-550 | Kaboni | 2 | x | x | x | x |
| 2/27/13 | 46 | Jonathan Baker-Cross | Demonstrative Showing Baker's Criminal History | Kaboni | 5 | x | x | x | |
| 2/11/13 | 76 | Kevin Lewis-Cross | Title III Aff September 2000 | Kaboni | 31 | x | x | x | |
| 2/7/13 | 117 | Kevin Lewis-Cross | Photo Log from raid on Palmetto Street | Kaboni | 64 | x | x | x | x |
| 3/20/13 | 196 | Eugene Coleman-Cross cont'd | Map of Philadelphia: 6th and Glenwood | Kaboni | 84 | x | x | x | |
| 3/20/13 | 196 | Eugene Coleman-Cross cont'd | Map of Philadelphia: Big Faces(B) and Arson House(D) | Kaboni | 85 | x | x | x | |
| 2/7/13 | 82 | SA Kevin Lewis-Cross | face sheet of 2004 indictment | Kaboni | 102 | x | x | x | x |
| 2/11/13 | 92 | Kevin Lewis-Cross | "front page on the easel" of Gerald Thomas suppliers | Kaboni | 128 | x | | X | |
| 2/11/13 | 116 | Kevin Lewis-Cross | Kaboni confinement history-Trial Board | Kaboni | 129 | x | x | x | x |
| 2/20/13 | 44 | Myron Wilson-cross | Plea Agreement | Kaboni | 133 | x | x | x | x |
| 3/6/13 | 44 | Daren Blackwell-cross cont'd | Darren Blackwell plea agreement | Kaboni | 173 | x | x | x | x |
| 2/13/13 | 145 | Robert Wilks-cross | Robert Wilks proffer agreement | Kaboni | 225 | x | x | x | x |
| 2/13/13 | 172 | Robert Wilks-cross | Robert Wilks 302 report -- list of numbers found on Wilks's seized phone | Kaboni | 230 | x | x | x | x |
| 2/19/13 | 4 | Det Zielinski-Cross | Trial board with the Oliver forfeiture notice | Kaboni | 264 | x | x | x | x |
| 2/25/13 | 136 | Paul Daniels-Cross | Hoey handwritten list of Paul Daniels's crew in early 1990s | Kaboni | 265 | x | x | x | |
| 2/19/13 | 236 | Juan Rosado-Cross | January 21, 2001 Rosado stmt to DEA agent post-arrest | Kaboni | 290 | x | x | x | |
| 2/27/13 | 186 | Samuel Rosado-Cross | Demonstrative showing Samuel Rosado's Criminal History | Kaboni | 303 | x | x | x | |
| 2/27/13 | 199 | Samuel Rosado-Cross | diagram of street layout at 8th and Butler | Kaboni | 304 | x | x | x | |
| 3/5/13 | 87 | William Whitehouse-Cross | Photo of Lamont Lewis | Kaboni | 319 | x | x | x | x |
| 3/19/13 | 217 | Eugene Coleman-Cross | 4 Shotgun Shells (Palmetto) | Kaboni | 331 | x | x | x | |
| 3/20/13 | 94 | Eugene Coleman-Cross cont'd | enhanced palmetto st video 3/14/03 | Kaboni | 332 | x | x | x | x |
| 3/19/13 | 210 | Eugene Coleman-Cross | Assault Rifle from EC/Ks home (Palmetto) | Kaboni | 337 | x | x | x | |
| 3/19/13 | 212 | Eugene Coleman-Cross | Additional Assault Rifle (Palmetto) | Kaboni | 338 | x | x | x | |
| 3/12/13 | 153 | Larry Gray-Cross | Philie Street Map showing Franklin and Luzerne Streets | Kaboni | 340 | x | x | x | x |
| 3/13/13 | 98 | | homicide medical examiner diagram from govt 405 Mansuer Abdullah | Kaboni | 341 | x | x | x | |
| 3/19/13 | 218 | Eugene Coleman-Cross | magazine clips (Palmetto) | Kaboni | 342 | x | x | x | |
| 3/19/13 | 220 | Eugene Coleman-Cross | Corbon High Velocity Ammunition .45 hollow points (Palmetto) | Kaboni | 343 | x | x | x | |
| 3/19/13 | 222 | Eugene Coleman-Cross | Blazer .44 S&W .45 magtech bullets (Palmetto) | Kaboni | 344 | x | x | x | |
| 3/19/13 | 224 | Eugene Coleman-Cross | T-Mobile contract (Palmetto) | Kaboni | 346 | x | x | x | |
| 3/19/13 | 234 | Eugene Coleman-Cross | Note Mario Melendez left at EC house:"Twin stop bullshitting" | Kaboni | 348 | x | x | x | x |
| 3/20/13 | 94 | Eugene Coleman-Cross cont'd | Hoey handwritten easel board titled ec toliver | Kaboni | 349 | x | | x | |
| 3/26/13 | 45 | Kevin Lewis-Cross cont'd | FBI Quantico DNA analysis re: Tyrone Toliver Murder/Palmetto st. | Kaboni | 351 | x | x | x | x |

**US V. KABONI SAVAGE, NO. 14-9003**

**KABONI SAVAGE DOCUMENTARY AND TANGIBLE EXHIBITS**

| Date | Page | Wit | Description | Party | Ex | ID | Wit | Pub | ADMT |
|------|------|-----|-------------|-------|-----|-----|-----|-----|------|
| 4/2/13 | 15 | Lamont Lewis-Cross | page 72, GJ testimony 2011 | Kaboni | 354 | x | x | x | |
| 3/26/13 | 61 | Kevin Lewis-Cross cont'd | packing slip for pkg to kareem bluntly at Darien in 2003 | Kaboni | 360 | x | x | x | x |
| 3/27/13 | 179 | Kevin Lewis-Cross | Flowers crim history chart? | Kaboni | 361 | x | | x | |
| 4/2/13 | 43 | Lamont Lewis-Cross | chart containing list of Lewis's bad acts including  Re shooting up of car circa 2000 and arsons George Johnson Murder, Carlton Brown, Darryl Cherry etc. | Kaboni | 373 | x | x | x | x |
| 4/2/13 | 51 | Lamont Lewis-Cross | PPD Homicide Division Report of Death: George Johnson | Kaboni | 374 | x | x | ? | ? |
| 4/2/13 | 140 | Lamont Lewis-Cross | handwritten song lyrics by Lamont Lewis | Kaboni | 375 | x | x | x | x |
| 4/1/13 | 255 | Lamont Lewis-Cross | photo of Ant Walther's stoop | Kaboni | 376 | x | x | x | x |
| 4/2/13 | 177 | Lamont Lewis-Cross | PPD Reward Notice for info re fire | Kaboni | 377 | x | x | x | x |
| 4/2/13 | 219 | Lamont Lewis-Cross | special findings in indictment (for death penalty) re Lamont Lewis -- appears to have been shown on overhead | Kaboni | 379 | x | x | x | |
| 4/4/13 | 227 | Michael Crosby-Cross | Kaboni Plea History and sentencing matrix on flip chart | Kaboni | 387 | x | x | x | |
| 4/4/13 | 227 | Michael Crosby-Cross | ???? Crosby criminal history??? | Kaboni | 388 | x | x | x | |
| 4/8/13 | 94 | Bienvenido Morales-Cross | Demonstrative exhibit B Morales Crim History | Kaboni | 404 | x | x | x | |
| 4/11/13 | 16 | William Trenwith-Cross | crime scene report for arson | Kaboni | 409 | x | x | x | x |
| 4/9/13 | 50 | Drexel Reid-Cross | witness statement given to detectives 11/10/2004 | Kaboni | 410 | x | x | x | x |
| 4/10/13 | 170 | Arthur Czajkowski-Cross | Philadelphia Fire Marshall's Formal Report | Kaboni | 411 | x | x | x | x |
| 4/10/13 | 170 | Arthur Czajkowski-Cross | Philadelphia Fire Marshall's Incident  Report | Kaboni | 412 | x | x | x | x |
| 4/15/13 | 221 | Kevin Lewis-Cross | paragraph 54 and 155 of 10/13/2004 Title III affidavit, enlarged | Kaboni | 414 | x | x | x | x |
| 4/15/13 | 223 | Kevin Lewis-Cross | draft of October 8, 2004 phone call (A-13) | Kaboni | 415 | x | x | ? | |
| 4/15/13 | 228 | Kevin Lewis-Cross | Title III affidavit, 10/13/2004 (full) | Kaboni | 416 | x | x | ? | |
| 4/15/13 | 228 | Kevin Lewis-Cross | Title III affidavit, 2/18/2005 | Kaboni | 417 | x | x | ? | x |
| 4/15/13 | 228 | Kevin Lewis-Cross | Title III affidavit, 4/12/2005 | Kaboni | 418 | x | x | ? | x |
| 4/15/13 | 228 | Kevin Lewis-Cross | Title III affidavit, 6/23/2011 | Kaboni | 419 | x | x | ? | x |
| 4/15/13 | 228 | Kevin Lewis-Cross | Title III affidavit, 12/12/2012 | Kaboni | 420 | x | x | ? | x |
| 4/22/13 | 10 | Barbara Marmon-Direct | deed, 1732 Kendrick Street | Kaboni | 501 | x | x | x | |
| 4/22/13 | 21 | Marc Galliard-Direct | Documents from Commonwealth v Kaboni Savage: Docket | Kaboni | 503 | x | x | x | x |
| 4/22/13 | 56 | Stephen Robinson-Direct | Photo of Lamont Lewis | Kaboni | 504 | x | x | x | |
| 4/22/13 | 88 | Maggie Jimenez Ortiz-Direct | Jimenez diagrama of 6th and Willard | Kaboni | 507 | x | x | x | |
| 4/22/13 | 177 | Kevin Lewis-Direct | Transcript of complete June 5, 2006 call (B-12) | Kaboni | 508 | x | x | x | |
| 4/22/13 | 160 | Thomas Zielinski-Direct | map showing closest gas station to Kaboni Savage home ? | Kaboni | 510 | x | x | x | |
| 5/22/13 | 124 | Amy Nguyen-Direct | Expert's Powerpoint Presentation | Kaboni | 601 | x | x | x | |
| 5/22/13 | 272 | Yusef Kaboni Savage-Direct | Photo of Wit at age of 10 around the time uncle went to prison | Kaboni | 603 | x | x | x | x |

US V. KABONI SAVAGE, NO. 14-9003

KABONI SAVAGE DOCUMENTARY AND TANGIBLE EXHIBITS

| Date | Page | Wit | Description | Party | Ex | ID | Wit | Pub | ADMT |
|------|------|-----|-------------|-------|-----|-----|-----|-----|------|
| 5/22/13 | 274 | Yusef Kaboni Savage-Direct | Photos wit sent to uncle Kaboni in prison of himself playing basketball | Kaboni | 604 | x | x | x | x |
| 5/23/13 | 66 | Donald Romine-Direct | letter from warden to Kaboni Savage informing him of recommendation to move him to phase 2 in H Unit 1/7/2009 | Kaboni | 607 | x | x | x | x |
| 5/23/13 | 52 | Donald Romine-Direct | Kaboni Savage's confinement history since 2005 | Kaboni | 608 | x | x | x | |
| 5/23/13 | 41, 82 | Donald Romine-Direct | video showing an outside cage extraction and restraint process at Lewisberg 4/31/2001 | Kaboni | 609 | x | x | x | |
| 5/23/13 | 31-44, 82 | Donald Romine-Direct | Photos of H unit 3, 5, 6, 7, 8, 10, 11, 12, 14, 15, 16, 17, 26, 20, 21,28, 29, 30, 31 | Kaboni | 610 | x | x | x | |
| 5/28/13 | 5 | Brenda White-Direct | recent photo of Barbara Savage's house | Kaboni | 613 | x | x | x | |
| 5/23/13 | 272 | Caroline Long Burry-Direct | letter from Kemoni (Kaboni's daughter), November 26, 2004 | Kaboni | 614 | x | x | x | x |
| 5/23/13 | 278 | Caroline Long Burry-Direct | Drawing included by Yusef in letter to Kaboni, showing the two of them together circa 2004 | Kaboni | 614 | x | x | x | |
| 5/28/13 | 7 | Brenda White-Direct | old photo of kids in neighborhood including her son Herbert with Kaboni | Kaboni | 614 | x | x | x | |
| 5/28/13 | 8 | Brenda White-Direct | old photo of Darien St. and Savage House with kids in front including Herbert | Kaboni | 615 | x | x | x | |
| 5/28/13 | 169 | Lori James-Townes-Direct | Photograph of Kaboni and Kidada with Dad (Joe) | Kaboni | 615 | x | x | x | |
| 5/28/13 | 221 | Kaiion Savage-Direct | Photo of Kaiion's little sister, Ciara, who was shot to death at age 9. | Kaboni | 616 | x | x | x | |
| 5/28/13 | 222 | Kaiion Savage-Direct | Photo of Kaiion with a different sister and two cousins | Kaboni | 618 | x | x | x | |
| 5/28/13 | 229 | Kaiion Savage-Direct | Kaiion's prom photo from previous year | Kaboni | 619 | x | x | x | |
| 5/29/13 | 35 | Scott Dodrill-Cross | document provided by expert providing info on violent acts committed by lifers | Kaboni | 620 | x | x | x | x |
| 5/29/13 | 48 | Scott Dodrill-Cross | webpage for Securus a company that advertises technology that can detect and terminate 3-way phone calls, | Kaboni | 621 | x | x | ? | |
| 5/29/13 | 48 | Scott Dodrill-Cross | webpage for a different unspecified company that advertises technology that can detect and terminate 3-way phone calls | Kaboni | 622 | x | x | ? | |
| 5/29/13 | 68 | Scott Dodrill-Cross | letter from control unit manager recommending Kaboni savage for phase 2 in special security unit, H-unit | Kaboni | 622 | x | x | x | x |
| 4/8/13 | 151 | Bienvenido Morales-Cross | Demonstrative 3108-40108 (sentencing Guidelines?) | Kaboni | - | x | x | x | |
| 5/23/13 | 177 | Robert Johnson-Direct | Powerpoint Presentation re: conduct of lifers | Kaboni | - | | x | x | |
| 5/28/13 | 130 | Lori James-Townes-Direct | Powerpoint prepared by witness | Kaboni | - | | x | x | |
| 2/21/13 | 100 | SA Kevin Lewis-Cross | Face Sheet Indictment 04-269, 2/9/2005, superceder | Kaboni | 1A | x | x | x | x |
| 2/21/13 | 98 | SA Kevin Lewis-Cross | Face Sheet Indictment 04-269, 2/9/2005, superceder | Kaboni | 1B | x | x | x | x |

**US V. KABONI SAVAGE, NO. 14-9003**

**KABONI SAVAGE DOCUMENTARY AND TANGIBLE EXHIBITS**

| Date | Page | Wit | Description | Party | Ex | ID | Wit | Pub | ADMT |
|------|------|-----|-------------|-------|----|----|-----|-----|------|
| 2/19/13 | 255 | Juan Rosado-Cross | 3 Letters to Ehlers from hole asking for help getting out | Kaboni | **243a-c** | x | x | x | x |
| 2/21/13 | 98 | SA Kevin Lewis-Cross | Face Sheet Indictment 07-550 | Kaboni | **2A** | x | x | x | x |
| 3/19/13 | 226 | Eugene Coleman-Cross | Valentines day card from Tanya (Palmetto) | Kaboni | **346A** | x | x | x | |
| 3/20/13 | 116 | Eugene Coleman-Cross cont'd | Oversize poster board of Melendez note | Kaboni | **348A** | x | x | x | x |
| 4/2/13 | 216 | Lamont Lewis-Cross | document showing count 21 of indictment against LL -- appears to have been shown on overhead | Kaboni | **378A** | x | x | x | |
| 4/2/13 | 217 | Lamont Lewis-Cross | document showing other 924 counts in LL's indictment -- appears to have been shown on overhead | Kaboni | **378B** | x | x | x | |
| 3/19/13 | 149 | Eugene Coleman-Cross | EC plea agreement, 2/9/2004 | Kaboni | **88Y** | x | x | x | x |

US V. KABONI SAVAGE, NO. 14-9003

CO-DEFENDANTS' DOCUMENTARY AND TANGIBLE EXHIBITS

| Date | Page | Wit | Description | Party | Ex # | ID | Wit | Pub | ADMT |
|------|------|-----|-------------|-------|------|----|----|-----|------|
| 2/11/13 | 210 | Kevin Lewis-Cross | Transcript of call 507 mentioning Kidada | Kidada | 1 | x | x | x | x |
| 2/11/13 | 212 | Kevin Lewis-Cross | Transcript of call 1617 mentioning Kidada | Kidada | 2 | x | x | x | x |
| 2/11/13 | 214 | Kevin Lewis-Cross | Transcript of call 2574  mentioning Kidada | Kidada | 3 | x | x | x | x |
| 2/11/13 | 216 | Kevin Lewis-Cross | Transcript of call 809 mentioning Kidada | Kidada | 4 | x | x | x | x |
| 2/11/13 | 217 | Kevin Lewis-Cross | Transcript of call 833 mentioning Kidada | Kidada | 5 | x | x | x | x |
| 4/3/13 | 200 | Lamont Lewis-Cross | .22 revolver seized from mom's house at 6122 Washington | Kidada | 16 | x | x | x | x |
| 4/16/13 | 133 | Kevin Lewis-Cross | PICTURE OF KHALISA HENRY he showed to Lamont Lewis to ID person in car with him and Kidada | Kidada | 16 | x | x | | |
| 4/16/13 | 134 | Kevin Lewis-Cross | Picture of NADIYAH HAMILTON AND ALIYAH ABDULLAH he showed to Lamont Lewis to ID person in car with him and Kidada | Kidada | 17 | x | x | x | |
| 4/24/13 | 7 | Kidada Stipulation | Records for additional SN-Kidada phone calls around time of Flowers Murder not included on Govt 851, 813, 835 | Kidada | 22 | | | x | x |
| 4/22/13 | 204 | Crystal Copeland-Cross | Photo of young Kidada Savage in Savage Living Room | Kidada | 26 | x | x | x | x |
| 4/24/13 | 10 | Documents | List of payments made on the Altima | Kidada | 30 | x | | x | x |
| 4/23/13 | 256 | Kidada Stipulation | Peirce College records regarding Kidada's academic credits and student loans | Kidada | 31 | x | x | x | x |
| 4/24/13 | 10 | Kidada Stipulation | Letter regarding settlement paid to Kidada for 2001 car accident | Kidada | 32 | x | | x | x |
| 4/24/13 | 12 | Documents | Citizens Bank Records (Kidada Bank Account) | Kidada | 33 | | | x | x |
| 4/24/13 | 12 | Documents | 2005 W-2 for Michael Hicky Insurance Agency | Kidada | 34 | x | x | x | x |
| 4/24/13 | 13 | Documents | Kidada W-2s and employment records from Prudential Insurance | Kidada | 35 | x | x | x | x |
| 4/24/13 | 20 | Terrance Davis-Direct | Salvage Certification for 2004 Taurus | Kidada | 36 | x | x | x | x |
| 4/24/13 | 251 | Barbara Savage | Videotape Testimony of Barbara Savage | Kidada | - | | | x | x |
| 2/11/13 | 163 | Kevin Lewis-Cross | Index of surveillance 302 reprts | Merritt | 2 | x | x | x | x |
| 2/11/13 | 172 | Kevin Lewis-Cross | 2 pages of phone numbers that were in contact with Gerald Thomas | Merritt | 5 | x | x | x | x |
| 2/11/13 | 178 | Kevin Lewis-Cross | Index of KS-1 wiretap transcripts | Merritt | 11 | x | x | x | x |
| 2/11/13 | 181 | Kevin Lewis-Cross | Index of Mel Stein Wires from KS-1 trial | Merritt | 12 | x | x | x | x |
| 2/11/13 | 184 | Kevin Lewis-Cross | List of phone numbers found in Kaboni wallet from KS-1 trial | Merritt | 15 | x | x | x | x |
| 3/11/13 | 167 | Kevin Lewis-Cross | map of Philadelphia including Jerome and Kerbaugh Streets | Merritt | 24 | x | x | x | x |
| 4/3/13 | 30 | Lamont Lewis-Cross cont'd | MapQuest Map 601 Arch st to 8th and Venango | Merritt | 52 | x | x | x | x |
| 4/3/13 | 39 | Lamont Lewis-Cross cont'd | MapQuest Map 8th and Venango to  57th and Master | Merritt | 53 | x | x | x | x |
| 4/9/13 | 20 | Bienvenido Morales-Redirect | redacted version morales PSI (crim history portion) | Merritt | 64A | x | x | x | x |
| 4/24/13 | 32 | Thomas Bailey-Direct | Penn DOT Records re: 1987 Oldsmobile | Merritt | 65 | x | x | x | x |

US V. KABONI SAVAGE, NO. 14-9003

**CO-DEFENDANTS' DOCUMENTARY AND TANGIBLE EXHIBITS**

| Date | Page | Wit | Description | Party | Ex # | ID | Wit | Pub | ADMT |
|------|------|-----|-------------|-------|------|----|----|-----|------|
| 4/24/13 | 34 | Thomas Bailey-Direct | Philadelphia Daily News Article dated 11/17/2004 about Coleman arson | Merritt | 69 | x | x | x | x |
| 4/24/13 | 37 | Thomas Bailey-Direct | Philadelphia Daily News Article dated 3/23/2005 about Coleman arson | Merritt | 70 | x | x | x | x |
| 4/24/13 | 38 | Thomas Bailey-Direct | Philadelphia Daily News Article dated 6/15/2005 about Coleman arson | Merritt | 71 | x | x | x | x |
| 4/24/13 | 40 | Thomas Bailey-Direct | Statistics provided by PPD Re: narcotics arrests 25th District 2000-2004 | Merritt | 72 | x | x | x | x |
| 4/24/13 | 48 | Jorge Reyes | GJ Testimony read into the record for unavailable wit 5/16/2007 | Merritt | 73 | x | | x | x |
| 4/24/13 | 62 | Document | Map Shown to Reyes during GJ testimony | Merritt | 74 | x | | x | x |
| 4/24/13 | 75 | Sean Bongwa-ReDirect | Three Videos of 6th st., from vantage point of Jorge Reyes's apartment | Merritt | 75 A-C | x | x | x | x |
| 4/24/13 | 76 | Sean Bongwa-ReDirect | Video of Drive btw 8th and Venango and Jerome St. | Merritt | 76 | x | x | x | x |
| 4/3/13 | 163 | Lamont Lewis-Cross cont'd | Plea Agreement | Merritt | - | | x | x | x |
| 4/24/13 | 91 | Thomas Zielinski-Direct | Tybius Flowers phone records | Northington | 48 | x | x | x | x |
| 4/24/13 | 97 | Thomas Zielinski-Direct | property receipt from PPD for Flowers murder | Northington | 49 | x | x | x | x |
| 4/24/13 | 97 | Thomas Zielinski-Direct | property Receipt from medical examiner for Flowers murder | Northington | 50 | x | x | x | x |
| 4/24/13 | 97 | Thomas Zielinski-Direct | property receipt from PPD for Flowers murder | Northington | 52 | x | x | x | x |
| 4/24/13 | 97 | Thomas Zielinski-Direct | property Receipt from medical examiner for Flowers murder | Northington | 53 | x | x | x | x |
| 4/24/13 | 97 | Thomas Zielinski-Direct | property receipt from PPD for Flowers murder | Northington | 54 | x | x | x | x |
| 4/24/13 | 105 | Thomas Zielinski-Direct | Zielinski GJ Testimony 5/11/2011 regarding meaning of "Money Sign" | Northington | 57 | x | x | x | x |
| 4/24/13 | 85 | Stipulation | Map showing location of Jamal Northington grave in Greenmount | Northington | 47 | x | | x | x |
| 4/24/13 | 85 | Stipulation | Tybius Flowers phone records | Northington | 48 | x | | x | x |

**US V. KABONI SAVAGE, NO. 14-9003**

**KABONI SAVAGE RECORDING EXHIBITS**

| Audio Number | Introduced By | Description | Intro Date | Section of Trial |
|---|---|---|---|---|
| ? | Kaboni Savage | Stein wiretap: Oliver & Stein; recorded 12-03, identified as 1294 part 5 | 2013.03.04 (p 12) | Craig Oliver Cross-Exam (Hoey) |
| ? | Kaboni Savage | Stein wiretap: Oliver & Stein; recorded 12-03, id'd as 1294 segment 2 | 2013.03.04 (p 14) | Craig Oliver Cross-Exam (Hoey) |
| ? | Kaboni Savage | Stein wiretap: Oliver & Stein; recorded 12-03, identified as 1304 | 2013.03.04 (p 19) | Craig Oliver Cross-Exam (Hoey) |
| ? | Kaboni Savage | Stein wiretap: Oliver & Stein; recorded 12-03, identified as 1294 part 4 -- maybe in Hoey Box 10, Best of Mel Stein | 2013.03.04 (p 9) | Craig Oliver Cross-Exam (Hoey) |
| ? | Kaboni Savage | Lamont Lewis FDC phone call, 01-15-08, about witness protection | 2013.04.15 (p 111) | Kevin Lewis Cross-Exam (Hoey) |
| ? | Kaboni Savage | Clip of B-12, 6-05-06 USP Atlanta call between KS and Copeland | 2013.04.22 (p 183) | Kaboni Savage defense case |
| ? | Kaboni Savage | 2/23/2006 Lamont Lewis CFCF call | 2013.04.22 (p 189) | Stipulation |
| ? | Kaboni Savage | 6-5-06 USP Atlanta call, probably B-12 in its entirety | 2013.04.22 (p 198) | Kaboni Savage defense case |
| ? | Kaboni Savage | Thomas wiretap, Referenced as call number 16, call between Thomas and Daniels re Kareem Bluntly, probably H-1235 | 2013.04.30 (p 102) | Hoey guillt-phase closing argument |
| ? | Kaboni Savage | Thomas wiretap, Referenced as call number 17, call between Thomas and Daniels re Kareem Bluntly, probably H-2305 | 2013.04.30 (p 102) | Hoey guillt-phase closing argument |
| ? | Kaboni Savage | Thomas wiretap, referenced as call number 18, 11/16/2000 call between Thomas and Dawud Bey, probably H-2002 | 2013.04.30 (p 132) | Hoey guillt-phase closing argument |
| ? | Kaboni Savage | Thomas wiretap, refereced as call number 19, 12/21/2000 call between Thomas and Daniels re Shamsud-din Ali, probably H-3129 | 2013.04.30 (p 132) | Hoey guillt-phase closing argument |
| ? | Kaboni Savage | Mel Stein wiretap, referenced as call number 23, 12/??/2003 call between Craig Oliver and Mel Stein | 2013.04.30 (p 133) | Hoey guillt-phase closing argument |
| ? | Kaboni Savage | Thomas wiretap, referenced as call number 21, 10/8/2000 call between Thomas and Dawud Bey, probably H-624 | 2013.04.30 (p 134) | Hoey guillt-phase closing argument |
| ? | Kaboni Savage | Referenced as call number 24, FDC cell block tape about responsibility for the Abdullah murder, probably L-709 | 2013.04.30 (p 176) | Hoey guillt-phase closing argument |

**US V. KABONI SAVAGE, NO. 14-9003**

**KABONI SAVAGE RECORDING EXHIBITS**

| Audio Number | Introduced By | Description | Intro Date | Section of Trial |
|---|---|---|---|---|
| ? | Kaboni Savage | Thomas wiretap, referenced as call number 4, between Thomas and Oliver, October 2000 | 2013.04.30 (p 83) | Hoey guillt-phase closing argument |
| ? | Kaboni Savage | Thomas wiretap, referenced as call number 5, 10/2000 call between Thomas and Oliver | 2013.04.30 (p 83) | Hoey guillt-phase closing argument |
| ? | Kaboni Savage | Thomas wiretap, referenced as call number 6, Thomas, Oliver, Yusef Newman call, 11/29/2000 | 2013.04.30 (p 83) | Hoey guillt-phase closing argument |
| ? | Kaboni Savage | Thomas wiretap, Thomas, Oliver, Yusef Newman call, 11/29/2000, may be part of call number 6 | 2013.04.30 (p 83) | Hoey guillt-phase closing argument |
| ? | Kaboni Savage | Thomas wiretap, referenced as call from 11/07/2000 between Thomas and Oliver, probably H-1642 | 2013.04.30 (p 83) | Hoey guillt-phase closing argument |
| ? | Kaboni Savage | FDC cell block tape, recording from 12/07/2004, probably L-577-1 | 2013.04.30 (p 95) | Hoey guillt-phase closing argument |
| ? | Kaboni Savage | Thomas wiretap, referenced as call number 8, 10/01/2002, call between Thomas and Damon (Everett?) | 2013.04.30 (p 95) | Hoey guillt-phase closing argument |
| ? | Kaboni Savage | Referenced as call number 10, 03/17/2001, between KS and Myron Wilson, probably J-242 | 2013.04.30 (p 96) | Hoey guillt-phase closing argument |
| ? | Kaboni Savage | LL FDC phone call, Referenced as call 45.  Tape was struck after it was played, was not admitted in evidence | 2013.05.01 (p 37) | Hoey guillt-phase closing argument |
| ? | Kaboni Savage | LL FDC phone call -- appears to be the call introduced on 2013.04.22 (pp 171, 189) | 2013.05.01 (p 39) | Hoey guillt-phase closing argument |
| ? | Kaboni Savage | LL FDC phone call, appears to be the call introduced on 2013.04.15 (p 111), about going into witness security | 2013.05.01 (p 45) | Hoey guillt-phase closing argument |
| ? | Kaboni Savage | FDC cell block tape, referenced as call 32, between KS and Muse, maybe from 11/04/2004 -- problem is there are multiple calls played from that date | 2013.05.01 (p 65) | Hoey guillt-phase closing argument |
| ? | Kaboni Savage | FDC cell block tape, referenced as call 28, 11/14/2004, between KS & Muse, could be L-222-1 or L-222-2 | 2013.05.01 (p 65) | Hoey guillt-phase closing argument |
| ? | Kaboni Savage | Clip of call from 8/23/2004, desingated "clip 1" | 2013.05.23 (p 234) | Crystal Copeland Direct Exam (Purpura) |

US V. KABONI SAVAGE, NO. 14-9003

KABONI SAVAGE RECORDING EXHIBITS

| Audio Number | Introduced By | Description | Intro Date | Section of Trial |
|---|---|---|---|---|
| ? | Kaboni Savage | Clip of call from 9/22/2004, designated "clip 2" | 2013.05.23 (p 235) | Crystal Copeland Direct Exam (Purpura) |
| ? | Kaboni Savage | Clip of call from 9/24/2004, designated "clip 3" | 2013.05.23 (p 236) | Crystal Copeland Direct Exam (Purpura) |
| ? | Kaboni Savage | Clip of call from 09/2004, designated "clip 4" | 2013.05.23 (p 237) | Crystal Copeland Direct Exam (Purpura) |
| ? | Kaboni Savage | Clip of call from 9/30/2004, designated "clip 6" | 2013.05.23 (p 238) | Crystal Copeland Direct Exam (Purpura) |
| ? | Kaboni Savage | Barbara Savage Deposition | 2013.05.28 (p 85) | Kaboni Savage penalty phase |
| A-13 (unredacted) | Kaboni Savage | Phone call with KS, Kidada, LL, Barbara Savage -- we don't have the "non-pertinent" parts | 2013.04.15 (p 229) | Kevin Lewis Cross-Exam (Hoey) |
| H-0126 | Kaboni Savage | Call between Gerald Thomas and Eugene Coleman | 2013.03.21 (p 34) | Eugene Coleman Cross-Exam (Hoey) |
| H-0128 | Kaboni Savage | Call between Gerald Thomas and KS | 2013.03.21 (p 37) | Eugene Coleman Cross-Exam (Hoey) |
| H-0367 | Kaboni Savage | Oliver & Thomas call; 10-03-00 | 2013.03.04 (p 82) | Craig Oliver Cross-Exam (Hoey) |
| H-0468 | Kaboni Savage | Call between Gerald Thomas and Eugene Coleman, 10-05-00 | 2013.03.20 (p 226) | Eugene Coleman Cross-Exam (Hoey) |
| H-0494 | Kaboni Savage | Oliver and Thomas convo (on 10-06-00?) | 2013.02.28 (p 201) | Craig Oliver Cross-Exam (Hoey) |
| H-0555 | Kaboni Savage | Thomas & Yusef Newman call, 10-07-00 | 2013.02.11 (p 94) | Kevin Lewis Cross-Exam (Hoey) |
| H-0624 | Kaboni Savage | Bey & Thomas; 10-08-00 | 2013.03.11 (p 40) | Kevin Lewis Cross-Exam (Hoey) |
| H-0652 | Kaboni Savage | Oliver & Thomas call; 10-09-00 | 2013.03.04 (p 80) | Craig Oliver Cross-Exam (Hoey) |
| H-0929 | Kaboni Savage | Oliver & Thomas call, 10-14-00 | 2013.03.04 (p 70) | Craig Oliver Cross-Exam (Hoey) |
| H-1123 | Kaboni Savage | Oliver & KS call? & Thomas; 10-19-00 | 2013.03.04 (p 73) | Craig Oliver Cross-Exam (Hoey) |
| H-1312 | Kaboni Savage | Thomas & Oliver call; 10-23-00 | 2013.03.04 (p 79) | Craig Oliver Cross-Exam (Hoey) |
| H-1478 | Kaboni Savage | Oliver & Thomas call 11-02-00 | 2013.03.04 (p 68) | Craig Oliver Cross-Exam (Hoey) |
| H-1642 | Kaboni Savage | Oliver & Thomas call; 11-07-00 | 2013.03.04 (p 65) | Craig Oliver Cross-Exam (Hoey) |
| H-2002 | Kaboni Savage | Bey & Thomas; 11-16-00 | 2013.03.11 (p 26) | Kevin Lewis Cross-Exam (Hoey) |
| H-2304 | Kaboni Savage | Thomas & Bluntly call 11-25-00 | 2013.03.11 (p 63) | Kevin Lewis Cross-Exam (Hoey) |

US V. KABONI SAVAGE, NO. 14-9003

KABONI SAVAGE RECORDING EXHIBITS

| Audio Number | Introduced By | Description | Intro Date | Section of Trial |
|---|---|---|---|---|
| H-3129 | Kaboni Savage | Thomas wiretap | 2013.03.11 (p 47) | Kevin Lewis Cross-Exam (Hoey) |
| H-3470 | Kaboni Savage | Thomas wiretap | 2013.03.20 (p 227) | Eugene Coleman Cross-Exam (Hoey) |
| KS Ex. 03, clip ? | Kaboni Savage | Call between Thomas and Sami, 10-10-00, identified as 721 in category 9 | 2013.02.11 (p 103) | Kevin Lewis Cross-Exam (Hoey) |
| KS Ex. 03, clip ? | Kaboni Savage | Call between Thomas and Greg Mills, 12-06-00, identified as 2580 in category 13 | 2013.02.11 (p 105) | Kevin Lewis Cross-Exam (Hoey) |
| KS Ex. 03, clip ? | Kaboni Savage | Call between Thomas and Oliver 10-07-00, identified as 591 in category 18 | 2013.02.11 (p 109) | Kevin Lewis Cross-Exam (Hoey) |
| KS Ex. 03, clip ? | Kaboni Savage | Call between Thomas and Oliver, identified as 367 in category 8 | 2013.02.11 (p 111) | Kevin Lewis Cross-Exam (Hoey) |
| KS Ex. 03, clip ? | Kaboni Savage | Call between Bey and Thomas, 02-10-01, identified as 4809 in category 20 | 2013.02.11 (p 113) | Kevin Lewis Cross-Exam (Hoey) |
| KS Ex. 03, clip ? | Kaboni Savage | Call between Thomas and James "Candy" Walker, identified as call 29 in category 2 | 2013.02.11 (p 95) | Kevin Lewis Cross-Exam (Hoey) |
| KS Ex. 03, clip ? | Kaboni Savage | Call between Thomas and Sam Christian, 10-03-00, idntified as 341 in category 7 | 2013.02.11 (p 99) | Kevin Lewis Cross-Exam (Hoey) |
| KS Ex. 275 | Kaboni Savage | Excerpts from KS's testimony in KS-1 trial, KSEx. 275 | 2013.02.21 (p 118) | Kevin Lewis Cross-Exam (Hoey) |
| KS Ex. 275, section ? | Kaboni Savage | KS 2005 trial testimony excerpt, KSEx. 275, section ?, page 56 | 2013.02.21 (p 123) | Kevin Lewis Cross Exam (Hoey) |
| KS Ex. 275, section 1 | Kaboni Savage | KS 2005 trial testimony excerpt, KSEx. 275, section 1 | 2013.02.21 (p 118) | Kevin Lewis Cross Exam (Hoey) |
| KS Ex. 275, section 2 | Kaboni Savage | KS 2005 trial testimony excerpt, KSEX. 275, section 2 | 2013.02.21 (p 122) | Kevin Lewis Cross Exam (Hoey) |
| KS Ex. 275, section 3 | Kaboni Savage | KS 2005 trial testimony excerpt, KSEX. 275, section 3 | 2013.02.21 (p 122) | Kevin Lewis Cross Exam (Hoey) |
| KS Ex. 275, section 5 | Kaboni Savage | KS 2005 trial testimony excerpt, KSEx. 275, section 5 | 2013.02.21 (p 124) | Kevin Lewis Cross Exam (Hoey) |
| KS Ex. 275, section 6 | Kaboni Savage | KS 2005 trial testimony excerpt, KSEx. 275, section 6 | 2013.02.21 (p 125) | Kevin Lewis Cross Exam (Hoey) |
| L-0058 | Kaboni Savage | FDC cell wiretap, KS & Bey convo, 12-7-04 (pretty sure this is actually L-580) | 2013.02.21 (p 151) | Kevin Lewis Cross Exam (Hoey) |

US V. KABONI SAVAGE, NO. 14-9003

CO-DEFENDANTS' RECORDING EXHIBITS

| Audio Number | Introduced By | Description | Intro Date | Section of Trial |
|---|---|---|---|---|
| 1408 | Kidada Savage | Phone call between LL and Mark Ehlers, 01-04-08, identified as call 1408 | 2013.04.03 (p 222) | Lamont Lewis Cross Exam (Whalen) |
| ? | Kidada Savage | Barbara Savage Deposition | 2013.04.23 (p 251-52, 257) | Kidada Savage defense case |
| 813 | Kidada Savage | KS FDC phone call, identified as 813, is probably A-13 | 2013.05.01 (p 198) | Whalen guilt-phase closing argument |
| ? | Robert Merritt | 1/5/2005 FDC cell block tape | 2013.02.05 (p 30) | Spade opening argument |
| ? | Robert Merritt | 1/5/2005 FDC cell block tape | 2013.02.05 (p 30) | Spade opening argument |
| RM Ex. 63 | Robert Merritt | Bienvenido Morales allocution in 1991 | 2013.04.08 (p 169) | Bienvenido Morales Cross Exam (Spade) |
| ? | Robert Merritt | 1/5/2005 FDC cell block tape | 2013.04.16 (p 74) | Kevin Lewis Cross-Exam (George) |
| Clip 1 | Robert Merritt | 1/5/2005 FDC cell block tape | 2013.05.01 (p 115) | Spade guilt-phase closing argument |
| Clip 7 | Robert Merritt | 1/5/2005 FDC cell block tape | 2013.05.01 (p 117) | Spade guilt-phase closing argument |
| Clip 8 | Robert Merritt | 1/5/2005 FDC cell block tape | 2013.05.01 (p 118) | Spade guilt-phase closing argument |
| Clip 9 | Robert Merritt | 1/5/2005 FDC cell block tape | 2013.05.01 (p 119) | Spade guilt-phase closing argument |
| Clip 10 | Robert Merritt | 1/5/2005 FDC cell block tape | 2013.05.01 (p 120) | Spade guilt-phase closing argument |
| Clip 11 | Robert Merritt | 1/5/2005 FDC cell block tape | 2013.05.01 (p 120) | Spade guilt-phase closing argument |
| Clip 12 | Robert Merritt | 1/5/2005 FDC cell block tape | 2013.05.01 (p 122) | Spade guilt-phase closing argument |
| Clip 12, part 2 | Robert Merritt | 1/5/2005 FDC cell block tape | 2013.05.01 (p 122) | Spade guilt-phase closing argument |
| Clip 12, part 3 | Robert Merritt | 1/5/2005 FDC cell block tape | 2013.05.01 (p 123) | Spade guilt-phase closing argument |
| Clip 13 | Robert Merritt | 1/5/2005 FDC cell block tape | 2013.05.01 (p 124) | Spade guilt-phase closing argument |
| A-13-8 | Robert Merritt | Phone call with KS and LL | 2013.04.16 (p 152) | Kevin Lewis Cross-Exam (George) |
| SN Ex. 61 | Steven Northington | 911 call after Tybius Flowers's murder | 2013.04.24 (p 88) | Stipulation |

# *APPENDIX E*

# **Material Relating to Transcription Errors**

**Subject:** RE: 4/8/13 Transcript
**From:** "Gregg Wolfe" <gwolfe@klwreporters.com>
**Date:** 5/31/2017 1:56 PM
**To:** "'Barry Fisher'" <barryfisher4@gmail.com>

Barry,

I am not permitted to do so, but you can take my e-mail and attach that to your brief. The court reporter cannot make any amendments or changes once it is filed.

Thank you.

*Sincerely,*
*Gregg*



**Gregg B. Wolfe**
**CEO**
**Kaplan Leaman & Wolfe**
**Court Reporting & Litigation Support**
Cell: (215)-460-1511

**Headquarters:**
325 Chestnut Street, Suite 909
Philadelphia, Pennsylvania 19106
Office: (215)922-7112
Fax: (215)922-1950

**Florida Office:**
1044 N. U.S. Highway One, Suite 101
Jupiter, Florida 33477
Toll Free: 1-877-KLW-DEPO
Visit us online at: http://www.klwreporters.com



**\*\*OVER 35 YEARS BUILT ON EXCELLENCE WITH A 15-MINUTE RESPONSE TIME\*\***

A315

RE: 4/8/13 Transcript

Case: 14-9003     Document: 003112747904     Page: 317     Date Filed: 10/10/2017

**From:** Barry Fisher [mailto:barryfisher4@gmail.com]
**Sent:** Wednesday, May 31, 2017 1:55 PM
**To:** Gregg Wolfe <gwolfe@klwreporters.com>
**Subject:** Re: 4/8/13 Transcript


Thanks, Gregg.

On the square/scare correction to the 4/8/13, can you file the correction on the district court docket, perhaps as a corrected transcript or just a corrected page? That will avoid any problems or confusion on appeal if I want to cite that passage in our brief.

```
Barry J. Fisher
Federal Capital Appellate Resource Counsel
Office of the Federal Defender, NDNY
39 North Pearl Street, 5th Floor
Albany, NY 12207
Telephone (518) 650-9031
Fax (518) 436-1780
```
barry_fisher@fd.org
On 5/31/2017 1:17 PM, Gregg Wolfe wrote:

> Barry,
>
> Enclosed please find the Savage transcript from 1/14/13 with page 160 included therein.
>
> As far as the "square" comment, that should be "scare." I apologize for any confusion.
>
> Thank you, again.
>
> Sincerely,
> Gregg



**Gregg B. Wolfe**
**CEO**
**Kaplan Leaman & Wolfe**
**Court Reporting & Litigation Support**
Cell: (215)-460-1511

**Headquarters:**
325 Chestnut Street, Suite 909
Philadelphia, Pennsylvania 19106
Office: (215)922-7112
Fax: (215)922-1950

**Florida Office:**
1044 N. U.S. Highway One, Suite 101

A316

Jupiter, Florida 33477
Toll Free: 1-877-KLW-DEPO
Visit us online at: http://www.klwreporters.com



**OVER 35 YEARS BUILT ON EXCELLENCE WITH A 15-MINUTE RESPONSE TIME**

---

**From:** Barry Fisher [mailto:barryfisher4@gmail.com]
**Sent:** Friday, May 19, 2017 4:43 PM
**To:** kapleawol@aol.com
**Cc:** Gregg Wolfe <gwolfe@klwreporters.com>
**Subject:** 4/8/13 Transcript


Gregg -- Sorry to bother you again, I think this is the last issue I found:

In the 4/8/13 transcript you did (copy attached), on pp.73-74, you have the phrase: "they were supposed to burn the house down to **square** Twin's family"

I'm wondering if the word "square" should actually be "scare"?  Is this something you can go back and double check?

I ask only b/c it might be significant down the line.

Thanks,

Barry

```
Barry J. Fisher
Federal Capital Appellate Resource Counsel
Office of the Federal Defender, NDNY
39 North Pearl Street, 5th Floor
Albany, NY 12207
Telephone (518) 650-9031
Fax (518) 436-1780
```
barry_fisher@fd.org


-------- Forwarded Message --------
**Subject:** Voicemail Message (WOLFE GREGG > BFisher) From:92154601511
   **Date:** Fri, 19 May 2017 11:22:02 -0400
   **From:** WOLFE GREGG <vmpro@fd.org>
      **To:** Barry_Fisher@fd.org

A317

IP Office Voicemail redirected message

**Subject:** Re: Kaboni Savage -- 2/21/13 Transcript
**From:** Suzanne R White Suzanne R White <szwht@verizon.net>
**Date:** 9/21/2017 12:15 PM
**To:** szwht@verizon.net, barryfisher4@gmail.com

HI Barry,
I did correct this transcript back in August.  The clerk's office has been notified to put it on the docket.
Thanks and sorry for any confusion.

Suzanne R White
szwht@verizon.net


-----Original Message-----
From: Suzanne R White Suzanne R White <szwht@verizon.net>
To: barryfisher4 <barryfisher4@gmail.com>
Sent: Thu, Aug 10, 2017 12:24 pm
Subject: Re: Kaboni Savage -- 2/21/13 Transcript

Attached in PDF format is a corrected version of preserve to desert.

Suzanne R White
szwht@verizon.net


-----Original Message-----
From: Barry Fisher <barryfisher4@gmail.com>
To: Suzanne R White Suzanne R White <szwht@verizon.net>
Sent: Sun, Aug 6, 2017 2:33 pm
Subject: Re: Kaboni Savage -- 2/21/13 Transcript

Thanks

```
Barry J. Fisher
Federal Capital Appellate Resource Counsel
Office of the Federal Defender, NDNY
39 North Pearl Street, 5th Floor
Albany, NY 12207
Telephone (518) 650-9031
Fax (518) 436-1780
barry_fisher@fd.org
```

On 8/6/2017 2:29 PM, Suzanne R White Suzanne R White wrote:

> Hi Barry,
> I am out of the office on vacation.  I will check when I get back.
>
> Suzanne R White
> szwht@verizon.net
>
>
> -----Original Message-----
> From: Barry Fisher <barryfisher4@gmail.com>
> To: Suzanne R White Suzanne R White <szwht@verizon.net>; suzanne_white

<span style="color:blue">A319</span>

<suzanne_white@paed.uscourts.gov>
Sent: Thu, Aug 3, 2017 6:11 pm
Subject: Kaboni Savage -- 2/21/13 Transcript

Good evening, Suzanne. In going through one of the transcripts you
produced from the Kaboni Savage trial, I came across a passage that I'm
wondering whether might include a mistakenly transcribed word. It's the
2/21/13 transcript (I'm attaching a copy). I'm looking at p.7, line 17
where it has Mr. Purpura saying : "YOU CAN'T PRESERVE A CASE AT
THIS LAST MOMENT."

I'm wondering if you might be able to go back and check and see whether
"preserve" is actually the word he used?

Thanks,

Barry Fisher

--
Barry J. Fisher
Federal Capital Appellate Resource Counsel
Office of the Federal Defender, NDNY
39 North Pearl Street, 5th Floor
Albany, NY 12207
Telephone (518) 650-9031
Fax (518) 436-1780
barry_fisher@fd.org

A320

1

```
 1              IN THE UNITED STATES DISTRICT COURT

 2          FOR THE EASTERN DISTRICT OF PENNSYLVANIA

 3

 4    UNITED STATES OF AMERICA      :  CRIMINAL NUMBER

 5              V.

 6
      KABONI SAVAGE
 7    KIDADA SAVAGE
      STEVEN NORTHINGTON
 8    ROBERT MERRITT               :  07-00550

 9

10                      THURSDAY, 2-21-13
                        COURTROOM 8A
11                      PHILADELPHIA, PA 19106

12    ----------------------------------------------
         BEFORE THE HONORABLE R. BARCLAY SURRICK, J.
13    ----------------------------------------------

14              JURY TRIAL - DAY 11

15    ----------------------------------------------

16    APPEARANCES:

17    DAVID TROYER, ESQUIRE          FOR THE GOVERNMENT
      JOHN GALLAGHER, ESQUIRE
18    ASSISTANT UNITED STATES ATTORNEYS
      615 CHESTNUT STREET, SUITE 1250
19    PHILADELPHIA, PA 19106

20        SUZANNE R. WHITE, RPR, FCRR, CM
          OFFICIAL COURT REPORTER
21        FIRST FLOOR U. S. COURTHOUSE
             601 MARKET STREET
22        PHILADELPHIA, PA 19106
             (215)627-1882
23

24    PROCEEDINGS RECORDED BY STENOTYPE-COMPUTER,
      TRANSCRIPT PRODUCED BY COMPUTER-AIDED TRANSCRIPTION
25
```

2

```
 1    APPEARANCES:

 2    STEVEN D. MELLIN, ESQUIRE      FOR THE GOVERNMENT
      1331 F STREET
 3    ROOM 334
      WASHINGTON, D.C. 20530
 4

 5    RUBINO & HOEY, LLC          FOR THE DEFENDANT
      CHRISTIAN HOEY, ESQUIRE       KABONI SAVAGE
 6    50 DARBY ROAD
      PAOLI, PA 19301
 7        AND
      PURPURA & PURPURA
 8    WILLIAM B. PURPURA, ESQUIRE
      THE BONAPARTE BUILDING
 9    8 EAST MULBERRY STREET
      BALTIMORE, MD 21202-2105

10

11    BARTON & PHILLIPS          FOR THE DEFENDANT
      CHRISTOPHER PHILLIPS, ESQUIRE   KIDADA SAVAGE
12    1518 WALNUT STREET, SUITE 1406
      PHILADELPHIA, PA 19102
13        AND
      TERESA WHALEN, ESQUIRE
14    801 WAYNE AVENUE
      NUMBER 400
15    SILVER SPRING, MD 20910

16    THOMAS C. EGAN, III, ESQUIRE    FOR THE DEFENDANT
      621 SWEDE STREET               STEVEN NORTHINGTON
17    NORRISTOWN, PENNSYLVANIA 19401
          AND
18    WILLIAM L. BOWE, ESQUIRE
      153 EAST WOLFERT STATION ROAD
19    MICKLETON, NEW JERSEY 08056

20
      MCKINNEY & GEORGE          FOR THE DEFENDANT
21    PAUL M. GEORGE, ESQUIRE        ROBERT MERRITT
      239 S. CAMAC STREET
22    PHILADELPHIA, PA 19107
          AND
23    WILLIAM R. SPADE, JR., ESQUIRE
      1525 LOCUST STREET, SUITE 1400
24    PHILADELPHIA, PA 19102

25
```

3

```
 1         (THE CLERK OPENS COURT.)

 2              ALL COUNSEL:  GOOD MORNING, YOUR HONOR.

 3         THE COURT:  GOOD MORNING.

 4         READY?

 5         MR. TROYER:  YOUR HONOR, WE WOULD LIKE TO

 6    VISIT SOMETHING THAT NATURALLY WOULD COME UP IN THE

 7    COURSE OF THIS DIRECT EXAMINATION TODAY.  AND THAT IS

 8    THE ISSUE THAT WAS BROUGHT UP YESTERDAY BY COUNSEL WITH

 9    REGARD TO SOME OF THESE -- THESE THREE PHONE CALLS,

10    THREE TELEPHONE CALLS.  IF I COULD, MR. -- MY COLLEAGUE

11    MR. GALLAGHER WAS GOOD ENOUGH TO SPEND MOST OF THE LAST

12    18 OR 19 HOURS ON THIS ISSUE AND IF I COULD LET HIM

13    ADDRESS THAT.

14         THE COURT:  I KNEW SOMEBODY DID BECAUSE

15    WE RECEIVED A MEMORANDUM THIS MORNING.

16         MR. GALLAGHER:  THAT WAS ME, YOUR HONOR.

17         MR. PURPURA:  JUDGE, WE OBJECT TO

18    LITIGATING THIS NOW.  WE ARE ACTUALLY -- I WAS LAST

19    NIGHT PREPARING A RESPONSE MEMO MYSELF.  IT IS NOT

20    COMPLETED YET.  IT SHOULD BE COMPLETED THIS MORNING.  WE

21    WILL GET IT TO THE COURT.  WE WOULD LIKE TO BE ON ALL

22    FOURS WITH THE LAW AND THE COURT SHOULD HAVE THIS BEFORE

23    IT ALL AS ONE PACKAGE, RATHER THAN PIECEMEAL AT THIS

24    TIME.

25         MR. GALLAGHER:  YOUR HONOR, WE ARE IN
```

4

```
 1    THIS POSITION BECAUSE THE DEFENDANTS DECIDED TO WAIT

 2    UNTIL THE MOMENT WE WERE GOING TO PUSH PLAY ON THE

 3    RECORDER.  THESE RECORDINGS HAVE BEEN IDENTIFIED MONTHS

 4    AND MONTHS IN ADVANCE.  THEN THEY WERE CHALLENGED IN A

 5    VERY LATE MOTION.  AND THEN, YOUR HONOR, THESE

 6    OBJECTIONS WEREN'T INCLUDED IN IT.

 7         SO IF THERE IS ANY DELAY HERE, IT'S

 8    CERTAINLY NOT BECAUSE THE GOVERNMENT FILED ITS RESPONSE

 9    IN THE HOURS AFTER THE OBJECTION WAS FINALLY RAISED.

10         THE COURT:  WELL, I WILL HEAR WHAT YOU

11    HAVE TO SAY, MR. GALLAGHER.  I WILL WAIT TO RECEIVE MR.

12    PURPURA'S MEMORANDUM BEFORE WE RULE ON THE SITUATION.

13         MR. GALLAGHER:  YOUR HONOR, I WILL BE

14    BRIEF SINCE THE COURT IS GOING TO WAIT FOR THE FILINGS

15    ON THIS, WHAT I'M ABOUT TO SAY, MOST OF IT IS CONTAINED

16    IN THE GOVERNMENT'S FILING.  BUT IN SHORT, YOUR HONOR,

17    THE DEFENDANT OBJECTED TO THREE CONVERSATIONS IN

18    PARTICULAR, ONE OF WHICH HAS ALREADY BEEN PLAYED FOR THE

19    JURY, AS YOUR HONOR KNOWS.

20         THESE STATEMENTS, THE GOVERNMENT

21    CONTENDS, ARE PLAIN TEXTBOOK EXAMPLES OF CO-CONSPIRATOR

22    STATEMENTS.  IN EACH OF THESE, NOT JUST ONE SPEAKER BUT

23    BOTH SPEAKERS TO THE CONVERSATIONS WERE CO-CONSPIRATORS.

24    WE SET THIS OUT IN MORE DETAIL IN OUR FILING.  ALSO THE

25    CO-CONSPIRATORS, THE STATEMENTS TOOK PLACE DURING THE
```

5

1 COURSE OF THE CONSPIRACY, THE TIME CHARGED IN THE
2 INDICTMENT.
3          NOW ALWAYS THE ISSUE WITH A
4 CO-CONSPIRATOR STATEMENT, AS YOUR HONOR KNOWS, IS, WAS
5 IT IN FURTHERANCE. THAT IS THE LAST ISSUE. WE LAY OUT
6 IN OUR ARGUMENTS WHY THEY ARE. THE DEFENDANT -- AND I
7 PULLED THE NOTES LAST NIGHT WHILE I WAS WORKING ON THIS.
8 HIS CONTENTION IS, HE ADDS ANOTHER REQUIREMENT THAT THE
9 GOVERNMENT MUST ESTABLISH THE PERSONAL KNOWLEDGE OF THE
10 SPEAKER.
11          YOUR HONOR, FOR THE LEGAL REASONS WE SET
12 OUT IN OUR MOTION, THAT IS NOT A REQUIREMENT FOR THE
13 CO-CONSPIRATOR RULE. IT'S JUST NOT. AND LOGICALLY, I
14 WILL CUT IT OFF HERE, BUT LOGICALLY, THAT ARGUMENT DOES
15 NOT MAKE SENSE BECAUSE THE CO-CONSPIRATOR RULE, BY
16 DEFINITION, INVOLVES CONSPIRATORS INFORMING EACH OTHER
17 ABOUT INFORMATION, KEEPING THEM UP TO SPEED.
18          IT'S THE NATURE OF A CONSPIRACY THAT THE
19 PEOPLE WHO ARE SPEAKING, THE CO-CONSPIRATORS, ARE
20 GETTING INFORMATION FROM VARIOUS SOURCES. IT DOES NOT
21 HAVE TO BE JUST BASED ON THEIR PERSONAL KNOWLEDGE. AND
22 THE CASES BEAR THAT OUT.
23          BUT RELATED TO THAT, YOUR HONOR, THE
24 CO-CONSPIRATOR RULE TELLS US THAT THE STATEMENT IS NOT
25 HEARSAY. IT'S CONSIDERED NONHEARSAY. SO IF THERE IS A

6

1 HEARSAY OBJECTION, THAT FALLS BY THE WAYSIDE.
2          ALL THAT BEING SAID, WE ALSO CONTEND THAT
3 JUST LOOKING AT THE THREE CALLS THAT ARE CHALLENGED
4 HERE, WE DO KNOW WHAT THE PERSONAL BASIS, THE BASIS OF
5 KNOWLEDGE FOR GERALD THOMAS IS. HE TELLS US IN ONE OF
6 THOSE CALLS THAT HE SPOKE TO KABONI AND HE SAID THAT
7 CURT SINGLETON CAME IN THE HOUSE AND HE WAS ACTING UP.
8 SO WE KNOW THAT AT LEAST HE WAS GETTING HIS INFORMATION
9 FROM KABONI SAVAGE. THERE IS NOTHING ELSE IN THOSE
10 CALLS THAT ARE BEING CHALLENGED THAT SUBMIT THEY COME
11 FROM AN IMPROPER SOURCE.
12          SO WHILE WE DON'T HAVE TO HAVE THE
13 PERSONAL BASIS, WE ARE CONFIDENT, JUDGE, THAT CERTAINLY
14 FAR BEYOND A PREPONDERANCE STANDARD THAT WOULD GOVERN
15 HERE, WE ALREADY HAVE THAT BUILT INTO THE CALLS. SO
16 BASED ON ALL THAT WE ASK THE COURT TO OVERRULE THE
17 OBJECTION.
18          THE COURT: ALL RIGHT. COUNSEL, I HAVE
19 BEEN LOOKING AT THE ISSUE. MR. PURPURA, I WILL WAIT
20 UNTIL I RECEIVE YOUR MEMO AND THEN WE WILL GIVE YOU A
21 CHANCE TO RESPOND AND I WILL DETERMINE WHAT IS
22 APPROPRIATE.
23          MR. PURPURA: JUDGE, WITH THAT, I'M
24 ACTUALLY -- SINCE MR. HOEY IS GOING TO HANDLE THIS CROSS
25 EXAMINATION OF AGENT LEWIS, I'M GOING TO STEP OUT AND

7

1 JUST FOLLOW UP ON THAT IN THE NEXT HALF-HOUR. THEN I
2 WILL COME RIGHT BACK IN. I HAVE TO PLACE SOMETHING ON
3 THE RECORD NOW.
4          AND I KNOW THE COURT HAS BEEN EXTREMELY
5 INDULGENT WITH ME AND BENT OVER BACKWARDS TO ALLOW ME
6 AND MR. HOEY TO GET AS MUCH RESOURCE AS WE NEED. AND WE
7 THANK THE COURT FOR THAT. WE DO EVERY DAY AND WE MEAN
8 THAT SINCERELY.
9          BUT I THINK THE GOVERNMENT HAS AS MUCH
10 BLAME ON THIS SITUATION AS DEFENSE, IF NOT MORE. THE
11 GOVERNMENT KNEW FOR A LONG, LONG TIME THAT MR. SULLIVAN
12 AND HIS ASSOCIATE WERE COMING OUT OF THIS CASE. THEY
13 KNEW IT WAS IMMINENT. THEY KNEW IT FOR MONTHS AND
14 MONTHS, AND MONTHS.
15          NOT ONCE DID THEY EVER FILE A MOTION OR
16 TRY TO GET ON THE WRONG SIDE OF MR. SULLIVAN OR MR. COOK
17 TO SAY, YOU CAN'T DO THIS, YOU CAN'T DESERT A CASE AT
18 THIS LAST MOMENT OR YOU BETTER GET ANOTHER COUNSEL IN
19 HERE AT THIS TIME. THEY HAD AN ABSOLUTE RIGHT TO DO
20 THAT. THEY DID NOT DO THAT.
21          I HAVE COME IN AND MR. HOEY HAS BEEN
22 WORKING LIKE A DOG FOR THREE YEARS, AS THE COURT CAN
23 TELL THROUGH CROSS EXAMINATION. HE KNOWS THIS CASE
24 THOROUGHLY. THAT WAS HIS POSITION AND HIS PART OF THE
25 CASE WAS TO LEARN THE FACTS OF THE CASE. AND HE HAS

8

1 ASSIMILATED ALL THE FACTS OF THE CASE. OTHER DUTIES
2 WERE DELEGATED TO OTHER PEOPLE.
3          WE ARE TRYING TO CATCH UP THE BEST WE CAN
4 AND WE ARE ON ALL PHASES. SOME OF THESE THINGS IS
5 TAKING MORE TIMES THAN OTHERS, AND THAT IS BECAUSE THE
6 AMOUNT OF STARKS DESIGNATIONS HERE WERE THOUSANDS, TO
7 BEGIN WITH. THERE WERE THOUSANDS OF PAGES OF
8 TRANSCRIPTS. THERE WERE THOUSANDS OF PAGES OF CALLS.
9 AND ABOUT SIX MONTHS AGO, WHENEVER THE STARKS
10 DESIGNATION WAS, THERE IS STILL -- REDUCED BUT IT'S
11 STILL IN THE NUMBER OF THOUSANDS. WE HAVE BEEN DOING
12 OUR BEST TO KEEP UP WITH IT AND WE STILL ARE. AND WE
13 BEG THE COURT'S INDULGENCE.
14          ALONG THAT LINE, I'M GOING TO IMPOSE TWO
15 MORE OBJECTIONS TODAY TO UPCOMING TRANSCRIPTS. I'M
16 GOING TO GIVE THE GOVERNMENT NUMBER NOW AND THE COURT
17 NOW AND I WOULD LIKE TO DISPOSE OF THIS RIGHT NOW AT
18 THIS TIME, IF WE COULD. AND THAT IS L862, WHICH THE
19 GOVERNMENT IS GOING TO PLAY TODAY.
20          I KNOW WE HAVE OBJECTED TO THE VAST
21 MAJORITY OF THESE ALREADY IN -- AS THE GOVERNMENT
22 SUGGESTED IN A VERY LATE FILING, WHICH IT WAS LATE AND
23 IT PROBABLY SHOULD HAVE BEEN MORE COMPREHENSIVE THAN IT
24 WAS. THAT IS COMING UP THIS MORNING, 862.
25          THERE IS ONLY ONE OTHER ONE. IT SHOULD

A-322

Respectfully submitted,

  /s/ Barry J. Fisher
Barry J. Fisher, *Esq.*
Federal Capital Appellate Resource Counsel
39 North Pearl Street, 5th Floor
Albany, NY 12207
tel. (518) 436-1850 x.116
barry_fisher@fd.org

Lawrence S. Lustberg, *Esq.*
Gibbons, P.C.
One Gateway Center
Newark, NJ 07102
tel. (973) 596-4731
LLustberg@gibbonslaw.com

Madeline S. Cohen
Attorney at Law
1942 Broadway, Suite 314
Boulder, Colorado 80302
tel. (303) 402-6933
madeline@madelinecohnenlaw.com

Counsel for Kaboni Savage

## **CERTIFICATE OF SERVICE**

I certify that the foregoing was filed electronically through the ECF system and notice sent to counsel of record for all parties on this date.


_____s/ Barry J. Fisher_____